1   KAMALA D. HARRIS, State Bar No. 146672
    Attorney General of California
2   MARK R. BECKINGTON, State Bar No. 126009
    Supervising Deputy Attorney General
3   JONATHAN M. EISENBERG, State Bar No. 184162
    Deputy Attorney General
4     300 South Spring Street, Suite 1702
      Los Angeles, CA  90013
5     Telephone:  (213) 897-6505
      Fax:  (213) 897-1071
6     E-mail:  Jonathan.Eisenberg@doj.ca.gov
    *Attorneys for Defendant Kamala D. Harris, Attorney*
7   *General of California*

8

9                    IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11                         FRESNO DIVISION

12

13  | **JEFF SILVESTER, MICHAEL POESCHL,** | 1:11-cv-02137-AWI-SKO |
    | --- | --- |
14  **BRANDON COMBS, THE CALGUNS**
    **FOUNDATION, INC., a non-profit**          **MEMORANDUM OF POINTS AND**
15  **organization, and THE SECOND**            **AUTHORITIES IN SUPPORT OF**
    **AMENDMENT FOUNDATION, INC., a**          **DEFENDANT CALIFORNIA**
16  **non-profit organization,**                **ATTORNEY GENERAL KAMALA D.**
                                                 **HARRIS'S MOTION FOR SUMMARY**
17                              Plaintiffs,      **JUDGMENT (FED. R. CIV. P. 56) –**
                                                 **INCLUDING STATEMENT OF**
18        v.                                     **UNDISPUTED MATERIAL FACTS**

19  **KAMALA HARRIS, Attorney General of**      Hearing Date: October 28, 2013
    **California (in her official capacity), and**  Hearing Time: 1:30 p.m.
20  **DOES 1 to 20,**                            Trial Date:      March 25, 2014
                                                 Action Filed:  December 23, 2011
21                              Defendants.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

SUMMARY OF CASE ........................................................................................................ 1

QUESTIONS PRESENTED .............................................................................................. 2

BRIEF ANSWERS .............................................................................................................. 2

BACKGROUND INFORMATION .................................................................................. 3

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................. 4

PROCEDURAL HISTORY ............................................................................................... 5

LEGAL STANDARDS FOR MOTIONS FOR SUMMARY JUDGMENT ............... 5

ARGUMENT ....................................................................................................................... 7

    I.      THE ATTORNEY GENERAL IS ENTITLED TO SUMMARY
             JUDGMENT ON PLAINTIFFS' SECOND-AMENDMENT CLAIM ................. 7

          A.     THE CHALLENGED LAWS PASS THE SUBSTANTIAL-
                 BURDEN TEST ......................................................................................... 8

                 1.     THE SUBSTANTIAL-BURDEN TEST STATED ...................... 8

                 2.     THE SUBSTANTIAL-BURDEN TEST APPLIED .................... 10

          B.     THE CHALLENGED LAWS SURVIVE INTERMEDIATE
                 SCRUTINY ............................................................................................. 13

    II.     THE ATTORNEY GENERAL IS ENTITLED TO SUMMARY
             JUDGMENT ON PLAINTIFFS' FOURTEENTH-AMENDMENT
             CLAIM ......................................................................................................... 15

CONCLUSION ................................................................................................................. 19

i

Mem. of P. & A. in Supp. of Def. Cal. Att'y Gen. Harris's Mtn. for Summ. J. (1:11-cv-02137-AWI-SKO)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ............................................................. 5

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ....................................................... 5, 6

*Ass'n of Nat'l Advertisers, Inc. v. Lungren,*
    44 F.3d 726 (9th Cir. 1994) ................................................................................................... 14

*Bryant v. Adventist Health System/West,*
    289 F.3d 1162, 1167 (9th Cir. 2002) ...................................................................................... 6

*Burdick v. Takushi,*
    504 U.S. 428 (1992) ................................................................................................................ 9

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) ......................................................... 5

*Coyote Publ'g, Inc. v. Miller,*
     598 F.3d 592 (9th Cir. 2010) ................................................................................................ 14

*Del Carmen Guadalupe v. Agosto,*
    299 F.3d 15 (1st Cir. 2002) ..................................................................................................... 6

*District of Columbia v. Heller,*
    554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) .............................................. 7, 8, 9, 10

*Estate of Tucker v. Interscope Records,*
    515 F.3d 1030 (9th Cir. 2008) ................................................................................................ 6

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) .................................................................................................. 9

*Fantasyland Video, Inc. v. Cnty. of San Diego,*
    505 F.3d 996 (9th Cir. 2007) ................................................................................................. 13

*Fortyune v. American Multi-Cinema, Inc.,*
    364 F.3d 1075 (9th Cir. 2004) ................................................................................................ 5

*Freecycle Sunnyvale v. Freecycle Network,*
    626 F.3d 509 (9th Cir. 2010) .................................................................................................. 6

*Hardage v. CBS Broad. Inc.,*
    427 F.3d 1177 (9th Cir. 2006) ................................................................................................ 7

ii

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ......................................................... 9

*Jackson v. Dep't of Justice*,
    85 Cal. App. 4th 1334 (2001) ........................................................... 12

*Jacoves v. United Merchandising Corp.*,
    9 Cal. App. 4th 88 (1992) ................................................................. 3

*James River Ins. Co. v. Herbert Schenk, P.C.*,
    523 F.3d (9th Cir. 2008) .................................................................... 6

*Kahawaiolaa v. Norton*,
    386 F.3d 1271 (9th Cir. 2005) .......................................................... 16

*Karlin v. Foust*,
    188 F.3d 446 (7th Cir. 1999) ........................................................ 9, 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ......................... 6

*Narayan v. EGL, Inc.*,
    616 F.3d 895 (9th Cir. 2010) ............................................................. 6

*Nat'l Ass'n of Optometrists and Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012) ......................................................... 18

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
    210 F.3d 1099 (9th Cir. 2000) ........................................................... 6

*Nordyke v. King*,
    681 F.3d 1041 (9th Cir. 2012) ........................................................... 7

*People v. Bickston*,
    91 Cal. App. 3d Supp. 29 (1979) ........................................ 1, 3, 12, 15

*People v. Doolin*,
    45 Cal.4th 390 (2009) ........................................................................ 3

*People v. Flores*,
    169 Cal. App. 4th 568 (2008) ........................................................... 15

*People v. James*,
    174 Cal. App. 4th 662 (2009) ........................................................... 12

*Peruta v. County of San Diego*,
    758 F. Supp. 2d 1106 (S.D. Cal. 2010) ......................................... 11, 13

1

2

*Planned Parenthood of Southeastern Pa. v. Casey,*
   505 U.S. 833, 873, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ................................ 7, 9

3

*Sanders v. City of Fresno,*
   551 F. Supp. 2d 1149 (E.D. Cal. 2008) .............................................................. 6

4

5

*Scocca v. Smith,*
   No. C–11–1318 EMC, 2012 WL 2375203 (N.D. Cal. Jun. 22, 2012) ..................... 9

6

7

*Silveira v. Lockyer,*
   312 F.3d 1052 (9th Cir. 2002) ........................................................................... 10

8

*Soremekun v. Thrifty Payless, Inc.,*
   509 F.3d 978 (9th Cir. 2007) ......................................................................... 5, 6

9

10

*UMG Recordings, Inc. v. Sinnott,*
   300 F. Supp. 2d 993 (E.D. Cal. 2004) ................................................................ 6

11

12

*United States v. Call,*
   874 F. Supp. 2d 969 (D. Nev. 2012) ................................................................. 11

13

*United States v. DeCastro,*
   682 F.3d 160 (2d Cir. 2012) ............................................................... 8, 9, 10, 11

14

15

*United States v. Kapp,*
   564 F.3d 1103, 1114 (9th Cir. 2009) ................................................................. 5

16

17

*United States v. Marzzarella,*
   614 F.3d 85 (3d Cir. 2010) .............................................................................. 13

18

*United States v. Masciandaro,*
   638 F.3d 458 (4th Cir. 2011) ............................................................................ 9

19

20

*United States v. Parker,*
   919 F. Supp. 2d 1072 (E.D. Cal. 2012) ........................................................ 13, 14

21

22

*United States v. Salerno,*
   481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ........................................ 11

23

*Ward v. Rock Against Racism,*
   491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ...................................... 13

24

25

*Young v. Hawaii,*
   911 F. Supp. 2d 972 (D. Haw. 2012) ................................................................. 9

26

*Zablocki v. Redhail,*
   434 U.S. 374 (1978) ........................................................................................ 8

27

28

1

2

## STATUTES

Cal. Penal Code

§ 26710................................................................................................................ 12
§ 26815............................................................................................................Passim
§ 26950................................................................................................................ 16
§ 26955................................................................................................................ 16
§ 26960................................................................................................................ 17
§ 26965................................................................................................................ 18
§ 26970................................................................................................................ 18
§ 27000................................................................................................................ 19
§ 27005................................................................................................................ 19
§ 27050................................................................................................................ 16
§ 27055................................................................................................................ 16
§ 27060................................................................................................................ 16
§ 27065................................................................................................................ 16
§ 27100................................................................................................................ 17
§ 27105................................................................................................................ 18
§ 27110................................................................................................................ 17
§ 27115................................................................................................................ 18
§ 27120................................................................................................................ 19
§ 27125................................................................................................................ 17
§ 27130................................................................................................................ 17
§ 27135................................................................................................................ 19
§ 27140................................................................................................................ 18
§ 27540.......................................................................................................... 1, 3, 10
§ 27600................................................................................................................ 16
§ 27610................................................................................................................ 16
§ 27615................................................................................................................ 16
§ 27650................................................................................................................ 16
§ 27655................................................................................................................ 16
§ 27660................................................................................................................ 17
§ 27665................................................................................................................ 18
§ 27670................................................................................................................ 18
§ 27700................................................................................................................ 17
§ 27705................................................................................................................ 18
§ 27710................................................................................................................ 17
§ 27715................................................................................................................ 18
§ 27720................................................................................................................ 19
§ 27725................................................................................................................ 17
§ 27730................................................................................................................ 17
§ 27735................................................................................................................ 19
§ 27740................................................................................................................ 18
§ 27745................................................................................................................ 19
§ 27750................................................................................................................ 19
§ 29800................................................................................................................ 12
§ 30000................................................................................................................ 12

v

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend II ........................................................................................................... Passim

U.S. Const. Amend XIV ...................................................................................................... Passim

**COURT RULES**

Fed. R. Civ. P. 56 .................................................................................................................... 5

1    Defendant Kamala D. Harris, Attorney General of the State of California (the "Attorney

2   General"), submits the following memorandum of points and authorities in support of her motion

3   for summary judgment against Plaintiffs Jeffrey A. Silvester ("Silvester"), Brandon S. Combs

4   ("Combs"; together with Silvester, the "Individual-Person Plaintiffs"), The Calguns Foundation,

5   Inc. ("CGF"), and The Second Amendment Foundation, Inc. ("SAF").

6                                    **SUMMARY OF CASE**

7    Plaintiffs mount a federal constitutional challenge to two California laws, California Penal

8   Code sections 26815 and 27540 (together, the "Waiting Period Law" or the "Law"), that mandate

9   a 10-day waiting period between application to purchase and delivery of a firearm, for all

10   California residents not statutorily exempt from the waiting period.[1]

11    The Waiting Period Law has long been justified on two solid grounds.  First, the Law

12   creates a "cooling off" period to limit a person's immediate access to firearms, in case the person

13   has an impulse to use a firearm to commit an act of violence.  Second, the Law allows law-

14   enforcement officials sufficient time to conduct thorough background checks on prospective

15   firearms purchasers, so that people prohibited by law from possessing firearms (because of, e.g.,

16   having violent felony convictions) are hindered in acquiring them.  *See People v. Bickston*, 91

17   Cal. App. 3d Supp. 29, 31 (1979) (interpreting relevant legislative history).

18    In attacking the Waiting Period Law, Plaintiffs make two primary but insufficient

19   contentions.  First, Plaintiffs argue that the 10-day waiting period infringes, without sufficient

20   justification, on their Second Amendment right under the U.S. Constitution.  Plaintiffs contend

21   that a waiting period is especially unjustified for anybody who has been through the waiting

22   period before in connection with a prior firearm purchase, and who must go through the waiting

23   period again to acquire additional firearms.  Second, Plaintiffs assert that their right to equal

24   protection under the Fourteenth Amendment is violated by  statutory exemptions for certain

25   classes of people from the Waiting Period Law, exemptions that the Individual-Person Plaintiffs

26   and similarly situated people do not enjoy.

27    ───────────────

[1] The differences between the two statutes appear to be irrelevant to the present case, and
so the two statutes are treated as one statute here.

28

1

Contrary to Plaintiffs' assertions, the brief delay occasioned by the Waiting Period Law does not infringe on any Second Amendment interest that has been recognized by the courts. At most, the Law presents only a minor inconvenience in the process leading to the acquisition of firearms, not an infringement on an individual person's right to keep and bear arms. Nor is the Fourteenth Amendment infringed by the limited exemptions granted by the Legislature. The waiting period and the exemptions are fully justified under any appropriate level of scrutiny.

No material, undisputed facts are present. Instead, this case presents pure questions of federal constitutional law ripe for resolution via motion for summary judgment. As discussed below, the Court should enter summary judgment in favor of the Attorney General for the entire case.

## QUESTIONS PRESENTED

1.A.    Does enforcement of California's statutory 10-day waiting period between an individual person's application to purchase a firearm and delivery of the firearm to the person (Cal. Penal Code §§ 26815 and 27540) violate the Second Amendment?

1.B.    Does enforcement of California's statutory 10-day waiting period between an individual person's application to purchase a firearm and delivery of the firearm to the person (Cal. Penal Code §§ 26815 and 27540) violate the Second Amendment, where the person already has gone through at least one 10-day waiting period in connection with at least one previous firearm purchase?

2.    Does the allowance of multiple statutory exemptions to the 10-day waiting period, and concomitant creation of some groups of people with exemptions alongside other groups of people lacking any exemptions, violate the Fourteenth Amendment's Equal Protection Clause?

## BRIEF ANSWERS

1.A.    No. Enforcement of California's statutory 10-day waiting period does not substantially burden any person's Second Amendment right and does not abridge the Second Amendment under any appropriate standard of review.

1.B.    No. Enforcement of California's statutory 10-day waiting period as to a person who has already gone through at least one 10-day waiting period in connection with a previous

2

1   firearm purchase does not substantially burden that person's Second Amendment right and does

2   not abridge the Second Amendment under any appropriate standard of review.

3         2.      No.  There is no violation of the Fourteenth Amendment's Equal Protection Clause

4   merely because certain groups of people have statutory exemptions from the 10-day waiting

5   period; the exemptions do not discriminate against any suspect class of people or unduly burden

6   the exercise of a fundamental right, and the exemptions are rationally related to legitimate

7   government objectives.

8                                    **BACKGROUND INFORMATION**

9         The Waiting Period Law, in various iterations imposing a waiting period of between one

10   day and 15 days for purchases of firearms (sometimes for handguns only), has been in effect in

11   California for 90 years.  *Deering's California Codes, Penal Code Annotated of the State of*

12   *California, §§ 1473 to End* at 735 (1961), citing Stats. 1923 ch. 339, § 10, p. 710; First Am.

13   Compl., ¶¶ 45-47.  For about two decades in the 1970s through the 1990s, the waiting period for

14   handguns was 15 days.  See *People v. Doolin*, 45 Cal. 4th 390, 415 (2009); *Jacoves v. United*

15   *Merchandising Corp.*, 9 Cal. App. 4th 88, 112 nn.13, 14 (1992); *Bickston*, 91 Cal. App. 3d Supp.

16   at 31 (1979); First Am. Compl., ¶¶ 45-47.

17         Presently, California Penal Code section 26815(a) provides as follows:

18         No firearm shall be delivered…[w]ithin 10 days of the application to purchase, or,
           after notice by the [California Department of Justice ("DOJ")] pursuant to section
19         28220, within 10 days of the submission to the department of any correction to the
           application, or within 10 days of the submission to the department of any fee
20         required pursuant to section 28225, whichever is later.

21         California Penal Code section 27540(a) provides as follows:

22         No [firearms] dealer…shall deliver a firearm to a person…[w]ithin 10 days of the
           application to purchase, or, after notice by the department pursuant to section
23         28220, within 10 days of the submission to the department of any correction to the
           application, or within 10 days of the submission to the department of any fee
24         required pursuant to section 28225, whichever is later.

25         The 10-day waiting period is part of an approval process designed to restrict firearms

26   purchases to those persons legally eligible to possess and to own firearms.  As explained in DOJ

27   publication *California Firearms Summary 2013* (available online at http://oag.ca.gov/firearms):

28

In California, only licensed California firearms dealers who possess a valid Certificate of Eligibility (COE) are authorized to engage in retail sales of firearms. These retail sales require the purchaser to provide personal identifier information for the Dealer Record of Sale (DROS) document that the firearms dealer must submit to the DOJ. There is a mandatory 10-day waiting period before the firearms dealer can deliver the firearm to the purchaser. During this 10-day waiting period, the DOJ conducts a firearms eligibility background check to ensure the purchaser is not prohibited from lawfully possessing firearms.

. . . Generally, it is illegal for any person who is not a California licensed firearms dealer (private party) to sell or transfer a firearm to another non-licensed person (private party) unless the sale is completed through a licensed California firearms dealer. A "Private Party Transfer" (PPT) can be conducted at any licensed California firearms dealership that sells handguns. The buyer and seller must complete the required DROS document in person at the licensed firearms dealership and deliver the firearm to the dealer who will retain possession of the firearm during the mandatory 10-day waiting period. In addition to the applicable state fees, the firearms dealer may charge a fee not to exceed $10 per firearm for conducting the PPT.

The infrequent transfer of firearms between immediate family members is exempt from the law requiring PPTs to be conducted through a licensed firearms dealer. For purposes of this exemption, "immediate family member" means parent and child, and grandparent and grandchild, but does not include brothers or sisters (Pen. Code, § 16720).

(*Id.* at 3.)

According to the California Bureau of Firearms publication *Dealer Record of Sales Transactions* (available online at http://oag.ca.gov/firearms/statistics), DOJ processed 2,827,042 DROS applications in the five-year period between January 1, 2008, and December 31, 2012. (*Id.* at 2.) DOJ denied 28,430 of the applications. (*Id.*)

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

As stated above, this case presents pure questions of federal constitutional law. The case involves very few material facts, and none of them are in dispute. The undisputed material facts are:

1. At all relevant times, one effect of the Waiting Period Law has been that all California residents lawfully purchasing firearms must wait a minimum of 10 days between applying to purchase the firearms and receiving delivery of them (unless the purchasers are statutorily exempt from the waiting period). (First Am. Compl., ¶¶ 1, 20, 21.)

2. At all relevant times, Silvester has owned at least one firearm. (First Am. Compl., ¶¶ 1, 2.; Decl. of Jonathan M. Eisenberg in Supp. of Def. Cal. Att'y Gen. Harris's Mtn. for Summ. J.

4

("Eisenberg Decl."), Exh. A (Silvester Interrog. Resps.) at 3:5-3:6.)

3.  At all relevant times, Combs has owned at least one firearm.  (First Am. Compl., ¶¶ 1, 3; Eisenberg Decl., Exh. B (Combs Interrog. Resps.) at 3:5-3:6.)

**PROCEDURAL HISTORY**

On December 23, 2011, Plaintiffs plus another individual person, Michael Poeschl ("Poeschl"), a former plaintiff who later voluntarily withdrew from the case, filed the original complaint in this case.  No defendant ever filed a pleading responsive to that complaint.  On February 24, 2012, Plaintiffs plus Poeschl voluntarily filed the first amended complaint, which remains the operative complaint, and contains two causes of action asserted under the U.S. Constitution, one under the Second Amendment and the other under the Fourteenth Amendment. On March 15, 2013, the Attorney General answered the first amended complaint.

While discovery has taken place in the case (and the discovery period is closed), there have been no contested motions previously in the case.  The present motion for summary judgment is the first contested motion in the case.

**LEGAL STANDARDS FOR MOTIONS FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Fortyune v. American Multi-Cinema, Inc.,* 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. Kapp,* 564 F.3d 1103, 1114 (9th Cir. 2009).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a

5

Mem. of P. & A. in Supp. of Def. Cal. Att'y Gen. Harris's Mtn. for Summ. J. (1:11-cv-02137-AWI-SKO)

1    verdict for the non-moving party. *Anderson,* 477 U.S. at 248; *Freecycle Sunnyvale v. Freecycle*

2    *Network,* 626 F.3d 509, 514 (9th Cir. 2010).

3           Where the non-moving party will have the burden of proof on an issue at trial, the movant

4    may prevail by presenting evidence that negates an essential element of the non-moving party's

5    claim or by merely pointing out that there is an absence of evidence to support an essential

6    element of the non-moving party's claim. *See James River Ins. Co. v. Herbert Schenk, P.C.,* 523

7    F.3d at 915, 923 (9th Cir. 2008); *Soremekun,* 509 F.3d at 984.  If a moving party fails to carry its

8    burden of production, then "the non-moving party has no obligation to produce anything, even if

9    the non-moving party would have the ultimate burden of persuasion." *Nissan Fire & Marine Ins.*

10   *Co. v. Fritz Cos.,* 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If the moving party meets its initial

11   burden, the burden then shifts to the opposing party to establish that a genuine issue as to any

12   material fact actually exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S.

13   574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nissan Fire,* 210 F.3d at 1103.  The opposing

14   party cannot "rest upon the mere allegations or denials of the pleading but must instead produce

15   evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of*

16   *Tucker v. Interscope Records,* 515 F.3d 1019, 1030 (9th Cir. 2008) (internal punctuation omitted).

17          The opposing party's evidence is to be believed, and all justifiable inferences that may be

18   drawn from the facts placed before the court must be drawn in favor of the opposing party.  *See*

19   *Anderson,* 477 U.S. at 255; *Matsushita,* 475 U.S. at 587; *Narayan v. EGL, Inc.,* 616 F.3d 895, 899

20   (9th Cir. 2010).  While a "justifiable inference" need not be the most likely or the most persuasive

21   inference, a justifiable inference must be rational or reasonable.  *See Narayan,* 616 F.3d at 899.

22   Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a

23   factual predicate from which the inference may be drawn.  *See Sanders v. City of Fresno,* 551 F.

24   Supp. 2d 1149, 1163 (E.D. Cal. 2008); *UMG Recordings, Inc. v. Sinnott,* 300 F. Supp. 2d 993,

25   997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply

26   because a litigant claims that one exists or promises to produce admissible evidence at trial." *Del*

27   *Carmen Guadalupe v. Agosto,* 299 F.3d 15, 23 (1st Cir. 2002); *see Bryant v. Adventist Health*

28   *System/West,* 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a "motion for summary judgment

6

may not be defeated . . . by evidence that is merely colorable or is not significantly probative." *Anderson,* 477 U.S. at 249–50; *Hardage v. CBS Broad. Inc.,* 427 F.3d 1177, 1183 (9th Cir. 2006) (internal punctuation omitted).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  *Nissan Fire,* 210 F.3d at 1103.

## ARGUMENT

### I.    THE ATTORNEY GENERAL IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' SECOND-AMENDMENT CLAIM

The Second Amendment states:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  Assuming for the sake of argument that this Court accepts that the Waiting Period Law regulates conduct arguably within the Second Amendment's scope, then the Court must analyze the Law for compliance with the Second Amendment.  However, the U.S. Supreme Court has not defined the standard of scrutiny that applies to laws regulating conduct arguably within the Second Amendment's scope.  *District of Columbia v. Heller,* 554 U.S. 570, 628, 634, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).  Nor has the U.S. Court of Appeals for the Ninth Circuit.  *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012).  The standard of scrutiny remains an open question in the present case.

It is, nonetheless, instructive that the U.S. Supreme Court has held that "not every law which makes a right more difficult to exercise is, *ipso facto*, an infringement of that right." *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 873, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).  In the same vein, the High Court in *Heller* makes it plain that "[l]ike most rights, the right secured by the Second Amendment is not unlimited."  554 U.S. at 626.  Although *Heller* did uphold the invalidation of a very strict law of the District of Columbia that generally prohibited the possession of handguns, *id.* at 576, 636, *Heller* took care to provide an expressly non-exhaustive list of "presumptively lawful regulatory measures," *id.* at 627 n.26—"a variety of tools" that "the Constitution leaves. . . for combating" the problem of firearm violence in the United States.  *Id.* at 636.  The list includes prohibitions on the possession of "weapons not

7

1   typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns,"

2   *id.* at 625, and "M-16 rifles and the like," *id.* at 627, as well as "longstanding prohibitions on the

3   possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms

4   in sensitive places such as schools and government buildings, or laws imposing conditions and

5   qualifications on the commercial sale of arms." *Id.* at 626-27.  Likewise, *Heller* indicated that

6   gunpowder-storage laws "do not remotely burden the right of self-defense…" *Id.* at 632.

7   "Nor…does our analysis suggest the invalidity of laws regulating the storage of firearms to

8   prevent accidents." *Id.*

9        **A.    The Challenged Laws Pass The Substantial-Burden Test**

10           **1.    The Substantial-Burden Test Stated**

11        In deciding Plaintiffs' Second Amendment claim, this Court should adopt and apply the

12   "substantial burden" test articulated in *United States v. DeCastro*, 682 F.3d 160 (2d Cir. 2012), a

13   test that adheres faithfully to the above-repeated indications within *Heller* of the appropriate test.

14        In *DeCastro*, the Second Circuit held that "heightened scrutiny is appropriate only as to

15   those regulations that substantially burden the Second Amendment." *Id.* at 164.  The *DeCastro*

16   Court observed that *Heller* did not "mandate that any marginal, incremental or even appreciable

17   restraint on the right to keep and bear arms be subject to heightened scrutiny.  Rather, heightened

18   scrutiny is triggered only by those restrictions that . . . operate as a substantial burden on the

19   ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful

20   purposes)." *DeCastro*, 682 F.3d at 166.

21        *DeCastro* emphasized that its approach is consistent with that of other circuit courts,

22   which have endorsed applying varying degrees of scrutiny based not only on the degree of burden

23   on the Second Amendment right but also on the extent to which the regulation impinges on the

24   "core" of the right. *Id.*

25        As *DeCastro* explained in justifying the substantial-burden standard, a similar threshold

26   showing is needed to trigger heightened scrutiny of laws alleged to infringe other fundamental

27   constitutional rights.  682 F.3d at 167.  For example, the right to marry is fundamental, but

28   "reasonable regulations that do not significantly interfere with decisions to enter into the marital

8

1   relationship" are not subject to the "rigorous scrutiny" that is applied to laws that "interfere

2   directly and substantially with the right to marry." *Zablocki v. Redhail*, 434 U.S. 374, 386-87

3   (1978).  The right to vote is fundamental, but "the rigorousness of our inquiry into the propriety

4   of a state election law depends upon the extent to which a challenged regulation burdens First and

5   Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *see also Casey*,

6   505 U.S. at 873-74 ("[N]ot every ballot access limitation amounts to an infringement of the right

7   to vote.  Rather, the States are granted substantial flexibility in establishing the framework within

8   which voters choose the candidates for whom they wish to vote;" holding that fact that law which

9   serves valid purpose has incidental effect of making it more difficult to exercise a right cannot be

10   enough to invalidate law); *Karlin v. Foust*, 188 F.3d 446, 481 (7th Cir. 1999) ("[I]nconvenience,

11   even severe inconvenience, is not an undue burden").

12        Other circuit courts have joined *DeCastro* in holding that courts must consider the severity

13   of the burden on Second Amendment rights in deciding what level of scrutiny to apply.  *See, e.g.,*

14   *Heller v. District of Columbia*, 670 F.3d 1244, 1261, 1252 (D.C. Cir. 2011) ("[W]e determine the

15   appropriate standard of review by assessing how severely the prohibitions burden the Second

16   Amendment right");  *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011) ("[T]he rigor of

17   this judicial review will depend on how close the law comes to the core of the Second

18   Amendment right and the severity of the law's burden on the right"); *United States v.*

19   *Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011) (to determine standard of review, "we would

20   take into account the nature of a person's Second Amendment interest, the extent to which those

21   interests are burdened by government regulation, and the strength of the government's

22   justifications for the regulation"); *see also Young v. Hawaii*, 911 F. Supp. 2d 972, 988 (D. Haw.

23   2012) (summarizing law in this area).  Under this framework, as another U.S. District Court in

24   this federal circuit has recognized, "[a] firearm law or regulation imposes a substantial burden on

25   Second Amendment rights if the law or regulation bans law-abiding people from owning firearms

26   or leaves them without adequate alternatives for acquiring firearms for self-defense." *Scocca v.*

27   *Smith*, No. C–11–1318 EMC, 2012 WL 2375203 at *7 (N.D. Cal. Jun. 22, 2012).

28

9

1   On the other hand, in the *absence* of such a severe burden, relatively lenient *rational-basis*

2   *review* should be applied.  *DeCastro*, 682 F.3d at 166-67.  Under rational-basis review, a

3   legislative classification will be upheld if it is rationally related to a legitimate government

4   interest.  *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002).

5   In the present case, the Court should adopt and apply a substantial-burden test like the one

6   used in *DeCastro*.

7   **2.     The Substantial-Burden Test Applied**

8   Under a substantial-burden analysis, Plaintiffs have not alleged a valid Second

9   Amendment claim, because the 10-day waiting period, the alleged infringement of the Second

10   Amendment, simply does not rise to the level of a constitutional violation.  Plaintiffs' Second

11   Amendment right is not materially infringed by the minimal delay imposed by the Law, allowing

12   the California Bureau of Firearms to conduct mandatory background checks.

13   Under and after *Heller*, the Waiting Period Law, as a regulation of the commercial sale of

14   firearms,[2] remains ones of the "tools" available to the State of California to address the problem

15   of firearm violence without violating the Second Amendment.  554 U.S at 636.

16   Moreover, Plaintiffs cannot and do not allege that enforcement of the Waiting Period Law

17   has left Plaintiffs, or the individual people that they represent, in the case of the organizational

18   plaintiffs (CGF and SAF), unable to acquire legal firearms.  Indeed, Plaintiffs own and have

19   access to firearms already.  (First Am. Compl. at ¶¶ 1, 2, 4, 55, 56, 64; Eisenberg Decl., Exhs. A

20   (Silvester Interrog. Resps.) at 3:5-3:6, B (Combs Interrog. Resps.) at 3:5-3:6.)  Since this lawsuit

21   was filed, Plaintiffs (unless they have become disqualified from purchasing firearms) have had

22   many chances to lawfully acquire additional firearms.  Plaintiffs also can borrow other people's

23   firearms, as Silvester has done before.  (Eisenberg Decl., Exh. C (Depo. of Silvester) at 128.)  In

24   this regard, it is significant that law-abiding people in California generally have ready access to

25   firearms, as the 2.8 million DROS transactions with only 28,000 denials between 2008 and 2012

26   evidence.

27   [2] California Penal Code sections 26815 and 27540 regulate firearms dealers.  California
Penal Code section 26815 also covers interpersonal sales of firearms.

28

10

1    Unable to claim that the Waiting Period Law deprives them of gun ownership, Plaintiffs

2  instead assert that enforcement of the Law inconveniences them by, for example, making them

3  have to take two trips instead of one trip to a firearms dealer to acquire firearms lawfully,

4  complaining that these trips take time and money (usually in gas bills for automobile travel).

5  (Eisenberg Decl., Exh. D (Depo. of Combs) at 170-71.)  Similarly, Plaintiffs complain that it is

6  more difficult to purchase heavily discounted and/or hard-to-find firearms from remote sellers,

7  because of the need to make two trips to the sellers.  (Eisenberg Decl., Exh. C (Depo. of Silvester)

8  at 42-57.)

9    But the case law cited above undercuts these complaints as the basis for a constitutional

10  violation.  A mere burden or an inconvenience on a right without more is not a constitutional

11  violation.  *Karlin*, 188 F.3d at 481.  Only a substantial burden amounting to an effective denial of

12  the right is a constitutional violation.  *DeCastro*, 682 F.3d at 166.  Therefore, it is not of

13  constitutional significance in and of itself that Plaintiffs are merely inconvenienced by the

14  Waiting Period Law in acquiring firearms, by having to take second trips to the firearms dealer's

15  store.  Also, nothing in the Second Amendment entitles Plaintiffs to obtain relatively rare or

16  intensely coveted firearms at discount prices at remote locations, without any waiting period,

17  especially when other serviceable firearms are available for purchase.

18    Given that the Waiting Period Law imposes only, at worst, a minor burden or an

19  inconvenience on the Second Amendment right, as explained above about *DeCastro*, 682 F.3d at

20  166-67, the Court should apply rational-basis review to the Law.

21    The Waiting Period Law easily passes rational-basis review.  The Law is rationally related

22  to the indisputably legitimate—indeed, substantial—government interest in public safety via the

23  reduction of firearm violence.  *See United States v. Call*, 874 F. Supp. 2d 969, 976-77 (D. Nev.

24  2012) (citing several cases classifying government interest in public safety via reducing gun

25  violence as satisfying not just rational-basis standard but intermediate-scrutiny standard); *Peruta

26  v. County of San Diego*, 758 F. Supp. 2d 1106, 1117 (S.D. Cal. 2010) ("In this case, Defendant

27  has an important and substantial interest in public safety and in reducing the rate of gun use in

28

11

Mem. of P. & A. in Supp. of Def. Cal. Att'y General Harris's Mtn. for Summ. J. (1:11-cv-02137-AWI-SKO)

1  crime"); *cf. United States v. Salerno*, 481 U.S. 739, 750, 754, 107 S.Ct. 2095, 95 L.Ed.2d 697

2  (1987) (holding that government's interest in reducing crime by arrestees is compelling).

3      As stated above, the Law serves that interest in at least two ways.  First, the Law creates a

4  cooling-off period to limit a person's immediate access to firearms, in case the person has an

5  impulse to use a firearm to commit an act of violence.  Even if a person (like Silvester or Combs)

6  already has a firearm, limiting that person's ability to acquire another firearm can only decrease

7  the likelihood that the person will use a firearm in an act of violence.  The Law also allows law-

8  enforcement officials sufficient time to conduct background checks on prospective firearms

9  purchasers, so that people prohibited by law from having firearms (because of, e.g., having

10  violent felony convictions) will not be able to acquire them.  See *Bickston*, 91 Cal. App. 3d Supp.

11  at 31.  At bottom, ten days is not innately too long a time to wait to acquire a firearm, especially

12  in light of the important societal interests that the waiting period serves.

13      Trying to establish that the Law is irrational, Plaintiffs assert that any person who, in

14  connection with a firearms purchase, has legitimately passed a background check need not go

15  through another background check, which supposedly would be redundant with the prior

16  background check.  (First Am. Compl., ¶¶ 20, 56, 64.)  This assertion is false.  That person may

17  have become ineligible to possess and/or to purchase firearms since passing the earlier

18  background check (*see* Cal. Penal Code §§ 29800 et seq., 30000 et seq.); thus, there is the same

19  need for a background check of this person as of any other person, in connection with a present

20  application to purchase firearms.[3]  Similarly, Plaintiffs have asserted that any person with a

21  "certificate of eligibility" (for dealing in firearms) issued per California Penal Code section 26710

22  has an "ongoing" background check, making redundant any background check associated with a

23  new firearm purchase.  (First Am. Compl., ¶ 4.)  This assertion is unsupported.  It is simply not so

24  that a certificate of eligibility activates or effectuates or constitutes an ongoing background check

25  of the certificate holder.  *Cf. Jackson v. Dep't of Justice*, 85 Cal. App. 4th 1334, 1338, 1340, 1349

26  _____

27  [3] A person who acquired a firearm legally may lose his or her right to possess that firearm,
which is then subject to repossession.  *See People v. James*, 174 Cal. App. 4th 662, 665-66
(2009).

28

12

1    (2001) (holding that DOJ properly denied licensed firearms dealer's application for renewal of

2    assault weapons permit based on violations of relevant law during term of permit; issue was

3    determined in course of processing renewal application; revocation of permit did not occur

4    automatically).

5              In conclusion, the Law passes the substantial-burden test and therefore does not infringe

6    the Second Amendment, meaning that the Court should grant the Attorney General's motion for

7    summary judgment as to the Second Amendment claim.

8         **B.      The Challenged Laws Survive Intermediate Scrutiny**

9              The Ninth Circuit has *not* adopted an "intermediate scrutiny" standard applicable to Second

10   Amendment cases.[4]  But even if this Court were to determine that intermediate scrutiny is the

11   appropriate standard of review here, the Waiting Period Law would survive that heightened level

12   of scrutiny.

13             "[I]ntermediate scrutiny requires [1] the asserted governmental end to be more than just

14   legitimate; it must be either 'significant,' 'substantial,' or 'important,' and it requires [2] the 'fit

15   between the challenged regulation and the asserted objective be reasonable, [but] not

16   perfect.'"  *Peruta*, 758 F. Supp. 2d at 1117, quoting *United States v. Marzzarella*, 614 F.3d 85, 98

17   (3d Cir. 2010).  "The narrow tailoring requirement is satisfied so long as the regulation promotes

18   a substantial government interest that would be achieved less effectively absent the regulation and

19   the means chosen are not substantially broader than necessary to achieve the government's

20   interest.  *Fantasyland Video, Inc. v. Cnty. of San Diego*, 505 F.3d 996, 1004 (9th Cir. 2007)

21   (internal punctuation omitted) (holding that regulation may be considered narrowly tailored under

22   intermediate scrutiny even if plaintiff challenging regulation can posit less drastic means of

23   achieving state objective.  The test for intermediate scrutiny can be stated in the form of a series

24   of questions, as follows:  is the law in question related to a substantial governmental interest?  *See*

25   *Parker*, 919 F. Supp. 2d at 1084 (stating test in form other than questions).  If no, the law does

---

26          [4] At least one local federal trial court has applied *both* intermediate scrutiny *and* rational-
27   basis review in a Second Amendment case.  See *United States v. Parker*, 919 F. Supp. 2d 1072,
     1084 (E.D. Cal. 2012).

28

13

Mem. of P. & A. in Supp. of Def. Cal. Att'y Gen. Harris's Mtn. for Summ. J. (1:11-cv-02137-AWI-SKO)

not pass the test. *See id.* If yes, another question comes up: is the law in question reasonably adapted to achieve that interest? *See id.* If no, the law does not pass the test. *See id.* If yes, yet another question comes up: does the law impose a substantial burden on the Second Amendment? *See id.* If no, the law does not pass the test. If yes, the law does pass the test. *See id.*

As the substantial-burden analysis above has shown, the Waiting Period Law is related to the legitimate and indisputably important governmental interest in protecting public safety by reducing gun violence. And, as previously noted, the Law imposes, at most, only a minor burden or inconvenience on the Second Amendment. Consequently, the central question for intermediate scrutiny here becomes whether the Law is reasonably adapted to achieve the governmental interest in public safety.

The U.S. Court of Appeals for the Ninth Circuit, in other areas of jurisprudence, has upheld statutes based on logic, common sense, and mere theories for how the legislatures could have believed or supposed that the statutes had reasonably close connections to the ends sought. *See, e.g., Coyote Publ'g v. Miller*, 598 F.3d 592, 598 (9th Cir. 2010) (relying on logic and "common sense" to evaluate whether statutory restrictions on brother advertising were reasonably adapted to achieve government end of resisting commodification of human sexuality); *Ass'n of Nat'l Advertisers, Inc. v. Lungren*, 44 F.3d 726, 734-35 (9th Cir. 1994) (accepting theory for how California law setting standards for "environmental" marketing catchphrases promotes state's interests in having consumers of products accurately informed of their contents and characteristics and in having adequate stewardship of environment).

Here, it is beyond reasonable dispute that the Legislature reasonably could have supposed that mandating a 10-day cooling-off period between application to purchase a firearm and delivery of that firearm would dissuade at least some people experiencing violent impulses from acting out those impulses with firearms, thereby reducing gun violence and increasing public safety. Even if a person already has a firearm, limiting that person's ability to acquire another firearm can only decrease the likelihood that the person will use a firearm in an impulsive act of

14

1  violence.  In sum, a cooling off period is reasonably adapted to achieve the State of California's

2  public-safety objective.

3      Similarly, the Legislature reasonably could have supposed that giving law-enforcement

4  officials 10 days to conduct a thorough background check on prospective firearms purchaser

5  would hamper some people who are not legally permitted to possess firearms – because of, e.g.,

6  their criminal histories, their mental-health histories, or restraining orders against them – in

7  acquiring them, thereby reducing gun violence and increasing public safety.  See *Bickston*, 91

8  Cal. App. 3d Supp. at 31.  Background checks may not stop all persons disallowed firearms from

9  obtaining them, but, again, the U.S. Constitution does not require perfect efficacy of a law for it

10  to survive intermediate scrutiny.

11      Although Plaintiffs complain about all the statutory exemptions to the Waiting Period

12  Law (First Am. Compl., ¶¶ 24-42, 69-70), these exceptions (discussed in detail below) tailor the

13  Law to fit the asserted objective, making the restriction less sweeping than otherwise, and thus

14  support the constitutionality of the law.  *Cf. People v. Flores*, 169 Cal. App. 4th 568, 576-77

15  (2008) (finding exceptions to California's open-carry firearms regulations support the

16  constitutionality of the law, by tailoring it).

17      In conclusion, if the Court finds that it is appropriate to apply intermediate scrutiny to the

18  Waiting Period Law (although for the reasons stated above the Attorney General submits that

19  such analysis is not required), then the Court should conclude from that analysis that the Law

20  survives the heightened level of scrutiny.  The Law is related to an indisputably important

21  governmental interest in public safety.  The Law is reasonably adapted to serving that interest.

22  And the Law imposes at worst a minor burden on the Second Amendment right.

23  **II.   THE ATTORNEY GENERAL IS ENTITLED TO SUMMARY JUDGMENT**

24      **OF PLAINTIFFS' FOURTEENTH-AMENDMENT CLAIM**

25      Of the Waiting Period Law, Plaintiffs claim a violation of the Fourteenth Amendment

26  Equal Protection Clause, in that certain classes of people have statutory exemptions—a total of 18

27  groups of such exemptions (First. Am. Compl., ¶¶ 25-42)—while the Individual-Person Plaintiffs

28

15

Mem. of P. & A. in Supp. of Def. Cal. Att'y Gen. Harris's Mtn. for Summ. J. (1:11-cv-02137-AWI-SKO)

1   and other people do not enjoy any exemptions.  However, as a matter of law, this claim of

2   Plaintiffs cannot be sustained because each exemption is supported by sufficient justification.

3     Where an equal-protection claim is based on membership in a suspect class such as race or

4   the burdening of a fundamental right, then heightened scrutiny is applied; otherwise only rational-

5   basis review applies.  *See Kahawaiolaa v. Norton,* 386 F.3d 1271, 1277–78 (9th Cir. 2005)

6   (stating that "[w]hen no suspect class is involved and no fundamental right is burdened, we apply

7   a rational basis test to determine the legitimacy of the classifications"); (First Am. Compl., ¶ 70

8   (attacking exemptions as "arbitrary, capricious, and irrational").)

9     Plaintiffs do not and could not truthfully assert that any of the exemptions discriminates

10  against any suspect class of people, such as racial or ethnic minorities.  And the Attorney General

11  already has established that the Waiting Period Law does not burden the Second Amendment

12  right (as the Law passes even heightened scrutiny).  Therefore, the Court should subject each of

13  the challenged groups of statutory exemptions to rational-basis review.  Such analysis should lead

14  to conclusions that all of the exemptions survive rational-basis review.

15    The first challenged exemptions, in California Penal Code sections 26950, 27050, 27055,

16  27060, 27065, 27600, 27610, 27615, and 27650, cover, generally, peace officers who are

17  authorized to carry firearms while performing their duties as peace officers.  (See First. Am.

18  Compl., ¶ 26.)  The Legislature rationally could have decided that peace officers, who enforce the

19  laws and apprehend people who violate the laws, have a special need for swift access to firearms

20  to be able to do their jobs effectively.  Moreover, the Legislature could reasonably conclude that

21  peace officers who need firearms quickly and may have to purchase them personally, and who are

22  already subject to stringent internal departmental regulations relating to firearms, need not be

23  subject to the additional restrictions imposed by the Waiting Period Law.  These exemptions pass

24  thus rational-basis review.

25    The second challenged exemptions, in California Penal Code sections 26955 and 27655,

26  cover, generally, firearms dealers delivering firearms *other than handguns* at auctions or similar

27  events.  (See First Am. Compl., ¶ 27.)  The Legislature rationally could have concluded that

28  firearms auctions or similar events often occur at temporary locations, meaning that dealers may

16

1  lack access to the same locations 10 days later to complete firearms transactions, so the 10-day

2  waiting period should be curbed in such instances, at least for firearms that are not handguns and

3  thus are not easy to conceal, to allow legitimate transactions to be completed.  The Legislature

4  also rationally could have concluded that buyers of curio and relic firearms often acquire them at

5  auctions and similar events, and these types of firearms are relatively less lethal, or less likely to

6  be used in acts of violence or by people, such as convicted felons, prohibited from possessing

7  firearms, and so a loosening of the waiting period makes sense in this atypical circumstance.

8  Therefore, these exemptions also pass rational-basis review.

9       The third challenged exemptions, in California Penal Code sections 27110, 27125, 27710,

10  and 27725, cover, generally, dealer-to-dealer transfers of firearms.  (See First. Am. Compl., ¶ 28.)

11  The Legislature rationally could have concluded that the 10-day waiting period would

12  unnecessarily double (or even triple) in length for any person who purchases a firearm from one

13  dealer that first has to obtain the firearm from another dealer before delivery to the purchaser, if

14  there was a dealer-to-dealer waiting period.  Allowing swifter dealer-to-dealer transfers lets a

15  firearm reach its lawful new owner after just a 10-day waiting period, not a 20- or even 30-day

16  waiting period.  Thus, these exemptions pass rational-basis review as well.

17       The fourth challenged exemptions, in California Penal Code sections 26960, 27130, 27660,

18  and 27730, cover, generally, a dealer's transfer of firearms (other than handguns) to himself or

19  herself.  (See First. Am. Compl., ¶ 29.)  The Legislature rationally could have concluded that

20  dealers, who are subject to many more relevant regulations and much more relevant oversight

21  than other people, and who presumably handle high volumes of firearms regularly, are

22  significantly less likely to abuse immediate access to firearms, making the 10-day waiting period

23  less crucial in their cases.  Also, given a dealer's ready access to firearms from their own

24  inventory, imposing a waiting period might tempt such a person to evade the law entirely, making

25  the waiting period counterproductive.  These exemptions pass rational-basis review.

26       The fifth challenged exemptions, in California Penal Code sections 27100 and 27700,

27  cover, generally, transfers of firearms between or to importers or manufacturers.  (See First. Am.

28  Compl., ¶ 30.)  As with dealer-to-dealer-to-buyer transactions, the Legislature rationally could

17

Mem. of P. & A. in Supp. of Def. Cal. Att'y Gen. Harris's Mtn. for Summ. J. (1:11-cv-02137-AWI-SKO)

1  have concluded that the 10-day waiting period would unnecessarily double (or even triple) in

2  length for any person who purchases a firearm that was recently in the possession of an importer

3  or manufacturer and that must go first to a dealer and then to the purchaser.  Allowing more

4  expedited importer and/or manufacturer transfers is consistent with allowing a firearm to reach its

5  purchaser after just a 10-day waiting period.  These exemptions pass rational-basis review.

6      The sixth through eleventh and eighteenth challenged exemptions, in California Penal Code

7  sections 26965, 26970, 27140, 27665, 27740, and 27670, cover, generally, people with permits

8  for various kinds of unusual or unusually dangerous weapons (short barrel rifles, short barrel

9  shotguns, assault weapons, machineguns, destructive devices, curio and relic firearms, cane guns,

10  firearms that are not immediately recognizable as firearms, undetectable firearms, wallet guns,

11  unconventional pistols, and zip guns).  (See First. Am. Compl., ¶¶ 31-26, 43.)  The Legislature

12  could have rationally concluded that people who have been deemed authorized to have such

13  unusual or unusually dangerous weapons are more likely to be (1) adept at using safely, and (2)

14  especially trustworthy with, less dangerous (albeit still potentially deadly) weapons, such that a

15  10-day waiting period for purchases of more ordinary weapons would be less necessary.  These

16  exemptions pass rational-basis review.

17      The twelfth challenged exemptions, in California Penal Code sections 27105 and 27705,

18  cover, generally, transactions involving firearms serviced or repaired by a gunsmith.  (See First.

19  Am. Compl., ¶ 37.)  The Legislature rationally could have concluded that people bringing

20  firearms to gunsmiths for repairs are not seeking immediate access to firearms for unlawful

21  reasons, because these people are voluntarily giving up immediate access to firearms, possibly for

22  longer than 10 days, such that a 10-day waiting period delaying return of the firearms is less

23  necessary.  These exemptions pass rational-basis review.

24      The thirteenth challenged exemptions, in California Penal Code sections 27115 and

25  27715, cover, generally, dealer sales to persons residing out of state.  (See First. Am. Compl., ¶

26  38.)  The Legislature rationally could have preferred to avoid a potential conflict with the

27  dormant commerce doctrine (see Nat'l Ass'n of Optometrists and Opticians v. Harris, 682 F.3d

28  1144, 1147-48 (9th Cir. 2012)) in regulation of interstate firearms transactions via a 10-day

18

1   waiting period.  Moreover, the Legislature could reasonably conclude that the foreign

2   jurisdiction's laws would provide sufficient controls, including waiting periods.  These

3   exemptions pass rational-basis review.

4        The fourteenth challenged exemptions, in California Penal Code sections 27120 and

5   27720, cover, generally, firearms deliveries to wholesalers.  (See First. Am. Compl., ¶ 39.)  As

6   suggested above for dealer-to-dealer transactions and transactions involving importers or

7   manufacturers, the Legislature rationally could have concluded that the 10-day waiting period

8   would unnecessarily double (or even triple) in length for any person who purchases a firearm that

9   was recently in the possession of a wholesaler, and has to go first to a dealer and then to the

10  purchaser.  Allowing swifter wholesaler-to-retailer transfers would allow a firearm to reach its

11  purchaser after just a 10-day waiting period, not a 20- or even 30-day waiting period.  These

12  exemptions pass rational-basis review.

13       The fifteenth through seventeenth challenged exemptions, in California Penal Code

14  sections 27000, 27005, 27135, 27735, 27745, and 27750 cover, generally, certain regulated loans

15  of firearms, for such purposes as target shooting and licensed target-shooting facilities.  (See

16  First. Am. Compl., ¶¶ 40-42.)  The Legislature rationally could have concluded that prompt, well-

17  regulated lending of firearms is, as a practical matter, necessary for certain lawful businesses,

18  such as licensed target-shooting facilities.  These exemptions pass rational-basis review.  Also,

19  the Legislature rationally could have concluded that because a loan of a firearm is, by definition,

20  for a limited time period, the lender of a firearm is more likely to have a personal relationship

21  with the borrower, and the lender of a firearm has an incentive to assure safe return receipt of the

22  firearm, a loosening of the waiting-period restriction is reasonable in a loan scenario.

23       In sum, Plaintiffs' multi-part claim under the Fourteenth Amendment fails in all respects,

24  and the Court should grant summary judgment in favor of the Attorney General on this claim.

25                                    **CONCLUSION**

26       Enforcement of California's statutory 10-day waiting period does not substantially burden

27  any person's Second Amendment right, and does not abridge the Second Amendment under any

28

19

Mem. of P. & A. in Supp. of Def. Cal. Att'y Gen. Harris's Mtn. for Summ. J. (1:11-cv-02137-AWI-SKO)

1  appropriate standard of review.  Plaintiffs, who possess firearms already, are complaining about

2  the mere inconvenience of a waiting period that is well-justified as a public-safety measure.

3  Similarly, there is no violation of the Fourteenth Amendment merely because the California

4  Legislature, in tailoring the waiting period narrowly, exempted certain groups of people from

5  the waiting period.  Each exemption is well-justified.  Therefore, the Court should grant the

6  Attorney General's motion for summary judgment in its entirety.

7  Dated:  September 25, 2013                                Respectfully Submitted,

8                                                            KAMALA D. HARRIS
                                                             Attorney General of California
9                                                            MARK R. BECKINGTON
                                                             Supervising Deputy Attorney General
10

11

12                                                            _/s/_____
                                                             JONATHAN M. EISENBERG
13                                                           Deputy Attorney General
                                                             *Attorneys for Defendant Kamala D. Harris,*
14                                                           *Attorney General of California*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20