1  Victor J. Otten (SBN 165800)
   vic@ottenandjoyce.com
2  OTTEN & JOYCE, LLP
   3620 Pacific Coast Hwy, Suite 100
3  Torrance, California 90505
   Phone: (310) 378-8533
4  Fax: (310) 347-4225

5  Donald E.J. Kilmer (SBN 179986)
   LAW OFFICES OF DONALD KILMER
6  A Professional Corporation
   1645 Willow Street, Suite 150
7  San Jose, California 95125
   Phone: (408) 264-8489
8  Fax: (408) 264-8487

9  Attorneys for Plaintiffs

10              **UNITED STATES DISTRICT COURT**

11             **EASTERN DISTRICT OF CALIFORNIA**

12

13

14  **JEFF SILVERSTER, MICHAEL**      Case No. 1:11-cv-02137-AWI-SKO
    **POESCHL, BRANDON COMBS,**
    **THE CALGUNS FOUNDATION,**        **DECLARATION OF VICTOR OTTEN**
15  **INC., a non-profit organization,** **IN SUPPORTOF PLAINTIFFS'**
    **and THE SECOND**                  **OPPOSITION TO DEFENDANT'S**
16  **AMENDMENT FOUNDATION,**           **MOTION FOR SUMMARY**
    **INC., a non-profit organization,** **JUDGEMENT**
17
                      **Plaintiffs,**
18
               v.
19
    **KAMALA HARRIS, Attorney**
20  **General of California (in her**
    **official capacity), and DOES 1 to**
    **20.**
21

22

23

24

25

26

27

28

I, Victor Otten, declare as follows:

1. I have personal knowledge of the following facts, except where I have just information and belief, as indicated, and, if called as a witness, I could and would testify competently to the facts.

2. I am a partner with the law firm Otten & Joyce, attorneys of record for Plaintiffs JEFF SILVERSTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization. I make this declaration of my personal knowledge and, if called as a witness, could testify competently to each of the following facts.

3. On or about January 28, 2013, Plaintiffs prior attorney, Jason Davis, served responses to Defendants first of interrogatories. Attached hereto as Exhibit "A" is a true and correct copy of Brandon Combs responses to Defendants first set of interrogatories. Attached hereto as Exhibit "B" is a true and correct copy of Jeffrey Silvester's responses to Defendants first set of interrogatories.

4. In May 2013, Jonathan Eisenberg took the depositions of Gene Hoffman, Brandon Combs, Jeff Silvester and Alan Gottlieb. A court reporter transcribed what was said at the depositions and provided the parties with a transcript. Attached hereto as Exhibit "C" is a true and correct copy of certain pages of the transcript of the Hoffman deposition. Attached hereto as Exhibit "D" is a true and correct copy of certain pages of the transcript of the Gottlieb deposition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed on October 14th 2013 in Torrance, California.

DATED: October 14, 2013

OTTEN & JOYCE, LLP

_____
Victor Otten, Esq.
Attorneys for Plaintiffs

EXHIBIT "A"

Jason A. Davis (Calif. Bar No. 224250)
Davis & Associates
27201 Puerta Real, Suite 300
Mission Viejo, CA 92691
Tel 949.436.GUNS Fax 949.288.6894
Email: Jason@CalGunLawyers.com

Donald E.J. Kilmer, Jr. (Calif. Bar No. 179986)
Law Office of Donald Kilmer, A.P.C.
1645 Willow Street, Suite 150
San Jose, CA 95125
408.364.84889/Fax 408.264.8487
Email: Don@DKLawOffice.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| JEFF SILVESTER, MICHAEL POESCHL, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization, <br><br> Plaintiffs, <br><br> vs. <br><br> KAMALA HARRIS, Attorney General of California (in her official capacity), and DOES 1 to 20, <br><br> Defendant. | Case No: 1:11-cv-02137-AWI-SKO <br><br> **PLAINTIFF BRANDON COMBS'S RESPONSE TO DEFENDANT KAMALA D. HARRIS'S FIRST SET OF INTERROGATORIES** |

broad and unduly burdensome. (*IPC, Inc. v. Mercantile Bank of Topeka* (D KS 1998) 179 FRD 316, 321 – Providing "every fact" could require "laborious, time-consuming analysis, search and description of incidental, secondary, and perhaps irrelevant and trivial details.")

RESPONSE: Without waiving the above referenced objection, Plaintiff states that, I cannot adequately defend myself or my family with the firearms that are usually kept at home. My need and desire to protect self and family extend beyond the home, and include other locations such as boats, cars, businesses, and other locations.

Moreover, at any given time, my firearms may be: not immediately physically available due to the firearm's proximity to my physical location – both within the home and outside of the home; underpowered for certain self-defense scenarios; over-powered for certain self-defense scenarios; inoperable; stolen; broken; unclean for reliable operation or otherwise unreliable; out for service; loaned to another individual for up to a 30 day period in accordance with California law; there may be a lack of ammunition available for the current firearm; an act of terrorism may make the firearm[s] owned by me insufficient to defend self, family, or home; riots and looting may render the firearm[s] owned by me to be insufficient; earthquakes and other natural disasters may render any and all firearms possessed by me to be insufficient for self-defense and defense of others; temporary seizures of firearms lawfully possessed may render the firearms insufficient for self-defense.

In fact, under the Militia Act of 1792, many were required to have more than one firearm – "and to be armed with a sword and pair of pistols, the holsters of which to be covered with bearskin caps."

**INTERROGATORY NO. 7**

Identify and describe in full and complete detail all harms that you suffer by, per California Penal Code sections 26815(a) and/or 27540, having to wait 10 days between purchasing and taking delivery of a firearm.

**RESPONSE TO INTERROGATORY NO. 7**

OBJECTION: Contention interrogatories asking for each and every fact, or application

316, 321 – Providing "every fact" could require "laborious, time-consuming analysis, search and description of incidental, secondary, and perhaps irrelevant and trivial details."]

RESPONSE: Plaintiff contends that there are circumstances in which California Penal Code section 26815(a)'s "waiting period" (between purchase and delivery of a firearm) to first-time firearm purchasers would be unconstitutional, such as applications of the provision to women who have been abused and have obtained Temporary Restraining Orders for their protection, but such contentions are not the subject of this litigation.

**INTERROGATORY NO. 9**

If you contend that it is unconstitutional to apply California Penal Code section 27540's "waiting period" (between purchase and delivery of a firearm) to first-time firearms purchasers, state all facts supporting this contention.

**RESPONSE TO INTERROGATORY NO. 9**

OBJECTION: Contention interrogatories asking for each and every fact, or application of law to fact, that supports particular allegations in an opposing pleading may be held to be overly broad and unduly burdensome. [*IPV, Inc. v. Mercantile Bank of Topeka* (D.KS 1998) 179 FRD 316, 321 – Providing "every fact" could require "laborious, time-consuming analysis, search and description of incidental, secondary, and perhaps irrelevant and trivial details."]

RESPONSE: Without waiving the above referenced objection, Plaintiff contends that there are circumstances in which California Penal Code section 26815(a)'s "waiting period" (between purchase and delivery of a firearm) to first-time firearm purchasers would be unconstitutional, such as applications of the provision to women who have been abused and have obtained Temporary Restraining Orders for their protection, but such contentions are not the subject of this litigation.


**INTERROGATORY NO. 10**

If you contend that California Penal Code section 26815(a) would be unconstitutional if that law's "waiting period" (between purchase and delivery of a firearm) was one day, state all facts supporting this contention.

**RESPONSE TO INTERROGATORY NO. 10**

OBJECTION: Contention interrogatories asking for each and every fact, or application of law to fact, that supports particular allegations in an opposing pleading may be held to be overly broad and unduly burdensome. [*IPV, Inc. v. Mercantile Bank of Topeka* (D. KS 1998) 179 FRD 316, 321 – Providing "every fact" could require "laborious, time-consuming analysis, search and description of incidental, secondary, and perhaps irrelevant and trivial details."]

RESPONSE: Without waiving the above referenced objection, Plaintiff states that the provisions are unconstitutional, to the extent that they would apply to an individual whose state records (including the Automated Firearm System and Armed and Prohibited Database) identify them as a person not prohibited from possessing firearms and already being the owner of a registered firearm, in that they violate my Second, Fourth and Fifth Amendment rights. The Second Amendment applies beyond merely the home. There are several cases pending in the Ninth, Seventh, and Second Circuit Courts of Appeals relating to whether the Second Amendment's "right to [...] bear arms" for the purpose of self-defense extends beyond the home. See generally: *District of Columbia v. Heller*, 554 U.S. 570(2008) and *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010). There are currently two cases pending in the Ninth Circuit Court of Appeals relating to California law: *Richards v. Prieto* (Yolo County), Case No.: 11-16255 and *Peruta v. County of San Diego*, Case No.: 10-56971. These cases were argued and submitted on December 6, 2012. The court in *Moore v. Madigan*, 2012 U.S. App. LEXIS (7th Cir. Ill. Dec. 11, 2012) found that the right did extend beyond the home, but stayed its decision to give the state legislature an opportunity to enact a licensing scheme. But the court in *Kachalsky v. County of Westchester*, 2012 U.S. App. LEXIS 24363 (2nd Cir. N.Y. Nov. 27, 2012) found that the right did not extend beyond the home. These Constitutional violations, both within the home and outside the home, are supported by the following facts:

I am a holder of valid California Certificates of Eligibility and am, per se, not in a class of persons described within Penal Code sections 29800, *et. seq.*, 29900, *et. seq.*, or Welfare and Institutions Code sections 8100 or 8103, or Title 27 Part 178.32 of the Code of Federal Regulations. 11 C.C.R. §4036(b). In other words, I and other holders of a valid California

Certificate of Eligibility represented by CGF and SAF are known by the State of California, at all
times certified, to not be prohibited from possessing firearms under federal or state law.

Additionally, I am a holder of a valid license to carry a concealed firearm. As a holder of
a valid license to carry pursuant to Penal Code section 26150 *et seq.* I and other such holders
represented by CGF and SAF are, per se, not in a class of persons described in Penal Code
sections 29800, *et seq.*, 29900, *et seq.*, or Welfare and Institutions Code 8100 or 8103. Penal
Code section 26195(a)-(b). In other words, I and other holders of a valid license to carry
pursuant to Penal Code section 26150, *et seq.* represented by CGF and SAF are not prohibited
from possessing firearms under federal or state law and may often be armed with a loaded
concealed firearm, including while purchasing firearms for which they are subjected to a 10-day
ban on possessing.

I already have at least one firearm, but I seek to have additional firearms for protection of
myself and my family, *inter alia*, pursuant to my Second Amendment right to "keep and bear
*arms*." (Emphasis added to note the use of the plural.) I can otherwise demonstrate proof of
ownership and lawful possession of a firearm. For example, some firearms are registered in the
California Automated Firearms System database pursuant to, *inter alia*, Penal Code section
28200, *et seq.* In purchasing my firearms, I was already at least once subjected to the 10-day
waiting period prior to physically receiving my firearms. As a result of the 10-day waiting
period, I was obligated to endure a 10-day ban on the acquisition of my constitutionally protected
firearms and incur additional expense and burden by being forced to make a second visit to the
firearms dealer that sold me my firearm.

Though I must wait 10 days to acquire possession of each firearm I purchase for self-
defense, others seeking commercial, professional, and personal acquisition of firearms, such as
destructive device collectors, movie prop houses, auction purchasers, and "consultants-
evaluators," are permitted instant access to firearms.

The National Instant Check System, located at the FBI's Criminal Justice Information
Services Division in Clarksburg, West Virginia, provides full and instant service to FFLs in 30
states, five U.S. territories, and the District of Columbia. California voluntarily opted out of the

Page 10

NICS instant background check and maintains its own background check system with an extended 10-day waiting period against purchasers of firearms in California, including myself. Moreover, the Attorney General has established and maintains an online database known as the Prohibited Armed Persons File. The purpose of the file is to cross-reference persons who have ownership or possession of a firearm as indicated by a record in the Consolidated Firearm Information System and who, subsequent to the date of that ownership or possession of a firearm, fall within a class of persons who are prohibited from owning or possessing a firearm. Penal Code §30000, et seq.

The information contained in the PAPF is available for the purpose of determining if persons are armed and prohibited from possessing firearms. Penal Code §30000, et seq. Conversely, the PAPF is also available for the purpose of determining if persons are armed and not prohibited by the very nature of the individual not appearing in the PAPF – but appearing in the Automated Firearm System as the registered owner of a firearm.

In fact, the California Department of Justice had determined alternative methods that eliminate delays upon law-abiding firearm owners while ensuring public safety as early as 1991. In its AB 497 Alternative Feasibility Studies: Report of Findings (1991), the Department of Justice identified multiple methods of performing proper background checks such that the persons in prohibited categories would not be allowed to purchase a firearm from a licensed California firearm dealer while imposing minimal infringement on gun owners' rights to purchase and possess firearms. As I am a verifiable law-abiding firearm owner, there is no justifiable reason to delay my acquisition of a firearm I already own.

If I were required to wait 1 day between purchasing a firearm and taking delivery of a firearm, I would thereby be deprived of the use, custody and control of my personal property. The delay would also deny me the ability to defend self, family, and home with said firearm that I already own; the hypothetical waiting period mandates a brief window of 29 days from which I must return to obtain physical possession of property that I already own, causes an additional increased 1 day delay and added expenses of Dealer Record of Sale fees, storage fees, and transportation fees when I am unavailable to take physical possession of the firearm within the

1  29 day window; causes increased travel expenses upon firearm purchases coinciding with
2  distance from my home to the licensed firearm dealer premises due to the requirement that I must
3  make a second trip to receive custody of the firearm purchased; limits my out-of-town purchases
4  and gun show purchases; and limits the market of firearms available to areas I am willing to
5  travel to twice during a period of at least 1 day and at most 30 days; causes added burden and
6  expense of locating and paying another more local dealer who may be willing, but is not
7  statutorily obligated, to process a firearms transfer originating at a competitor's licensed firearm
8  dealer; and causes me to lose the opportunity cost of the time spent on the second trip to receive
9  a firearm I already own.

10

11 **INTERROGATORY NO. 11**

12      If you contend that California Penal Code section 26815(a) would be unconstitutional if

13 that law's "waiting period" (between purchase and delivery of a firearm) was three days, state all

14 facts supporting this contention.

15 **RESPONSE TO INTERROGATORY NO. 11**

16      OBJECTION: Contention interrogatories asking for each and every fact, or application of

17 law to fact, that supports particular allegations in an opposing pleading may be held to be overly

18 broad and unduly burdensome. [*IPV, Inc. v. Mercantile Bank of Topeka* (D KS 1998) 179 FRD

19 316, 321 — Providing "every fact" could require "laborious, time-consuming analysis, search and

20 description of incidental, secondary, and perhaps irrelevant and trivial details."]

21      RESPONSE: Without waiving the above referenced objection, Plaintiff states that the

22 provisions are unconstitutional, to the extent that they would apply to an individual whose state

23 records (including the Automated Firearm System and Armed and Prohibited Database) identify

24 them as a person not prohibited from possessing firearms and already being the owner of a

25 registered firearm, in that they violate my Second, Fourth and Fifth Amendment rights.  The

26 Second Amendment applies beyond merely the home.  There are several cases pending in the

27 Ninth, Seventh, and Second Circuit Courts of Appeals relating to whether the Second

28 Amendment's "right to [...] bear arms" for the purpose of self-defense extends beyond the home.

See generally: *District of Columbia v. Heller*, 554 U.S. 570(2008) and *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010). There are currently two cases pending in the Ninth Circuit Court of Appeals relating to California law: *Richards v. Prieto* (Yolo County), Case No.: 11-16255 and *Peruta v. County of San Diego*, Case No.: 10-56971. These cases were argued and submitted on December 6, 2012. The court in *Moore v. Madigan*, 2012 U.S. App. LEXIS (7th Cir. Ill. Dec. 11, 2012) found that the right did extend beyond the home, but stayed its decision to give the state legislature an opportunity to enact a licensing scheme. But the court in *Kachalsky v. County of Westchester*, 2012 U.S. App. LEXIS 24363 (2nd Cir. N.Y. Nov. 27, 2012) found that the right did not extend beyond the home. These Constitutional violations, both within the home and outside the home, are supported by the following facts:

I am a holder of valid California Certificates of Eligibility and am, per se, not in a class of persons described within Penal Code sections 29800, *et seq.*, 29900, *et seq.*, or Welfare and Institutions Code sections 8100 or 8103, or Title 27 Part 178.32 of the Code of Federal Regulations. 11 C.C.R. §4036(b). In other words, I and other holders of a valid California Certificate of Eligibility represented by CGF and SAF are known by the State of California, at all times certified, to not be prohibited from possessing firearms under federal or state law.

Additionally, I am a holder of a valid license to carry a concealed firearm. As a holder of a valid license to carry pursuant to Penal Code section 26150 *et seq.* I and other such holders represented by CGF and SAF are, per se, not in a class of persons described in Penal Code sections 29800, *et seq.*, 29900, *et seq.* or Welfare and Institutions Code 8100 or 8103. Penal Code section 26195(a)-(b). In other words, I and other holders of a valid license to carry pursuant to Penal Code section 26150, *et seq.* represented by CGF and SAF are not prohibited from possessing firearms under federal or state law and may often be armed with a loaded concealed firearm, including while purchasing firearms for which they are subjected to a 10-day ban on possessing.

I already have at least one firearm, but I seek to have additional firearms for protection of myself and my family, *inter alia*, pursuant to my Second Amendment right to "keep and bear *arms*." (Emphasis added to note the use of the plural.) I can otherwise demonstrate proof of

ownership and lawful possession of a firearm. For example, some firearms are registered in the California Automated Firearms System database pursuant to, *inter alia*, Penal Code section 28200, *et seq.* In purchasing my firearms, I was at least once subjected to the 10-day waiting period prior to physically receiving my firearms. As a result of the 10-day waiting period, I was obligated to endure a 10-day ban on the acquisition of my constitutionally protected firearms and incur additional expense and burden by being forced to make a second visit to the firearms dealer that sold me my firearm.

Though I must wait 10 days to acquire possession of each firearm I purchase for self-defense, others seeking commercial, professional, and personal acquisition of firearms, such as destructive device collectors, movie prop houses, auction purchasers, and "consultants-evaluators," are permitted instant access to firearms.

The National Instant Check System, located at the FBI's Criminal Justice Information Services Division in Clarksburg, West Virginia, provides full and instant service to FFLs in 30 states, five U.S. territories, and the District of Columbia. California voluntarily opted out of the NICS instant background check and maintains its own background check system with an extended 10-day waiting period against purchasers of firearms in California, including myself. Moreover, the Attorney General has established and maintains an online database known as the Prohibited Armed Persons File. The purpose of the file is to cross-reference persons who have ownership or possession of a firearm as indicated by a record in the Consolidated Firearm Information System and who, subsequent to the date of that ownership or possession of a firearm, fall within a class of persons who are prohibited from owning or possessing a firearm. Penal Code §30000, *et seq.*

The information contained in the PAPF is available for the purpose of determining if persons are armed and prohibited from possessing firearms. Penal Code §30000, *et seq.* Conversely, the PAPF is also available for the purpose of determining if persons are armed and not prohibited by the very nature of the individual not appearing in the PAPF — but appearing in the Automated Firearm System as the registered owner of a firearm.

In fact, the California Department of Justice had determined alternative methods that

eliminate delays upon law-abiding firearm owners while ensuring public safety as early as 1991. In its AB 497 Alternative Feasibility Studies: Report of Findings (1991), the Department of Justice identified multiple methods of performing proper background checks such that the persons in prohibited categories would not be allowed to purchase a firearm from a licensed California firearm dealer while imposing minimal infringement on gun owners' rights to purchase and possess firearms. As I am a verifiable law-abiding firearm owner, there is no justifiable reason to delay my acquisition of a firearm I already own.

If I were required to wait 3 days between purchasing a firearm and taking delivery of a firearm, I would thereby be deprived of the use, custody, and control of my personal property. The delay would also deny me the ability to defend self, family, and home with said firearm that I already own; the hypothetical waiting period mandates a brief window of 27 days from which I must return to obtain physical possession of property that I already own, causing an additional increased 3 day delay and added expenses of Dealer Record of Sale fees, storage fees, and transportation fees when I am unavailable to take physical possession of the firearm within the 27 day window; causes increased travel expenses upon firearm purchases coinciding with distance from my home to the licensed firearm dealer premises due to the requirement that I must make a second trip to receive custody of the firearm purchased; limits my out-of-town purchases and gun show purchases; and limits the market of firearms available to areas I am willing to travel to twice during a period of at least 3 days and at most 30 days; causes added burden and expense of locating and paying another more local dealer who may be willing, but is not statutorily obligated, to process a firearms transfer originating at a competitor's licensed firearm dealer; and causes me to lose the opportunity cost of the time spent on the second trip to receive a firearm I already own.

**INTERROGATORY NO. 12**

If you contend that California Penal Code section 26815(a) would be unconstitutional if that law's "waiting period" (between purchase and delivery of a firearm) was five days, state all facts supporting this contention.

In fact, the California Department of Justice had determined alternative methods that eliminate delays upon law abiding firearm owners while ensuring public safety as early as 1991. In its AB 497 Alternative Feasibility Studies: Report of Findings (1991), the Department of Justice identified multiple methods of performing proper background checks such that the persons in prohibited categories would not be allowed to purchase a firearm from a licensed California firearm dealer while imposing minimal infringement on gun owners' rights to purchase and possess firearms. As I am a verifiable law-abiding firearm owner, there is no justifiable reason to delay my acquisition of a firearm I already own.

If I were required to wait 5 days between purchasing a firearm and taking delivery of a firearm, I would thereby be deprived of the use, custody, and control of my personal property. The delay would also deny me the ability to defend self, family, and home with said firearm that I already own; the hypothetical waiting period mandates a brief window of 25 days from which I must return to obtain physical possession of property that I already own, causing an additional increased 5 day delay and added expenses of Dealer Record of Sale fees, storage fees, and transportation fees when I am unavailable to take physical possession of the firearm within the 25 day window; causes increased travel expenses upon firearm purchases coinciding with distance from my home to the licensed firearm dealer premises due to the requirement that I must make a second trip to receive custody of the firearm purchased; limits my out-of-town purchases and gun show purchases; and limits the market of firearms available to areas I am willing to travel to twice during a period of at least 5 days and at most 30 days; causes added burden and expense of locating and paying another more local dealer who may be willing, but is not statutorily obligated, to process a firearms transfer originating at a competitor's licensed firearm dealer; and causes me to lose the opportunity cost of the time spent on the second trip to receive a firearm I already own.

**INTERROGATORY NO. 16**

Describe in full and complete detail all expenses that you have incurred to acquire firearms because of California Penal Code section 26815(a) and its "waiting period" (between

purchase and delivery of a firearm).

**RESPONSE TO INTERROGATORY NO. 16**

RESPONSE: I have lost the opportunity costs to engage in business and other activities during the time it took me for each and every second trip to the licensed firearms dealer to take possession, custody, and control of each firearm I own.

I have lost the opportunity to purchase firearms due to an inability to make a second trip.

I have incurred expenses, including shipping expenses, additional dealer transfer fees, increased firearm prices due to lack of local competition, additional fuel costs, wear and tear on my vehicle[s] necessary for a return trip to the licensed dealer to receive my firearm. On information and belief, I have spent approximately $1,500.00 on such expenses.

I have incurred additional costs of having to resubmit a Dealer Record of Sale application due to scheduling conflicts preventing me from returning to the store to receive my firearm within the temporary window of availability. Upon information and belief, I have spent approximately $100.00 on resubmission fees.

**INTERROGATORY NO. 17**

Describe in full and complete detail all expenses that you have incurred to acquire firearms because of California Penal Code section 27540 and its "waiting period" (between purchase and delivery of a firearm).

**RESPONSE TO INTERROGATORY NO. 17**

RESPONSE: I have lost the opportunity costs to engage in business and other activities during the time it took me for each and every second trip to the licensed firearms dealer to take possession, custody, and control of each firearm I own.

I have lost the opportunity to purchase firearms due to an inability to make a second trip.

I have incurred expenses, including shipping expenses, additional dealer transfer fees, increased firearm prices due to lack of local competition, additional fuel costs, wear and tear on my vehicle[s] necessary for a return trip to the licensed dealer to receive my firearm. On information and belief, I have spent approximately $1,500.00 on such expenses.

1  I have incurred additional costs of having to resubmit a Dealer Record of Sale application

2  due to scheduling conflicts preventing me from returning to the store to receive my firearm

3  within the temporary window of availability. Upon information and belief, I have spent

4  approximately $100.00 on resubmission fees.

5

6  **INTERROGATORY NO. 18**

7  State the longest distance you have traveled, in the last 10 years, from your home to a

8  licensed firearms retailer to acquire a firearm.

9  **RESPONSE TO INTERROGATORY NO. 18**

10  RESPONSE: Approximately 764 miles.

11  **INTERROGATORY NO. 19**

12  State the distances from your home, in miles, of the three licensed firearms dealers that

13  are presently closest to your home.

14  **RESPONSE TO INTERROGATORY NO. 19**

15  OBJECTION: This request is so vague or ambiguous as to be burdensome or oppressive

16  as to the meaning of "licensed firearm dealers." Moreover, Plaintiff would have to speculate as

17  to the meaning of the phrase "licensed firearm dealers." This interrogatory provides no definition

18  of what "licenses" or which category of "firearm dealers" this interrogatory refers to. Neither

19  Department of Justice nor any other entity publishes a list or makes a list available of persons

20  who are licensed under California law to transfer firearms — therefore it is impossible for me to

21  know with any certainty who the three licensed firearm dealers that are presently closest to my

22  home.

23  RESPONSE: Without waiving the above referenced objection, Plaintiff responds: To the

24  best of my knowledge, and on information and belief, the three firearm retailers open to the

25  public that are presently closest to my home are: PRK Arms, Spencer's Firearms, and Herb

26  Bauer's Sporting Goods. The distances from these locations to my home are unknown.

27  **INTERROGATORY NO. 20**

28  State the name and World Wide Web address of each Internet seller of firearms from

**VERIFICATION**

BRANDON COMBS declares:

1.   I am a plaintiff in the above-captioned action;

2.   I have read the foregoing "PLAINTIFF BRANDON COMBS'S RESPONSE TO
    DEFENDANT KAMALA D. HARRIS'S FIRST SET OF INTERROGATORIES" ("The
    Response") and know its contents. I am informed and believed that the matters set forth
    in the Response are true and accurate, and on that ground I allege, to the best of my
    knowledge and information, that the matters therein stated are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct and that this Verification was executed on January 28, 2013, at
**MADERA**, California.

                                           BRANDON COMBS

EXHIBIT "B"

Jason A. Davis (Court Bar No. 224250)
Davis & Associates
27281 Las Ramblas, Suite 200
Mission Viejo, CA 92691
Tel: 949.310.0817 Fax: 949.288.6991
email: Jason@CalGunLawyers.com

Donald E. J. Kilmer, Jr. (SBL Bar No. 179986)
Law Offices of Donald Kilmer, A.P.C.
1645 Willow Street, Suite 150
San Jose, CA 95125
Tel: 408.264.8489 Fax: 408.264.8487
email: Don@DKLawOffice.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| JEFF SILVESTER, MICHAEL POESCHL, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,<br><br>Plaintiffs,<br><br>vs.<br><br>KAMALA HARRIS, Attorney General of California (in her official capacity), and DOES 1 to 20,<br><br>Defendant. | Case No. 1:11-cv-02137-AWI-SKO<br><br>**PLAINTIFF JEFF SILVESTER'S RESPONSE TO DEFENDANT KAMALA D. HARRIS'S FIRST SET OF INTERROGATORIES** |

broad and unduly burdensome. (*IPV, Inc. v. Mercantile Bank of Topeka* (D.KS. 1998) 179 F.R.D. 316, 321. "Providing 'every fact' could require 'laborious, time-consuming analysis, search and description of incidental, secondary, and perhaps irrelevant and trivial details.'")

RESPONSE: Without waiving the above referenced objection, Plaintiff states that: I cannot adequately defend myself or my family with the firearms that are usually kept at home. My need and desire to protect self and family extend beyond the home, and include other locations such as boats, cars, businesses, and other locations.

Moreover, at any given time, my firearms may be: not immediately physically available due to the firearm's proximity to my physical location – both within the home and outside of the home; underpowered for certain self-defense scenarios; over-powered for certain self-defense scenarios; inoperable; stolen; broken; unclean for reliable operation or otherwise unreliable; out for service; loaned to another individual for up to a 30 day period in accordance with California law; there may be a lack of ammunition available for the current firearm; an act of terrorism may cause the firearm(s) owned by me to be insufficient to defend self, family, or home; riots and rioting may render the firearm(s) owned by me to be insufficient; earthquakes and other natural disasters may render any and all firearms possessed by me to be insufficient for self-defense and defense of others; temporary seizure of firearm lawfully possessed may render the firearms insufficient for self-defense.

In fact, under the Militia Act of 1792, men were required to have more than one firearm and to be armed with a sword and pair of pistols, the indicia of which to be covered with a separate image(?)

## INTERROGATORY NO. ?

Identify and describe, in full and complete detail all harms that you suffer by, per California's Penal Code sections 26815 (sic) and or 27540 has inclusion, 10 days between purchasing and taking delivery of a firearm.

## RESPONSE TO INTERROGATORY NO. ?

OBJECTION: Compound interrogatory, asking for each and every fact, or implication,

of law to fact, that calls for particular allegations is an opposing pleading may be held to be overly broad and unduly burdensome. *[P] See v. Mercantile Bank of Topeka* (D.Kan. 1998) 178 FRD 336, 338. Providing "every fact" could require "laborious, time-consuming analysis, search and description of incidental, secondary, and perhaps irrelevant and trivial details.")

RESPONSE: Without waiving the above referenced objection, Plaintiff states that the California Penal Code sections that require me to wait 10 days between purchasing a firearm and taking delivery of a firearm, thereby deprive me of the sure custody, control, and utility of defended self-firearm; and force me to own said firearm that I already own in and use a brief window of 30 days from which I must return to obtain physical possession of property that I already own; cause an additional minimum 10 day delay and added expenses of illegal collected of Sale fees, storage fees, and transportation fees when I am unavailable to take physical possession of the firearm within the 10 day window; cause increased travel expenses upon firearm purchases coinciding with distance from my home to the licensed firearm dealer's premises due to the requirement that I must make a second trip to receive custody of the firearm purchased; limit my out-of-town purchases and gun show purchases, and limit the market of firearms available to areas I am willing to travel to twice during a period of at least 10 days and at most 30 days; cause added burden and expense of locating and paying another more local dealer who may be willing, but is not statutorily obligated, to process a firearms transfer originating at a competitor licensed firearm dealer; and cause me to lose the opportunity cost of the time spent on the second trip to receive a firearm I already own.

## INTERROGATORY NO. 8

If you contend that it is unconstitutional to apply California Penal Code section 26815(a)'s "waiting period" (between purchase and delivery of a firearm) to first-time firearms purchasers, state all facts supporting this contention.

## RESPONSE TO INTERROGATORY NO. 8

OBJECTIONS. Contention interrogatories asking for each and every fact, or application of law to fact, that supports particular allegations in an opposing pleading may be held to be overly broad and unduly burdensome. *[P] See v. Mercantile Bank of Topeka* (D.Kan. 1998) 178 FRD

Sec. 1-1 "Providing 'every fact' could require 'laborious, time-consuming analysis, search and description of incidental, secondary, and perhaps irrelevant and trivial details.'")

RESPONSE: Plaintiff contends that there are circumstances in which California Penal Code section 26815(a)'s "waiting period" (between purchase and delivery of a firearm) to first-time firearm purchasers would be unconstitutional, such as application of the provision to women who have been abused and have obtained Temporary Restraining Orders for their protection, but such contentions are not the subject of this litigation.

## INTERROGATORY NO. 9

"If you contend that it is unconstitutional to apply California Penal Code section 27540's waiting period' (between purchase and delivery of a firearm) to first-time firearms purchasers state all facts supporting this contention.

## RESPONSE TO INTERROGATORY NO. 9

OBJECTION: Contention interrogatories asking for each and every fact, or application of law to fact, that supports a particular allegation in an opposing pleading may be held to be overly broad and unduly burdensome. *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998); *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 653 (D. Kan. 1996) ("Providing 'every fact' could require 'laborious, time-consuming analysis, search and description of incidental, secondary, and perhaps irrelevant and trivial details.'")

RESPONSE: Without waiving the above referenced objection: Plaintiff contends that there are circumstances in which California Penal Code section 26815(a)'s "waiting period" (between purchase and delivery of a firearm) to first-time firearm purchasers would be unconstitutional, such as applied to one of the provision to women who have been abused and have obtained Temporary Restraining Orders for their protection, but such contentions are not the subject of this litigation.

## INTERROGATORY NO. 10

If you contend that California Penal Code section 26815(a) would be unconstitutional if that law's "waiting period" (between purchase and delivery of a firearm) was one day, state all facts supporting this contention.

# RESPONSE TO INTERROGATORY NO. 10

OBJECTION. Contention interrogatories asking for each and every fact or application of law to fact that supports particular allegations in an opposing pleading may be held to be overly broad and unduly burdensome. (*IBP, Inc. v. Mercantile Bank of Topeka* (D.KN 1998) 179 FRD 316, 322 – Providing "every fact" could require "laborious, time-consuming analysis, search and description of incidental, secondary, and perhaps irrelevant and tenuous details".)

RESPONSE. Without waiving the above referenced objection, Plaintiff states that the provisions are unconstitutional to the extent that they would apply to an individual whose state records (including the Automated Firearms System and Armed and Prohibited Database) identify them as a person not prohibited from possessing firearms and already being the owner of a registered firearm, in that they violate his Second, Fourth, and Fifth Amendment rights. The Second Amendment applies beyond merely the home. There are several cases pending in the Ninth, Seventh, and Second Circuit Courts of Appeal relative to whether the Second Amendment's right to "... bear arms" for the purpose of self defense extends beyond the home. (See generally, *District of Columbia v. Heller* 554 U.S. 570 2008) and *McDonald v. City of Chicago* 130 S.Ct. 3020 (2010).) There are currently two cases pending in the Ninth Circuit Court of Appeals relating to California law, *Richards v. Prieto* (Yolo County), Case No. 11-16255 and *Peruta v. County of San Diego* Case No. 10-56971. These cases were argued and submitted in December 6, 2012. The court in *Moore v. Madigan*, 2012 U.S. App. LEXIS 25413 (Cir. Ill. Dec. 11, 2012) found that the right did extend beyond the home, but stayed its decision to give the state legislature an opportunity to enact a licensing scheme, also the court in *Kachalsky v. County of Westchester* 2012 U.S. App. LEXIS 24363 (2nd Cir. N.Y. Nov. 27, 2012) found it in the right did extend beyond the home. These Constitutional violations, both within the home and outside the home, are supported by the following facts.

Additionally, I am a holder of a valid license to carry a concealed firearm. As a holder of a valid license to carry pursuant to Penal Code section 26150 et seq., I and other such holders represented by CGF and SAF, etc. put us, and in a class of persons described in Penal Code sections 29800, et seq., 29900 et seq. and Welfare and Institutions Code sections 8100 or 8103. Pena

Page 24

PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES<br>(LEDN 02-35AWT-SECO)

Code section 26195(a)-(b). In other words, I and other holders of a valid license to carry pursuant to Penal Code section 26150, *et seq.* represented by CGF and SAF are not prohibited from possessing firearms under federal or state law and may often be armed with a loaded concealed firearm, including while purchasing firearms for which they are subjected to a 10-day ban on possessing.

I already have at least one firearm, but I seek to have additional firearms for protection of myself and my family, *inter alia,* pursuant to my Second Amendment right to "keep and bear *arms.*" (Emphasis added to note the use of the plural.) I can otherwise demonstrate proof of ownership and lawful possession of a firearm. For example, some firearms are registered in the California Automated Firearms System database pursuant to *inter alia,* Penal Code section 30200 *et seq.* In purchasing my firearms, I was already at least once subjected to the 10-day waiting period prior to physically receiving my firearms. As a result of the 10-day waiting period I was unreasonably forced to wait 10-days for on the acquisition of my constitutionally protected firearms and incur additional expense and burden by being forced to make a second visit to the firearms dealer after acquiring my firearm.

Though I must wait 10-days to acquire possession of each firearm I purchase for self-defense, others seeking commercial, professional, and personal acquisition of firearms, such as destructive device collectors, movie prop houses, auction purchasers, and consultants, exhibitors, are permitted instant access to firearms.

The National Instant Check System located at the FBI's Criminal Justice Information Services Division in Clarksburg, West Virginia, provides full and instant service to 41 or 30 states, four US territories, and the District of Columbia. California voluntarily opted out of the NICS instant background check and maintains its own background check system with an extended 10-day waiting period against purchasers of firearms in California, including myself. Moreover, the Attorney General has established and maintains an online database known as the Prohibited Armed Persons File. The purpose of the file is to cross-reference persons who have ownership or possession of a firearm as indicated by a record in the Consolidated Firearms Information System, and who, subsequent to the date of that ownership or possession of a

firearm fall within a class of persons who are prohibited from owning or possessing a firearm. Penal Code §29805, *et seq.*

The information contained in the PAPF is available for the purpose of determining if persons are armed and prohibited from possessing firearms. Penal Code §30000, *et seq.* Conversely, the PAPF is also available for the purpose of determining if persons are armed and not prohibited by the very nature of the individual not appearing in the PAPF – but appearing in the Automated Firearm System as the registered owner of a firearm.

In fact, the California Department of Justice has determined alternative methods that eliminate delays upon law-abiding firearm owners while ensuring public safety as early as 1997. In its AB 991 Alternative Feasibility Studies: Report of Findings (1997), the Department of Justice identified multiple methods of performing proper background checks such that the persons in prohibited categories would not be allowed to purchase a firearm from a licensed California firearm dealer while imposing minimal infringement on gun owners' rights to purchase and possess firearms. As I am a verifiable law-abiding firearm owner, there is no justifiable reason to delay my acquisition of a firearm I already own.

If I were to endure the wait 1-day between purchasing a firearm and taking delivery of a firearm, I would thereby be deprived of the exclusive use and control of my personal property. The delay would also deny me the ability to defend self, family, and home with said firearm that I already own; the hypothetical waiting period mandates a brief window of 10 days from which I must return to certain physical possession of property that I already own; creates an additional repeated 1-day delay and undue expenses of Safer Record of Sale fees, storage fees, and transportation fees when I am unavailable to take physical possession of the firearm within the 10-day window; causes increased travel expenses upon firearm purchase, correlating with distance from my home to the licensed firearm dealer; increases due to the reduced item that I must make a second trip to come outside of the firearm purchased; indirectly cut off out-of-state purchases and just a few purchases, and limits the market of firearms available to me and I am willing to travel to obtain during a period of at least 1-day and at most 10 days; causes added burden and expenses of location and payment and/or more local dealer who may be willing, but is not

Page 14

THE MASTERS PRESCRIPTIVE DECLARATORY AND INJUNCTIVE INTERROGATORY COMPLEX

1  statutorily obligated, to process a firearms transfer originating at a competitor's licensed firearm
2  dealer; and causes me to lose the opportunity cost of the time spent on the second trip to receive
3  a firearm I already own.

5  **INTERROGATORY NO. 11**

6  If you contend that California Penal Code section 26815(a) would be unconstitutional if
7  that law's "waiting period" between purchase and delivery of a firearm was three days, state all
8  facts supporting this contention.

9  **RESPONSE TO INTERROGATORY NO. 11**

10  OBJECTION: Contention interrogatories asking for each and every fact, or application of
   law to fact, that supports particular allegations in an opponent pleading may be held to be overly
   broad and unduly burdensome. *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 ([D.]
   Kan. [1998]) ("providing 'every fact' could require laborious, time-consuming analyses, search and
14  description of incidental, secondary, and perhaps irrelevant and trivial details.")

15  RESPONSE: Without waiving the above referenced objection, Plaintiff states that the
   provisions are unconstitutional, to the extent that they would apply to an individual whose state
17  records (including the Automated Firearms System and Armed and Prohibited Database) identify
18  such as a person not prohibited from possessing firearms and already being the owner of a
19  registered firearm, in that these violate my Second, Fourth and Fifth Amendment rights. The
20  Second Amendment applies beyond friendly the home. There are several cases pending in the
21  Ninth, Seventh, and Second Circuit Courts of Appeals relating to whether the Second
   Amendment's right to "... [bear arms]" for the purpose of self defense extends beyond the home.
23  See generally, *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of
24  Chicago*, 130 S.Ct. 3020 (2010). There are currently two cases pending in the Ninth Circuit
25  Court of Appeals relating to California law: *Richards v. Prieto* (Yolo County), Case No., 11-
26  16255 and *Peruta v. County of San Diego*, Case No., 10-56971. These cases were argued and
27  submitted on December 6, 2012. The court in *Moore v. Madigan*, 2012 U.S. App. LEXIS (7th
28  Cir. Ill. Dec. 11, 2012) found that the right did extend beyond the home, but stayed its decision

Services Division in Clarksburg, West Virginia, provides full and instant service to FFLs in 30 states, five U.S. territories, and the District of Columbia. California voluntarily opted out of the NICS instant background check and maintains its own background check system with an extended 10-day waiting period against purchasers of firearms in California, including myself. Moreover, the Attorney General has established and maintains an online database known as the Prohibited Armed Persons File. The purpose of the file is to cross-reference persons who have ownership or possession of a firearm as indicated by a record in the Consolidated Firearm Information System and who, subsequent to the date of that ownership or possession of a firearm, fall within a class of persons who are prohibited from owning or possessing a firearm. Penal Code § 30000 et seq.

The information contained in the PAPF is available for the purpose of determining if a person is armed and prohibited from possessing firearms. Penal Code § 30005 et seq. Conversely, the PAPF is also available for the purpose of determining if persons are armed and not prohibited by the concurrence of the individual not appearing in the PAPF – but appearing in the Automated Firearm System as the registered owner of a firearm.

In fact, the California Department of Justice had determined alternative methods that eliminate delays upon law-abiding firearm owners while enhancing public safety as early as 1991. In its AB 497 Alternative Feasibility Studies Report of Findings (1991), the Department of Justice identified multiple methods of performing proper background checks such that the persons in prohibited categories would not be allowed to purchase a firearm from a licensed California firearms dealer while imposing minimal infringement on gun owners' rights to purchase and possess firearms. As I am a verified, law-abiding firearm owner, there is no justifiable reason to delay my acquisition of a firearm I already own.

"If I were required to wait 3 days between purchasing a firearm and taking delivery of a firearm, I would thereby be deprived of the use, custody, and control of my personal property. The delay would also deny me the ability to defend self, family, and home with said firearm that I already own; the hypothetical waiting period mandates a brief window of 27 days from which I must return to obtain physical possession of property that I already own, causing an additional

increased 3 day delay and added expenses of Dealer Record of Sale fees, storage fees, and transportation fees when I am unavailable to take physical possession of the firearm within the 27 day window; causes increased travel expenses upon firearm purchases coinciding with distance from my home to the licensed firearm dealer premises due to the requirement that I must make a second trip to receive custody of the firearm purchased; limits my out-of-town purchases and gun show purchases; and limits the market of firearms available to areas I am willing to travel to twice during a period of at least 3 days and at most 30 days; causes added burden and expense of locating and paying another more local dealer who may be willing, but is not statutorily obligated, to process a firearms transfer originating at a competitor's licensed firearm dealer; and causes me to lose the opportunity cost of the time spent on the second trip to receive a firearm I already own.

## INTERROGATORY NO. 12

If you contend that California Penal Code section 26815(a) would be unconstitutional if the law of waiting period oversees purchase and delivery of a firearm over five days, state all facts supporting this contention.

## RESPONSE TO INTERROGATORY NO. 12

OBJECTION. Contention interrogatories asking for each and every fact, or application of law to fact, that supports particular allegations in an opposing pleading may be held to be overly broad and unduly burdensome. *(IPI, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 140 (D. Kan. 1998).) ("[R]equiring 'every fact' could require laborious, time-consuming analysis, search and description of the trivial, secondary, and perhaps irrelevant and trivial details.")

RESPONSE: Without waiving the above-referenced objection, Plaintiff states that the provisions are unconstitutional, to the extent that they would apply to an individual whose state records, including the Automated Firearm System and Armed and Prohibited Database, identify him, as a person not prohibited from possessing firearms and already being the owner of a registered firearm, or that they violate my Second, Fourth and Fifth Amendment rights. The Second Amendment applies beyond merely the home. There are several cases pending in the

1  If I were required to wait 5 days between purchasing a firearm and taking delivery of a
2  firearm, I would thereby be deprived of the use, custody, and control of my personal property.
3  The delay would also deny me the ability to defend self, family, and home with said firearm that
4  I already own; the hypothetical waiting period mandates a brief window of 25 days from which I
5  must return to obtain physical possession of property that I already own; causing an additional
6  increased 5 day delay and added expenses of Dealer Record of Sale fees, storage fees, and
7  transportation fees when I am unavailable to take physical possession of the firearm within the
8  25 day window; causes increased travel expenses upon firearm purchases coinciding with
9  distance from my home to the licensed firearm dealer premises due to the requirement that I must
10  make a second trip to receive custody of the firearm purchased; limits my out-of-town purchases
11  and gun show purchases; and limits the market of firearms available to areas I am willing to
12  travel to twice during a period of at least 5 days and at most 30 days; causes added burden and
13  expense of locating and paying another more local dealer who may be willing, but is not
14  statutorily obligated, to process a firearms transfer originating at a competitor's licensed firearm
15  dealer, and causes me to lose the opportunity cost of the time spent on the second trip to receive
16  a firearm I already own.
17
18  **INTERROGATORY NO. 16**
19  Describe in full and complete detail all expenses that you have incurred to acquire
20  firearms because of California Penal Code section 26815(a) and its "waiting period" (between
21  purchase and delivery of a firearm).
22  **RESPONSE TO INTERROGATORY NO. 16**
23  RESPONSE: I have lost the opportunity costs to engage in business and other activities
24  during the time it took me for each and every second trip to the licensed firearms dealer to take
25  possession, custody, and control of each firearm I own.
26  I have lost the opportunity to purchase firearms due to an inability to make a second trip.
27  I have incurred expenses, including shipping expenses, additional dealer transfer fees,
28  increased firearm prices due to lack of local competition, additional fuel costs, wear and tear on

Page 28

my vehicle] necessary for a return trip to the licensed dealer to receive my firearm. On
information and belief, I have spent approximately $150.00 on such expenses.

I have incurred additional costs of having to resubmit a Dealer Record of Sale application
due to scheduling conflicts preventing me from returning to the store to receive my firearm
within the temporary window of validation. Upon information and belief, I have spent
approximately $100.00 on resubmission fees.

## INTERROGATORY NO. 17

Describe in full and complete detail all expenses that you have incurred to acquire
firearms because of California Penal Code section 27540 and its "waiting period" [between
purchase and delivery of a firearm].

## RESPONSE TO INTERROGATORY NO. 17

RESPONSE: I have lost the opportunity costs to engage in business and other activities
[during the time I took] to, for each and every, second trip to the licensed firearms dealer to take
possession, custody, and control of each firearm I own.

I have lost the opportunities to purchase firearms due to an inability to make a second trip.

I have incurred expenses, including shipping expenses, additional dealer transfer fees,
increased firearm prices due to lack of local competition, additional fuel costs, wear and tear on
my vehicle[s] needed for a return trip to the licensed dealer to receive my firearm. On
information and belief, I have spent approximately $150.00 on such expenses.

I have incurred additional costs of having to resubmit a Dealer Record of Sale application,
due to scheduling conflicts preventing me from returning to the store to receive my firearm
within the temporary window of validation. Upon information and belief, I have spent
approximately $100.00 on resubmission fees.

## INTERROGATORY NO. 18

State the longest distance you have traveled, in the last 10 years, from your home to a
licensed firearms retailer to acquire a firearm.

## VERIFICATION

JEFF SILVESTER declares:

1. I am a plaintiff in the above-captioned action;

2. I have read the foregoing "PLAINTIFF JEFF SILVESTER'S RESPONSE TO DEFENDANT KAMALA D. HARRIS'S FIRST SET OF INTERROGATORIES" in the Response, and know its contents, I am informed and believed that the matters set forth in the Response are true and accurate, and on that ground I allege, to the best of my knowledge and information, that the matters therein stated are true and accurate;

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Verification was executed on January 28, 2013, at Hanford, CA , California.

_____

JEFF SILVESTER

EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

- - -

JEFF SILVESTER, MICHAEL POESCHL,
BRANDON COMBS, THE CALGUNS
FOUNDATION, INC., a nonprofit
organization, and THE SECOND
AMENDMENT FOUNDATION, INC., a
non-profit organization,

                    Plaintiffs,

vs.                                         Case No.
                                            1:11-CV-02137

KAMALA HARRIS, Attorney General
of California, in her Official
capacity, and DOES 1 TO 20,

                    Defendants.

_____


ORIGINAL


30(b)(6) DEPOSITION OF

THE SECOND AMENDMENT FOUNDATION, INC.

BY AND THROUGH ALAN MERRIL GOTTLIEB

LOS ANGELES, CALIFORNIA

MAY 16, 2017


Atkinson-Baker, Inc.
Court Reporters
(800) 288-3376
www.depo.com

Reported by:  Albert Maldonado, RPR, CRR, CSR No. 5916

File No.:    A703255

between a NICS report?

A.   Yes, I believe there are differences.

Q.   What are the differences?

A.   I believe in California you have a couple state databases that you throw in there as well.  Also in the federal one, I left out the fact if you have restraining orders, et cetera, you're in that category, etc.  It's my understanding California adds a few other definitions of what those values are so that they aren't exactly in line with everything in the federal database.

Q.   Can you identify what those state values that are checked in California are that are not checked under NICS?

A.   Off the top of my head, I can't.  Also, California exempts some things that are in the NICS database that are not in the California database.  It cuts both ways.

Q.   Okay.  Does The Second Amendment Foundation take the position that there are things that the California background check looks at that the NICS check does not look at that are inappropriate to be looked at?

A.   No.  We don't really care what you have in your database nor so.  That's not what we're challenging.

to that way -- the Constitution should be
followed. And since it can be done by an instant
background check, I believe it should be done that way.

    Q.   Why is the Second Amendment Foundation not
challenging enforcement of the ten-day waiting period
for first-time purchasers?

         MR. ____: I'm just going to object that that
may have -- be an attorney-client-communicated
privilege with him as to why they did certain things in
this lawsuit and didn't.

         But if you want to answer it, you can.

         THE WITNESS:  Well, I think I'm going to answer
in this point, because the person that showed up to
this case thinks that if you're already -- if you've
already gone through it -- the background check, you've
gone through the waiting period, and you already have a
gun, you're in the prohibited database, the State
already knows about it.  There is absolutely no reason
to have an additional waiting period for them second
gun.  It has absolutely no sense at all.

    Q.   BY MR. ____:  So --
    A.   It's indefensible.
    Q.   So you're... Okay.  But the Second Amendment
Foundation believes that it's not -- it is
defensible, to make -- for the State of California to

make a first-time firearms purchase, go through the
ten-day waiting period?

A. I think when California passed the ten-day
waiting period, we didn't have the instant check
systems in place. The instant check system wasn't
there at the time. It is now and it's time for
California to revise its law, it's my opinion.

Q. Is there was a point in time when California
retase able to do instantaneous background only be, yes?

A. Well, the federal government became able to
run the NICS database check and is that reason why
California -- now is nothing technically -- was
prohibiting California from doing it. And if it can be
done to protect the civil rights of firearms owners, it
should be done.

Q. Frank, I understand. I'm trying to respond to
the data. It sounded to me like you said that there
was a -- when the law was passed, the ten-day waiting
period may have been necessary but it's not anymore.
Is that essentially what you said?

A. There is no -- with today's technology, there
is no reason for it to have it anymore.

Q. In other words, there is -- there was a
point in time that the Second Amendment Foundation
would have said this is reasonable, and then after a

EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

- - -

ORIGINAL

IVAN PERUTA, MICHAEL POESCHL,
EDWARD DODGE, THE CALGUNS
FOUNDATION, INC., a non-profit
organization, and THE SECOND
AMENDMENT FOUNDATION, INC., a
non-profit organization,

        Plaintiffs,

      vs.

KAMALA HARRIS, Attorney General
of California in her official
capacity, and DOES 1 TO 10,

        Defendants.

Case No.
_____


30(b)(6) DEPOSITION OF THE CALGUNS FOUNDATION, INC.

BY AND THROUGH GENE HOFFMANN JR.

LOS ANGELES, CALIFORNIA

MAY 18, 2012

Atkinson-Baker, Inc.
Court Reporters
(800) 288-3376
www.depo.com

Reported By: Aileen Reichart, RDR, CRR, CSR No. 5576

File No.: A703083

1    Q.   There has been an informal attempt to do so?

2    A.   Certainly there are conversations about how

3  much easier it is to be able to acquire firearms in the

4  same manner, for example, in other states.

5    Q.   Has HCI ever attempted to determine whether the

6  10-day waiting period in California is responsible for

7  any of the disparity between California and another

8  state?

9    A.   We have certainly compared it from a

10 sociological standpoint and found that in fact

11 California's gun homicide rate continues to be higher

12 than those places that do not have a waiting period.

13   Q.   This research on the gun homicide rate was

14 related to the 10-day waiting period or not?

15   A.   The impact of California gun control.

16   Q.   In other words, it was about California's gun

17 laws as a whole?

18   A.   I would say it's mostly about the background

19 check and the universal background check, as well as

20 the 10-day waiting period.

21   Q.   Did HCI inform me it calculate any gun homicide

22 rates of some sort in this research?

23   A.   HCI would say HCI is relying primarily on the CDC

24 and NISARS data, as well as a hand study in Los

25 Angeles.

1    A.   Washington State.  Florida.

2    Q.   Any others?

3    A.   Furthermore others.  The ones that are your

4  states that are the ones with larger urban environments.

5    Q.   What I'm asking -- I'm not asking you to name

6  the 50 states.  I'm saying, which states have you done

7  this comparative analysis for --

8    A.   My --

9    Q.   -- California and other states, which other

10  states?

11    A.   We Florida or Texas.

12    Q.   Did you -- did CCT compile data for states

13  besides California and Texas?

14    A.   We reviewed the rest of the other 18, yes.

15    Q.   And so CCT's understanding is that Texas had a

16  lower gun homicide rate than California?

17    A.   That's correct.

18    Q.   And the gun homicide rate based on what

19  data set?

20    A.   The FBI crime data.

21    Q.   Is that the a per capita --

22    A.   Yes --

23    Q.   -- rating?

24    A.   -- it's a per capita rate.

25    Q.   And CCT has determined that some amount of that

1   difference is attributable to there being a ten-day

2   waiting period in California.

3      A.   I would say the other way around: The ten-day

4   waiting period does not seem to be as effective as no

5   waiting is in Texas.

6      Q.   You said that there were other things in the

7   [subset] of California gun laws that CGN things are

8   relevant to the gun homicide rate comparative data,

9   correct?

10      A.   That's correct.

11      Q.   What percentage of the effect is from

12   California's ten-day waiting period versus other laws?

13      A.   I'd say 50 percent or so.

14      Q.   Why are you saying 50 percent?

15      A.   Because the other thing that matters is the

16   universal background check requirement.

17      Q.   In other words, there are two things that

18   affect this case. Do you know that each thing affects

19   the data equally?

20      A.   That's not consistent.

21      Q.   What's the basis for the suggestion?

22      A.   The fundamental difference between Texas law

23   and California law is the universal background check

24   and the ten-day waiting period. When considered with

25   the fact that homicides are something near 70 or 80

A.    That's correct.

Q.    That person could be doing something else besides going to the grocery store?

A.    That's correct.

Q.    Is there something about a CCP member making a trip to a firearms retailer that creates a different kind of opportunity cost?

A.    Yes.

Q.    What's the difference?

A.    Once CCP's in a single trip to be able to acquire a firearm. You must do multiple trips.

Q.    If a CCP member's home is exactly five miles away from a grocery store that the person uses and is exactly five miles away in a slightly different direction to a firearms retailer that the person uses and the travel time to each place is the same, isn't the opportunity cost of each trip the same?

A.    It doesn't take two trips to buy milk.

Q.    So it's the second trip that's included when a person purchases a firearm that's causing an opportunity cost that CCP objects to?

A.    It's one of the opportunity costs that CCP objects to.

Q.    Yeah.  I'm saying in that hypothetical.

A.    Yes.

A.    I do not believe there is any DOJ board member passed or present with a felony conviction.

Q.    Has DOJ attempted to gather information from members as to whether the 10-day waiting period has prevented them from effectively defending themselves or their families in their homes?

A.    We are aware of a couple situations where it has been a real hindrance, yes.

Q.    How did you find out about these couple of situations?

A.    Usually word of mouth specifically around the L.A. riots.

Q.    And do anyone at DOJ interview or take statements from the people that made these contentions?

A.    This doesn't rise to more than a formal -- informal conversation.  Pardon.

Q.    So you say there are a couple of instances.  Do you mean two?

A.    That I'm aware of.

Q.    Are both instances related to the L.A. riots?

A.    Yes.

Q.    Do you know the name of the people who have made these contentions?

A.    One person actually wrote a well-known article about it, but I don't recall the name of the article's

Q.   Okay.  All right.  Let's move on to the other

instance.  This is another CGF member who alleges, you

know, that the ten-day waiting on the prevented the

person from getting a firearm to defend himself or

herself.

A.   Uh-hum.

Q.   Actually, strike.  Strike that.  Let's move

back.  Let's move back to the playwright.  Was the

playwright attacked?

A.   The playwright escaped during a shooting night

before but went home and eventually figured out that

he couldn't just get a firearm and did not immediately

purchase a gun.

Q.   Do you know if the playwright ever acquired a

firearm even, you know, after waiting ten days?

A.   He states that he did later, yes.

Q.   And in the article does the playwright say that

he's used the firearm in self-defense?

A.   I don't recall.

Q.   All right.  Let's move on to the other

instance.  Do you know the name of the person who is

the other person that we're referring to?

A.   I don't recall her name.

Q.   Do you recall that the person is a female?

A.   That's correct.

1    Q.   And did he ... an attempt to obtain a firearm

2 during the time of the 1992 L.A. riots?

3    A.   No.

4    Q.   What was her attempt to obtain firearms in

5 connection with, if anything?

6    A.   She had someone who who was concerned was a

7 stalker.

8    Q.   Uh-hum.   When was she being stalked by this

9 person?

10    A.   A couple years ago.

11    Q.   Did this woman write an article or make any

12 writing describing her predicament?

13    A.   No.

14    Q.   How did you become aware that this woman had

15 this predicament?

16    A.   A conversation with a friend of hers who was a

17 volunteer for us.

18    Q.   And did you ever -- so you talked to a friend

19 of hers --

20    A.   Correct.

21    Q.   -- about this woman's problem --

22    A.   Correct.

23    Q.   -- with the stalker and --

24    A.   Uh-hum.

25    Q.   -- not having able to get a firearm to defend

1      A.   I can't recall.

2      Q.   Have you ever heard anyone say that the

3 statewide background check system for prospective

4 firearms purchasers would be a national model, or words

5 to that effect?

6      A.   Yes.

7      Q.   Where have you heard such statements.

8      A.   Various members of the press, various advocates

9 for gun control.

10     Q.   Is it DOJ's position that the statewide

11 background check system is the worst of the existing

12 systems?

13     A.   The statewide check system is not a problem.

14 In fact, DOJ's position is that the background check

15 system is in some ways does better than other

16 states.  It's the waiting period that's the problem.

17     Q.   Does DOJ understand that the California

18 background check system takes ten days for the reason

19 that DOJ's cited the time it takes to do a background

20 check?

21     A.   That's actually not what we see from the FFLs

22 that file.

23     Q.   What's your understanding on why there's a ten-day

24 check is presently on the days?

25     A.   Arbitrarily set by the Legislature.