| | |
|---|---|
| 1 | KAMALA D. HARRIS, State Bar No. 146672 |
| | Attorney General of California |
| 2 | MARK R. BECKINGTON, State Bar No. 126009 |
| | Supervising Deputy Attorney General |
| 3 | JONATHAN M. EISENBERG, State Bar No. 184162 |
| | Deputy Attorney General |
| 4 | 300 South Spring Street, Suite 1702 |
| | Los Angeles, CA 90013 |
| 5 | Telephone: (213) 897-6505 |
| | Fax: (213) 897-1071 |
| 6 | E-mail: Jonathan.Eisenberg@doj.ca.gov |
| | *Attorneys for Defendant Kamala D. Harris, Attorney* |
| 7 | *General of California* |

KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
MARK R. BECKINGTON, State Bar No. 126009
Supervising Deputy Attorney General
JONATHAN M. EISENBERG, State Bar No. 184162
Deputy Attorney General
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013
 Telephone: (213) 897-6505
 Fax: (213) 897-1071
 E-mail: Jonathan.Eisenberg@doj.ca.gov
*Attorneys for Defendant Kamala D. Harris, Attorney General of California*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| **JEFF SILVESTER, MICHAEL POESCHL, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,**<br><br>Plaintiffs,<br><br>v.<br><br>**KAMALA HARRIS, Attorney General of California (in her official capacity), and DOES 1 to 20,**<br><br>Defendants. | 1:11-cv-02137-AWI-SKO<br><br>**REPLY IN SUPPORT OF DEFENDANT KAMALA D. HARRIS'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: October 28, 2013<br>Hearing Time: 1:30 p.m.<br>Trial Date: March 25, 2014<br>Action Filed: December 23, 2011 |

Defendant Kamala D. Harris, Attorney General of the State of California (the "Attorney General"), submits the following reply in support of her motion for summary judgment herein against Plaintiffs Jeffrey A. Silvester ("Silvester"), Brandon S. Combs ("Combs"), The Calguns Foundation, Inc. ("CGF"), and The Second Amendment Foundation, Inc. (Together with Silvester, Combs, and CGF, "Plaintiffs.")

## SUMMARY OF THE MOTION FOR SUMMARY JUDGMENT

In the Attorney General's opening papers for the present motion for summary judgment, the Attorney General set forth in primarily four parts the arguments and facts establishing that Plaintiffs cannot succeed in their federal constitutional challenge to California's "Waiting Period Law," California Penal Code sections 26815 and 27540, mandating a 10-day waiting period between application to purchase and delivery of a firearm, for all California residents not statutorily exempt from the waiting period.

*First*, and foremost, the Attorney General demonstrated that the instant case presents questions of law only. Indeed, the case has only three material facts—(1) the Waiting Period Law does impose its intended 10-day waiting period; (2) Silvester has at least one firearm; and (3) Combs has at least one firearm—making the case a nearly perfect candidate for summary judgment.

*Second*, relying upon the U.S. Supreme Court's Second Amendment and other constitutional-law decisions, the Attorney General showed that, as a matter of law, the 10-day waiting period does not infringe the constitutional right to have firearms for self-defense purposes, and, instead, at most inconveniences firearms purchasers to a degree that does not have constitutional significance.

*Third*, assuming for the sake of argument that the Waiting Period Law does implicate the Second Amendment, the Attorney General presented for the Waiting Period Law two rationales, either of which is sufficient to fortify the law from constitutional attack. In brief, the first rationale is to create a "cooling off" period to limit a person's immediate access to firearms, in case the person has an impulse to use a firearm to commit an act of violence. The second rationale is to permit law-enforcement officials sufficient time to conduct thorough background

1

checks on prospective firearms purchasers, so that people prohibited by law from possessing firearms (because of, e.g., having violent felony convictions) are hindered in acquiring them. These rationales shield the Waiting Period Law from Plaintiffs' constitutional assault.

*Fourth*, the Attorney General gave rationales for each of the Waiting Period Law's 18 statutory exemptions, which underscore that the California Legislature narrowly tailored the Waiting Period Law to inconvenience as few people as reasonably possible, and do not indicate an equal-protection problem with the law.

**SUMMARY OF AND REPLY TO THE OPPOSITION TO THE MOTION**

Plaintiffs' opposition to the motion for summary judgment[1] addresses each of the four primary parts of the motion. However, as the following discussion shows, Plaintiffs' counter-arguments of law and citations to supposedly traversing evidence all lack merit and do not defeat the motion.

I. **PLAINTIFFS CONCEDE THAT "THE FACTS OF THIS CASE ARE LARGELY UNDISPUTED"**

Most notably, Plaintiffs have not disputed any of the Attorney General's three asserted material facts. (Pls.' Separate Statement of Facts in Supp. of Opp. to Def.'s Mot. For Summ. J. ("Pls.' Separate Statement"), on file herein, at 2:7-3:11.) On the contrary, Plaintiffs expressly agreed that "the facts of this case are largely undisputed." (Pls.' Opp. to Def.'s Mot. for Summ. J. ("Pls.' Opp."), on file herein, at 2:15-2:16.) That critical concession makes it even more clear that the case is ripe for summary judgment.[2]

---

[1] Per Federal Rule of Civil Procedure 6(a)(5) and Local Rule 230(c), given that the hearing date for the present motion is Monday, October 28, 2013, and that fourteen days prior is Monday, October 14, 2013, which was a federal holiday, Plaintiff's opposition was due on Friday, October 11, 2013. Plaintiffs, however, did not file or serve their opposition until midnight on October 15-16, 2013, four days late, and did not serve a legible copy of the 45 pages of exhibits to the Victor Otten declaration until October 21, 2013. The Attorney General and Plaintiffs have stipulated, and the Court has ordered, that the Attorney General has until October 22, 2013, instead of the default deadline of October 21, 2013, to file and to serve the present reply.

[2] Nonetheless, only the Attorney General has sought summary judgment. Plaintiffs have not cross-moved for summary judgment.

Notwithstanding that concession, Plaintiffs also have submitted a confusing statement of "additional material disputed *and undisputed* facts and supporting evidence." (Pls.' Separate Statement, at 3:11-3:16 (emphasis added).) This statement does not seem to comply with Federal Rule of Civil Procedure 56 or Local Rule 260, covering motions for summary judgment, in part because the statement is ambiguous as whether each of the 15 asserted facts is disputed or undisputed. Indeed, Plaintiffs cryptically ascribed to the submission a purpose of "illustrating the negative impact these laws [the Waiting Period Law] have on. . .Second Amendment rights. . ." (Pls.' Opp. at 2:16-2:18.) Whatever the statement's purpose(s), Plaintiffs filled the submission almost entirely with non-facts, including:

- abstract arguments ("4. Requirement to wait 10 days deprives Plaintiffs of the use, custody, control, and ability to defend self, family and home. . ." (Pls.' Separate Statement at 3:17-3:27); "18. Where the need to acquire a firearm is more urgent, the 10-day waiting period effectively prevents individuals from being able to defend themselves" (*id.* at 8:27-9:8));

- opinions (e.g., "16. The time period of 10 days to conduct a background check is *arbitrarily* set by the legislature" (*id.* at 8:11-8:15 (emphasis added)); and

- conspiracy theories ("11. Defendants deliberately make the background checks go ten days even though the information used in background checks. . .can be accessed instantaneously" (*id.* at 6:27-7:9)).

Moreover, Plaintiffs' "supporting evidence" almost always consists of nothing more than the ideological beliefs of one of the plaintiffs. (*E.g., id.* at 3:25-4:4, 9:8-9:9 (for the abstract arguments); 8:15-8:25-8:26 (for the opinion); 7:9-7:11 (for the conspiracy theory).) Such a list of non-facts, none even identified as disputed or undisputed, and almost all supported by only inadmissible evidence, instead of the personal knowledge of the so-called evidence's proponent, has no value in a motion for summary judgment. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). The Court should not give any credence to Plaintiffs' statement, *id.*, and instead should focus on Plaintiffs' express admission that the facts of the present case are undisputed.

## II. PLAINTIFFS' ASSERTIONS ABOUT THE PROPER APPLICATION OF CONSTITUTIONAL LAW HERE BOLSTER THE *ATTORNEY GENERAL'S* POSITION ON THIS MOTION

Plaintiffs barely tried to—and could not—contradict the Attorney General's straightforward recitation of Second Amendment and other constitutional jurisprudence establishing that Plaintiffs do not, as they claim to, have a right to obtain firearms virtually instantaneously and without even minor inconvenience, regardless of countervailing public-safety rationales. (*See* Pls.' Opp. at 2:28-4:4, 5:15-6:2, 6:19-7:2, 9:12-9:13 (advocating "unregulated purchasing of firearms"), 9:19-9:24.)

Instead, Plaintiffs have mischaracterized the Attorney General's advocacy of a "substantial burden" standard of constitutional analysis of Second Amendment cases. Plaintiffs have claimed falsely that the Attorney General proposed some kind of novel constitutional theory called "common sense scrutiny" (Pls.' Opp. at 2:11-2:14, 5:5-5:6); the Attorney General did no such thing.[3] Plaintiffs further erroneously asserted that the Attorney General alternatively called for application of "rational basis review cloaked as intermediate scrutiny." *Id.*, at 5:7-5:8. On the contrary, the Attorney General carefully went through traditional intermediate-scrutiny analysis, which the Waiting-Period Law survives, even though the Attorney General does not believe that such a heightened form of scrutiny is appropriate here. Substantial-burden analysis, something more strict than rational-basis review, is what the Attorney General has endorsed.

Next, Plaintiffs have made a novel and ill-advised recommendation that this Court import First Amendment jurisprudence's "strict scrutiny" standard of analysis, the toughest standard of analysis, into the present Second Amendment case, before deciding the instant motion by denying it (an outcome that Plaintiffs imply is pre-ordained by the use of strict scrutiny). (Pls.' Opp. at 9:7-9:11, 11:5-11:17). It is perhaps telling that *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), the case upon which Plaintiffs rely most for this argument, did *not* endorse a strict-scrutiny

---

[3] In a different context, of determining what type of justification the Attorney General needed to offer for the Waiting-Period Law to support its constitutionality, the Attorney General recounted that courts have accepted sound rationales based on logic and common sense, and need not hear and weigh social-science evidence about a law. Perhaps Plaintiffs have mistakenly transported that part of the Attorney General's briefing into another discussion.

standard of analysis for Second Amendment cases. *Id.* at 701-04. Instead, *Ezell* employed a two-part analytical framework quite similar to the substantial-burden analysis endorsed by the Attorney General and based on *United States v. DeCastro*, 682 F.3d 160 (2nd Cir. 2012). *Compare Ezell*, 651 F.3d at 708, *with DeCastro*, 682 F.3d 160, 165-66 (2nd Cir. 2012) (citing *Ezell*'s analytical framework favorably).

So Plaintiffs stand alone, with no case law support, in calling for strict scrutiny of a law like the Waiting-Period Law, which does not substantially burden, but at most inconveniences, the Second Amendment right. No decision of the U.S. Court of Appeals, Ninth Circuit, has adopted strict-scrutiny analysis for Second Amendment cases or even suggested that such a standard is likely to be adopted, meaning that this Court must not do so, either. *Cf. Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001) ("A district court bound by circuit authority. . .has no choice but to follow it, even if convinced that such authority was wrongly decided"). Nor is Plaintiffs' position supported by U.S. Supreme Court precedent. *District of Columbia v. Heller*, 554 U.S. 570, ___, 128 S.Ct. 2783, 2799, 171 L.Ed.2d 637 (2008), the landmark U.S. Supreme Court decision on the Second Amendment, states that the Second Amendment "right was not unlimited, just as the First Amendment's right of free speech was not." Analogous waiting periods affecting First Amendment rights have been repeatedly upheld. For example, the U.S. Supreme Court has upheld a statutory waiting period of up to 50 days between when a person registers to vote in a jurisdiction and is allowed to vote there. *See, e.g., Burns v. Fortson*, 410 U.S. 686, 687, 93 S.Ct. 1209, 35 L.Ed.2d 633 (1973). By reference to the most analogous First Amendment cases, the 10-day waiting period imposed by the Waiting Period Law seems eminently reasonable and well within constitutional bounds.

### III. PLAINTIFFS CANNOT OVERCOME EITHER OF THE TWO JUSTIFICATIONS FOR THE LAWS BEING CHALLENGED HERE

Plaintiffs have made only unsupported, and hence ineffective, attacks on the two justifications for the Waiting Period Law.

### A. Plaintiffs Have Not Invalidated The Justification Of A "Cooling Off" Period

Regarding the cooling-off-period rationale, Plaintiffs have made the irrelevant point that the Attorney General did not cite any social-science study confirming the effectiveness of cooling-off periods in reducing the number of firearm-related deaths and injuries. (Pls.' Opp. at 2:11-2:14, 12:7-12:11, 13:8-13:27.) Of course, the Attorney General had no obligation to do so. As the Attorney General explained in the opening brief supporting summary judgment for the defense (at page 14, lines 12-21), even if the Court applies "heightened scrutiny" here, all the Attorney General has to do to vindicate the Waiting Period Law is to explicate what could have been the Legislature's rational belief about the effectiveness of waiting periods, and to show a reasonable fit between the means and the end. And the Attorney General did provide this explication and other analysis (in the opening brief, at pages 14:22-15:16), and so did justify the Waiting Period Law.

### B. Plaintiffs Have Not Traversed The Justification Of Time To Conduct Needed Background Checks

Regarding background checks, Plaintiffs have asserted *ipse dixit* that the California Bureau of Firearms does not need 10 days to complete background checks, and could complete them virtually instantaneously. (Pls.' Opp. at 2:2-2:8, 6:19-7:2, 13:4-13:7.) Plaintiffs have submitted no competent evidence to support this assertion, as all Plaintiffs lack personal knowledge of how California's partially-computerized/partially-manual background-check system works in its relevant respects. Moreover, Plaintiffs chose not to propound any discovery requests at all in this case, thereby waiving any opportunity to develop non-hearsay evidence about how the background-check system works.

Accordingly, Plaintiffs fell back on a complicated argument to the effect that (A) there is a federal background-check system, known as "NICS" (for "National Instant Criminal Background

Check System"), that Plaintiffs have heard works instantaneously in at least some instances,[4] so (B)—and contrary to express federal law (18 U.S.C. § 927)—California should be forced to abandon its own, excellent background-check system,[5] to use the federal NICS system exclusively, and to complete background checks instantaneously. (*Id.* at 2:19-2:22, 3:11-3:16, 6:19-7:2, 13:1-13:7.) This secondary argument is also unsupported; Plaintiffs have submitted no evidence about the NICS system other than what they have heard about how that system works. Silvester and Combs, as California residents, are subject to California's background-check system. The organization plaintiffs, The Calguns Foundation, Inc., and The Second Amendment Foundation, Inc., have never claimed to own firearms or to have gone through any background-check system. So Plaintiffs have no personal knowledge of NICS that is relevant. Furthermore, there simply is no constitutional imperative that California must use the swiftest background-check system available, disregarding other important factors like accuracy and effectiveness. Additionally, Plaintiffs' argument runs roughshod over federalism concerns and would put the Court ill-prepared into the awkward position of a legislative body, dictating which background-check system the State of California must use.

In conclusion, Plaintiffs have not proven that either of the proffered justifications for the Waiting Period Law lack constitutional merit under either the substantial-burden or intermediate-scrutiny analytical standards. The Waiting Period Law therefore must be upheld against Plaintiffs' constitutional challenge.

## IV.   PLAINTIFFS CANNOT RESUSCITATE THEIR FOURTEENTH AMENDMENT ARGUMENT

In response to the Attorney General's painstaking analysis, under the required rational-basis review, of each of the 18 statutory exemptions to the Waiting Period Law, revealing why each exemption is justified, Plaintiffs have made a broad-brush claim, based on a mistaken reading of

---

[4] In fact, "the [NICS] system may take up to *three business days* to notify the licensee whether receipt of a firearm by the prospective purchaser would be in violation of law." 63 Fed. Reg. 58272, 58272 (Oct. 29, 1998) (emphasis added).
[5] See Josh Richman, *California's Gun Background-Check System Could Be National Model*, San Jose Mercury News, Jan. 31, 2013 (available online at http://www.mercurynews.com/ci_22483537/californias-gun-background-check-system-could-be-national (last visited Oct. 21, 2013)).

the case law, that the Court must apply strict scrutiny to not only the Waiting Period Law but also all the exemptions. (Pls.' Opp. at 15:5-15:14.) Even conceding that the Second Amendment is now recognized as a "fundamental" right (*see McDonald v. City of Chicago*, ___ U.S. ___, 130 S. Ct. 3020, 3042, 177 L. Ed. 2d 894 (2010)), the Court has no legitimate basis to conclude that the Waiting Period Law violates the Fourteenth Amendment's Equal Protection Clause. As explained above, and contrary to Plaintiffs' position (at Pls.' Opp. at 14:25-15:14), the Second Amendment's status as a fundamental right has no bearing on whether the Waiting Period Law burdens that fundamental right, warranting heightened constitutional scrutiny for the law's exemptions. Consequently, Plaintiffs have not exposed any flaws in the Attorney General's analytical approach to the exemptions.

Plaintiffs' secondary argument, that the numerosity of the exemptions to the Waiting Period Law means that the law is unimportant and hence irrational (Pls.' Opp. at 14:19-14:20), is little more than clever rhetoric, and not a legal argument.

Finally, Plaintiffs have not challenged the substance of the Attorney General's application of rational-basis review here, and thus have waived the chance to do so.

## CONCLUSION

Plaintiffs have conceded that the facts of the present case are undisputed. Plaintiffs have made only flawed arguments that the Attorney General has applied the wrong constitutional analysis to the Waiting Period Law and reached the wrong conclusion of law. In fact, the Attorney General has succeeded in confirming the constitutionality of the Waiting Period Law,

//
//
//
//
//
//
//

8

Reply in Support of Defense Motion for Summary Judgment (1:11-cv-02137-AWI-SKO)

which does not burden Plaintiffs' right under the Second Amendment and is well-justified. The Court should grant summary judgment for the Attorney General in this case.

Dated: October 22, 2013

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

/s/
JONATHAN M. EISENBERG
Deputy Attorney General
*Attorneys for Defendant Kamala D. Harris,
Attorney General of California*