1

2

3

4

5                    **UNITED STATES DISTRICT COURT**

6                    **EASTERN DISTRICT OF CALIFORNIA**

7

8   **JEFF SILVESTER, BRANDON COMBS,**        **CASE NO. 1:11-CV-2137 AWI SAB**
    **THE CALGUNDS FOUNDATION, INC.,**
9   **a non-profit organization, and THE**        **PRETRIAL ORDER**
    **SECOND AMENDMENT**
10  **FOUNDATION, INC., a non-profit**            **Motions In Limine Hearing and Trial**
    **organization,**                             **Confirmation:**
11                                                           **MARCH 11, 2014**
                        **Plaintiffs**                        **1:30 p.m., Courtroom 2**
12
                        **v.**                    **Trial:  MARCH 25, 2014**
13                                                          **8:30 a.m., Courtroom 2**
    **KAMALA HARRIS,  Attorney General of**
14  **California, and DOES 1 to 20,**             **RULES OF CONDUCT**

15                      **Defendants**

16

17          The pretrial conference was held on February 3, 2014.   The trial in this matter is set for

18  March 25, 2014.  The parties currently estimate that the trial shall take eight court days or less.

19  **I.  Jurisdiction and Venue**

20          This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,

21  1343, 2201, 2201, and 42 U.S.C. § 1983.

22  **II.  Trial**

23          This matter shall be tried as a bench trial without a jury.

24  **III.  Facts**

25          **A.  Undisputed Facts**

26          (a) At all relevant times, one effect of the Waiting Period law has been that all California

27  residents lawfully purchasing firearms must wait a minimum of 10 days between applying to

28  purchase the firearms and receiving delivery of them (unless the purchasers are statutorily exempt

from the waiting period);

(b) At all relevant times, Plaintiff Jeff Silvester ("Silvester") has owned at least one firearm;

(c) At all relevant times, Brendon Combs ("Combs") has owned at least one firearm.

**B.  Disputed Facts**

Plaintiffs submit the following disputed facts:

(a) The DOJ needs at least 10-days to conduct every background check;

(b) A minimum 10-day "cooling off" period is necessary;

(c)  Requirement to wait 10-days deprives Plaintiffs of the use, custody, control and ability to defend self, family and home; it mandates a brief window of 20 days from which Plaintiffs must return to obtain physical possession of property that Plaintiffs already own;

(d) Plaintiffs are forced to incur expenses including: opportunity costs to engage in business and other activities during the each and every time Plaintiffs have to make a second trip to the licensed firearm dealer to take possession, custody and control of each firearm, lost opportunity to purchase firearms due to an inability to make a second trip, additional shipping expenses, additional dealer transfer fees, increased firearm prices due to lack of local competition, additional fuel costs, additional wear and tear on Plaintiffs' vehicles necessary for a return trip to the licensed dealer to retrieve a firearm Plaintiffs already own, and additional costs of having to resubmit a DROS application due to scheduling conflicts preventing Plaintiffs from returning to the store to retrieve the firearm within the temporary window of availability.

Defendant submits the following disputed facts:

1.  Whether Silvester has lacked a firearm with which to defend himself in his home, at any relevant time.

2.  Whether Combs has lacked a firearm with which to defend himself in his home, at any relevant time.

3.  Whether Silvester has, by law, been unable to have sufficient firearm weaponry with which to defend himself in his home, at any relevant time.

4.  Whether Combs has, by law, been unable to have sufficient firearm weaponry with

which to defend himself in his home, at any relevant time.

5.  Whether Silvester has been unduly burdened or merely inconvenienced by the Waiting Period Law in acquiring firearms.

6.  Whether Combs has been unduly burdened or merely inconvenienced by the Waiting Period Law in acquiring firearms.

7.  Whether the ability of most people to acquire firearms very quickly, i.e., within about 10 days of deciding to obtain them, was historically understood to be within the scope of the Second Amendment to the U.S. Constitution.

8.  Whether the State of California ("California"), through its Bureau of Firearms ("BOF"), could complete, and communicate to interested persons, the results of statutorily-required background checks on prospective firearms purchasers, who previously have been through the waiting period imposed by the Waiting Period Law for other firearms purchases, essentially instantaneously after BOF receives the prospective purchasers' Dealer Record of Sale ("DROS") applications for the current proposed purchases.

9.  Whether California's rates of firearm-related deaths, with the Waiting Period Law, can be legitimately compared to the same types of rates in other U.S. states that do not have waiting-period laws affecting purchases of firearms.

10.  How California's rates of firearm-related deaths, with the Waiting Period Law, compare to the same types of rates in other U.S. states that do not have waiting-period laws affecting purchases of firearms.

11.  Whether it is possible to determine accurately what effects, if any, "cooling off" periods affecting firearms purchases have on rates of firearm-related deaths.

12.  What effects, if any, cooling-off periods affecting firearms purchases have on rates of firearm-related deaths.

13.  Whether the California Legislature arbitrarily and/or irrationally selected 10 days, as opposed to some other period of time, as the current waiting period in the Waiting Period Law.

14.  What other rationales and facts justify the 10-day waiting period in the Waiting Period Law.

3

**C. Disputed Evidentiary Issues**

Plaintiffs submit the following disputed facts:

(a) Plaintiffs will dispute Defendants' request for judicial notice of studies, books or other evidence pertaining to the effectiveness of the "cooling off period;"

(b) Plaintiffs will object to the introduction of any expert witness testimony as neither of the parties have disclosed, received written reports or deposed experts.

(c) Plaintiffs reserve the right to tender rebuttal experts if the Defendants tender any lay opinion testimony based on their status as a government agency;

(d) Plaintiffs will attempt to exclude any studies that the Defendant attempts to admit into evidence related to the issue of the necessity of the 10-day waiting period.

Defendant submits the following disputed facts:

(1) whether certain witnesses have personal knowledge and experiences making them competent to testify as to certain facts and/or opinions;

(2) which party bears the burden of proof with respect to bolstering or undermining the rationales and justifications for the Waiting Period Law;

(3) whether it is appropriate for the Court to take judicial notice of certain materials reflecting, positively or negatively, on the rationales and justifications for the Waiting Period Law. If there are such disputes, and they are significant, they probably should be resolved by written motions in limine.

**D. Special Factual Information**

None.

**IV. Relief Sought**

Plaintiffs request judgment entered in their favor against Defendants as follows:

(a) An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons who receive action notice of the injunction, from enforcing Penal Code sections 26815 and 27540 as against those persons that may lawfully possess and acquire a firearm and possess proof of firearms possession or ownership in their name within the

State of California from enacting, publishing, promulgating, or otherwise enforcing policies, rules, or procedures prohibiting or otherwise restricting the immediate delivery of firearms to plaintiffs and individuals similarly situated (i.e., persons in possession of a current Certificate of Eligibility and/or a license to carry a concealed firearm) upon completion of a background check at the point of sale indicating that they may own, possess and acquire firearms;

(b) Attorney fees and costs pursuant to 42 U.S.C. section 1988;

(c) Declaratory relief consistent with the injunction;

(d) Costs of suit; and

(e) Any other relief as the Court deems just and appropriate.

The Attorney General seeks to have Plaintiffs' prayer for injunctive and any other relief denied in full.

**V. Points of Law**

A. Plaintiffs' Contentions

Point of Law 1: California Penal Code § 26815 and § 27540, which imposes a 10-day waiting period between the purchase and delivery of a firearm, violates the Second Amendment facially and as applied to individuals who: (1) are not prohibited from acquiring or possessing firearms, and (2) who currently possess registered firearms and/or who hold certain valid state licenses that require the successful passage of background checks.

Point of Law 2: The eighteen exceptions to the 10-day waiting period violate the Fourteenth Amendment's Equal Protection Clause.

Relevant cases and statutes:

(1) The Second Amendment of the United States Constitution;

(2) The Fourteenth Amendment of the United State Constitution;

(3) 18 U.S.C. § 922(a)(3);

(4) 28 U.S.C. §§ 1331, 1343, 1391, 2201;

(5) 42 U.S.C. §§ 1983, 1988;

(6) The Brady Handgun Prevention Act (Pub.L. 103-159, 107 Stat. 1536);

(7) California Penal Code §§ 11106, 16520, 18900, 21740, 26150, 26185, 26195, 26815, 26950,

26955, 26960, 26965, 26970, 27000, 27005, 27050, 27055, 27060, 27065, 27100, 27105, 27110, 27115, 27120, 27125, 27130, 27135, 27140, 27540, 27600, 27605, 27610, 27615, 27650, 27665, 27655, 27660, 27665, 27670, 27700, 27705, 27710, 27715, 27720, 27725, 27735, 27740, 27743, 27745, 27750, 28200, 28220, 28255, 29800, 29900, et seq., 30000, et seq. 30500, et seq., 32650, et seq. 32700, 33300;

(8) California Code of Regulation § 4036(b);

(9) California Welfare and Institutions Code §§ 8100 an 8103;

(10) 56 UCLA L. Rev. 1343, 1376 (2009);

(11) California Assembly Bill 500;

(12) Board of Trustees v. Fox, 492 U.S. 469, 480, 491 U.S. at 782-83 (1980);

(13) Citizens United v. FEC, 538 U.S. 310, 130 S. Ct. 876, 898 (1996);

(14) City of Cleburne v. Cleburne Living Ctr., 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996);

(15) Clark v. Jeter, 286 U.S. 570, 624-25 (1988);

(16) District of Columbia v. Heller, 554 U.S. 570, 630 (2008);

(17) Mcdonald v. Chicago, 130 S. Ct. 3020, 3036 (2010);

(18) Nordlinger v. Hahn, 505 U.S. 1,10 (1992);

(19) Planned Parenthood v. Casey, 833 U.S. 833, 873-74 (1992);

(20) Ward v. Rock Against Racism, 434 U.S. 781, 791 (1989);

(21) Zablocki v. Redhail, 434 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d. 313 (1986);

(22) Romer v. Evans, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996);

(23) Shapiro v. Thomspon, 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969);

(24) Anderson v. City of Hermosa Beach, 621 F.3d 1051 (9th Cir. 2010);

(25) Barns-Wallace v. City of San Deigo, 704 F.3d 1067, 1084 (9th Cir. 2013);

(26) Ezell v. Chicago, 651 F.3d 684 (7th Cir. 2011);

(27) Fantasyland Video, Inc. v. County of San Deigo, 505 F.3d 996, 1004 (9th Cir. 2007);

(28) Kasler v. Lockyer, 23 Cal.4th 472 (2000);

(29) Moore v. Madigan, 702 F.3d 933 (9th Cir. 2012);

(30) Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 700 F.3d

1   185, 194-95 (5th Cir. 2012);

2   (31) Nissan Fire and Marine Ins. Co. v. Fritz Cos., 201 F.3d 1099, 1105-6 (9th Cir. 2000).

3   (32) Nordyke v. King, 681 F.3d 1041, 1043 (9th Cir. 2012) (en banc.);

4   (33) Reed v. Town of Gilbert, 707 F.3d 1057, 1074 n.16 (9th Cir. 2013);

5   (34) Silveira v. Lockyer, 312 F.3d 1052, 1087 (9th Cir. 2002);

6   (35) Stop H-3 Ass'n v. Dole, 870 F.2d 1419, 1429 n.18 (9th Cir. 1989);

7   (36) U.S. v. Chester, 628 F.3d 673, 680 (4th Cir. 2010);

8   (37) U.S. v. Decastro, 682 F.3d 160, 164 (2d Cir. 2012);

9   (38) U.S. v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010);

10  (39) U.S. v. Reese, 627 F.3d 792, 800-01 (10th Cir. 2010);

11  (40) People v. Bickston, 91 Cal.App3d.Supp. 29 (1979);

12  (41) U.S. v. Chovan, No. 11-50107, 2013 WL 6050914, 735 F.3d 1127 (C.A. 9 (Cal.) Nov. 18,

13  2013).

14      B.  Defendants' Contentions

15      Issue No. 1:  Whether the Waiting Period Law unconstitutionally burdens the historically

16  understood Second Amendment right of people who must go through the waiting period in

17  connection with firearms acquisition transactions, after having previously gone through the

18  waiting period in connection with other firearms acquisition transactions in California.

19      Points of Law for Issue No. 1:  The Waiting Period Law imposes at most an inconvenience

20  or a minor burden on people in acquiring firearms, and does not have constitutional significance.

21  The Second Amendment right was not historically understood to mean that people could acquire

22  firearms essentially instantaneously.  Sources of law:  See, e.g., McDonald v. Chicago, 130 S.Ct.

23  3020 (2010); District of Columbia v. Heller, 554 U.S. 570 (2008); Burdick v. Takushi, 504 U.S.

24  428 (1992); Zablocki v. Redhail, 434 U.S. 374 (1978); Town of Lockport v. Citizens for

25  Community Action at Local Level, Inc., 430 U.S. 259 (1977); Burns v. Fortson, 410 U.S. 686

26  (1973); People of State of N.Y. v. O'Neill, 359 U.S. 1 (1959); Ala. State Fed. of Labor, Local

27  Union No. 103 v. McAdory, 325 U.S. 450 (1945); Robinson v. Marshall, 66 F.3d 249 (9th Cir.

28  1995); U.S. ex rel. Madden v. Gen. Dynamics Corp., 4 F.3d 827 (9th Cir. 1993); Karlin v. Foust,

7

188 F.3d 446 (7th Cir. 1999) Dittus v. Cranston, 186 Cal. App. 2d 837 (1960).

Issue No. 2:  If the Waiting Period Law is found to burden the Second Amendment right, in the way just discussed, what level of heightened scrutiny the Court should use in evaluating the constitutionality of the Waiting Period Law, based on how close the Waiting Period Law comes to the core of the Second Amendment right, and the severity of the burden on the right.

Points of Law for Issue No. 2:  If heightened scrutiny is called for in evaluating the Waiting Period Law, the level of scrutiny should be a permissive form of intermediate scrutiny, close to rational-basis review, and certainly not strict scrutiny.  Because the Waiting Period Law does not confiscate or otherwise affect firearms that people, such as the individual plaintiffs herein, already lawfully have, the Waiting Period does not come close to the core Second Amendment right.  Because the Waiting Period Law merely delays, for a short time, people's acquisition of firearms, the burden of the law is not severe.  Sources of law:  See, e.g., cases cited above, as well as United States v. Chovan, 735 F.3d 1127 (9th Cir. 203); Fantasyland Video, Inc. v. Cnty. of San Diego, 505 F.3d 996 (9th Cir. 2007); Coyote Publ'g v. Miller, 598 F.3d 592 (9th Cir. 2010); Ass'n of Nat'l Advertisers, Inc. v. Lungren, 44 F.3d 726 (9th Cir. 1994); Drake v. Filko, 724 F.3d 426 (3d Cir. 2013); Peterson v. Martinez, 707 F.3d 1197 (10th Cir. 2013); Heller v. District of Columbia, 670 F.3d 1244 (D.C. Cir. 2011); Ezell v. City of Chicago, 651 F.3d 684 (7th Cir. 2011); United States v. Masciandaro, 638 F.3d 458 (4th Cir. 2011); United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2010); United States v. White, 593 F.3d 1199 (11th Cir. 2010); Young v. Hawaii, 911 F. Supp. 2d 972 (D. Haw. 2012); Doe v. Wilmington Housing Auth., 880 F. Supp. 2d 513 (D. Del. 2012).

Issue No. 3:  If the Waiting Period Law is found to burden the Second Amendment right, in the way just discussed, whether there is a sufficient relationship or "fit" between the Waiting Period Law and California's objective of minimizing firearm violence and thereby increasing public safety.

Points of Law for Issue No. 3:  If heightened scrutiny is called for in evaluating the Waiting Period Law, the 10-day waiting period will be justifiable because of the time needed to

complete meaningful background checks and investigations of prospective firearms purchasers, and the efficacy of "cooling off" periods in helping to achieve California's compelling interest in public safety.  Sources of law:  See, e.g., cases cited above, as well as United States v. Call, 874 F. Supp. 2d 969 (D. Nev. 2012); Peruta v. County of San Diego, 758 F. Supp. 2d 1106 (S.D. Cal. 2010); Jackson v. Dep't of Justice, 85 Cal. App. 4th 1334 (2001).

Issue No. 4:  Whether the statutory exemptions to the Waiting Period Law differentiate between people in ways that are impermissible under the Fourteenth Amendment's Equal Protection Clause.

Points of Law for Issue No. 4:  The exemptions serve to tailor the Waiting Period Law and thus bolster its constitutionality.  The exemptions all have sufficient justifications.  Sources of Law:  See, e.g., cases cited above, as well as Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009); Vacco v. Quill, 521 U.S. 793 (1995); Miller v. Johnson, 515 U.S. 900 (1995); Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc., 508 U.S. 307 (1993); Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456 (1981); Kahawaiolaa v. Norton, 386 F.3d 1271 (9th Cir. 2005); Giano v. Senkowski, 54 F.3d 1050 (2d Cir. 1995); Rivkin v. Dover Tp. Rent Leveling Bd., 671 A.2d 567 (N.J. 1996).

Issue No. 5:  If the Court determines that the Waiting Period Law or its exemptions are unconstitutional, in whole or in part, what remedy should the Court fashion.

Points of Law for Issue No. 5:  If the Court determines that the Waiting Period Law is unconstitutional under the Second Amendment, the Court should outline its concerns and give the California Legislature guidance and time to reformulate the law to address the concerns.  If the Court determines that an exemption is unconstitutional, the Court should invalidate the exemption only.  Sources of Law:  See, e.g., cases cited above, as well as Regan v. Taxation With Representation of Wash., 461 U.S. 540 (1983);  Am. Power & Light Co. v. Sec. and Exch. Comm'n, 329 U.S. 90 (1946); Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc., 64 F.3d 1001 (6th Cir. 1995); Vote Choice, Inc. v. DiStefano, 4 F.3d 26 (1st Cir. 1993).

**VI.  Abandoned Issues**

None.

**VII. Witnesses**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

**A. Plaintiffs' Witnesses**

1.    Jeff Silvester

2.    Brendon Combs

3.    Gene Hoffman

4.    Alan Gottlieb

**B. Defendants' Witnesses**

1.    Stephen Lindley

2.    Steve Buford

3.    Blake Graham

4.    Mitch Matsumoto

5.    Donnette Orsi

6.    Rick Lopes (possibly)

7.    Karen Milami (possibly)

8.    Jeff Silvester (possibly)

9.    Brandon Coombs (possibly).

**VIII. Exhibits**

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

**A.  Plaintiffs' Exhibits**

AB497 Processing Alternative Feasibility Study – Report of Findings, State of California Department of Justice Division of Law Enforcement, May 1991.

Plaintiffs may use discovery responses and documents produced by Defendants.

Plaintiffs may use the Armed Persons With Mental Illness Report produced by the California State Auditor October 2013.

Depending on how the Court rules on the evidentiary issues raised by Defendants, Plaintiff may introduce:  Legislative history of Cal. Penal Code sections 12010, 12011, 12021, 12021.1, 12071, 12076, 12078, 21740, 26950, 26955, 26960, 26965, 26970, 27000, 27050, 27055, 27060, 27065, 27100, 27105, 27110, 27715, 27120, 27125, 27130, 27135, 27140, 27600, 27605, 27610, 27615, 27650, 27655, 27660, 27665, 27670, 27700, 27705, 27710, 27720, 27715, 27725, 27730, 27735, 27740, 27750, 28220, 29800, 29805, 29810, 29815, 29820, 29825, 29830, 29855, 29900, 30000, and 30005.

**B.  Defendants' Exhibits**

-- Discovery Documents

Documents disclosed in discovery with Bates numbers AG000001-765, AG000827-990, AG001244-351, AG001491-78, AG001643-58, and AG001755-26

-- Legislative History

Legislative history of Cal. Penal Code sections 12010, 12011, 12021, 12021.1, 12071, 12076, 12078, 21740, 26950, 26955, 26960, 26965, 26970, 27000, 27050, 27055, 27060, 27065, 27100, 27105, 27110, 27715, 27120, 27125, 27130, 27135, 27140, 27600, 27605, 27610, 27615, 27650, 27655, 27660, 27665, 27670, 27700, 27705, 27710, 27720, 27715, 27725, 27730, 27735, 27740, 27750, 28220, 29800, 29805, 29810, 29815, 29820, 29825, 29830, 29855, 29900, 30000, and 30005

Legislative history of Cal. Bus. & Prof. Code sections 7583.23, 7583.24, 7583.25, 7583.27, 7583.29, 7583.32, 7583.37, 7583.45, 7596.3, 7596.4, 7596.7, 7596.8, 7596.81, and 7596.83

Legislative history of Cal. Code of Civil Procedure section 527.9

Legislative history of Cal. Fam. Code section 6389

<u>-- Court Filings</u>

Goodin, <u>Brief for English/American Historians as Amicus Curiae [Etc.]</u>, in *McDonald v. City of Chicago* (2010)

Bogus, <u>Brief of Amici Curiae Jack N. Rakove [Etc.]</u>, in *District of Columbia v. Heller* (2008)

Webster, <u>Declaration of Daniel Webster</u>, in *Jackson v. City and County of San Francisco* (2012)

<u>-- Books</u>

Bogus, ed., <u>The Second Amendment in Law and History</u> (2002)

Cooley, <u>Constitutional Limitations</u> (1868)

Cornell, <u>A Well-regulated Militia</u> (2008)

Cornell and Kozuskanich, <u>The Second Amendment on Trial</u> (2013)

Fox, <u>Will to Kill</u> (2011)

Hawke, <u>Everyday Life in Early America</u> (1989)

Larkin, <u>The Reshaping of Everyday Life: 1790-1840</u> (1989)

Nisbet, ed., <u>The Gun Control Debate:  You Decide</u> (1990)

Rakove, <u>Original Meanings</u> (1997)

Russell, <u>Guns on the Early Frontiers</u> (2005)

Sellers, <u>The Market Revolution</u> (1994)

Spitzer, <u>Gun Control:  A Documentary and Reference Guide</u> (2009)

Spitzer, <u>The Politics of Gun Control</u>, 5th Ed. (2012)

Uviller and Merkel, <u>The Militia and the Right to Arms</u> (2003)

Webster and Vernick, eds., <u>Reducing Gun Violence in America</u> (2013)

Winkler, <u>Gun Fight:  The Battle Over the Right to Bear Arms in America</u> (2013)

<u>-- Government and NGO Reports</u>

California Department of Justice, <u>Crime and Delinquency in California</u> (Various Years)

California Department of Justice, <u>Daily DROS Tactical Reports</u> (many issues; 2013)

California Department of Justice, <u>Dealer Record of Sale Statistics</u> (Various Years)

California Department of Justice, <u>Firearms Prohibiting Categories</u> (2012)

California Department of Justice, <u>Report on Firearms Used in the Commission of Crimes</u> (Various Years)

California State Auditor, <u>Armed Persons with Mental Illness</u> (2013)

Centers for Disease Control, <u>Injury Fact Book</u> (2006)

Federal Bureau of Investigation, <u>Crime in the United States</u> (Various Years)

Federal Bureau of Investigation, <u>National Instant Criminal Background Check System (NICS) Operations</u> (2011)

Federal Bureau of Investigation, <u>NICS Point of Contact States & Territories</u> (2008)

Office of the U.S. President, <u>Now is the Time; The President's Plan to Protect Our Children and our Communities by Reducing Gun Violence</u> (2013)

Legal Community Against Violence, <u>Model Laws for a Safer America</u> (2012)

U.S. Department of Justice, <u>Draft Report on Systems for Identifying Felons Who Attempts to Purchase Firearms; Notice and Request for Comment, in Federal Register</u> (1989)

Violence Policy Center, <u>States with High Gun Ownership and Weak Gun Laws Lead Nation in Gun Deaths</u> (2013)

<u>-- Scholarly Articles</u>

Bangalore, et al, <u>Gun Ownership and Firearm-related Deaths, in American Journal of Medicine</u> (2013)

Brent and Bridge, <u>Firearms Availability and Suicide, in American Behavioral Scientist</u> (2003)

Blodgett-Ford, <u>The Changing Meaning of the Right to Bear Arms, in Seton Hall Constitutional Law Journal</u> (1995)

Cantor and Slate, <u>The Impact of Firearm Control Legislation on Suicide in Queensland: Preliminary Findings</u>, in Medical Journal of Australia (1995)

Carrington and Moyer, <u>Gun Control and Suicide in Ontario, in American Journal of Psychiatry</u> (1994)

Cornell, <u>The Ironic Second Amendment</u>, in Albany Law Review (2008)

Cornell and De Dino, <u>A Well Regulated Right: The Early American Origins of Gun Control</u>, in Fordham Law Review (2004)

Cozzolino, <u>Gun Control:  The Brady Handgun Violence Prevention Act</u>, in Seton Hall Legislative Journal (1992)

Daponde, <u>New Residents and Collectors Must Register Out-of-state Handguns</u>, in McGeorge Law Review (1998)

de Moore, et al., <u>Survivors of Self-inflicted Firearm Injury: A Liaison Psychiatry Perspective</u>, in Medical Journal of Australia (1994)

Frierson, <u>Women who Shoot Themselves</u>, in Hospital Community Psychiatry (1989)

Frierson and Lippmann, <u>Psychiatric Consultation for Patients with Self-inflicted Gunshot Wounds, in Psychosomatics</u> (1990)

Hahn, et al., <u>Firearms Laws and the Reduction of Violence: A Systematic Review, in American Journal of Preventive Medicine</u> (2005)

Lewiecki, <u>Suicide, Guns, and Public Policy, in American Journal of Public Health</u> (2013)

Ludwig and Cook, <u>Homicide and Suicide Rates Associated with Implementation of the Brady Handgun Violence Prevention Act</u>, in Journal of the American Medical Association (2000)

Miller and Hemenway, <u>The Relationship Between Firearms and Suicide:  A Review of the Literature, in Aggression and Violent Behavior</u> (1998)

Novak, <u>Why the New York State System for Obtaining a License to Carry a Concealed Weapon Is Unconstitutional</u>, in Fordham Urban Law Journal (1988)

Peterson, et al., <u>Self-Inflicted Gunshot Wounds:  Lethality of Method Versus Intent</u>, in American Journal of Psychiatry (1985)

Vigdor and Mercy, <u>Do Laws Restricting Access to Firearms by Domestic Violence Offenders Prevent Intimate Partner Violence?</u>, in Evaluation Review (2012)

Volokh, <u>Implementing the Right to Keep and Bear Arms for Self-defense:  An Analytical Framework and a Research Agenda</u>, in UCLA Law Review (2009)

Warner, <u>Firearm Deaths and Firearm Crime After Gun Licensing in Tasmania, presented at the Third National Outlook Symposium on Crime</u>, Canberra, Australia (1999)

Winkler, <u>Heller's Catch 22</u>, in UCLA Law Review (2009)

Wintemute, et al., <u>Mortality Among Recent Purchasers of Handguns</u>, in New England Journal of Medicine (1999)

Wintermute, <u>Subsequent Criminal Activity Among Violent Misdemeanants Who Seek to Purchase Handguns; Risk Factors and Effectiveness of Denying Handgun Purchase</u>, in Journal of the American Medical Association (2001)

Wright, et al., <u>Effectiveness of Denial of Handgun Purchase to Persons Believed to be at High Risk for Firearm Violence</u>, in American Journal of Public Health (1999)

Zeoli and Webster, <u>Effects of Domestic Violence Policies, Alcohol Taxes, and Police Staffing Levels on Intimate Partner Violence</u>, in Injury Prevention (2010)

<u>--  Magazine and Newspaper Articles</u>

Amar and Amar, <u>Guns and the Constitution:  Telling the Right Constitutional Story</u>, in FindLaw – Legal Commentary (2001)

Cornell, <u>The Second Amendment You Don't Know</u>, in New York Daily News (2012)

Emberton, <u>The Real Origin of America's Gun Culture</u>, in History News Network (2013)

Ifill, <u>7-day Wait for Gun Purchases Hits Crucial Obstacle in House</u>, in New York Times (1991)

Koerner, <u>Californians Buying Guns at Record Rate</u>, in Orange County Register (2012)

Leger, <u>Obama Demand Could End Research Blackout into Gun Violence</u>, in USA Today (2013 )

Marois<u>, California's Gun Repo Men Have a Nerve-racking Job</u>, in Businessweek (2013)

Platt, <u>New York Banned Handguns 100 Years Ago… Will We Ever See that Kind of Gun Control Again?</u>, In History News Network (2011)

Pugh, <u>Baltimore Gun Violence Summit Conclude with Recommendations</u>, in McClatchy DC (2013)

Richman, <u>California's Gun Background-Check System Could Be National Model</u>, in San Jose Mercury News (2013)

Robinson, <u>Delay for Buying Guns OK'd by Legislature</u>, in San Jose Mercury News (1991)

Sweeney and Cornell, <u>All Guns Are Not Created Equal</u>, in The Chronicle Review (2013)

Winkler, <u>The Secret History of Guns</u>, in Atlantic (2001

## IX. Discovery Documents To Be Used At Trial

Plaintiffs may offer discovery responses provided by Defendants.

The Attorney General does not presently expect to offer any discovery materials at trial, assuming that all deposed witnesses will be available at trial, and that there is no need to use interrogatory responses or deposition transcripts in place of live witness or to impeach live witnesses.

## X. Further Discovery or Motions

Plaintiffs contend:

Defendants may request that the Court take judicial notice of certain studies pertaining to the effectiveness of the "cooling off period." Plaintiffs will object to any request for judicial notice of said studies. Plaintiffs will likely challenge the admissibility of studies attempted to be

18

used by Defendants.

Defendants contend:

When the discovery period in this case was open, and before briefing on the motion for summary judgment was completed, there was no binding case law suggesting that the Attorney General would have to proffer any evidence, much less expert-witness evidence, of the historical understanding of the Second Amendment or the efficacy of the Waiting Period Law in achieving California's objective of minimizing firearm violence and thereby increasing public safety. Under established case law, the Waiting Period Law enjoyed the usual strong presumption of constitutionality, with the burden on Plaintiffs to disprove the constitutionality of the law. Although the Attorney General continues to believe that Plaintiffs bear the ultimate burden of proof here, recent case law, as interpreted by the Court, raises the question of whether the Court will expect the Attorney General to proffer any evidence and/or expert-witness evidence on these issues. (See, e.g., Chovan, supra.) The Attorney General believes that if she bears the burden of proof on these issues, there is sufficient competent evidence of which the Court may and should take judicial notice, such that the Attorney General will meet that burden. However, if Court expects the Attorney General to produce expert-witness evidence on these topics, and judicial notice will not be taken of other relevant evidence, then the Attorney General may need to have expert-witness discovery reopened and seeks the Court's guidance on this issue.

**XI. Stipulations**

None at this time.

**XII. Amendments/Dismissals**

Plaintiff Michael Poeschl has been dismissed from this case.

**XIII. Settlement Negotiations**

Because Plaintiffs seek to invalidate, at least partially, the Waiting Period Law, and the Attorney General must enforce and not compromise that law, settlement negotiations and/or a

court settlement conference will be unlikely to lead to resolution of this case.

**XIV.  Agreed Statement**

None at this time.

**XV.  Separate Trial Of Issues**

Plaintiffs believe the issues should not be tried separately.

The Attorney General believes that it is advisable and feasible to try first the issue of whether the Waiting Period Law imposes a burden on Plaintiffs' Second Amendment right.  If the Court finds that there is no such burden, then the inquiry ends and the case is over.  The Court is not inclined at this time to order a separate trial of issues.

**XVI.  Impartial Experts - Limitation Of Experts**

Neither party has disclosed experts, received expert reports or deposed experts.  The Plaintiffs believe that retained experts should be excluded from trial and lay opinion testimony should be severely restricted. The parties do not favor having impartial experts appointed in this matter.

**XVII.  Attorneys' Fees**

Plaintiffs request attorney fees and costs pursuant to 42 U.S.C. § 1988 and cost of suit.

**XVIII.  Further Trial Preparation**

**A.  Final Witness List**

The parties are ordered to file and serve their final list of witnesses by March 20, 2014. Additionally, at that time Plaintiffs shall disclose the order of witnesses so that Defendant will be prepared for cross-examination.

Except upon the showing set forth above in section VII, a party may not add witnesses to the final list of witnesses, or to any other updated witness list, who are not disclosed in this Order

in Section VII.

**B.  Trial Briefs**

The parties are directed to file and serve a Trial Brief by March 10, 2014.  Local Rule 16-285.  The parties need not include in the Trial Brief any issue that is adequately addressed in a motion in limine, or in an opposition brief to a motion in limine.  Any response to a Trial Brief shall be filed and served by March 18, 2014.

**C.  Duty of Counsel to Pre-Mark Exhibits**

The parties are ordered to confer no later than February 18, 2014, for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1. Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a) Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff March 20, 2014, one for use by the Courtroom Clerk and the other for the court; and

(b) One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2. Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)  Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)  As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon

introduction and motion of the party, without further foundation.

(c)  Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d) Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3.  Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies.  However, the copies must be legible. If any document is offered into evidence that is partially illegible, the court may sua sponte exclude it from evidence.

**D.  Discovery Documents**

By March 20, 2014, each party shall file a list of all discovery documents the party intends to use at trial.  The list shall indicate whether each discovery document has previously been lodged with the Clerk.  If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by March 20, 2014.

**E.  Motions In Limine Hearing and Briefing Schedule**

The hearing for motions in limine will be held on March 11, 2014.  In addition to

addressing any filed motions in limine, at that time the court will also settle, to the extent possible, any other matter pertaining to the conduct of the trial.

Counsel are expected to be fully cognizant of the legal issues involved in the case by the date of the hearing for motions in limine.

By 4:00 p.m. on February 18, 2014, all motions in limine, with supporting points and authorities, shall be filed and served either personally or by facsimile upon opposing counsel.

By 4:00 p.m. on March 3, 2014, opposition to any motion in limine shall be filed and served either personally or by facsimile upon opposing counsel. If a party does not oppose a motion in limine, that party shall file and serve in the same manner a Statement of Non-Opposition to that motion in limine.

By 4:00 p.m. on March 7, 2014, any reply to an opposition shall be filed and served either personally or by facsimile upon opposing counsel. Because the court will need time to prepare for the hearing on March 11, 2014, the court is not inclined to consider late reply briefs.

**F. Morning Conferences During Trial**

During the trial, it is the obligation of counsel to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon. The court will rule on those documents, to the extent possible, prior to the commencement of trial each day. If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well.

**G. Use Of Videotape and Computers**

Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the videotape with the Courtroom Clerk by 4:00 p.m. on Thursday, March 20, 2014. If a written transcript of audible words on the tape is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy at least one week prior to trial. The courtroom deputy will then arrange a

time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment. If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

### H.  Order of Witnesses

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call twenty-four (24) hours prior to calling that witness.

## XIX.  Objections to Pretrial Order

Any party may, within ten (10) calendar days after the date of service of this order, file and serve written objections to any of the provisions of this order. Local Rule 16-283. Such objection shall specify the requested corrections, additions or deletions.

## XX.  Rules of Conduct During Trial

### A.  General Rules

1. All participants in the trial shall conduct themselves in a civil manner. There shall be no hostile interchanges between any of the participants.

2. All oral presentations shall be made from the podium, unless otherwise permitted by the court.

### B.  Opening Statements

1. Counsel may, but are not required, to make an opening statement in this bench trial.

2. Counsel may use visual aids in presenting the opening statement. However, any proposed visual aids shall be shown to opposing counsel before opening statement.

### C.  Case in Chief

1. Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

### D.  Witnesses

1.  Before approaching a witness, counsel shall secure leave of court to approach the witness.

2.  Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

### E.  Exhibits

1.  All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2.  The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

### G.  Objections

1.  No speaking objections or arguments are permitted.  Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The court will permit counsel to argue the matter at the next recess.

2.  The court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

IT IS SO ORDERED.

Dated:   February 3, 2014

                                        SENIOR DISTRICT JUDGE