Victor J. Otten (SBN 165800)
vic@ottenandjoyce.com
OTTEN & JOYCE, LLP
3620 Pacific Coast Hwy, Suite 100
Torrance, California 90505
Phone: (310) 378-8533
Fax: (310) 347-4225

Donald E.J. Kilmer (SBN 179986)
LAW OFFICES OF DONALD KILMER
A Professional Corporation
1645 Willow Street, Suite 150
San Jose, California 95125
Phone: (408) 264-8489
Fax: (408) 264-8487

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEFF SILVERSTER, MICHAEL POESCHL, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,**<br><br>Plaintiffs,<br><br>v.<br><br>**KAMALA HARRIS, Attorney General of California (in her official capacity), and DOES 1 to 20.** | Case No. 1:11-cv-02137-AWI-SKO<br><br>**PLAINTIFFS' TRIAL BRIEF** |

## I. INTRODUCTION

Pursuant to this Court's Pretrial Order of February 4, 2014 (Doc #48) and Local Rule 16-285, Plaintiffs respectfully submit this Trial Brief. A short statement of facts is set forth below. L.R. 16-285(a)(1). Currently there are no admission and/or stipulation not already recited in the pretrial order. L.R. 16-285(a)(2). A summary of the substantive points of law are set forth below. Anticipated disputes concerning evidence, legal arguments and citations to authority were addressed in the parties' Motions in Limine. L.R. 16-285(a)(3).

## II. SUMMARY OF ARGUMENT

This lawsuit challenges the constitutionality of a set of California's firearms laws regulating the sale of firearms. California Penal Code §§ 26815 and 27540 impose a 10-day ban ("waiting period") between the purchase of a firearm and its actual delivery to the buyer.[1] The waiting period laws are enforced on nearly all firearm purchasers, including law-abiding Californians who possess valid firearms licenses and firearms (many of whom are known to the state to be current firearm owners under separate registration laws, none of which are challenged in this case). The waiting period is not enforced on those who are one of eighteen classes of purchasers expressly exempted under California law. The vast majority of law-abiding firearms purchasers, including the individual Plaintiffs in this lawsuit, are not exempt under those any of those provisions. Plaintiffs' allege that the waiting period laws violate the Second Amendment facially and as applied to those law-abiding individuals who are not prohibited from acquiring or possessing firearms and who currently possess either or both government-issued firearms licenses (such as a license to carry a loaded handgun in public) or registered firearms. This lawsuit also challenges the eighteen exceptions to the waiting period laws as a violation of the Fourteenth Amendment's Equal Protection Clause.

Several recent Ninth Circuit decisions have shown that courts are taking the

---

[1] All subsequent references are to the California Penal Code.

1   Second Amendment seriously and treating it like the other fundamental rights
2   protected by our Constitution. (See <u>U.S. v. Chovan</u>, No. 11-50107, 2013 WL
3   6050914 (C.A. 9 (Cal.) Nov. 18, 2013; <u>Peruta v. County of San Diego</u>, 2014 WL
4   555862 (C.A.9 (Cal.)). In <u>Chovan</u>, the Court applied an intermediate level of
5   scrutiny to a Second Amendment challenge stating that "some heightened level of
6   scrutiny must apply" finding that a statute prohibiting people convicted of domestic
7   violence from possessing firearms burdens rights protected by the Second
8   Amendment. <u>Id.</u> at 1138. In <u>Peruta</u> the Court struck down San Diego's concealed
9   carry requirements as too restrictive by a finding that the Second Amendment right
10  extends to the bearing of arms outside of the home. <u>Id</u>. at *24

11       The Attorney General offers two inadequate and ad hoc justifications for the
12  waiting period.  First, the A.G. claims that the delay is required to perform a
13  background check. While this attempted justification might make more sense were
14  the state's records not computerized and its systems not "automated," it is plainly
15  invalid in light of criminal and mental health records databases that can be searched
16  in mere seconds over the internet.  Second, the A.G.'s assertion that a "cooling-off"
17  period must be imposed upon every single firearm purchaser on the premise that
18  someone might impulsively purchase a gun to commit an unlawful act  sweeps far
19  too broadly. For individuals who already possess a firearm, and especially those
20  who are licensed to carry a loaded handgun in public, the 10-day ban serves no
21  rational purpose.  Furthermore, the state's statutory exemptions to the 10-day ban
22  cut directly against the A.G.'s arguments and could not more clearly violate the
23  Equal Protection Clause of the Fourteenth Amendment.

24       This case is largely a facial challenge to the laws in question and the facts are
25  largely undisputed.  Certain facts, however, serve to illustrate the impact these laws
26  have on the Second Amendment rights of the individual Plaintiffs and the rights of
27  similarly-situated law-abiding members represented by the non-profit plaintiff
28  organizations.  Among the relevant facts is the immediate availability of criminal

and mental health background information through the federal National Instant Check System [NICS], a system designed and instituted by the federal government for the purpose of providing states with a resource to quickly, efficiently, and effectively determine if a firearm buyer is someone that should not take possession of a firearm.

Ultimately, however, the case turns on the fact that California's 10-day ban, as well as the Attorney General's enforcement of the laws, operate as an irrational and unnecessary infringement of Plaintiffs' fundamental rights under the Second Amendment. The laws most certainly apply to firearms that are "typically possessed by law-abiding citizens for lawful purposes" and "in common use." <u>District of Columbia v. Heller</u>, 554 U.S. 570, 624-25 (2008). And, as previously shown, the laws are also applied to some—but not all—"law-abiding citizens."

The Attorney General's argument in favor of the waiting period laws reflects the forlorn hope that the courts will not take Second Amendment rights seriously. This Court must require the AG to introduce valid and convincing evidence that California's waiting period is both: (1) Not an infringement of the Second Amendment, and (2) That any proposed regulation is tailored to the public policy advanced by the government, such that the fundamental rights of those who are not a target of that policy are not suffering an infringement of their fundamental rights.

### III. **STATEMENT OF FACTS**

Plaintiff Jeffrey Silvester is a United States citizen residing in Kings County, California. He is the owner of a firearm that is registered in California's Automated Firearms Systems ("AFS") database. Mr. Silvester also possesses a valid California license to carry ("LTC") a loaded handgun in public, issued to him pursuant to Penal Code § 26150, et seq.

Plaintiff Brandon Combs is a United States citizen residing in Stanislaus County, California. He is the owner of a firearm that is registered in California's

1  "AFS" database.  Combs also possesses a current and valid California Certificate of
2  Eligibility ("COE") issued by the Department of Justice, upon which is written that
3  the Department found "…nothing that would prohibit [him] from acquiring or
4  possessing firearms."  11 C.C.R. §4036(b).  Combs' COE will not expire until
5  February, 2015, if not renewed.  Mr. Combs has maintained a valid COE for over
6  two years and intends to renew it indefinitely.

7  Plaintiff The Calguns Foundation, Inc., ("CGF") is a non-profit organization
8  incorporated under the laws of California with its principal place of business in San
9  Carlos, California.  The purposes of CGF include supporting the California firearms
10 community by promoting education for all stakeholders about California and
11 federal firearm and ammunition laws, rights and privileges, and defending and
12 protecting the civil rights of California gun owners.  The purposes of CGF also
13 include the protection of the rights of citizens to have firearms for the lawful
14 defense of their families, persons, and property, and to promote public safety and
15 law and order.  CGF represents these members and supporters, which include Mr.
16 Silvester and Mr. Combs, as well as others who possess firearms registered in their
17 names with the State of California.  CGF has expended resources to that end.  CGF
18 brings this action on behalf of itself and its supporters, who possess all the indicia
19 of membership.

20 Plaintiff Second Amendment Foundation, Inc., ("SAF") is a non-profit
21 membership organization incorporated under the laws of Washington with its
22 principal place of business in Bellevue, Washington.  SAF has over 650,000
23 members and supporters nationwide, including Mr. Silvester and Mr. Combs.  SAF
24 represents these members and supporters, as well as others who possess firearms
25 registered in their names with the State of California.  The purpose of SAF includes
26 education, research, publishing and legal action focusing on the Constitutional right
27 to privately own and possess firearms, and the consequences of gun control.  SAF
28 has expended resources to that end.  SAF brings this action on behalf of itself and

its members.

Significantly, Plaintiffs have no opposition to the state conducting a background check on all firearm purchasers. However, in the vast majority of cases, a background check through the NICS federal system and/or the California online Prohibited Armed Persons File system ("PAPF") is virtually instantaneous. In the case of individual Plaintiffs and others who are similarly-situated, the state cannot possibly justify its denial of Constitutionally-protected instruments and corresponding denial of a fundamental right. The Attorney General well knows that Silvester and Combs are law-abiding citizens who are not prohibited from possessing or acquiring firearms. Moreover, the Department of Justice would be aware of even an arrest of Silvester or Combs for a crime that would implicate being placed into a prohibited class if such an arrest were to lead to conviction.

The Attorney General argues that an individual who already owns one firearm has a less-urgent need for another. But a firearm possessed for one purpose, such as target practice, hunting, or collecting, may be completely unsuitable for self-defense in the home or to be carried in public. The Second Amendment states, in part, that people have a right to "keep and bear Arms." The significance of the Framers' plural usage of the term "Arm" cannot be overlooked or dismissed.

### III. ARGUMENT

#### A. Because The Waiting Period Laws Directly Imperil The "Core" Second Amendment Right To Possess Firearms For Self-Defense, The Laws Cannot Withstand A Second Amendment Challenge

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." The individual right to keep and bear arms is a fundamental right and fully applicable to the States through the Fourteenth Amendment. McDonald v. City of Chicago, 130 S. Ct. 3020 (2010);

Nordyke v. King, 681 F.3d 1041 (2012).

In District of Columbia v. Heller, the Supreme Court first held that the Second Amendment protects "an individual right to keep and bear arms." 554 U.S. 570, 595 (2008). Heller struck down laws banning handgun possession and requiring all firearms in homes to be unloaded and disassembled or "bound by a trigger lock or similar device." Id. at "575". While finding that the laws were unconstitutional, the Court noted that "…the right secured by the Second Amendment is not unlimited." Id. at 626. In that regard, the Court declined to "undertake an exhaustive historical analysis … of the full scope of the Second Amendment" but noted that "…nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession…of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." Id. at 635.

The Heller Court suggested that the core of the Second Amendment right is to allow "law-abiding, responsible citizens to use arms in defense of hearth and home." Id. at 635. While the Heller Court did not specifically address the level of scrutiny should apply to Second Amendment challenges, it forbade rational basis scrutiny. Id. at 628 n.27.

**B.   The Ninth Circuit Has A Two-Step Inquiry For Analyzing A Second Amendment Challenge**

Until recently, the Ninth Circuit had not decided what level of scrutiny to apply to restrictions on the right to bear arms. In U.S. v. Chovan, 735 F.3d 1127 (9th Cir. 2013), the Ninth Circuit addressed the question of the level of scrutiny to apply to limitations on the right to keep and bear arms. The court analyzed the different approaches taken by other Circuits and ultimately adopted the two-step Second Amendment inquiry undertaken by the Third, Fourth, Seventh, Tenth, and D.C. Circuits. Id. at 1136. The court states: "[t]he two-step Second Amendment inquiry we adopt (1) asks whether the challenged law burdens conduct protected by

the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." Id. (citing U.S. v. Chester, 628 F.3d 673, 680 (4th Cir. 2010), U.S. v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010)).

### 1) Because the Waiting Period Laws Amount to A Prohibition—Albeit Temporary--Against Possessing A Firearm, The Laws Burden Conduct Protected By The Second Amendment

The Court in Heller found that "…it always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right." Heller at 592. Accordingly, "…determining the limits on the scope of the right is necessarily a matter of historical inquiry." Chester at 679; see Peruta at *11. If the challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood, then you move to the second prong of the analysis. see Chovan at 1137; see Ezell v. City of Chicago, 651 F.3d 684, 702-703 (7th Cir. 2011) . If the historical record is inconclusive, it must be assumed that Second Amendment rights are intact and entitled to some measure of protection. Id.

As this Court stated in its Order denying Defendants Motion for Summary Judgment, "[t]here can be no question that the actual possession of a firearm is a necessary prerequisite to exercising the right to keep and bear arms." (Order on Defendant's Motion for Summary Judgment (Doc # 44) page 7, lns 22-27) Moreover, the Defendants have failed to, and cannot, demonstrate that the waiting period laws "are presumptively lawful regulatory measures". There simply is no evidence that the waiting period laws are a longstanding prohibition on immediate possession of firearms. The first waiting period law in California was not passed until 1923. (Stat. 1923, c. 263, §§9-10).  There were no analogous laws in 1791 or 1868.  Furthermore, the regulatory scheme for waiting periods that came about half a century after ratification of the 14th Amendment were directly solely to handguns sold at retail and not to long guns (rifles and shotguns) or private party sales until

another half a century later.

### 2) Because The Burden Imposed By The Waiting Period Laws Is Absolute, The Waiting Period Laws Cannot Withstand A Second Amendment Challenge

The burden imposed by the waiting period laws is absolute. No matter how serious the need, there is no alternative under California law for most individuals. Therefore, the failure to make it possible for people to acquire firearms for self-defense is subject to either intermediate or strict scrutiny.

While the Supreme Court has not specified what level of scrutiny courts must apply to a statute challenged under the Second Amendment, it made clear that rational basis review is not appropriate. Heller, at 628 n. 27; Chovan at 1137. To determine the level of heightened scrutiny to apply, the Chovan court looked to other circuits that used the First Amendment jurisprudence as a guide stating, "the level of scrutiny in the Second Amendment context should depend on 'the nature of the conduct being regulated and the degree to which the challenged law burdens the right.'" Id. at 1138 quoting Chester, 628 F.3d at 682. " More specifically, the level of scrutiny should depend on (1) 'how close the law comes to the core of the Second Amendment right,' and (2) 'the severity of the law's burden on the right.' Id. quoting Ezell v. City of Chicago, 651 F.3d 684, 701–04 (7th Cir. 2011).

In rejecting strict scrutiny, the Ninth Circuit determined that Chovan's right to possess a firearm in the home for self-defense was not within the core rights identified in Heller—the right of law-abiding, responsible citizens to possess and carry firearms—by virtue of his criminal history as a domestic violence misdemeanant. Id. at 1138. The court did, however, determine the burden on domestic violence misdemeanants' rights was substantial. Id. at 10. Thus the Chovan court concluded that intermediate scrutiny was the proper standard to apply in connection with § 922(g). Id.

Unlike Chovan, who had a history of domestic violence, Mr. Silvester and

8

Mr. Combs are law-abiding, responsible citizens. Accordingly, the waiting period laws strike at the core of their Second Amendment rights and strict scrutiny is the standard this Court should apply under the facts of this case.

In other circumstances where legislation impinges upon a fundamental right, the Supreme Court has applied strict scrutiny. See, e.g., Clark v. Jeter, 286 U.S. 456, 461 (1988)("classifications affecting fundamental rights are given the most exacting scrutiny"). To pass strict scrutiny, the government bears the burden of demonstrating that its law "furthers a compelling interest and is narrowly tailored to achieve that interest." Citizens United v. FEC, 538 U.S. 310, 130 S. Ct. 876, 898 (2010). There is a considerable body of law pertaining to the exercise of First Amendment rights that can serve as a useful model for developing a framework for the standards to be applied in reviewing Second Amendment rights. See Nelson Lund, The Second Amendment, Heller, and Originalist Jurisprudence, 56 UCLA L. Rev. 1343, 1376 (2009)("The case law dealing with free speech and the free exercise of religion provides a particularly good analogue" for the Second Amendment). Laws that prohibit a particular form of speech, or subject it to a prior restraint, are reviewed under strict scrutiny, and are almost always invalid. See, e.g., Anderson v. City of Hermosa Beach, 621 F.3d 1051 (9th Cir. 2010)(ban on tattoo shops struck down). Laws that regulate the time, place and manner of speech are subject to more deferential, intermediate scrutiny review. See, e.g., Ward v. Rock Against Racism 491 U.S. 781, 791 (1989)(noise regulations applied to rock music upheld).

The waiting period laws challenged here are the equivalent of a prior restraint or a ban (albeit short-lived) on the possession of firearms, and should be adjudicated under the strict scrutiny standard. Like freedom of speech, the right to keep and bear arms is explicitly set forth in the Bill of Rights, and deserves the greater level of protection afforded free speech. None of the cases decided since Heller specifically addresses a waiting period like that imposed by California.

While the Attorney General describes the waiting period law as imposing "at worst, a minor burden or an inconvenience on the Second Amendment right," that assessment does not accurately describe the impact of the waiting period law. Every gun purchaser in California is deprived of his or her right to keep and bear arms (that already have the status of property) for at least ten days, regardless of whether the person has qualified to purchase a firearm in the past and regardless of whether any disqualifying factors exist.  Some substantial number of Californians have excellent, specific reasons justifying a shorter waiting period (such as a direct threat to their safety), or no waiting period at all, but they have no alternative to waiting out the period as required by the California laws.

Furthermore, because the waiting period laws apply across the board to everyone – including: (1) people who already own at least one firearm, (2) people personally known to each other, (3) people with pre-clearance to own firearms (COE) and (4) those with a license to carry a firearm issued by their local sheriff, are not narrowly tailored to achieve the interest the government tenders as a public safety policy – cooling off periods to prevent impulsive violence.  Why would someone with a gun safe full of guns go out and purchase a specific firearm to commit a crime of passion?

But even if the waiting period law is viewed under the less rigorous intermediate scrutiny test, it cannot survive judicial review. The Court in Chovan applied the intermediate scrutiny…stating that "… all forms of the standard require (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." Id. at 1139. The waiting period law fails on both counts.  First, the Attorney General has failed to demonstrate that the waiting period is effective either in reducing gun violence or in keeping firearms out of the hands of unqualified purchasers since universal background checks would remain.  Second, the waiting period law–which directly impacts the Second Amendment rights of every single

gun purchaser–is the antithesis of a reasonable fit.

While the Attorney General argues that the law is necessary so that a background check can be performed to weed out unqualified purchasers, such as those with felony convictions or a history of mental illness, there is no basis for concluding that the waiting period is necessary for that purpose. Assembly Bill 500, which has recently been enacted into law, is the first step in the direction of a more focused approach. Although AB 500 does not repeal the 10-day waiting period, it embraces a different approach to the government's stated objective. Under that measure, if a purchaser does not pass the initial screening because of incomplete data base information, a waiting period may be imposed of up to 30 days while the background check is completed. While AB 500 is not without its difficulties, at least it recognizes that not all firearm purchasers should be treated the same, and that only in cases where there is probable cause to delay a purchase is there any justification for infringing on a fundamental right.

As already noted, Plaintiffs embrace the idea of a background check, and this lawsuit does not question the legitimacy of such screening. In an earlier time, before the relevant federal and state databases allowed for essentially instant verification, some delay to permit a records check might have been arguably appropriate. Now, however, both the NICS and PAPF systems are available on-line, and using them will clear all but a handful of prospective purchasers, whose purchase can now delayed along the lines of AB 500.

The second explanation for the 10-day delay is that it affords a cooling off period in case a purchaser is seeking the firearm for some immediate and impulsive act of violence. While that claim may be attractive in the abstract, there is no evidence to support the efficacy of the law in preventing violence. Before a constitutional right may be circumscribed, there must be at least some foundation showing that the restriction may be expected to achieve the desired result. The speciousness of the cooling off period is especially egregious when the waiting

period law is applied to individuals who have already own firearms and/or who are already licensed by their local sheriff to carry a firearm.

Therefore, the waiting period laws are invalid under either of the two standards recognized as applicable to the review of laws that infringe rights protected under the Second Amendment.

### C. The Numerous Exceptions To The 10-Day Waiting Period Render The Waiting Period Laws Invalid Under The Equal Protection Clause

In addition to the generalized challenge to the waiting period laws, Plaintiffs contend that the eighteen groups of statutory exceptions to the waiting period violate the Equal Protection clause of the Fourteenth Amendment.  The exceptions apply to peace officers (whether or not the firearm is obtained for purposes of law enforcement), firearms dealers delivering firearms other than handguns at auctions, certain dealer-to-dealer transfers, transfers to people with permits for exotic weapons such as assault weapons and machine guns, transfers for the repair or servicing of firearms, dealer sales out of state, firearms deliveries to wholesalers, and regulated lending of firearms at certain facilities, such as shooting ranges.

While the Attorney General goes to great pains to explain how each of these exceptions has a rational basis, the argument is premised on the assumption that the waiting law as a whole does not infringe on Second Amendment rights, and that the validity of the underlying law means that the lowest degree of equal protection scrutiny applies.  The problem with that argument is that the plethora of exceptions undercuts the rationale for the waiting period law itself.  If the waiting period is so vital to the government's interests that it must be applied even to firearms purchasers who have previously qualified through the Department of Justice to purchase guns, like the plaintiffs herein, then how can it be even rational to grant such a wide swath of exceptions.

Before <u>Heller</u>, the 9th Circuit examined certain exceptions to the California

1  assault weapons law under the Equal Protection clause of the Fourteenth
2  Amendment.  <u>Silviera v. Lockyer</u>, 312 F.3d 1052 (9th Cir. 2003).  While the
3  decision in that case rejecting a challenge to the law generally on Second
4  Amendment grounds was given little credence even before <u>Heller</u>, see <u>Nordyke v.
5  King</u>, 319 F.3d 1185, 1192 n.4 (9th Cir. 2003), the decision did invalidate an
6  exception to the assault weapons ban for retired police officers, finding that it
7  violated the Equal Protection Clause.  <u>Silviera</u>, 312 F.3d at 1089-92.

8       The Equal Protection analysis was premised on the argument that the Second
9  Amendment right to bear arms was not an individual right, and therefore the
10 California assault weapons ban did not infringe a fundamental right.  In deciding to
11 apply the rational basis test to the exceptions in the assault weapons ban, the court
12 thus relied on the fact that the facts of Silviera presented neither of the
13 circumstances generally calling for heightened Equal Protection scrutiny.

14      When a state statute burdens a fundamental right or targets a suspect class,
15 that statute receives heightened scrutiny under the Fourteenth Amendment's Equal
16 Protection Clause. <u>Romer v. Evans</u>, 517 U.S. 620, 631, 116 S.Ct. 1620, 134
17 L.Ed.2d 855 (1996). Statutes that treat individuals differently based on their race,
18 alienage, or national origin "are subjected to strict scrutiny and will be sustained
19 only if they are suitably tailored to serve a compelling state interest." <u>City of
20 Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d
21 313 (1986). Statutes infringing on fundamental rights are subject to the same
22 searching review. See, e.g., <u>Zablocki v. Redhail</u>, 434 U.S. 374, 98 S.Ct. 673, 54
23 L.Ed.2d 618 (1978) (right to marry); <u>Shapiro v. Thompson</u>, 394 U.S. 618, 89 S.Ct.
24 1322, 22 L.Ed.2d 600 (1969) (right to interstate travel). <u>Silveira v. Lockyer</u>, 312
25 F.3d at 1087-88.

26      Now that the Second Amendment is subject to a different interpretation, it is
27 clear that the waiting period laws infringe a fundamental right.  Having shown no
28 more than a rational basis for upholding the numerous exceptions to the waiting

period laws, the Attorney General has not met the burden for summary judgment and cannot meet the burden for a judgment after trial.

## IV. CONCLUSION

There is no evidence that supports the proposition that a 10-day waiting period will address any legitimate public policy objective when the State has the means to conduct instantaneous background checks.  Furthermore that same lack of evidence  shows that no government interest will be addressed by a 10-day waiting period when the gun buyer already owns firearms, is pre-cleared to acquire/possess firearms, or is licensed to carry firearms in public by his/her local police chief or sheriff.

This Court should make that finding and issue orders and appropriate remedies that will prevent California from infringing on the fundamental rights of the parties and the public in general from exercising their Second Amendment rights.

Respectfully Submitted on March 10, 2014.

/s/     Vic Otten,  Otten & Joyce, LLP
        Attorney for the Plaintiffs