1  Victor J. Otten (SBN 165800)
   OTTEN & JOYCE, LLP
2  3620 Pacific Coast Hwy, Suite 100
   Torrance, California 90505
3  Phone: (310) 378-8533
   Fax: (310) 347-4225
4  E-Mail: vic@ottenandjoyce.com

5  Donald E. J. Kilmer, Jr. (SBN: 179986)
   LAW OFFICES OF DONALD KILMER
6  1645 Willow Street, Suite 150
   San Jose, California 95125
7  Voice: (408) 264-8489
   Fax:   (408) 264-8487
8  E-Mail: Don@DKLawOffice.com

9  Attorneys for Plaintiffs

10                  UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF CALIFORNIA
11                        FRESNO DIVISION
            2500 TULARE STREET | FRESNO, CA 93721

12

| | |
|---|---|
| 13  JEFF SILVESTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization, | Case No.:     1:11-CV-2137 AWI SKO |
| | PLAINTIFFS' RESPONSE TO DEFENDANTS' TRIAL BRIEF |
| 17          Plaintiffs, | Judge:       Hon. Anthony W. Ishii |
| | Courtroom:  8th Floor, Room 2 |
| 18          vs. | Trial Date:  March 25, 2014 |
| | Time:        8:30 a.m. |
| 19 | Case Filed:  Dec. 23, 2011 |
| KAMALA HARRIS, Attorney General of California, and DOES 1 to 20, | |
| 21          Defendants. | |

22

23

24

25

26

27

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487
28

1

# TABLE OF CONTENTS

2    I.      INTRODUCTION.................................................................................1

3    II.     RESPONSE TO THE ATTORNEY GENERAL'S INTRODUCTION AND.....4
             SUMMARY OF THE CASE FOR THE DEFENSE

4

5    III.    THE TWO-STEP SECOND AMENDMENT ANALYSIS...............................6
             DESCRIBED AND APPLIED

6            A. Plaintiffs Have a Limited Burden to Show a Violation of a ............6
                Constitutional Right and State Action as Part of Step #1

7               of the Ezell/Chovan/Peruta Test for Second Amendment Rights.

8            B. Defendants Have the Burden of Constitutionally Justifying ........11
                the 10-Day Waiting Period as Against Plaintiffs

9               (and Those Similarly Situated) as of Part of Step #2 of of the
                Ezell/Chovan/Peruta Test for Second Amendment Rights.

10

11           C. The 10-Day Waiting Period Law Is Not A Presumptively ............12
                Lawful Regulatory Measure

12           D. The History and Tradition of the Commerce in Arms ..................15
                at the Time of the Founding and the Ratification of

13              Fourteenth Amendment Did Not Include Government
                Mandated Waiting Periods.

14
             E.  Waiting Periods As Onerous as California's are ..........................20
15           Not Common in Other Jurisdictions

16           F.  The Burdens of the Waiting Period are not Trivial.......................22

17   IV.     PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS ARE ......................23
             VIABLE AND ACTUALLY SUGGEST THE REMEDY REQUIRED

18
     V.      CONCLUSION .............................................................24
19

20

21

22

23

24

25

26

27

28

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

**TABLE OF AUTHORITIES**
**FEDERAL CASES**

*Albright v. Oliver*, 510 U.S. 266 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Carey v. Brown*, 447 U.S. 455 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Chester*, 628 F.3d at 680. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Chovan*, 2013 U.S. App. LEXIS 23199. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Chovan*, 2013 U.S. App. LEXIS at 23-25. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Daniels v. Williams*, 474 U.S. 327 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*District of Columbia v. Heller*, 554 U.S. 570 (2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    *District of Columbia v. Heller*, 554 U.S. 570 (2008).. . . . . . . . . . . . . . . . . . . . . . . . . 5

    *District of Columbia v. Heller*, 554 U.S. 570 (2008).. . . . . . . . . . . . . . . . . . . . . . . . 14

    *District of Columbia v. Heller*, 554 U.S. 570 (2008).. . . . . . . . . . . . . . . . . . . . . . . . 18

    *District of Columbia v. Heller*, 554 U.S. 570 (2008).. . . . . . . . . . . . . . . . . . . . . . . . 25

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 8

    *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . 10

    *Ezell v. City of Chicago*, 651 F.3d 684 (2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    *Ezell*, 651 F.3d at 702-03. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    *Ezell*, 651 F.3d at 703. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hanna Boys Ctr. v. Miller*, 853 F.2d 682 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . 11

*McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010).. . . . . . . . . . . . . 18

    *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . 25

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*N.R.A.*, 700 F.3d at 194. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    *N.R.A.*, 700 F.3d at 195. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People of State of New York v. O'Neil*, 359 U.S. 1 (1959).. . . . . . . . . . . . . . . . . . . . . . 13

*Peruta v. County of San Diego*, ___ F.3d ___, 2014 WL 555862 (9th Cir. Feb. 13, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    *Peruta v. County of San Diego*, ___ F.3d ___, 2014 WL 555862 (9th Cir. Feb. 13, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

*Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972). . . . . . . . . . . . . . . . . . . 24

*Richardson v. United States*, 841 F.2d 993 (9th Cir. 1988)) (emphasis
    added. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Town of Lockport v. Citizens for Community Action at Local Level, Inc.*,
    430 U.S. 259 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United State ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827 (9th
    Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Houser*, 804 F.2d 565 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . 11

*United States v. Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000). . . . . . . . . . . . . . 11

*United States v. Phillips*, 367 F.3d 846 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Smith*, 389 F.3d 944 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . 11

   *Smith*, 389 F.3d at 948 (citations and quotation marks omitted). . . . . . . . . . . . . . 11

*U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   *U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . 14

### STATE CASES

*Andrews v. State*, 50 Tenn. 165. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kasler v. Lockyer*, 23 Cal. 4th 472 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

   *Id.*, at 481  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Rameriz* (1924) 193 Cal. 633 [226 P. 914, 34 A.L.R. 51]. . . . . . . . . . . . . . . . 24

*State v. Kessler*, 289 Ore. 359, 614 P.2d 94 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . 18

### FEDERAL STATUTES

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Resp Defs' Trial Brief               -iv-               *Silvester, et al. v. Harris*

# I. INTRODUCTION

The flaw in Defendants' approach to this case can be summed up by the implied premise of the current state of the law. That gun owners/purchasers, as a collective group are to be presumed guilty of causing gun violence; therefore government policies, like a 10-Day Waiting Period to purchase a firearm can, and should, be imposed on all gun owners/purchasers as a class.

But the government can have no interest in enforcing a policy that infringes the fundamental rights of persons <u>already known to the state</u> to be trustworthy, e.g., (1) gun owners with registered guns already in their possession, and/or (2) gun owners with a Certificate of Eligibility to acquire/own/possess firearms that is issued by the State's top law enforcement agency (Defendants herein), and/or (3) gun owners with a state license to carry, on their person at all times, a loaded and concealable firearm after that license has been issued by the local chief of police or county sheriff and monitored by Defendants herein.

Background checks for all gun buyers may be constitutionally appropriate. 10-Day Waiting Periods may be appropriate to keep first-time gun buyers (at least for the first purchase in California) from committing impulsive violent acts and because they are strangers to California's "gun-owner database." But a 10-Day Waiting Period for gun-owners who are known by the state to be trustworthy is an irrational and overbroad infringement on Second Amendment rights.

The exceptions to the 10-Day Waiting Period – also the basis for Plaintiffs' Equal Protection Claim – are also a clue to the fundamental irrationality of the law. Why is there no presumption of collective guilt and inchoate violence for:

    1.     Certain law enforcement transactions. Penal Code §§26950, 27050, 27055, 27060, 27065 (exempting §26815); §§27600, 27605, 27610, 27615, and 27650 (exempting §27540).

    2.     A dealer who delivers a firearm other than a handgun at an auction or similar event. Penal Code §§26955 (exempts from §26815); §27655 (exempts from §27540).

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

3.      Dealer-to-dealer transfers of firearms. Penal Code §§27110 and 27125 (exempts from §26815); §§27710, and 27725 (exempts from §27540).

4.      Transfers of firearms by a dealer to him or herself. Penal Code §§26960 and 27130 (exempts from §26815); §§27660 and 27730 (exempts from §27540.)

5.      Transactions between or to importers and manufacturers of firearms. Penal Code § 27100 (exempts from § 26815); § 27700 (exempts from §27540).

6.      Persons with a "short barrel rifle" or "short barrel shotgun" permit pursuant to Penal Code § 33300.  Penal Code §§ 26965 and 21740 (exempts from § 26815);  §§ 27665 and 27740 (exempts from § 27540).

7.      Persons who have an —assault weapons. permit pursuant to Penal Code section 30500, *et seq*. Penal Code §21740 (exempts from §26815); §27740 (exempts from §27540).

8.      Persons who have a —machinegun. permit pursuant to Penal Code section 32650 *et seq*. Penal Code §§26965 and 27140 (exempts from §26815); §§27665 and 27740 (exempts from §27540).

9.      Persons who have a —machinegun. license pursuant to Penal Code section 32700. Penal Code §26965 (exempts from §26815); § 27665 (exempts from §27540).

10.     Persons who have a —destructive device. permit pursuant to Penal Code section 18900. Penal Code §26965 (exempts from §26815); §27665 (exempts from §27540).

11.     Persons with curio and relic collector's licenses issued by the Bureau of Alcohol, Tobacco, Firearms and who have a valid Certificate of Eligibility issued by the California Department of Justice and only when purchasing curio and relic firearms. Penal Code §26970 (exempts from §26815); §27670 (exempts from §27540).

12.     Transactions regarding firearms serviced or repaired by a gunsmith. Penal Code §27105 (exempts from §26815); §27705 (exempts from §27540).

13.     Dealer sales to persons residing out-of-state. Penal Code §27115 (exempts from §26815) and §27715 (exempts from §27540).

14.     Deliveries to wholesalers. Penal Code §27120 (exempts from §26815); §27720 (exempts from §27540).

15.     Loans by dealers who operate target facilities. Penal Code §27135 (exempts from §26815); §27735 (exempts from §27540).

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

16. Certain loans of firearms for use as props. Penal Code §27000 (exempts from §26815); §27745 (exempts from §27540).

17. Loans to consultants or evaluators. Penal Code §27005 (exempts from §26815); §27750 (exempts from §27540).

18. Lawful transactions involving cane guns, firearms that are not immediately recognizable as firearms, undetectable firearms, wallet guns, unconventional pistols, and zip guns. Penal Code §21740 (exempts from §26815); §27740 (exempts from §27540).

Presumably the persons whose transactions are described by these exceptions have convinced the legislature, by some methodology that is presently unknown, that they will never become felons, never become violent misdemeanants, never suffer a mental break-down, never engage in suicidal ideation or never commit an impulsive violent act. And that as a class they are so trustworthy with firearms that no 10-Day Waiting Period is required.

There is no question that acquisition of a firearm is a necessary prerequisite to exercising the right to keep and bear arms. In *Andrews v. State* – cited favorably in *District of Columbia v. Heller*, 554 U.S. 570, 608, 614 (2008), the High Court of Tennessee found much in common between that State's guarantee of the "right to keep and bear arms" and the Second Amendment when it held:

> The right to keep and bear arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and purchase and provide ammunition suitable for such arms, and keep them in repair. [...]
>
> *Andrews v. State*, 50 Tenn. 165, 178, 8 Am. Rep. 8, 13 (1871)

This case stands for the proposition that plaintiffs (and persons similarly situated) who are:

(1) a person who already has a registered (i.e., they are known by the state to be in lawful possession of a) firearm at his/her home; and/or

(2) a person licensed to carry a loaded and concealable firearms on their person at all times by their local chief of police or sheriff; and/or

(3) a person who submits to yearly backgrounds checks and obtains a

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Certificate of Eligibility to own/purchase/possess firearms from the

California Department of Justice;

are all equally as trustworthy as many if not all of the 18 exceptions listed above

and are therefore entitled to the same exemption from the 10-Day Waiting Period.

Sometimes governments cannot avoid making classifications. But when

those classifications infringe a fundamental right, the Courts are required to

examine those classifications, and the underlying policies, with exacting scrutiny.

A 10-Day Waiting Period to exercise the "right to keep and bear" a firearm that was

just purchased, by someone who has already demonstrated to the State of California

that they are a trustworthy gun owner, is an infringement of the Second

Amendment as that right was understood in 1791 and 1868.

*District of Columbia v. Heller*, 554 U.S. 570 (2008) rejected a "collective

rights" interpretation of the Second Amendment in favor of a finding that the "right

to keep and bear arms" is a fundamental, individual right. This Court should reject

the "collective guilt" theory of gun control advanced by the State of California in

favor a more narrowly tailored remedy that will comply with the Constitution.

## II. RESPONSE TO THE ATTORNEY GENERAL'S INTRODUCTION AND SUMMARY OF THE CASE FOR THE DEFENSE

The Attorney General (AG) attempts to argue that the laws being challenged

in this action are longstanding, presumptively lawful regulations on the possession

of firearms. California imposed its first waiting period (which was only two days,

did not apply to long guns (rifles and shotguns) and did not apply to private party

sales) in 1923. The law went through many permutations before settling on its

current iteration in 1991 when a 10-Day Waiting Period invaded all transactions.

Acknowledging that there were no laws prohibiting the immediate possession

of firearms in colonial times, the AG attempts to argue that there was a "natural" or

"built-in" waiting period because for most Americans the nearest gun store was a

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

day's horseback ride away and people could not have expected to "obtain firearms on demand."  But here, the AG is conflating market conditions (assuming there is admissible evidence of this fact) with **state action**.  A gun dealer's remote location or inventory (or lack thereof) is not an interference with anyone's fundamental right.  Furthermore, the AG presents no plausible argument (because there isn't one) that a person walking into a gun smith's shop in 1791 or 1868 would have suffered a government imposed waiting period before they could walk out of the door with a firearm they had just purchased.

The AG lists five (5) categories of prohibited persons that the background check and 10-Day Waiting Period are supposed to keep disarmed: (1) felons, (2) violent misdemeanants, (3) persons with mental-health disqualifications, (4) persons subject to restraining orders, and (5) probationers.

But for all these categories, the AG is already under a duty to establish and maintain an online database known as the "Prohibited Armed Persons File" that is supposed to cross-reference persons who are known to the State of California to have owned or possessed a firearm on or after January 1, 1991.  Penal Code § 30000(a).  Furthermore, this online database is available through the California Law Enforcement Telecommunications System (CLETS) for the specific purpose of assisting government agencies identified in Penal Code § 11105 with determining if someone is prohibited from possessing firearms.  Penal Code § 30000(b).  The mechanics of that law are set forth in Penal Code § 30005 and covers all five (5) categories of persons disqualified from exercising Second Amendment rights in this state.  Furthermore, the AG's office has recently been allocated the sum of $24,000,000.00 from the Dealer Record of Sale Special Account to enforce the provisions of the Armed Prohibited Persons System.  Penal Code § 30015.

If California already has the information, the technical means and the resources to track down, confiscate weapons – and if necessary – prosecute persons known to the State to have become prohibited **and** who already own firearms, then

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

the Armed Prohibited Persons Systems **is** the narrowly tailored (or better fit) remedy that will address the public policy advanced by the State for the 10-Day Waiting Period. And, it has the virtue of not interfering with the rights of law-abiding gun buyers.

Furthermore, the 10-Day Waiting Period for plaintiffs (and those similarly situated) is irrational because it assumes that someone who already owns a firearm will commit an impulsive violent act (or suicide) only after they have acquired a new (or another) firearm. This policy only makes sense in the case of a first-time gun buyer.

Finally, in their introduction, and throughout their trial brief, the Attorney General advances a new species of constitutional scrutiny to analyze whether a regulation of firearms infringes the Second Amendment. The AG refers to this as "<u>A Lenient Form of Intermediate Scrutiny</u>." This is a legal animal with no pedigree in the case law that Plaintiffs have been able to find. It appears to be an attempt to dress the rational-basis wolf in the sheep's clothing of heightened scrutiny.

### III. THE TWO-STEP SECOND AMENDMENT ANALYSIS DESCRIBED AND APPLIED

A. <u>Plaintiffs Have a Limited Burden to Show a Violation of a Constitutional Right and State Action as Part of Step #1 of the *Ezell/Chovan/Peruta* Test for Second Amendment Rights.</u>

Though this is a bench trial, the Ninth Circuit Civil Jury Instructions for Civil Rights Actions under 42 U.S.C. § 1983 are instructive on this issue.

Introductory Comment

> In this revision to Chapter 9, the committee provides separate "elements" instructions for 42 U.S.C. § 1983 claims against individuals (Instructions 9.2–9.3) and against local governing bodies (Instructions 9.4–9.7) because there are different legal standards to establish liability against these two types of defendants. This revision also provides updated instructions to establish the deprivation of particular constitutional rights

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Resp Defs' Trial Brief          -6-          *Silvester, et al. v. Harris*

(Instructions 9.9–9.25). The committee intends an elements instruction to be used only in conjunction with a "particular rights" instruction appropriate to the facts of the case at hand.

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[...]

Finally, this chapter contains instructions for violations of particular federal rights to be used in conjunction with an elements instruction. "**Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims**.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). When necessary, these instructions include right-specific mental states because § 1983 itself "contains no independent state-of-mind requirement" apart from what is necessary to state a violation of the underlying right. *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

Bold and underlined emphasis added.

The emerging analysis of Second Amendment claims is to mirror how First

Amendment claims are adjudicated, *Ezell v. City of Chicago,* 651 F.3d 684 (7th Cir.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

2011); *U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) and *Peruta v. County of San Diego*, ___ F.3d ___, No. 10-056971, 2014 WL 555862 (9th Cir. Feb. 13, 2014).

A plaintiff need only establish (1) a 42 U.S.C. § 1983 claim (see Instruction 9.4 as modified below), and (2) Violation of a particular right (see Instruction 9.10 as modified below) – by a preponderance of evidence. The relevant case law then shifts the burden to the State Actor to overcome the prima facie case under a two-step constitutional analysis required by the *Ezell/Chovan/Peruta* line of cases.

<u>Ninth Circuit Civil Jury Instruction 9.4</u> (Section 1983 Claims against Local Governing Body Defendant Based on Official Policy, Practice or Custom – Elements and Burden of Proof) as modified for this case would require proof the Defendant:

1.      Acted under color of law.

2.      The action deprived the plaintiff of a Second Amendment Right.

3.      The defendant acted pursuant to an expressly adopted official policy.

<u>Ninth Circuit Civil Jury Instruction 9.10</u> (Particular Rights – First Amendment – "Citizen" Plaintiff) as modified by the Second Amendment and the *Ezell/Chovan/Peruta* line of case would probably read:

Under the Second Amendment, a citizen has the right to keep and bear arms, which includes the right to acquire firearms in accordance with regulations at the point of sale that are tailored to address the legitimate public policy of denying firearms to prohibited persons and that does not overreach into the rights of the law-abiding.

In order to prove that the defendant deprived the plaintiff of this Second Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

1. The plaintiffs are engaged, and will engage in the future, in the acquisition of firearms, an activity protected under the Second Amendment.

2. The plaintiffs are known to the State of California to be gun owners.

3. The State of California knows that the plaintiffs are not: (1) felons, (2) violent misdemeanants, (3) persons with mental-health disqualifications, (4) persons subject to restraining orders, and (5) probationers.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

4.  After an otherwise lawful sale by a willing firearms dealer, the Defendants prevented the plaintiffs from "keeping and bearing" the arms just purchased for a period of 10 days.

Step #1 of the *Ezell/Chovan/Peruta* two-part test focuses on whether a 10-Day Waiting Period burdens the Second Amendment. That inquiry is a legal one and has already been performed by this Court in its Order Denying the Defendants' Motion for Summary Judgment (Doc #44):

> The first step is a historical inquiry that seeks to determine whether the conduct at issue was understood to be within the scope of the right to keep and bear arms at the time of ratification. *Chester*, 628 F.3d at 680; see *Chovan*, 2013 U.S. App. LEXIS at *23-*25; *N.R.A.*, 700 F.3d at 194; *Ezell v. City of Chicago*, 651 F.3d 684, 702-03 (7th Cir. 2011). If a law burdens conduct that falls outside of the Second Amendment's scope, then the analysis ends and there is no violation. See *N.R.A.*, 700 F.3d at 195; *Ezell*, 651 F.3d at 703.
> [...]
> Under the *Chovan* framework, the first step is to determine whether the challenged law burdens a right protected under the Second Amendment. The WPL prohibits every person who purchases a firearm from taking possession of that firearm for a minimum of 10 days. That is, there is a period of at least 10 days in which California prohibits every person from exercising the right to keep and bear a firearm. There can be no question that actual possession of a firearm is a necessary prerequisite to exercising the right keep and bear arms. Further, there has been no showing that the Second Amendment, as historically understood, did not apply for a period of time between the purchase/attempted purchase of a firearm and possession of the firearm. [fn.3: The Court notes that Harris has not refuted Plaintiffs ' assertion that waiting periods of any duration before taking possession of a firearm were uncommon in both 1791 and 1868. Cf. *Ezell*, 651 F.3d at 702-03; *Chester*, 628 F .3d at 680.] Cf. *Chovan*, 2013 U.S. App. LEXIS 23199 at *25 (" .. . we are certainly not able to say that the Second Amendment, as historically understood, did not apply to persons convicted of domestic violence misdemeanors."). Although Harris argues that the WPL is a minor burden on the Second Amendment, Plaintiffs are correct that this is a tacit acknowledgment that a protected Second Amendment right is burdened. Therefore, the Court concludes that the WPL burdens the Second Amendment right to keep and bear arms.

Order on Defendant's Motion
For Summary Judgment
(Doc #44, pg. 6: 22-28;  and pg. 7:22 -8:7)

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    The "Law of the Case" doctrine ordinarily prohibits a trial court from
2    revisiting a decision made by a higher court, however Ninth Circuit law also
3    cautions a trial court against reconsidering its own prior decisions. See *United*
4    *States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) (stating that "reconsideration of
5    legal questions previously decided should be avoided").
6    The Ninth Circuit has also said that "[u]nder the 'law of the case' doctrine, a
7    court is ordinarily precluded from reexamining an issue previously decided by the
8    same court, or a higher court, in the same case." *United States v. Smith*, 389 F.3d
9    944, 948 (9th Cir. 2004) (citing *Richardson v. United States*, 841 F.2d 993, 996 (9th
10   Cir. 1988)) (emphasis added). "Issues that a district court determines during
11   pretrial motions become law of the case." *United States v. Phillips*, 367 F.3d 846,
12   856 (9th Cir. 2004). "The doctrine is a judicial invention designed to aid in the
13   efficient operation of court affairs, and is founded upon the sound public policy that
14   litigation must come to an end." *Smith*, 389 F.3d at 948 (citations and quotation
15   marks omitted).  At the same time, the "law of the case" doctrine is "not an
16   inexorable command," *Hanna Boys Ctr. v. Miller*, 853 F.2d 682, 686 (9th Cir. 1988)
17   (citation omitted), and is "discretionary." *United States v. Lummi Indian Tribe*, 235
18   F.3d 443, 452 (9th Cir. 2000).
19   Because there is no evidence that waiting periods for firearm purchases were
20   common in 1791 and 1868, *Ezell v. City of Chicago*, 651 F.3d 684, 703 (2011), and
21   because this is a bench trial wherein the Defendants have waived their right to
22   have facts determined by a jury, this Court should exercise its discretion, apply the
23   "law of the case" doctrine and decline to revisit this issue.
24   The Court should make a finding that the Plaintiffs have already made their
25   prima facie case based in the undisputed facts already adjudicated during the
26   Summary Judgment Motion, and that the burden at trial now shifts to the
27   Defendants.
28   / / / /

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

**B. Defendants Have the Burden of Constitutionally Justifying
the 10-Day Waiting Period as Against Plaintiffs
(and Those Similarly Situated) as of Part of Step #2 of the
*Ezell/Chovan/Peruta* Test for Second Amendment Rights.**

The Defendants argue that neither *Chovan* nor *Peruta* expressly states which party has the burden in a Second Amendment case. They are wrong.

"We hold that the government has thereby **met its burden** to show that § 922(g)(9)'s prohibition on gun possession by domestic violence misdemeanants is substantially related to the important government interest of preventing domestic gun violence. Because § 922(g)(9) is supported by an important government interest and substantially related to that interest, the statute passes constitutional muster under intermediate scrutiny." *Chovan* at 1141. (emphasis added)

The *Peruta* case (decided after this Court's summary judgment order) even calls into question the legitimacy of using intermediate scrutiny because that:

(1)   "[A]nalysis [ ] is near-identical to the free-standing "interest-balancing inquiry" that Justice Breyer proposed – and that the majority explicitly rejected – in *Heller. See Heller*, 554 U.S. at 689-90 (Breyer, J., dissenting)(proposing that in the Second Amendment cases the court should "ask[ ] whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests"); *see also id.* at 634-35 (majority opinion) (rejecting a "judge-empowering 'interest-balancing inquiry'" as a test for the constitutionality of Second Amendment regulations because "no other enumerated constitutional right [had its] core protection . . . subjected to [such] a freestanding" inquiry)."

*Peruta* at page 71 of the slip opinion.

And secondly because of a:

(2)   "[D]isagreement with our sister circuits' application of intermediate scrutiny relates to the high degree of deference they afforded the state legislatures' assessments of the fit between the challenged regulations and the asserted government interest they served."

*Peruta* at page 72 of the slip opinion.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    Furthermore, and while still critical of the balancing test implied by

2 intermediate scrutiny, the *Peruta* Court's criticism of that method was borne out

3 further by its finding that: "In light of **the states' failure to demonstrate**

4 **sufficient narrow tailoring** in *Drake, Wollard,* and *Kachalsky*, the gun

5 regulations at issue in those cases should have been struck down even under

6 intermediate scrutiny." *Peruta*, at page 75 of the slip opinion.  (emphasis added)

7    Furthermore, the cases cited by the AG for the proposition that all statutes

8 are presumed Constitutional dealt with low level scrutiny and did not involve

9 fundamental rights.  *Town of Lockport v. Citizens for Community Action at Local*

10 *Level, Inc.*, 430 U.S. 259 (1977) was an equal protection case dealing with a

11 non-suspect class (voters in a specific district) and only required rational basis

12 scrutiny.  *People of State of New York v. O'Neil*, 359 U.S. 1 (1959) dealt with a

13 Privileges and Immunities Clause violation unrelated to the case at hand, and

14 *United State ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827 (9th Cir. 1993)

15 dealt with was a separation of powers case involving the False Claims act, which is

16 totally unrelated to the case at hand.

17    There just isn't any controversy regarding the burden of proof and the burden

18 of persuasion once the Second Amendment, the *Ezell/Chovan/Perurta* line of case

19 are crystal clear that it is the government's burden of proof and the burden of

20 persuasion when Second Amendment rights are at stake.

21
            C.  The 10-Day Waiting Period Law Is Not A Presumptively
22                   Lawful Regulatory Measure

23    Defendants attempt to argue that California's Waiting-Period Law is a

24 longstanding, presumptively lawful regulation. As examples of such laws,

25 Defendants point to the *Heller* Court referencing laws banning possession of

26 firearms by felons and the mentally ill and laws forbidding the carrying of firearms

27 in sensitive places such as schools and government buildings. *District of Columbia*

28 *v. Heller*, 554 U.S. 570, 635 (2008).

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

But in *Chovan*, the government attempted to argue that a federal statute banning people convicted of a misdemeanor of domestic violence was a longstanding presumptively lawful regulation. The court disagreed and found that the government failed to produce evidence that domestic violence misdemeanants have historically been restricted from bearing arms. *U.S. v. Chovan*, 735 F.3d 1127, 1137 (9th Cir. 2013). The Court noted that the first federal firearm restrictions regarding violent offenders was not enacted until 1938 and that "Chovan, who was convicted of simple misdemeanor assault under California Penal Code § 273.5(a) - would not be restricted from possessing firearms under" that statute.

Here, the Defendants cannot produce any evidence that the Waiting-Period Law is a longstanding presumptively lawful regulation. In fact, the AG acknowledges that the first Waiting-Period Law was not enacted until 1923 and the Law was much narrower in impact until 1991.

The AG attempts to save her failing argument by bootstrapping it to a presumptively lawful regulation that is a "condition or qualification on the commercial sale of arms" mentioned- but not explained- in *Heller* and *McDonald*. (AG Trial Brief at pg 12, lns 26-27.) Other than stating that the Waiting-Period Law is a "condition or qualification on the commercial sale of arms", the AG offers no other discussion.

Imposing the 10-day waiting period on a California gun buyer who already: (1) own guns, and/or (2) has a license to carry a firearm, and/or (3) has obtained a Certificate of Eligibility, infringes the rights of the law-abiding, while doing nothing to address the policy objective (longstanding or otherwise) of keeping guns out of the hands of: (1) felons, (2) violent misdemeanants, (3) persons with mental-health disqualifications, (4) persons subject to restraining orders, and (5) probationers.

Said another way, the State of California has at least three procedures to address prohibited persons who may not lawfully acquire/own/possess firearms:

(1)      The Courts: The criminal justice system, the civil justice system and

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

the civil mental health system must advise people who become
prohibited that they cannot acquire/own/possess firearms.  For each of
the five categories that Defendants cite as persons who might become
prohibited, that individual gun owner must:

> a.) be charged with a crime, adjudicated and sentenced to
> become a felon, violent misdemeanant or probationer and given
> notice of the firearm prohibition.  Penal Code §§ 29810, 29815.
>
> b.) be served with notice and given an opportunity to be heard if
> they are to be subject to restraining orders. Penal Code § 29825.
>
> c.) be provided with notice and an opportunity to be heard if the
> their guns rights are revoked due to a mental health hold.

Welfare & Institutions Code §§ 5150, 8100, 8101, 8102, 8103.

(2) The $24 Million "Armed and Prohibited Persons Program" (Penal Code §§
30000-30015), which is actively seeking out, confiscating weapons and
prosecuting gun owners whose firearms have been registered in a
computerized and networked database operated by California since 1991.

(3) The background check (not challenged in this case) and the 10-Day
Waiting Period. (subject of this lawsuit)

Requiring a 10-Day Waiting Period before a dealer can release a firearm to a
first time purchaser, who does not presently own/possess a firearm is not a
condition on the commercial sale of firearms.  Its rationale lies in the fact that this
new gun purchaser is a stranger to the state's database, and the additional
cautionary policy of a "cooling off period" to may actually prevent a first time gun
buyer from committing an impulsive, violent act.

None of these rationales apply to Plaintiffs (and those similarly situated) who
(1) already have guns in the state's database, (2) have a license to carry a firearm
issued by their local police chief or sheriff, or (3) have obtained a Certificate of
Eligibility to own/acquire/possess guns issued by the Attorney Generals Office.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Resp Defs' Trial Brief                    -14-                    *Silvester, et al. v. Harris*

D.  <u>The History and Tradition of the Commerce in Arms at the Time of the
Founding and the Ratification of Fourteenth Amendment Did Not
Include Government Mandated Waiting Periods.</u>

Notwithstanding that Plaintiffs do not bear the burden of proof on this issue, the historical record of firearms commerce at the time of the Founding (1791) and at the time of the Fourteenth Amendment's ratification (1868) indicates that not only were guns readily available during those time periods, but that the only legal restrictions on firearm sales were those aimed at keeping Free Blacks and Former Slaves disarmed (i.e., these were not mere regulatory conditions on the commercial sale of firearms):

1.  From <u>The Founder's Second Amendment – Origins of the Right to Bear Arms</u>, by Stephen P. Halbrook:

    a.  Page 31: "It was no secret that the people were arming themselves. That could be surmised in newspaper advertisements, such as an early 1774 notice in the *Boston Gazette* that a merchant 'has just imported for sale, a neat assortment of guns, complete with bayonets, steel rods and swivels, a few neat fowling pieces, pocket pistols.'" fn.8 - *Boston Gazette*, January 24, 1774 at 1, col. 3.

    b.  Page 38: "The Crown forcibly purchased arms and ammunition held in the inventory of merchants, and an order went out that the inhabitants must turn in their arms." fn. 45 - Fischer, *Paul Revere's Ride*, 50. (Fischer, David Hackett. Paul Revere's Ride. New York: Oxford University Press, 1994: 331. ISBN 0-19-509831-5)

    c.  Page 50: "Daniel Dulany of Maryland referred to 'democratical governments , where the power is in the hands of the people and were there is not the least difficulty or jealously out putting arms into the hands of every man in the country.'" fn. 102 - Daniel Dulany Jr., *Considerations on the Measures carrying on with Respect to the British Colonies in North America* (London: R. Galdwin, 1774), 57.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

d. Page 50: "The Americans 'have several hundred thousands and perhaps near a million men capable of bearing arms in their own defense....'" Ibid, 117.

e. Page 65: "There are, moreover, gunsmiths enough in this Province to make one hundred thousand stands of arms in one year, at twenty-eight shillings sterling apiece, if they should be wanted." fn. 34 - Force ed., *American Archives*, 4th series, vol. 1, at 1066. See also Frank A. Mumby, *George III and The American Revolution* [London: Constable & Co., 1924), 365-66.

2. "Our citizens have always been free to make, vend and export arms. It is the constant occupation and livelihood of some of them." 3 THE WRITINGS OF THOMAS JEFFERSON 230 (T.J. Randolph, ed., 1830).

3. The plethora of gun stores, gunsmiths and arms dealers from the founding era and beyond are best portrayed by reference to these commercial ads for the sale of firearms and gun smithing services, copies of which are attached as Exhibits A & B to this memorandum.

a. Early American Gunsmiths 1650-1850, by Henry J. Kauffman.

b. The Pennsylvania - Kentucky Long Rifle, by Henry J. Kauffman.

4. The Defendants appear to concede that guns were readily available after the Civil War (though the concession appears to be by omission) because they wrongly argue that "From colonial times to the Civil War, guns were expensive, cumbersome, and made from materials (mostly iron) that deteriorated rapidly even with regular maintenance." (Def. Trial Brief, pg 15, lines 10-12.) The Supreme Court explored this thesis about the commonality and cultural saturation of keeping and bearing arms by Americans at different stages of our history. They came to a different conclusion:

a. From *District of Columbia v. Heller*, 554 U.S. 570 (2008):

i. "In the colonial and revolutionary war era, [small-arms] weapons

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    used by militiamen and weapons used in defense of person and

2    home were one and the same." *State v. Kessler*, 289 Ore. 359, 368,

3    614 P.2d 94, 98 (1980) (citing G. Neumann, Swords and Blades of

4    the American Revolution 6-15, 252-254 (1973))." *Heller* at 625.

5        ii.    "But contemporary sources make clear that the phrase "bear

6               arms" was often used to convey a military meaning without those

7               additional words.  See, e.g., To the Printer, Providence Gazette

8               (May 27, 1775) ("By the common estimate of three millions of

9               people in America, allowing one in five to bear arms, there will be

10              found 600,000 fighting men"); Letter of Henry Laurens to the

11              Mass. Council (Jan. 21, 1778), in Letters of Delegates to Congress

12              1774-1789, p 622 (P. Smith ed. 1981) ("Congress were yesterday

13              informed . . . that those Canadians who returned from Saratoga . .

14              . had been compelled by Sir Guy Carleton to bear Arms")" *Heller*

15              at 648, fn. 9 (Stevens, J., Breyer J., dissenting)

16   b.   From *McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010):

17       i.    "After the Civil War, many of the over 180,000 African Americans

18             who  served in the Union Army returned to the States of the old

19             Confederacy, where systematic efforts were made to disarm them

20             and other blacks. See *Heller*, 554 U.S., at ___, 128 S. Ct. 2783, 171

21             L. Ed. 2d 637; E. Foner, Reconstruction: America's Unfinished

22             Revolution 1863-1877, p. 8 (1988)" *McDonald* at 3038.

23       ii.   "In one town, the "marshal [took] all arms from returned colored

24             soldiers, and [was] very prompt in shooting the blacks whenever

25             an opportunity occur[red]." H. R. Exec. Doc. No. 70, at 238

26             (internal quotation marks omitted). As Senator Wilson put it

27             during the debate on a failed proposal to disband Southern

28             militias: "There is one unbroken chain of testimony from all people

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1  that are loyal to this country, that the greatest outrages are

2  perpetrated by armed men who go up and down the country

3  searching houses, disarming people, committing outrages of every

4  kind and description." 39th Cong. Globe 915 (1866)." *McDonald* at

5  3039.

6  5.  During Reconstruction the only laws regulating the sales of guns were those

7  like the States of Mississippi and Georgia that prohibited the sale of firearms

8  during this period prior to the ratification the Fourteenth Amendment:

9  a.  <u>Mississippi Statute of 1865</u>

10  i.  That it shall not be lawful for any freedman, mulatto, or free

11  person of color in this State, to own fire-arms, or carry about his

person a pistol or other deadly weapon.

12  ii.  That after the 20th day of January, 1866, any person thus

13  offending may be arrested upon the warrant of any acting justice

14  of the peace, and upon conviction fined any sum no exceeding $100

or imprisoned in the county jail, or put to labor on the public

15  works of any county, incorporated town, city, or villiage, or any

16  term not exceeding three months.

17  iii.  That if any gun, pistol or other deadly weapon be found in the

18  possession of an freedman, mulatto or free person of color, the

same may by any justice of the peace, sheriff, or constable be

19  taken from such freedman, mulatto, or free person of color, and if

20  such person is proved to be the owner thereof, the same shall,

upon order of any justice of the peace, be sold and the proceeds

21  thereof paid over to such freedman, mulatto, or persons of color

22  owning the same.

23  iv.  That is shall not be lawful for any person to sell, give, or lend fire-

arms or ammunition of any description whatever, to any

24  freedman, free negro or mulatto; and any person so violating the

25  provisions of this act shall be guilty of a misdemeanor, and upon

conviction thereof, shall be fined the sum of not less than fifty nor

26  more than one hundred dollars, at the discretion of the jury trying

27  the case.

28

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

b. ACTS OF THE GENERAL ASSEMBLY OF THE STATE OF GEORGIA, PASSED IN MILLEDGEVILLE, AT AN ANNUAL SESSION IN NOVEMBER AND DECEMBER, 1860. PART I.--PUBLIC LAWS. TITLE XIX. PENAL CODE. Full Title: *An Act to add an additional Section to the 13th Division of the Penal Code, making it penal to sell to or furnish slaves or free persons of color, with weapons of offence and defence; and for other purposes therein mentioned.*

    i. SECTION I. The General Assembly of the State of Georgia do enact, That from and after the passage of this Act, any person other than the owner, who shall sell or furnish to any slave or free person of color, any gun, pistol, bowie knife, slung shot, sword cane, or other weapon used for the purpose of offence or defence, shall, on indictment and conviction, be fined by the Court in a sum not exceeding five hundred dollars, and imprisoned in the common Jail of the county not exceeding six months, at the discretion of the Court; Provided, That this Act shall not be so construed as to prevent owners or overseers from furnishing a slave with a gun for the purpose of killing birds, &c., about the plantation of such owner or overseer. [Sidenote: Selling or furnishing weapons to slaves or free negroes, prohibited. Penalty.] [Sidenote: Proviso as to owners and overseers, in certain cases.]

    ii. SEC. II. And be it further enacted, That it shall be the duty of the several Judges of the Superior Courts of this State, to give specially in charge to the Grand Juries of the several Courts, the provisions of this act. [Sidenote: Judges to give this Act in charge.]

    iii. SEC. 3. Repeals conflicting laws.

    Approval Date: Assented to 19th December, 1860.

Defendants are not merely mistaken on the law and history of the regulations attending the commercial sale of firearms in 1791 and 1868. At best there is an irrelevant dispute about the widespread availability of firearms. Critical to this trial however, is that they have failed to address the principal point raised by this Court's Order on Defendant's Motion for Summary Judgment (Doc #44). They haven't identified a **_law_** from any jurisdiction from those periods that imposed a waiting period of any length for exercising the right to acquire firearms.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

E.  <u>Waiting Periods As Onerous as California's are</u>
<u>Not Common in Other Jurisdictions</u>

Defendants contend that 10 U.S. States and the District of Columbia have waiting periods. [page 12, line 17-25][1] This is done to make the argument that waiting periods are common and therefore are not an unreasonable burden on the Second Amendment.

Flaw #1 in that argument is that there is no showing that *Heller*, *McDonald*, and the growing body of Second Amendment case law, which is in its infancy, have been brought to bear on such laws.

Flaw #2 is that this assertion by the Defendants, which is apparently taken from a website run by a gun control advocacy group, is an overly simplistic analysis of the laws in those jurisdictions. In fact, it appears that only California and the District of Columbia generally impose a waiting period for all gun purchases. As for the other examples cited by the Defendants:

1.  Hawaii - has a 12 day waiting period - currently under challenge.  But Hawaii's waiting period does not apply to subsequent purchases of long guns during the year following an initial purchase.
    http://www.capitol.hawaii.gov/hrscurrent/Vol03_Ch0121-0200D/HRS0134/HRS_0134-0002.htm

2.  Illinois - has a 24 hour waiting period for long guns (rifles/shotguns) and only imposes a 72 hour period for handguns. 18.720 Ill. Comp. Stat. 5/24-3(A)(g).

3.  Minnesota - has no waiting period for long guns that are not classified as Assault Weapons.  Possession of a License to Carry a Concealed Firearm exempts a Minnesota gun-owner from the Assault Weapon and

---

[1] But note that the State of Washington has a five day waiting period and was not included in the list provided bye Defendants. However a License to Carry a firearm exempts buyers from that waiting period. http://apps.leg.wa.gov/rcw/default.aspx?cite=9.41.090

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1   Handgun waiting periods.  A Minnesota handgun purchase permit
2   requires an initial 7 day wait, and is then valid for a full year with no
3   further waiting periods on subsequent purchases.
4       https://www.revisor.mn.gov/statutes/?id=624.711
5       https://www.revisor.mn.gov/statutes/?id=624.7131
6   4.  Rhode Island - has a seven day waiting period for gun purchases, but
7       exempts the waiting period if someone has a License to Carry a
8       Concealed Firearm in that state.  R.I. Gen. Laws §§ 11-47-35(a)(1),
9       11-47-35.1, 11-47-35.2.
10  5.  Florida - has a 3 day waiting period that only applies to retail sale of
11      handguns.  Anyone with a License to Carry a Concealed Firearm is
12      exempt.  The waiting period does not apply to long arms.  Fla. Stat.
13      Ann. § 790.0655(1); Fla. Const. art. VIII, § 5(b).
14  6.  Iowa - has a permit process to purchase firearms that is valid for one
15      year and unlimited purchases.  The permit is valid 3 days after
16      immediate issuance. There is no waiting for long guns.  Any person with
17      a License to Carry a Concealed Firearm is exempt from the having to
18      obtain the purchase permit.
19      https://coolice.legis.iowa.gov/Cool-ICE/default.asp?Category=billinfo
20      &Service=IowaCode&input=724#724.15
21  7.  Maryland - has a seven day waiting period that only applies to
22      handguns and Assault Weapons.  The purchase of long guns is exempt
23      from the waiting period.  Md. Code Ann., Pub. Safety §§ 5-123 – 5-125.
24  8.  New Jersey - has a waiting period for handguns, but not for long guns.
25      Alternatively, NJ has a permit process that takes 7 days but is valid for
26      90 days allowing additional purchases without waiting periods.
27      https://www.atf.gov/files/publications/download/p/atf-p-5300-5-31st-editi
28      ion/States/atf-p-5300-5-new-jersey-2010.pdf

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    9.    Wisconsin - has a handgun only waiting period that is only 48 hours and

2          which does not apply to private party transactions.  There is no waiting

3          period for long guns. http://docs.legis.wi.gov/statutes/statutes/175/35

4    California's 10-Day Waiting Period, as applied to a California gun buyer who

5    already: (1) own guns, and/or (2) has a license to carry a firearm, and/or (3) has

6    obtained a Certificate of Eligibility, is not rational or necessary to achieve the

7    interests asserted by the Defendants.

8

9                F.   The Burdens of the Waiting Period are not Trivial

10   Defendants try to characterize the burden of the waiting period as trivial.

11   But that is a necessarily subjective judgment.  Furthermore it is irrelevant.  The

12   Second Amendment is not part of a Bill of Needs, it is part of a Bill of Rights.  Try

13   explaining to a woman who just secured a Domestic Violence Restraining Order

14   against an abusive ex-boyfriend who beat her, that waiting 10 days to acquire the

15   means of self-defense is trivial.

16   The waiting period effectively limits the size of the intrastate gun market to

17   those places reachable by car – significantly increasing prices, expenses to ship and

18   pay transfer fees and otherwise limiting choice and selection. Consumers enjoy

19   value in the ability to acquire a product where they buy it and where it is offered for

20   sale. As the Supreme Court explained, in striking down a New York law barring all

21   but licensed pharmacists from selling contraceptives,the restriction of distribution

22   channels to a small fraction of the total number of possible retail outlets renders

23   contraceptive devices considerably less accessible to the public, reduces the

24   opportunity for privacy of selection and purchase, and lessens the possibility of price

25   competition. *Carey v. Pop. Servs. Int'l*, 431 U.S. 678, 689 (1977) (footnotes omitted);

26   cf. *Doe v. Bolton*, 410 U.S. 179 (1973) (striking down requirement that

27   abortions only be performed in hospitals).

28   / / / /

## IV. PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS ARE VIABLE AND ACTUALLY SUGGEST THE REMEDY REQUIRED

Plaintiffs' Equal Protection claim is predicated on the allegation that a state actor is engaged in unequal treatment of similarly situated persons exercising a fundamental right (i.e., the Second Amendment) and that this requires the application of strict scrutiny to the government's policy. *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972) and *Carey v. Brown*, 447 U.S. 455 (1980).

That Equal Protection claim is based on the irrational and under-inclusive categories of (18) exceptions to the 10-Day Waiting Period that are not even tethered to the justifications advanced by the Defendants for applying this policy against Plaintiffs and those other gun owners who are similarly situated.

California's Supreme Court issued an opinion rejecting an Equal Protection claim challenging California's Assault Weapons Control Act by applying a mere rational basis test. That Court rejected the idea that the right of self-defense was a fundamental right. From *Kasler v. Lockyer* 23 Cal. 4th 472 (2000):

> This fundamental right plaintiffs locate in article I, section 1 of the California Constitution, which provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." If plaintiffs are implying that a right to bear arms is one of the rights recognized in the California Constitution's declaration of rights, they are simply wrong. No mention is made in it of a right to bear arms. (See *In re Rameriz* (1924) 193 Cal. 633, 651 [226 P. 914, 34 A.L.R. 51] ["The constitution of this state contains no provision on the subject"].

The opinion went on find that "[A]s the AWCA does not burden a fundamental right under either the federal or the state Constitutions, the rational basis test applies." *Id.*, at 481.

*District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) rendered *Kasler* and the reasoning underlying that

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

opinion obsolete. The "right to keep and bear arms" is a fundamental right and Equal Protection challenges to gun control laws that infringe that fundamental right must be subject to heightened scrutiny.

While Plaintiffs aver that their Second Amendment claim is strong enough for this Court to find for them without reaching the Fourteenth Amendment issues, in the same manner the Ninth Circuit dealt with Plaintiff/Appellants' additional claims in *Peruta v. County of San Diego*, 2014 WL 555862 (9th Cir. Feb. 13, 2014) at page 77 of the slip opinion, footnote 22. ("Because we reverse on the basis of the Second Amendment issue, we do not reach any of Peruta's other claims."), the Fourteenth Amendment claim does suggest the remedy this court may want to consider.

From a practical point of view, this court can either:

A.   Issue an injunction that Californians who: (1) already have guns, (2) have a license to carry a firearm at all times issued by their local police chief or sheriff, or (3) have obtained a Certificate of Eligibility to own/acquire/possess guns issued by the Attorney Generals Office, are not subject to the 10-Day Waiting Period, effectively expanding the number of exceptions from 18 to 21;  – or –

B.   Issue an injunction that will invalidate the 10-Day Waiting Period for all Californians, and then stay that decision for six months to give the California Legislature time to fashion a legislatively based remedy. *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012).

## CONCLUSION

The 10-Day Waiting Period is not holy writ. Its purpose is to allow for checking a database for persons disqualified from owning/possessing firearms and to prevent impulsive violent acts with newly purchased firearms.

What all this means is that the State of California must either: (A) concede that the current regime of requiring the registration of firearms and their owners

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1   since 1991 is an abject failure and that registration schemes and computer

2   databases are unreliable (i.e., that's why they need 10 days); or (B) concede that the

3   Armed Prohibited Persons System makes the 10-Day Waiting Periods redundant for

4   current gun owners who are already in the system.

5       They can't have it both ways.

6       Respectfully Submitted on March 18, 2014 by:

7       /s/ Victor Otten
        Victor J. Otten (SBN 165800)

8       OTTEN & JOYCE, LLP
        3620 Pacific Coast Hwy, Suite 100

9       Torrance, California 90505
        Phone: (310) 378-8533

10      Fax: (310) 347-4225
        E-Mail: vic@ottenandjoyce.com

11

12      /s/ Donald Kilmer

13      Donald E. J. Kilmer, Jr. [SBN: 179986]
        LAW OFFICES OF DONALD KILMER

14      1645 Willow Street, Suite 150
        San Jose, California 95125

15      Voice:      (408) 264-8489
        Fax:  (408) 264-8487

16      E-Mail: Don@DKLawOffice.com

17  Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Resp Defs' Trial Brief          -25-          *Silvester, et al. v. Harris*

# DECLARATION OF E-SERVICE

Case Name:      Silvester v. Harris

Court Name:     U.S. District Court, Eastern District of California (Fresno)

Case No.:        1:11-cv-02137-AWI-SKO

I, Donald Kilmer, declare:

I am employed in the at 1645 Willow Street, Suite 150, San Jose, CA . I am 18 years of age or older and not a party to this matter.

I understand that all parties to the above-entitled case are represented by at least one attorney who is registered for electronic filing and service in the above-entitled court.

On March 18, 2014, I electronically filed and, therefore, to the best of my understanding, caused to be electronically service through the Court's ECF system the attached PLAINTIFFS; RESPONSE TO DEFENDANTS' TRIAL BRIEF.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on March 18, 2014, at San Jose, California.

  /s/ Donald Kilmer

Attorney for Plaintiffs.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487