1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  MARK R. BECKINGTON, State Bar No. 126009
   Supervising Deputy Attorney General
3  JONATHAN M. EISENBERG, State Bar No. 184162
   Deputy Attorney General
4    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013
5    Telephone:  (213) 897-6505
     Fax:  (213) 897-5775
6    E-mail: Jonathan.Eisenberg@doj.ca.gov
   PETER H. CHANG, State Bar No. 241467
7  Deputy Attorney General
     455 Golden Gate Ave., Suite 11000
8    San Francisco, CA 94102
     Telephone: (415) 703-5939
9    Fax: (415) 703-1234
     Email: Peter.Chang@doj.ca.gov
10 *Attorneys for Defendant Kamala D. Harris, Attorney
   General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **JEFF SILVESTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,**<br><br>Plaintiffs,<br><br>v.<br><br>**KAMALA HARRIS, Attorney General of California (in her official capacity), and DOES 1 to 20,**<br><br>Defendants. | 1:11-cv-02137-AWI-SKO<br><br>**DEFENDANT KAMALA D. HARRIS'S RESPONSE TO PLAINTIFFS' TRIAL BRIEF**<br><br>Trial Date:  March 25, 2014<br>Time:  8:30 a.m.<br>Courtroom:  2<br>Judge:  The Hon. Anthony W. Ishii |

Defendant Kamala D. Harris, Attorney General of California (the "Attorney General"), submits the following response to the trial brief ("Plaintiffs' Trial Br.") of Plaintiffs Jeff Silvester ("Silvester"), Brandon Combs ("Combs"), The Second Amendment Foundation, Inc. ("SAF"),

1

and The Calguns Foundation, Inc. ("CGF"; together with Silvester, Combs, and SAF, "Plaintiffs.")

**RESPONSE TO PLAINTIFFS' TRIAL BRIEF**

The Attorney General disputes at least nine of Plaintiffs' trial brief's assertions of fact or points of law, as follows:

*Foremost*, Plaintiffs' trial brief obscures the question of just what the present lawsuit is about. In their complaint, Plaintiffs make a tailored constitutional attack on California Penal Code sections 26815 and 27540 (the "Waiting-Period Law"). Plaintiffs have not sought to enjoin enforcement of the law's mandatory 10-day waiting period for California firearm transactions in all cases, but only with respect to purchasers who have been through the waiting period before, in connection with a past firearm transaction, who remain legally allowed to have and to acquire firearms, and who want to obtain *more* firearms. (First Amended Complaint (Dkt. # 10) at 13:12-19.) Indeed, the Court's February 4, 2014, pretrial order ("PTO") records Plaintiffs' demand for an injunction that is focused in this way on second-time or subsequent firearm purchasers. (PTO at 4:24-5:5; accord Plaintiff's Opposition to the Attorney General's Motion for Summary Judgment (Dkt. # 32) at 2:6-16 [reflecting similar, narrow scope of requested relief].)

Plaintiffs did *not* pray for relief that the Waiting-Period Law be invalidated with respect to first-time firearm purchasers. Plaintiffs' trial brief, however, asserts that Plaintiffs are now making a "*generalized challenge*" to the entire Waiting-Period Law. (Plaintiffs' Trial Br. at 12:9 [emphasis added]; *see also id.* at 1:13-1:14 [complaining that law applies to "nearly all firearm purchasers"]; 2:17 ["every single firearm purchaser"]; 10:3-10:4 [ "[e]very gun purchaser"]; 10:11-10:12 [complaining that "the waiting period laws apply across the board to everyone"]; 10:28-11:1 ["every single gun purchaser"]; 14:13 [indicating that case being brought on behalf of "public in general"].) It is too late into this case for Plaintiffs to expand the scope of this case so dramatically. This Court should hold Plaintiffs to their past pleadings defining the case's true scope—a tailored attack on the Waiting-Period Law as applied to subsequent firearm purchasers in California.

If the Court does entertain a broader claim as to whether the Waiting-Period Law facially

2

Defendant Harris's Responsive Trial Brief (1:11-cv-02137-AWI-SKO)

and The Calguns Foundation, Inc. ("CGF"; together with Silvester, Combs, and SAF, "Plaintiffs.")

**RESPONSE TO PLAINTIFFS' TRIAL BRIEF**

The Attorney General disputes at least nine of Plaintiffs' trial brief's assertions of fact or points of law, as follows:

*Foremost*, Plaintiffs' trial brief obscures the question of just what the present lawsuit is about. In their complaint, Plaintiffs make a tailored constitutional attack on California Penal Code sections 26815 and 27540 (the "Waiting-Period Law"). Plaintiffs have not sought to enjoin enforcement of the law's mandatory 10-day waiting period for California firearm transactions in all cases, but only with respect to purchasers who have been through the waiting period before, in connection with a past firearm transaction, who remain legally allowed to have and to acquire firearms, and who want to obtain *more* firearms. (First Amended Complaint (Dkt. # 10) at 13:12-19.) Indeed, the Court's February 4, 2014, pretrial order ("PTO") records Plaintiffs' demand for an injunction that is focused in this way on second-time or subsequent firearm purchasers. (PTO at 4:24-5:5; accord Plaintiff's Opposition to the Attorney General's Motion for Summary Judgment (Dkt. # 32) at 2:6-16 [reflecting similar, narrow scope of requested relief].)

Plaintiffs did *not* pray for relief that the Waiting-Period Law be invalidated with respect to first-time firearm purchasers. Plaintiffs' trial brief, however, asserts that Plaintiffs are now making a "*generalized challenge*" to the entire Waiting-Period Law. (Plaintiffs' Trial Br. at 12:9 [emphasis added]; *see also id.* at 1:13-1:14 [complaining that law applies to "nearly all firearm purchasers"]; 2:17 ["every single firearm purchaser"]; 10:3-10:4 [ "[e]very gun purchaser"]; 10:11-10:12 [complaining that "the waiting period laws apply across the board to everyone"]; 10:28-11:1 ["every single gun purchaser"]; 14:13 [indicating that case being brought on behalf of "public in general"].) It is too late into this case for Plaintiffs to expand the scope of this case so dramatically. This Court should hold Plaintiffs to their past pleadings defining the case's true scope—a tailored attack on the Waiting-Period Law as applied to subsequent firearm purchasers in California.

If the Court does entertain a broader claim as to whether the Waiting-Period Law facially

violates the Second Amendment in all circumstances, Plaintiffs face a particularly heavy burden. Facial constitutional challenges are disfavored; the challenged law will survive unless there are "no set of circumstances" under which application of the law would be constitutional. *Alphonsus v. Holder*, 705 F.3d 1031, 1042 n.10 (9th Cir. 2013). At the very least, it is certainly constitutional to enforce the Waiting-Period Law to allow time for California's Bureau of Firearms ("BOF") to complete a complicated background check on a prospective firearm purchaser whose computerized criminal-history records are incomplete, showing several arrests but no dispositions of the arrests. These circumstances, which commonly occur, require a human analyst to spend a week or more calling remote police departments to track down the records to make the file complete, before it can be decided whether to approve or to deny the firearm-purchase application.

*Second*, although Plaintiffs profess to support background checks on all firearm purchasers (Plaintiff's Trial Br. at 5:2-5:3 ["Significantly, Plaintiffs have no opposition to the State performing a background check on all firearm purchasers"]), they repeatedly assert, without factual support, that BOF could perform effective background checks "in mere seconds over the internet." (Plaintiffs' Trial Br. at 5:16; *see also id.* at 5:3-5:5 [touting "virtually instantaneous" background checks for "vast majority of cases"].) Plaintiffs have no support for these assertions, which are merely speculations. Plaintiffs did not conduct any discovery into how California's background-check system works, or why the background checks take as long as they do. The trial will reveal the actual, contrary facts, including the following:

(1) the vast majority of background checks require review and work by a human analyst, and cannot be completed instantaneously;

(2) the Armed Prohibited Persons System ("APPS")[1] cannot serve as a legitimate instantaneous background check system; APPS has information about only a fraction of prospective firearm purchasers and firearms in circulation; and

(3) the federal National Instant Criminal Background Check System ("NICS") annually

---

[1] Referenced by Plaintiffs as the Prohibited Armed Persons File system ("PAPF"). *See* Plaintiffs' Trial Br. at 5:5.

fails to detect thousands of disqualified firearm purchasers before they are allowed to—and do—obtain deadly firearms.

All these facts and others underline the constitutionality of California's current system.

*Third*, the Waiting-Period Law cannot fairly be seen to burden the Second Amendment right of Silvester and Combs, because they admit having firearms and having had them at all times relevant to the instant case. Plaintiffs' counterarguments are unavailing. Plaintiffs' abstract complaint that Silvester and Combs, hypothetically, might have firearms that are not optimally suited for self-defense (Plaintiffs' Trial Br. at 5:14-5:16) and so might need other, different firearms lacks any factual or legal basis. Silvester and Combs cannot show that they have been denied an opportunity to implement their Second Amendment rights as defined in *District of Columbia v. Heller*, 554 U.S. 570 (2008). Furthermore, they cite no authority recognizing a violation of *Heller* in these circumstances or supporting their expansive treatment of the Second Amendment.

*Fourth*, Plaintiffs advocate an erroneous approach to the historical analysis of the Second Amendment that is called for in this case. In analyzing the historical context of the scope of the Second Amendment right, the Ninth Circuit in *Peruta* "assume[d] that the [Second Amendment] right had the same scope at the time of incorporation [against the states] as it did at the time of the founding." *Peruta v. County of San Diego,* 2014 WL555862, at *5, n.3. Plaintiffs further err in asserting that the historical inquiry is limited to determining whether the historical record contains an exact analogue for the challenged law or regulation. (Plaintiffs' Trial Br. at 7:25-8:1.) The United States Supreme Court teaches otherwise; courts should turn to *whatever* sources, not just legislation, that shed light on the public understanding of the Second Amendment in the era of the amendment's ratification. *Heller*, 554 U.S. at 605-619. In the present case, the Attorney General has listed such sources in the pretrial statements and the pretrial order in the action at bar, and discussed the sources in the trial brief. Plaintiffs have failed to designate similar materials, choosing instead to rely, for this part of the analysis, on nothing more than negative assumptions about the historical pedigree of a single type of statute.

*Fifth*, Plaintiffs shortchange the Waiting-Period Law's status as a longstanding,

presumptively lawful regulatory measure. The Waiting-Period Law, dating to 1923, is about as old as federal felon-dispossession laws that *Heller*, at 554 U.S. at 626, expressly labeled longstanding, presumptively lawful regulatory measures. *See United States v. Chester*, 628 F.3d 673, 679 (4th Cir. 2010) ("Federal felon dispossession laws. . .were not on the books until the twentieth century"). The Waiting-Period law warrants the same treatment that the Supreme Court recognized applies to felon-dispossession laws.

*Sixth*, Plaintiffs plainly err in pronouncing the Waiting-Period Law an "absolute" burden on the Second Amendment right. (Plaintiffs' Trial Br. at 8:5.) The 10-day waiting period to pick up a firearm is temporary and is therefore *the opposite of* an absolute prohibition. An example of an absolute burden, assuming that the burden implicates a core Second Amendment right, is the federal lifetime ban on firearm possession by domestic-violence misdemeanants, which ban was at the center of *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013); *see also Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) (characterizing as "prohibitory" a regulatory combination of (1) a requirement that firearm owners complete an hour of training at a firing range and (2) a ban on firing ranges within jurisdiction). With the Waiting-Period Law in effect, Silvester and Combs have firearms and presumably could have bought dozens more firearms in the last two-and-a-half years. With the Waiting-Period Law in effect, there were nearly one million lawful firearm transactions in California last year. The Waiting-Period Law is not an absolute restriction on anybody or anything.

For similar reasons, Plaintiffs fail in their attempt to equate the Waiting-Period Law with a prior restraint on speech, and thereby to have strict scrutiny applied to the Waiting-Period Law. (Plaintiffs' Trial Br. at 9:23-9:25.) A prior restraint on speech forbids speech. *See Madsen v. Women's Health Cntr., Inc.*, 512 U.S. 753, 797-798 (1994) (Scalia, J., concurring in part, dissenting in part). In contrast, the Waiting-Period Law only temporarily delays delivery of a firearm to a person who may already have another firearm, and/or who still may borrow a firearm from some other person. A person subject to the Waiting-Period Law is not forbidden to exercise his or her Second Amendment right, even temporarily. Thus, there is no good reason, derived from the law of prior restraints on speech, to apply strict scrutiny to the Waiting-Period Law.

5

*Seventh*, Plaintiffs ask a faulty rhetorical question, "Why would someone with a gun safe full of guns go out and purchase a specific firearm to commit a crime of passion?" (Plaintiffs' Trial Br. at 10:16-10:18.) There are several good answers to this question. For example, the Court will hear testimony at trial that a person may be making an illegal "straw purchase," on behalf of another person who is legally prohibited from possessing or acquiring firearms. BOF may need time to investigate the suspicious prospective purchase. Moreover, some of Plaintiffs' own arguments, and the deposition testimony of Silvester and Combs, cited in the Attorney General's opening trial brief, suggest another answer: the firearms that the person has may not be available, may not be working, or may not be suited for a particular purpose, and so the person wants to get a different firearm.

*Eighth*, Plaintiffs give a misleading description of AB 500. (Plaintiffs' Trial Br. at 11:2-11:14.) AB 500 provides, in part, that the Department of Justice must immediately notify a firearms dealer to delay the transfer of a firearm where the Department is unable to complete the background check within the 10-day waiting period, and further that where the Department is unable to ascertain whether a prospective purchaser is ineligible to receive the firearm within 30 days of the submission of an application to purchase firearm, the Department must notify the dealer, who would then be authorized to transfer the firearm to the purchaser. Contrary to Plaintiffs' characterization of AB 500, that law does *not* mandate or even suggest that the 10-day waiting period should apply only to "cases where there is probable cause to delay a transaction" and not to other cases. (*Id.* at 11:3-11:4.) The 10-day waiting period remains in effect, just as before the enactment of AB 500.

*Ninth*, Plaintiffs make an erroneous critique of the Attorney General's defense of the statutory exemptions to the Waiting-Period Law. Plaintiffs argue that the statutory exemptions undercut the rationale for the Waiting-Period Law. (Plaintiffs' Trial Br. at 12:22-23.) Contrary to the Plaintiffs' flawed argument, the Waiting-Period Law's statutory exemptions have the effect of tailoring the main law, minimizing the inconvenience of the waiting period for as few people as reasonably possible, thereby *bolstering* the law's constitutionality. *Cf. People v. Flores*, 169 Cal. App. 4th 568, 576-577 (2008) (finding that exemptions to California's open-carry firearm

6

Defendant Harris's Responsive Trial Brief (1:11-cv-02137-AWI-SKO)

regulations bolster that law's constitutionality).

Similarly, it is incorrect to assume that the Attorney General's arguments in defense of the exemptions, originally oriented for rational-basis review, are insufficient to shepherd the law through heightened scrutiny. And in any event, the Attorney General expects, at trial, to proffer persuasive evidence about the rationales for the exemptions.

## DISCUSSION OF *CHESTER* AND *EZELL* OPINIONS

In the order on the motions in limine, the Court requested that the parties address how the judicial opinions in *Chester*, *supra*, and *Ezell*, *supra*, might apply in the present case with respect to allocating the burden of proof. The Attorney General responds to that request now. In brief, both of those out-of-circuit cases, with some minor distinctions, use the basic two-step Second Amendment inquiry also found in Ninth Circuit authority, which the Attorney General discussed at length in her opening trial brief.

*Chester* uses the same two-step Second Amendment inquiry (*see id.*, 628 F.3d at 680) adopted in *Chovan*, 735 F.3d at 1136. Regarding the first part of the first step of the inquiry ("Step 1A"), *Chester*, 628 F.3d at 679, acknowledged that it was "unclear" "whether *Heller* was suggesting that 'longstanding prohibitions' such as these were historically understood to be valid limitations on the right to bear arms or did not violate the Second Amendment for some reason." *Id.* After all, *Heller* identified the "longstanding" prohibition on possession of firearms by felons as one of the "presumptively lawful regulatory measures," and yet federal felon dispossession laws were not on the books until the 1930's and the historical evidence on "whether felons were protected by the Second Amendment at the time of its ratification was inconclusive." *Id.* at 679 & 681.

*Chester* next prescribes a historical inquiry ("Step 1B"). 628 F.3d at 680-681. "This historical inquiry seeks to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification. If it was not, then the challenged law is valid." *Id.* at 680 (citation and internal citation omitted). This holding aligns with the similar holding in *Chovan*. 735 F.3d at 1136. Under *Chester*, if the inquiry reveals that the law in question *does* burden the Second Amendment right as historically understood, or the inquiry is inconclusive,

7

then the court moves to the next step of the analysis. 628 F.3d at 680-681.

Regarding the second step of the Second Amendment inquiry, if reached, *Chester* selected the appropriate level of scrutiny ("Step 2A") based on (1) how close the law comes to the core of the Second Amendment right and (2) the severity of the burden. 628 F.3d at 682-683; accord *Chovan*, 735 F.3d at 1138. In *Chester*, after concluding that intermediate scrutiny applied rather than strict scrutiny, the court held that the government must "demonstrate . . . that there is a 'reasonable fit' between the challenged regulation and a 'substantial' government objective" ("Step 2B"). *Id.* at 683.

For at least three reasons, *Ezell* presented factual circumstances far different from those in the present case. For one, *Ezell* addressed a two-part regulatory scheme, requiring would-be firearm possessors to perform one hour each of target-shooting training, yet banning target-shooting ranges in the entire jurisdiction, and thereby amounting to a near-total ban on firearms in the jurisdiction. 651 F.3d at 689-690. As has been already noted, California's Waiting-Period Law is not an absolute prohibition on anybody or anything. Second, *Ezell* also ruled on whether the trial court should have granted or denied a preliminary-injunction motion against enforcement of the "range" laws, *id.* at 693-94, whereas Plaintiffs never applied for a preliminary injunction against enforcement of the Waiting-Period Law. Third, *Ezell* considered an exclusively facial, pre-enforcement challenge to the law in question, *id.* at 697, whereas Plaintiffs here are making a tailored, as-applied challenge to the Waiting-Period Law.

*Ezell* also endorses the two-step Second Amendment inquiry. 651 F.3d at 703-704. *Ezell* touches on the concept of presumptively lawful regulatory measures, and holds that Second Amendment analysis begins *in some cases* with a threshold textual and historical inquiry into the scope of the Second Amendment, as historically understood. *Id.* at 701-702. *Ezell* states that "if the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment. . . then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Id.* at 702-03. However, "[i]f the government cannot establish this—if the historical evidence is inconclusive or suggests that the regulated

8

activity is *not* categorically unprotected—then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id.* at 703 (emphasis in original).

Regarding the second step of the inquiry, *Ezell* follows Step 2A and Step 2B, above, and further explains that if the analysis has reached the second step, then there is no longer a presumption of the law's constitutionality. 651 F.3d at 706. In other words, the presumption of constitutionality applies during the entire first steps of the analysis (Steps 1A and 1B). In analyzing Steps 2A and 2B, *Ezell* explains that "a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Id.* at 708. Whereas, "laws restricting activity lying closer to the margins of the Second Amendment, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified. How much more easily depends on the relative severity of the burden and its proximity to the core of the right." *Id.*

## CONCLUSION

The Attorney General, in her trial brief, provided a detailed overview of the relevant Second Amendment case law and the evidence for the defense that will be offered at trial. That trial brief demonstrated that the Court will have multiple decision points at which it will be appropriate to enter judgment in favor of the defense. Plaintiffs' trial brief, in contrast, makes many assertions of fact or law that contain errors or otherwise do not withstand careful scrutiny. That trial brief reveals the flaws in Plaintiffs' own case.

//
//

Dated: March 18, 2014

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ Peter H. Chang*
PETER H. CHANG
Deputy Attorney General
*Attorneys for Defendants*

SA2012104659
40920333.doc