1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  MARK R. BECKINGTON, State Bar No. 126009
   Supervising Deputy Attorney General
3  PETER H. CHANG, State Bar No. 241467
   Deputy Attorney General
4  JONATHAN M. EISENBERG, State Bar No. 184162
   Deputy Attorney General
5   300 South Spring Street, Suite 1702
    Los Angeles, CA  90013
6   Telephone:  (213) 897-6505
    Fax:  (213) 897-5775
7   E-mail:  Jonathan.Eisenberg@doj.ca.gov
   *Attorneys for Defendant Kamala D. Harris, Attorney*
8  *General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **JEFF SILVESTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,**<br><br>Plaintiffs,<br><br>v.<br><br>**KAMALA D. HARRIS, Attorney General of California (in her official capacity),**<br><br>Defendant. | 1:11-cv-02137-AWI-SKO<br><br>**DEFENDANT KAMALA D. HARRIS'S CLOSING BRIEF ACCOMPANYING PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN ADVANCE OF CLOSING ARGUMENT**<br><br>Date: July 21, 2014<br>Time: 1:30 p.m.<br>Dep't: 8th Flr., Crtrm. 2<br>Judge: Hon. Anthony W. Ishii<br>Trial Date: March 25, 2014<br>Action Filed: December 23, 2011 |

# TABLE OF CONTENTS

                                                                               **Page**

BACKGROUND ............................................................................................................... 1

SUMMARY OF THE DEFENSE ..................................................................................... 2

    I.     Two of the Four Plaintiffs Lack Standing to Maintain This Lawsuit ..................... 2

    II.    The Waiting-Period Laws Do Not Violate the Second Amendment ..................... 3

          A.     The Waiting-Period Laws Fall Outside the Scope of the Second Amendment ................................................................................................ 3

                1.     The Evidence at Trial Shows That the Waiting Period Laws Do Not Burden Plaintiffs' Second Amendment Right .................... 4

                2.     The Waiting-Period Laws Are Akin to Laws That the U.S. Supreme Court Has Spared from Scrutiny Under the Second Amendment ............................................................................................ 4

                3.     The Evidence of Historical Understanding of the Second Amendment Proves That the Waiting-Period Laws Fall Outside the Amendment's Scope ...................................................... 5

          B.     The Waiting-Period Laws Do Not Warrant Yet Would Survive Heightened Scrutiny Under the Second Amendment ................................. 6

                1.     A Lenient Form of Heightened Scrutiny, If Any, Is Appropriate ............................................................................................ 6

                2.     The Waiting-Period Laws Survive Intermediate Scrutiny .............. 8

                      a.     The Waiting-Period Laws Address the Important Government Interest in Enhancing Public Safety and Minimizing Gun Violence ...................................................... 8

                      b.     The Waiting-Period Laws Reasonably Effectuate the Public Safety Objective .......................................................... 8

                3.     *Peruta*'s "Alternative Approach" Has No Application Here ........ 12

    III.   The Waiting-Period Law's Statutory Exceptions Do Not Violate the Fourteenth Amendment ....................................................................................... 12

CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abramski v. United States*,
    ___ U.S. ___, ___, 2014 WL 2676779 (Jun. 16, 2014) ......................................................... 10

*District of Columbia v. Heller*
    554 U.S. 570 (2008) ............................................................................................................. passim

*Ecological Rights Found. v. Pac. Lumber Co.*
    230 F.3d 1141 (9th Cir. 2000) ....................................................................................................... 2

*Jackson v. City and Cnty. of San Francisco*
    746 F.3d 953 (9th Cir. 2014) ................................................................................................ 3, 5, 6

*Kachalsky v. Cnty. of Westchester*
    701 F.3d 81 (2d Cir. 2012) ............................................................................................................ 7

*Kahawaiolaa v. Norton*
    386 F.3d 1271 (9th Cir. 2005) ..................................................................................................... 12

*Kwong v. Bloomberg*
    723 F.3d 160 (2d Cir. 2013) .......................................................................................................... 4

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
    624 F.3d 1083 (9th Cir. 2010) ....................................................................................................... 2

*National Rifle Ass'n v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*
    700 F.3d 185 (5th Cir. 2012) ................................................................................................ 2, 5, 7

*National Rifle Ass'n v. McCraw*
    719 F.3d 338 (5th Cir. 2013) ................................................................................................... 8, 7

*New York v. O'Neill*
    359 U.S. 1 (1959) .......................................................................................................................... 3

*Peruta v. Cnty. of San Diego*
    742 F.3d 1144 (9th Cir. 2014) .............................................................................................. 3, 6, 11

*Schrader v. Holder*
    704 F.3d 980 (D.C. Cir. 2013) ...................................................................................................... 8

*Town of Lockport v. Citizens for Community Action at Local Level, Inc.*
    430 U.S. 259 (1977) ...................................................................................................................... 3

*United States v. Carter*
    ___ F.3d ___, 2014 WL 1689019 (4th Cir. Apr. 30, 2014) ........................................................... 7

## TABLE OF AUTHORITIES
### (continued)

<00>

<00>

<00>

<00>

<00>

<00>

<00>

<00>

<00>

Page

*United States v. Chovan*
    735 F.3d 1127 (9th Cir. 2013)................................................................................ 3, 6, 7, 8

*United States v. Marzzarella*
    614 F.3d 85 (3d Cir. 2010)................................................................................................ 7

*United States v. Rene E.*
    583 F.3d 8 (1st Cir. 2009)................................................................................................ 5

*United States v. Vongxay*
    594 F.3d 1111 (9th Cir. 2009)......................................................................................... 5

*Wash. Envtl. Council v. Bellon*
    732 F.3d 1131 (9th Cir. 2013)......................................................................................... 2

**STATUTES**

California Penal Code
    § 26150 *et seq.* ................................................................................................................ 1
    § 26170............................................................................................................................ 1
    § 26815............................................................................................................................ 1
    § 27540............................................................................................................................ 1

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. II............................................................................................... passim
U.S. Const. amend. XIV ....................................................................................... 2, 12, 13

Defendant Kamala D. Harris, Attorney General of California (the "Attorney General"), submits the following closing brief accompanying the proposed findings of fact and conclusions of law from the March 25-27, 2014, trial of the above-entitled civil action, adverse to Plaintiffs Jeff Silvester ("Silvester"), Brandon Combs ("Combs"), The CalGuns Foundation, Inc. ("CGF"), and The Second Amendment Foundation, Inc. ("SAF"; together with Silvester, Combs, and CGF, "Plaintiffs.")

## BACKGROUND

After more than two-and-a-half years of pretrial preparation, Plaintiffs have now had a trial of their federal constitutional challenge to enforcement of California's longstanding "Waiting-Period Laws," California Penal Code sections 26815 and 27540,[1] and the statutory exemptions from those laws. The Waiting-Period Laws, in essence, require a 10-day waiting period between the time an individual person applies to purchase a firearm, a process overseen by California's Dealer Record of Sale ("DROS") system, and the time the firearm is delivered to that person, for all California residents not statutorily exempt from the Waiting-Period Laws. Silvester and Combs, both of whom are California residents and own multiple firearms, have alleged that requiring them go through the 10-day waiting period before obtaining a firearm violates the Second Amendment to the U.S. Constitution, because each of them has successfully completed the waiting period prior to obtaining a firearm at least once before. Also, it is allegedly important that Silvester has a Carry Concealed Weapon permit ("CCW") issued by a local law enforcement agency pursuant to California Penal Code section 26150 et seq, and that Combs has a firearm-dealer-related Certificate of Eligibility ("COE") issued by the State of California pursuant to California Penal Code section 26170, as well as a federal curio and relic firearm collector's license. (See Trial Tr. (day 1) at 5-6 for Plaintiffs' own, similar characterization of the scope of the claims.) CGF and SAF, gun-rights membership organizations, have joined this Second Amendment contest, purportedly on behalf of themselves as organizations as well as their members and/or supporters.

---

[1] The differences between the two statutes have not been relevant in the present case, and so the two statutes are treated as one statute here.

1

Def. Harris Closing Brief Re: Proposed Findings of Fact and Conclusions of Law (1:11-cv-02137-AWI-SKO)

Plaintiffs have also claimed that it is a violation of the Fourteenth Amendment Equal Protection Clause that certain groups of people, but not all people, have statutory exemptions from the Waiting-Period Laws. At trial Plaintiffs admitted that the proper remedy for the alleged constitutional violation would be the invalidation of the exemptions.[2]

## SUMMARY OF THE DEFENSE

The Attorney General's defense of the Waiting-Period Laws covers standing, the Second Amendment claim, and the Fourteenth Amendment claim.

### I. TWO OF THE FOUR PLAINTIFFS LACK STANDING TO MAINTAIN THIS LAWSUIT

CGF and SAF, the organizational plaintiffs, lack standing to maintain the present lawsuit, either on behalf of themselves or on behalf of their members and supporters. As the corporate witnesses for CGF and SAF confirmed at trial, neither organization has purchased or tried to purchase firearms in California and been subject to the Waiting-Period Laws. Neither organization has been injured, in the sense of being forced to incur unwanted costs or expenses, by the Waiting-Period Laws. CGF's and SAF's only related costs are for pursuing the present lawsuit, which costs have been incurred voluntarily and, as a matter of law, do not count toward establishing organizational standing. *See Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139-40 (9th Cir. 2013); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Additionally, both CGF and SAF neglected to present any competent evidence at trial that their members have been subject to the Waiting-Period Laws, dooming CGF's and SAF's claims to representational standing. *Bellon*, 732 F.3d at 1139; *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000). For example, Plaintiffs presented nothing akin to the declaration about membership found sufficient on the standing question in *National Rifle Ass'n v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 192 (5th Cir. 2012) ("*NRA I*") (ruling that NRA had standing on behalf of NRA members to challenge federal law preventing federally licensed firearms dealers from selling

---

[2] At trial, Plaintiffs' attorney Donald E.J. Kilmer, Jr., stated just that he did "not necessarily disagree" with the assertion of Jonathan M. Eisenberg, an attorney for the Attorney General, that the proper remedy in such a situation would be the invalidation of the exemptions only. Trial Tr. (day 1) at 7-8.

firearms to people less than 21 years old, because of declaration of NRA representative stating that 11,000 NRA members were covered by ban). Accordingly, the Court should dismiss CGF and SAF from this case for lack of standing.

**II. THE WAITING-PERIOD LAWS DO NOT VIOLATE THE SECOND AMENDMENT**

In the U.S. Court of Appeals, Ninth Circuit, courts apply the two-step Second Amendment analysis prescribed by *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), *Peruta v. Cnty. of San Diego*, 742 F.3d 1144 (9th Cir. 2014), and *Jackson v. City and Cnty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014). "The two-step inquiry we have adopted (1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *Jackson*, 746 F.3d at 960 (*quoting Chovan*, 735 F.3d at 1136 (internal punctuation omitted)); *accord Peruta*, 742 F.3d at 1150. Notably, *Chovan* underscores that "this two-step inquiry reflects the Supreme Court's holding . . . that, while the Second Amendment protects an individual right to keep and bear arms, the scope of that right is not unlimited." 735 F.3d at 1133 (*quoting District of Columbia v. Heller*, 554 U.S. 570, 627 (2008)). Likewise, *Peruta* restates that the Second Amendment right is not unlimited (742 F.3d at 1150) and makes a point of "emphasizing, as nearly every other authority on the Second Amendment has recognized, *regulation* of the right to bear arms is not only legitimate but quite appropriate." 742 F.3d at 1178 (emphasis in original).

**A. The Waiting-Period Laws Fall Outside the Scope of the Second Amendment**

As to the first step—sometimes called the "burden" step—of the Second Amendment analysis, the burden of proffering evidence about whether the restricted activity falls within the scope of, and regulation of the activity burdens, the Second Amendment properly belongs to Plaintiffs. *See Town of Lockport v. Citizens for Community Action at Local Level, Inc.*, 430 U.S. 259, 272 (1977); *New York v. O'Neill*, 359 U.S. 1, 6 (1959) (underscoring strong presumption of constitutionality of all regularly enacted state laws)). Plaintiffs have not met that burden. Three separate paths of analysis, traced below, all lead to the conclusion that the Waiting-Period Laws fall outside the scope of the Second Amendment and therefore do not infringe it.

3

### 1. The Evidence at Trial Shows That the Waiting Period Laws Do Not Burden Plaintiffs' Second Amendment Right

First, evidence adduced at trial demonstrates that the Waiting-Period Laws do not impose *any* burden on the Second Amendment right to have a firearm for self-defense, and therefore the Waiting-Period Laws do not infringe the Second Amendment. Foremost, Silvester and Combs each has acquired and had multiple personal firearms while the Waiting-Period Laws have been in effect, and, presumably, could have legally acquired several dozen more handguns and an unlimited number of long guns in California since filing the initial complaint in this case two-and-a-half years ago. (Def.'s Proposed Findings of Fact and Conclusions of Law ("DPFOFCOL"), ¶¶ 15-16, 40-41.) Silvester lives a mere two miles from a gun store and drives his car by a gun store on his business route. (*Id.*, at ¶ 41.) There would be at most a *de minimis* burden on Silvester in having to make a trip (by foot or by car) of two miles to pick up an extra firearm that he applied to purchase 10 days before. He could, alternatively, make a stop at a gun store part of his business driving routine one day, at minimal inconvenience. The nearest gun store to Combs's house (at the time that he was deposed in this case) was only about half an hour away by car, and by Combs's own estimate the Waiting-Period Laws have added only about $30 in costs to each of the numerous firearms that Combs has purchased in the last five years. (*Id.*, at ¶¶ 43, 46.) Consequently, Plaintiffs have failed to show any actual burden of the Second Amendment right, meaning that the Second Amendment claim fails at the beginning of the two-step inquiry. *Cf. Kwong v. Bloomberg*, 723 F.3d 160, 166-67 (2d Cir. 2013) (rejecting Second Amendment challenge to $340 handgun license fees in part because plaintiffs were able to pay fees, obtain licenses).

### 2. The Waiting-Period Laws Are Akin to Laws That the U.S. Supreme Court Has Spared from Scrutiny Under the Second Amendment

Second, as the Attorney General has previously argued at length (at pages 11-13 of the March 10, 2014, trial brief), the Court should make the consequential finding that the Waiting-Period Laws are akin to at least two groups of longstanding firearms regulatory measures—laws imposing conditions and qualifications on the commercial sale of arms, and prohibitions on the

4

possession of firearms by felons and the mentally ill—that the U.S. Supreme Court, in *District of Columbia v. Heller*, 554 U.S. 570, 625-27 (2008), specifically said should not have "doubt" cast upon them. In *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2009), the Ninth Circuit held that *Heller*'s list of presumptively lawful measures is not dicta, but rather identifies laws that do not implicate the Second Amendment. *Vongxay*, 594 F.3d at 1115, 1117; *accord Jackson*, 746 F.3d at 959. Furthermore, "*Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue." *NRA I*, 700 F.3d at 196. The Waiting-Period Laws, first enacted 90 years ago, impose a (relatively minor) condition, a 10-day delay, on the commercial and other sale of firearms. The waiting period ensures that the California Department of Justice's Bureau of Firearms ("BOF") has sufficient time to conduct on prospective firearms purchasers background checks that facilitate the prohibitions on the possession of firearms by felons and the mentally ill. Plainly, the Waiting-Period Laws are akin to the firearms laws that the U.S. Supreme Court, in *Heller*, declared doubtlessly constitutional. On this second, independent basis, the Waiting-Period Laws fall outside the scope of the Second Amendment.

### 3. The Evidence of Historical Understanding of the Second Amendment Proves That the Waiting-Period Laws Fall Outside the Amendment's Scope

Again as the Attorney General already has argued at length (at pages 13-15 of the trial brief), judicially noticeable adjudicative facts from history books and similar sources, illuminating what Founding Era voters likely understood the Second Amendment right to encompass, further prove that the Waiting-Period Laws do not burden that right. The vast majority of our Founding Era forefathers could not obtain new firearms quickly, much less nearly instantaneously. (DPFOFCOL, ¶¶ 26-27.) The difficulty in acquiring guns was a fact of life back then; most people lived on isolated family farms, a day's horseback ride away from the nearest store, which may or may not have carried firearms—handcrafted, not mass-produced, items—and which store was invariably closed during the entire harvest season. (*Id.*, at ¶¶ 26-30.) In other words, there was a natural, built-in waiting period. There was thus no need for something like the Waiting-Period Laws to create a "cooling-off" period for people who might have impulses to use

5

Def. Harris Closing Brief Re: Proposed Findings of Fact and Conclusions of Law (1:11-cv-02137-AWI-SKO)

firearms to commit acts of violence. And there is thus good reason to believe that Founding Era citizens would have not have been offended by such laws.[3]

Plaintiffs have presented no persuasive historical evidence to the contrary, just irrelevant evidence about the alleged widespread *use* (*not* speed of acquisition) of firearms in the United States around the time of the American Revolution. Plaintiffs did not thereby establish that Founding Era voters would have objected to the Waiting-Period Laws.

In sum, whether evaluated according to the actual burden imposed on the Second Amendment right, or as related to the historical understanding of the right, the Waiting-Period Laws do not burden the right to keep and bear arms and therefore do not infringe it.

**B.    The Waiting-Period Laws Do Not Warrant Yet Would Survive Heightened Scrutiny Under the Second Amendment**

As to the second step—sometimes called the "scrutiny" step—of the Second Amendment analysis, if reached, the evidence presented at trial and from judicially noticeable sources establishes that the Waiting-Period Laws would survive heightened scrutiny under the Second Amendment.

**1.    A Lenient Form of Heightened Scrutiny, If Any, Is Appropriate**

Assuming *arguendo* that the Court finds that the Waiting-Period Laws fall within the historical scope of the Second Amendment, the Court "must then proceed to the second step of the Second Amendment inquiry to determine the appropriate level of scrutiny. When ascertaining the appropriate level of scrutiny, we consider (1) how close the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on that right." *Jackson*, 746 F.3d at 960-61 (*quoting Chovan*, 735 F.3d at 1136, 1138).

> A law that imposes such a severe restriction on the core right of self-defense that it amounts to a *destruction* of the Second Amendment right is unconstitutional under any level of scrutiny. By contrast, if a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, we may apply intermediate scrutiny.

---

[3] *United States v. Rene E.*, 583 F.3d 8, 15-16 (1st Cir. 2009), endorses evaluating evidence of prevailing attitudes about firearms among Founding Era voters, in the process of determining whether a modern law falls within the scope of the Second Amendment right, as historically understood. *Accord Jackson*, 746 F.3d at 960; *Peruta*, 742 F.3d at 1150-67.

6

Def. Harris Closing Brief Re: Proposed Findings of Fact and Conclusions of Law (1:11-cv-02137-AWI-SKO)

*Jackson*, 746 F.3d at 961 (*quoting Heller*, 554 U.S. at 629; *accord Peruta*, 742 F.3d at 1168, *citing Heller*, 554 U.S. at 629).

At least four factors bear on the choice of scrutiny in the present case. First, the core of the Second Amendment has never been interpreted as being a right to have firearms essentially on demand and at all times. As *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 84 (2d Cir. 2012), states, "By 1785, New York had enacted laws regulating *when* and where firearms could be used, as well as restricting the storage of gun powder. *See, e.g.*, Act of Apr. 22, 1785, ch. 81, 1785 Laws of N.Y. 152; Act of Apr. 13, 1784, ch. 28, 1784 Laws of N.Y. 627." (emphasis added). Second, a 10-day waiting period before a person—especially one who already has a gun—can legally purchase a gun is at most an inconvenience or a *de minimis* burden. Indeed, the Fifth Circuit has held that Texas statutes prohibiting teenagers and young adults from carrying handguns in public do not impose severe burdens on the Second Amendment right of such people, because the restriction of several *years* time (obviously, much longer than 10 days) is still *temporary*, ending when each person turns 21 years old. *NRA I*, 719 F.3d at 348. Third, and relatedly, the California Legislature's enactment and the Attorney General's enforcement of the Waiting-Period Laws cannot fairly be said to *destroy* the Second Amendment right. Fourth, the Waiting-Period Laws' statutory exemptions lessen any inconvenience even more. *Chovan*, 735 F.3d at 1138 (holding that exceptions to lifetime federal ban on firearm prohibition by domestic violence misdemeanants lighten Second Amendment burden of ban, justifying application of intermediate, not strict, scrutiny to ban.) It follows that the Court should apply some form of lenient intermediate scrutiny to the Waiting-Period Laws.

"Although courts have used various terminology to describe the intermediate scrutiny standard, all forms of the standard require (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." *Chovan*, 735 F.3d at 1139. To reiterate, the fit between the regulation and the harm being addressed need be only reasonable, not perfect. *United States v. Carter*, ___ F.3d ___, ___, 2014 WL 1689019, at *2 (4th Cir. Apr. 30, 2014); *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010).

Whatever level of scrutiny the Court selects, the standard will require determining the importance of California's objective for the Waiting-Period Laws, and the fit between those laws and the objective. As shown below, with reference to the trial evidence, the outcome of the analysis should be a complete vindication of the Waiting Period Laws.

### 2. The Waiting-Period Laws Survive Intermediate Scrutiny

#### a. The Waiting-Period Laws Address the Important Government Interest in Enhancing Public Safety and Minimizing Gun Violence

It is self-evident that the Waiting-Period Laws have an important objective of keeping guns away from the people most likely to misuse them, and of minimizing gun violence generally. *See Chovan*, 735 F.3d at 1139 (recognizing as significant governmental objective of keeping guns away from dangerous people); *accord Schrader v. Holder*, 704 F.3d 980 (D.C. Cir. 2013); *National Rifle Ass'n v. McCraw*, 719 F.3d 338, 349 (5th Cir. 2013). The legislative history of the Waiting-Period Laws confirms that the California Legislature had in mind that objective for the laws, studying and determining the time needed to complete background checks on prospective firearms purchasers, and to create a "cooling off" period. (DPFOFCOL, ¶¶ 8, 12-14.) Even in this litigation, there is agreement that performing background checks on all people seeking to acquire firearms is unobjectionable, even desirable. (Trial Tr. (day 1) at 6:5-6:6 (wherein Plaintiffs' Attorney Donald E. J. Kilmer, Jr., concedes that all prospective firearms purchasers "should be subjected to a background check").)

#### b. The Waiting-Period Laws Reasonably Effectuate the Public Safety Objective

The focus of the analysis thus becomes the fit between the Waiting-Period Laws, specifically their 10-day waiting period, and the important public safety objective. The evidence adduced at trial establishes the reasonableness of that fit.

- BOF processes about a million DROS applications and thus a million background checks annually. (DPFOFCOL, ¶ 56.) The processing involves automated searching of multiple state and federal databases for evidence of events or incidents that would disqualify people from having firearms. (*Id.*, at ¶ 61.) The vast majority of application

reviews also require human analysts (criminal identification specialists; "CIS Analysts")—there are about two dozen of them, and they often work overtime to keep up with the flow of applications—to confirm (1) identity matches between prospective gun purchasers and purported background information about them in the different databases, and (2) the accuracy and completeness of the database records of potential "prohibiting events," among other things. (*Id.*, ¶¶ 21-23, 95, 109.) Because there are numerous people at numerous government agencies in multiple jurisdictions across California and other states inputting records into the relevant databases, inevitably many records have gaps. (*Id.*, at ¶¶ 129-36.) For example, sometimes the Automated Criminal History System ("ACHS") database contains a record of an arrest but not the disposition of the arrest. (*Id.*, at ¶ 130.) Was the person convicted and rendered ineligible to purchase a firearm, or was the charge dismissed, leaving the person eligible? CIS Analysts must track down and fix such gaps through such time consuming methods as telephone calls to people who may or may not be immediately available to assist in the records-chasing endeavors. (*Id.*, at ¶ 117.) That work often takes many days per DROS application. (*Id.*, at ¶ 118.) BOF cannot computerize such work or otherwise complete it instantaneously or nearly instantaneously. (*Id.*, at ¶¶ 120, 187.)

- There are no comprehensive, ongoing background checks for people who have firearms listed in the Automated Firearms System ("AFS"), or for people who have CCW permits or COE's. (DPFOFCOL, ¶¶ 157-60, 166-67.) Thus there is no way to speed up background checks for these people, compared to other people. (*Id.*, at ¶¶ 138.) Nor is it acceptable to rely on past background checks. (*Id.*, at ¶ 127.) Since a past background check, a person may have been convicted of a felony or a violent misdemeanor, or been committed to a mental-health facility, or otherwise become ineligible to purchase a firearm. (*Id.*, at ¶¶ 127-28.) It is prudent to run a new background check for each round of firearms purchases.

- The DROS system includes for each application a second basic background check, which a CIS runs during the 10-day waiting period, for the valuable purpose of catching

  any late-entered records of criminal convictions or other prohibiting events. (DPFOFCOL, ¶ 127.)

-  BOF special agents monitor gun shows and gun dealers for instances of "straw" purchases of firearms (where people not legally prohibited from purchasing firearms make such purchases for hidden actual buyers who are prohibited persons) and then instituting corrective law enforcement actions. (DPFOFCOL, ¶¶ 140-41; *see also Abramski v. United States*, ___ U.S. ___, ___, 2014 WL 2676779, at *12 (Jun. 16, 2014) (upholding criminal conviction under federal laws prohibiting firearm purchaser from giving false identification information to dealer as part of straw purchase.) It often takes the agents many days to complete their investigations, to obtain search warrants, etc., and then to intercept the straw-purchased firearms before they get into prohibited people's hands. (DPFOFCOL, ¶ 144.) As Special Agent Supervisor Blake Graham testified, without the 10-day waiting period, many more straw purchases would be consummated, and the firearms would have to be retrieved from the prohibited people. (*Id.*, at ¶¶ 144-45, 153.) For public safety, it is much safer to intercept a firearm before it reaches a prohibited person, versus trying to retrieve a firearm already in the hands of a prohibited person. (*Id.*, at ¶ 150.)

In short, the unrebutted evidence proves that the 10-day waiting period is well-justified for helping to assure that public safety is protected in connection with processing each DROS application, even for people who have been through the waiting period before or have CCW permits or COE's.

  On the eve of trial, Plaintiffs argued that BOF could and should replace the California DROS system with either the federal National Instant Background Check System ("NICS") system or California's own Armed and Prohibited Persons System ("APPS"). (See pages 2-3, 5, and 11 of Plaintiffs' March 10, 2014, trial brief, on file herein.) At trial, however, Plaintiffs failed to offer any evidence about the likely consequences of switching to either of those other systems. The Attorney General did offer such evidence, in detail, showing that the NICS system does not check for many prohibiting events, such as three-day involuntary mental-health holds at mental-health facilities, and each year the NICS system would permit many thousands of prohibited

people to receive firearms, whereas California's existing system would block those putative transactions. (DPFOFCOL, ¶¶ 177-85.) APPS, a law enforcement tool designed to give peace officers in the field information about whether criminal suspects that they are tracking have firearms, is not even close to being a complete database of people who are prohibited from possessing firearms, and could not function competently as a substitute background-check system. (*Id.*, ¶¶ 167-72) Moreover, the legislative history of the Waiting-Period Laws reflect that the California Legislature deliberated and settled upon the 10-day waiting period as the shortest period that is protective of public safety, fully aware that the background-check process would be partly computer-automated. (*Id.*, ¶¶ 10-12.)

Furthermore, again as the Attorney General already has argued at length (at pages 20-22 of the trial brief), medical studies reveal the verified, ameliorative effects of waiting-period laws in in reducing the commission violent acts with firearms. The evidence is most robust for suicides, which appear to be relatively impulsive acts. (DPFOFCOL, at ¶ 192.) In one study of 33 adults who survived suicide attempts by firearms, the majority of the people reported having suicidal thoughts for only three weeks or less time before making their attempts. (*Id.*) Other studies report similar findings. (*Id.*, ¶¶ 193-96.) Two researchers at the Harvard School of Public Health have declared plainly, "Suicidal individuals are often ambivalent about killing themselves, and the risk period is transient. *Reducing the availability of lethal instruments during this period may prevent suicide.*" (*Id.*, ¶ 193.)

In sum, the unrebutted evidence that the Attorney General introduced at trial, through witness testimony and trial exhibits, as well as through judicially noticeable materials, establishes that the Waiting-Period Laws effectuate the important government interest in public safety by allowing adequate time for background checks to be conducted on all prospective firearms purchasers, for all transactions, and to give the firearms purchasers time to cool off before taking possession of the firearms.

### 3. *Peruta*'s "Alternative Approach" Has No Application Here

*Peruta* prescribes "an alternative approach [to the second step of the inquiry] *for the most severe cases.*" 742 F.3d at 1168 (emphasis added). A law that destroys the Second Amendment

11

Def. Harris Closing Brief Re: Proposed Findings of Fact and Conclusions of Law (1:11-cv-02137-AWI-SKO)

right, and does not just burden the right, is "an infringement in any light," requiring no further analysis to be invalidated. *Id.* ("A law effecting a *destruction* of the right rather than merely *burdening* it is, after all, an infringement under any light" (quoting *Heller*, 554 U.S. at 629 (emphasis in original; internal punctuation omitted)).) Yet *Peruta* concedes, "It is the rare law that 'destroys' the right." 742 F.3d at 1170.

It is indisputable that the Waiting-Period Laws, especially as applied to people who already have firearms, do not destroy the Second Amendment right to have a firearm for the purpose of self-defense. Indeed, as noted earlier, Silvester and Combs admit that they have had personal firearms at all relevant times during this case. And the Waiting-Period Laws just delay, as opposed to prohibit, lawful firearm purchases. Therefore, the Court here should not apply *Peruta*'s "alternative approach."

### III. THE WAITING-PERIOD LAW'S STATUTORY EXCEPTIONS DO NOT VIOLATE THE FOURTEENTH AMENDMENT

Plaintiffs have claimed that the Waiting-Period Laws violate the Fourteenth Amendment Equal Protection Clause, in that certain classes of people have statutory exemptions, while the individual plaintiffs and other people do not enjoy any exemptions. However, as a matter of law, this claim cannot be sustained. Where an equal-protection claim is based on membership in a suspect class such as race or ethnicity or the burdening of a fundamental right, then heightened scrutiny is applied; otherwise only rational-basis review applies. *See Kahawaiolaa v. Norton,* 386 F.3d 1271, 1277-78 (9th Cir. 2005) (stating that "[w]hen no suspect class is involved and no fundamental right is burdened, we apply a rational basis test to determine the legitimacy of the classifications"). Plaintiffs do not assert that any of the exemptions discriminates against any suspect class of people, such as racial or ethnic minorities. And the Attorney General already has established that the Waiting-Period Laws do not burden the Second Amendment right, and the laws would pass even heightened scrutiny. Nor do the exemptions themselves burden the rights of Plaintiffs, who would be unaffected if the exemptions were invalidated. Therefore, the Court should subject each of the challenged groups of statutory exemptions to rational-basis review.

The unrebutted evidence that the Attorney General presented at trial demonstrates that Silvester and Combs are not being discriminated against in lacking such exemptions (and seemingly could avail themselves of the intra-familial transfer and borrowing procedures), and that, furthermore, there are cogent rationales for each exemption that should lead easily to the conclusion that all of them survive rational-basis review or even heightened scrutiny. The Attorney General's witnesses testified at length at trial regarding the rationales for and real-life implementation of the exemptions. Invariably, the people who have statutory exemptions go through rigorous, invasive background checks, of a different order of magnitude from the DROS background checks, and/or are affiliated with firearms-related business enterprises that are highly regulated. (DPFOFCOL, ¶¶ 205-26.) Silvester and Combs are not similarly situated to the people who qualify for the exemptions. Plaintiffs have failed on the facts, as well as the law, to make out a Fourteenth Amendment claim.

## CONCLUSION

The Waiting-Period Laws are presumptively lawful and do not burden any otherwise qualified person's Second Amendment right as historically understood. The Waiting-Period Laws survives application of any appropriate standard of review. Plaintiffs, who possess firearms already, are complaining about the mere inconvenience of the waiting period. Yet it is well-justified as a public safety measure, allowing BOF time to perform background checks on prospective firearm purchasers, and creating a cooling-off period for people with impulses to commit violent acts with firearms. There is no Second Amendment violation here. Similarly, there is no violation of the Fourteenth Amendment merely because the California Legislature, in

//
//
//
//
//

tailoring the waiting period narrowly, exempted from it certain groups of people with special characteristics. This Court should uphold the Waiting-Period Laws in their entirety.

Dated: June 16, 2014

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
PETER H. CHANG
Deputy Attorney General

/s/
JONATHAN M. EISENBERG
Deputy Attorney General
*Attorneys for Defendant Kamala D. Harris, Attorney General of California*