UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JEFF SILVESTER, et al.,

                Plaintiffs,

     v.

KAMALA D. HARRIS, Attorney General of California, and DOES 1 to 20,

                Defendants.

Case No.:  1:11-CV-2137 AWI SAB

**FINDINGS AND ORDER AFTER BENCH TRIAL (March 25/26/27, 2014)**

Plaintiffs have brought a constitutional challenge to a set of California's firearms laws regulating the sale of firearms. California Penal Code §§ 26815 and 27540 imposes a 10-day "waiting period" between the purchase of a firearm and its actual delivery to the buyer.

California contends that the waiting period law (WPL) has two justifications: (1) it is necessary to stop impulsive acts of violence whether self-inflicted or directed toward another, and (2) it is necessary to conduct a background check to insure compliance with state and federal laws that prohibit the sale to (and possession by) persons unqualified to "keep and bear arms" (e.g., felons, minors, domestic violence misdemeanants, persons with mental disorders who have been identified in Welfare and Institutions Code § 8100 et seq., and persons subject to criminal, civil and domestic violence restraining orders; hereafter prohibited persons)[1]

Plaintiffs' contend that the waiting period laws violate the Second Amendment as applied to those law-abiding individuals who: (a) are not prohibited from acquiring or possessing firearms, and (b) who currently possess registered firearms and/or who hold and maintain certain state licenses, subject to periodic review, that also require strict background checks. Plaintiffs also contend that eighteen statutory exceptions to the WPL violate the 14th Amendment's Equal Protection Clause.

Previously this Court issued an ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 44). That motion was denied. The bench trial has now permitted the parties to tender any contested evidence for resolution by the Court sitting as a finder of fact and to allow the parties to present arguments as to any of those factual controversies that would permit this Court to render judgment on the important constitutional questions presented by this lawsuit. This Court remains unpersuaded that the Waiting Period Law (WPL) survives the Plaintiffs' "as-applied" constitutional challenge.

---

[1] During the trial defendants suggested a potential third justification for the WPL. [TX 333:22-447:9] But Agent Graham's testimony on this issue was more descriptive of a criminal investigation (conspiracy to engage in a straw purchase) than a need to address the regulation of a sale to an actual buyer. Law-enforcement personnel already have access to neutral and detached magistrates to secure warrants to seize property that may be the object or instrumentality of a crime. The Court will proceed with its analysis based on the two justifications for the WPL tendered by the Defendants since the beginning of this case.

**Evidence Presented to The Court**

Testimony

Plaintiffs called four witnesses:  Jeffrey Silvester [TX 20:4 – 48:15] and Brandon Combs [TX 48:17 – 112:10] both are Plaintiffs in this case.  Plaintiffs also called Gene Hoffman who is the corporate representative of the Calguns Foundation, Inc. [TX 112:15 – 153:16].  By stipulation the parties submitted a redacted version of the deposition testimony of Alan Gottlieb, corporate representative of the Second Amendment Foundation, Inc.; it was admitted as if live testimony was presented to the Court.  [TX 153:22 – 155:8, *see* Doc. # 75]

The remaining trial testimony was presented by the Defendants' witnesses.  Steven Buford is the Assistant Bureau Chief at the California Department of Justice, Division of Law Enforcement, Bureau of Firearms.  [TX 163:2 – 286:25]  Donnette Orsi (currently with the California Department of Housing and Community Development) was previously employed by the California Department of Justice as a Data Processing Manager during relevant time periods.  [TX 287:17 – 311:4]  Mitch Matsumoto works for the Bureau of the Firearms in the Purchaser Clearance Unit as a Criminal Identification Specialist III.  [TX 311:11 -- 333:12]  Blake Graham is employed as a Special Agent Supervisor with the California Department of Justice, Bureau of Firearms.  [TX 333:22 – 447:14]  Steven Lindley is currently the bureau chief of the Bureau of Firearms, California Department of Justice.  [TX 448:1 – 513:19]

Exhibits Admitted by Stipulation

The parties stipulated to the admissibility of various documentary evidence which consists of the following (exhibits designated by letters were tendered by the Defense, numbered exhibits were tendered by the Plaintiffs, Bates (where available) refers to the parties' own document identification/numbering system):

Exhibit AA – Dealer Record of Sale (DROS) Annual Statistics, Summary.  Bates: AB002143.

Exhibits AB through AQ – DROS Reports and Statistics from 1999 to 2014.  Bates: AG001945 – AG002524.

Exhibit AR – Email relating to DROS Statistics.

Exhibit AS – Summary of DROS Actual Revenues.  Bates: AG000001.

Exhibit AU – Feasibility Study Report: Dealers' Record of Sale (DROS) Front End Replacement.  DOJ-508.  State of California Department of Justice.  June 2008 V1.3.  Bates: AG000827 – AG000901.

Exhibit AV – Feasibility Study Report: Long Gun Retention.  DOJ-066.  State of California Department of Justice.  December 2011 V1.0.  Bates: AG000902 – AG000975.

Exhibit AW – Information Technology Procurement Plan (ITPP).  DROS Notifications to FBI NICS v 1.1.  August 2005.  Bates: AG000976 – AG000990.

Exhibit AX – DROS Review of Mental Health Data (SB2050) Feasibility Study Report.  July 1991.  State of California Department of Justice Division of Law Enforcement.  Bates: AG000991 – AG001032.

Exhibit AY – Mini-Feasibility Study Report.  AFS-DROS Document Storage and Retrieval System Replacement. State of California Department of Justice.  June 1999.  Bates: AG001035 – AG001050.

Exhibit AZ – Feasibility Study Report.  SB 950.  Armed Prohibited Personss System (820-149).  State of California Department of Justice.  Revised August 2002.  Bates AG001051 – AG001160.

Exhibit BA – Feasibility Study Report.  NCHIP Year 8 Grant Non-U.S. Citizen Firearm Background Check.  State of California Department of Justice.  August 2002.  Bates: AG001161 – AG001243.

Exhibit BB – Feasibility Study Report.  Consolidated Firearms Information System.  State of California Department of Justice.  Bates: AG001245 – AG001351.

Exhibit BC – Post Implementation Evaluation Report.  Consolidated Firearms Information System. State of California Department of Justice.  March 2000.  Bates: AG001352 – AG001371.

Exhibit BD – DROS Review of Mental Health Data (SB2050).  Feasibility Study Report.  July 1991.  State of California Department of Justice Division of Law Enforcement.  Bates: AG001372 – AG001413.

Exhibit BE – Post Implementation Evaluation Report.  DROS Review of Mental Health

Data.  State of California Department of Justice.  April 1998.  Bates: AG001414 – AG001423.

Exhibit BF – Dealer Record of Sale (DROS) Feasibility Study Report.  August 1988.  State of California Department of Justice.  Bates: AG001421 – AG001456.

Exhibit BG – Dealer Record of Sale (DROS) Long Gun Feasibility Report.  April 1990.  State of California Department of Justice.  Bates: AG001457 – AG001490.

Exhibit BH – Feasibility Study Report.  Long Gun Retention.  DOJ-066.  State of California Department of Justice.  December 2011 V1.0.  Bates: AG001491 – AG001564.

Exhibit BI – Project Summary Package.  Mental Health Reporting System (MHRS) Redesign.  PSP-062.  State of California Department of Justice.  October 2011 V 1.0.  Bates: AG001565 – AG001578.

Exhibit BJ – Feasibility Study Report.  NICS Mental Health Notification.  820-178. State of California Department of Justice.  June 2005.  Bates:  AG001579 – AG001642.

Exhibit BK – Project Summary Package.  Mental Health Firearms Prohibition System Redesign.  PSP-059.  State of California Department of Justice.  February 2011 V1.0.  Bates: AG001643 – AG001658.

Exhibit BL – Special Project Report #3.  Criminal Justice Information System (CJIS) Redesign.  820-171.  State of California Department of Justice.  December 2007.  Bates: AG001659 – AG001754.

Exhibit BM – National Instant Criminal Background Check System (NICS).  September 2011.  California Department of Justice Bureau of Firearms.  NICS Audit Report.  Fourth Audit Cycle. AG001756 – AG001774.

Exhibit BN – Review of the Bureau of Alcohol, Tobacco, Firearms and Explosives' Enforcement of Brady Act Violations Identified Through the National Instant Criminal Background Check System.  Report Number I-2004-006. July 2004.  Bates: AG001775 – AG001800.

Exhibit BO – U.S. Department of Justice.  Federal Bureau of Investigation.  Criminal Justice Information Services Division.  National Instant Criminal Background Check System (NICS) Operations.  2011.  Bates: AG001801 – AG001823.

Exhibit BP – BFEC Databases. Bates: AG001913.

Exhibit BQ – Firearm Transaction Denials. Bates: AG001914.

Exhibit BR – Dealer Record of Sale Transactions from 1972 through 2011. Bates: AG001915 – AG001916.

Exhibit BS – Bureau of Firearms Firearm Purchaser Clearance Section. September 2012. Bates: AG001917.

Exhibit BT – Bureau of Firearms Organizational Chart. September 2012. Bates: AG001918.

Exhibit BU – Curriculum Vitae of Special Agent Supervisor Blake Graham. Bates: AG001919 – AG001921.

Exhibit BV – Curriculum Vitae of Steven Buford, Assistant Bureau Chief, California Department of Justice. Bates: AG001922 – AG001923.

Exhibit BW – Curriculum Vitae of Gilbert Matsumoto, Criminal Identification Specialist, California Department of Justice. Bates: AG001924 – AG001926.

Exhibit BX – Curriculum Vitae of Donnette Orsi, Data Processing Manager at the California Department of Justice. Bates: AG001928 – AG001930.

Exhibit BY – August 27, 2008 Letter of Commendation to Steven Buford from the CJIS Advisory Policy Board. Bates: AG001931 – AG001944.

Exhibit CA – California Department of Justice Bureau of Firearms. Firearm Prohibiting Categories. BOF 4012 (Rev. 01/2012). Bates: AG000002 – AG000003.

Exhibit CB – Bureau of Firearms Consolidated Firearms Information System. Dealer Record of Sale (DROS) Process Flowchart/Schematic. Bates: AG000004.

Exhibit CC – Federal Bureau of Investigations. NICS Point of Contact States. Bates: AG000005.

Exhibit CS – Hard copies of a website for Silver State Custom Leather consisting of 12 printed pages.

Exhibit CT – Copy of the First Amended Complaint (Doc #10) filed on February 24, 2012.

Exhibit 01 – Copy of January 14, 2014 CERTIFICATE OF ELIGIBILITY (COE)

CONFIRMATION NOTICE for Brandon S. Combs. The exhibits consists of the cover letter and certificate number 16276.

Exhibit 05 – Copy of License to Carry Concealed Pistol, Revolver, or Other Firearm Within the State of California. Issued to Jeffrey Sherman Silvester by the Hanford Police Department. The exhibit consists of two pages which are the front and back of the permit.

Exhibit 06 – AB497 Processing Alternatives Feasibility Study. Report of Findings. May 1991. By the State of California Department of Justice Division of Law Enforcement. Bates: AG000766 – AG000826.

Exhibit 07 – Federal Form 4473. [TX 430:12-20]

Exhibits Withdrawn

The Defendants withdrew from consideration the following exhibits that had been previously marked for identification only: CK, CL, CM, CN, CO, CP, CQ, CR, HA and HB.

Exhibits Requiring an Evidentiary Ruling from the Court[2]

The following Exhibits require a ruling by the Court as to their admissibility because both sides lodged timely objections. The status of the exhibits which was established on the last day of trial is that they constituted "offers of proof" with the parties directed to focus on their admissibility and relevance in their proposed findings of fact and conclusions of law along with any memorandums they will submit in support of their positions. (Again, Plaintiffs' Exhibits are numbered, Defense Exhibits use letters.) Both parties made/filed objections to these documents.

Exhibit 01 – A book titled: The Founders' Second Amendment – Origins of the Right to Bear Arms by Stephen P. Halbrook, Chicago 2008. Plaintiffs tendered this exhibit as a rebuttal to any of the Defendants' evidence on the issue of the burden the WPL imposes on the Second Amendment. Because the Court finds that the Defendants presented no evidence that a "waiting period law" was part of any scheme to regulate Second Amendment rights at the time of its ratification (1791) or incorporation (1868) no rebuttal evidence is needed on this issue. The

---

[2] Plaintiffs would not presume to assume that it might be more appropriate for the Court to make its evidentiary findings in a separate order or an appendix to this order. The plaintiffs' proposed evidentiary findings are included here for continuity.

objection is sustained the exhibit is inadmissible.[3]

Exhibit 02 – A book titled: The Pennsylvania-Kentucky Rifle by Henry J. Kaufman. Bonanza Books – New York.  Plaintiffs tendered this exhibit as a rebuttal to any of the Defendants' evidence on the issue of the burden the WPL imposes on the Second Amendment. Because the Court finds that the Defendants presented no evidence that a "waiting period law" was part of any scheme to regulate Second Amendment rights at the time of its ratification (1791) or incorporation (1868) no rebuttal evidence is needed on this issue.  The objection is sustained, the exhibit is inadmissible.

Exhibit 03 – A book titled: Early American Gunsmiths – 1650-1850 by Henry J. Kauffman, Illustrated and Documented.  The Stackpole Company, Harrisburg, Pennsylvania.  Plaintiffs tendered this exhibit as a rebuttal to any of the Defendants' evidence on the issue of the burden the WPL imposes on the Second Amendment. Because the Court finds that the Defendants presented no evidence that a "waiting period law" was part of any scheme to regulate Second Amendment rights at the time of its ratification (1791) or incorporation (1868) no rebuttal evidence is needed on this issue.  The objection is sustained.

Exhibit CD – A.B. 263 Statute 1923 c.339 Legislative History.  Legislative history is rarely relevant in any judicial proceeding where the language of the statute at issue is plain and unambiguous.  Plaintiffs have not challenged the WPL on grounds that it is difficult to understand or enforce.  They are challenging the underlying policy of a WPL as applied to persons who already have firearms and who are subject to continuing background checks.  Legislative history is not relevant to these proceedings.  The objection is sustained.

Exhibits CE through CJ – being additional legislative histories of various gun control bills

---

[3]  Even if the books proffered by the parties are not admissible as evidence, the Court may consult such materials as a resource for contextual treatment of the right to keep and bear arms, and limitations on such rights.  Indeed, the Ninth Circuit's test for evaluating the constitutionality of infringements on the right to keep and bear arms specifically calls for such historical evaluations when necessary. See *United States v. Chovan*, 735 F.3d 1127, 1133 (9th Cir. 2013) and discussion below. Moreover, in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court cited multiple modern sources discussing the historical basis and meaning of the Second Amendment. But this Court was not presented with any ambiguity regarding the existence or interpretation of waiting periods to purchase firearms in 1791 or 1868, there was no evidence presented that this regulatory scheme (waiting periods) even existed during the relevant time period.

presented during various sessions of the California legislature. These are likewise not relevant to these proceedings. The objection is sustained.

Exhibit CU – Undated article from San Jose Mercury News: California's Gun Background Check System Could be National Model, by Josh Richman. The exhibit is of marginal relevance and constitutes inadmissible hearsay, subject to no exceptions or exclusions under the Federal Rules of Evidence. The objection is sustained, the exhibit is inadmissible.

Exhibit DA – Published article from a professional journal. Title: Firearms and Suicide, by David A. Brent. The Court had previously ruled that expert opinion testimony tendered by either party would be inadmissible in this trial because neither party availed themselves of the Federal Rules of Civil Procedure relating to the disclosure of expert witnesses or expert reports prior to trial. This article written by a medical doctor who heads the Division of Child and Adolescent Psychiatry, Western Psychiatric Institute and Clinic in Pittsburg, PA, can only be classified as an inadmissible expert's opinion testimony, tendered as documentary evidence. Furthermore it is inadmissible hearsay, subject to no exceptions or exclusions under the Federal Rules of Evidence. Assuming arguendo that the Defendants had disclosed Dr. Brent as an expert and produced him at trial (which necessarily means they would have complied with the Federal Rules of Civil Procedure for such disclosures), the Court would have found such testimony subject to a motion to strike if offered to prove that waiting periods tend to inhibit suicides. Undoubtedly they do. But Plaintiffs have not challenged the WPL with respect to first time gun buyers and by extension its justification as to the prevention of impulsive acts of violence. Furthermore, expert testimony would not be helpful to this Court for making the common-sense observation that people with ready access to firearms that they already own, who are intent on committing suicide, assault or murder, will not be deterred by a waiting period to purchase a new gun. The exhibit is hearsay, it is inadmissible expert testimony and more importantly, not relevant to the questions before this Court. The objections is sustained, the exhibit is inadmissible.

Exhibit DB – Law Review Article: The Changing Meaning of the Right to Bear Arms. Seton Hall Constitutional Law Journal, Fall 1995. 6 Seton Hall Const. L.J. 101. For many of the same reasons Exhibit DA was ruled inadmissible, this article is inadmissible. Furthermore the

Court does not take "expert testimony" from law professors or lawyers on how to interpret the law. The Court also notes that this article (along with many of the concurrently tendered law review articles) predate *District of Columbia v. Heller*, 554 U.S. 570 (2008) and are therefore of questionable value on any legal positions taken therein. That is not to say that law review articles may not be properly cited as persuasive authority in any brief or argument before this Court, but that does not make them evidence. The objection is sustained, the exhibit is inadmissible.

Exhibit DC – Law Review Article: The Ironic Second Amendment, by Saul Cornell. Published in 2008. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DD – Law Review Article: A Well Regulated Right: The Early American Origins of Gun Control, by Saul Cornell and Nathan DeDino. Published in 2004. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DE – Law Review Note: Symposium: Emerging Constitutional Rights: Health Care and Education – Gun Control: The Brady Handgun Violence Prevention Act, by Marc Christopher Cozzolino. Published in 1992. 16 Seton Hall Legis. J. 245. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DF – Law Review Article: New Residents and Collectors Must Register Their Out-of-State Handguns: Making A (Government) List and Checking it Twice, by Michael Daponde. Published in 1998 in the McGeorge Law Review. 29 McGeorge L.Rev. 539. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DG – Article from American Journal of Public Health. Suicide, Guns, and Public Policy, by Michael Lewiecki, M.D., and Sara Miller, PhD. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DH – Article from the American Medical Association. Homicide and Suicide Rates Associated With Implementation of the Brady Handgun Violence Prevention Act. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the

objection is sustained.

Exhibit DI – Law Review Article. Symposium – The Second Amendment and the Right to Bear Arms for Self-Defense: An Analytical Framework and Research Agenda, by Eugene Volokh. Published in the 2009 UCLA Law Review. 56 UCLA L.Rev. 1443. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DJ – Law Review Article. Symposium – The Second Amendment and the Right to Bear Arms After D.C. v. Heller. Heller's Catch-22, by Adam Winkler. 56 UCLA L. Rev. 1551. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DK – Professional Article. Gun Ownership and Firearm-Related Deaths, by Sripal Bangalore, MD, MHA, and Franz J. Messerli, MD. Published in the American Journal of Medicine in 2013. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DL – Professional Article. The Impact of Firearm Control Legislation on Suicide in Queensland: Preliminary Findings, by Christopher Cantor and Penelope Slater. Published in 1995 in The Medical Journal of Australia. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DM – Professional Article. Survivors of Self-inflicted Firearm Injury: A Liaison Psychiatry Perspective, by Greg deMoore, Jeff Plew, Karina Bray and Jeff Snars. Published in 1994 in The Medical Journal of Australia. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DN – Professional Article. Psychiatric Consultation for Patients With Self-inflicted Gunshot Wound, by Robert Frierson, M.D., and Steven Lippman, M.D. Published in 1990 by the Academy of Psychosomatic Medicine. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DO – Law Review Article. Why The New York State System for Obtaining a License to Carry a Concealed Weapon is Unconstitutional, by Suzanne Novak. Published in 1998 in the Fordham Urban Law Journal. 26 Fordham Urb. L.J. 121. For the same reasons Exhibits DA

and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DP – Professional Article. Do Laws Restricting Access to Firearms by Domestic Violence Offenders Prevent Intimate Partner Homicide?, by Elizabeth Vigdor and James Mercy. Published in 2006 by Sage Publications. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DQ – Professional Article. Firearm Deaths and Firearm Crime After Gun Licensing in Tasmania, by Kate Warner. Published in 1999 by the Australia Institute of Criminology. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DR – Professional Article. Effects of Domestic Violence Policies, Alcohol Taxes, and Police Staffing Levels on Intimate Partner Homicide in Large U.S. Cities, by April Zeoli and Daniel Webster. Published in 2010 in Injury Prevention. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DS – Professional Article. Self-Inflicted Gunshot Wounds: Lethality of Method Versus Intent, by Linda Peterson, M.D., McKim Peterson, M.D., Gregory J. O'Shanick, M.D., and Alan Swann, M.D. Published in the American Journal of Psychiatry in 1985. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DT – Academic Article. The Relationship Between Firearms and Suicide: A Review of the Literature, by Matthew Miller and David Hemenway. Published in 1998 by the Harvard School of Public Health. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DU – Professional Article. Effectiveness of Denial of Handgun Purchase to Persons Believed to Be at High Risk for Firearm Violence, by Mona Wright, MPH, Garen Wintemute, MD, MPH and Frederick Rivara, MD, MPH. Published in 1999 in the American Journal of Public Health. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DV – Professional Article. Mortality Among Recent Purchasers of Handguns, by

Garen Wintemute, M.D., MPH, Carrie Parham, M.S., Jam Beaumont, Ph.D., Mona Wright, MPH and Chritiana Drake, Ph.D. Published in 1999 by the Massachusetts Medical Society. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DW – Professional Article. Firearms and Suicide, by David Brent, M.D. Published in the Annals of New York Academy of Science. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DX – Professional Article. Firearms Laws and the Reduction of Violence -- A Systematic Review, by Robert Hahn, PhD, MPH, Oleg Bilukha, MD, PhD, Alex Crosby, MD, PhD, Mindy Fullilove, MD, Akiva Liberman, PhD, Eve Moscicki, ScD, MPH, Susan Snyder, PhD, Farris Tuma, ScD, Peter Briss, MD, MPH, Task Force On Community Preventive Services. Published in 2005 in the American Journal of Preventive Medicine. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit DY – Professional Article. Subsequent Criminal Activity Among Violent Misdemeanants Who Seek to Purchase Hanguns – Risk Factors and Effectiveness of Denying Handgun Purchase, by Garen Wintemute, MD, MPH, Mona Wright, MPH, Chistiana Drake, PhD, James Beaumont, PhD. Published by American Medical Association in 2001. For the same reasons Exhibits DA and DB were ruled inadmissible, this article is inadmissible, the objection is sustained.

Exhibit EA – Excerpts from a book titled: A Well-Regulated Militia – The Founding Fathers and the Origins of Gun Control in America, by Saul Cornell. For the same reasons Exhibits DA and DB were ruled inadmissible, this exhibit is inadmissible, the objection is sustained. Furthermore, this exhibit appears to be making an offer of proof that some regulations existed at the time of the founding that bore some relationship to the right to keep and bear arms. But so far Defendants have provided no citation to any law that imposed a waiting period during the acquisition of a firearm. The information tendered is not relevant to these proceedings.

Exhibit EB – Excerpts from a book titled: Everyday Life in Early America, by David Freeman Hawke. For the same reasons Exhibits EA, DA and DB were ruled inadmissible, this

exhibit is inadmissible, the objection is sustained.

Exhibit EC – Excerpts from a book titled: The Reshaping of Everyday Life: 1790-1840, by Jack Larkin.  For the same reasons Exhibits EA, DA and DB were ruled inadmissible, this exhibit is inadmissible, the objection is sustained.

Exhibit ED – Excerpts from a book titled: The Gun Control Debate – You Decide, edited by Lee Nisbet.  For the same reasons Exhibits EA, DA and DB were ruled inadmissible, this exhibit is inadmissible, the objection is sustained.

Exhibit EE – Excerpts from a book titled: Original Meanings – Politics and Ideas in the Making of the Constitution, by Jack Rakove. For the same reasons Exhibits EA, DA and DB were ruled inadmissible, this exhibit is inadmissible, the objection is sustained.

Exhibit EF – Excerpts from a book titled: The Market Revolution – Jacksonian America 1815-1846, by Charles Sellers.  For the same reasons Exhibits EA, DA and DB were ruled inadmissible, this exhibit is inadmissible, the objection is sustained.

Exhibit EG – Excerpts from a book/pamphlet titled: Gun Control – A Documentary and Reference Guide, by Robert Spitzer.  For the same reasons Exhibits EA, DA and DB were ruled inadmissible, this exhibit is inadmissible, the objection is sustained.

Exhibit EH – Excerpts from a book titled: The Politics of Gun Control, by Robert Spitzer – Fifth Edition.  For the same reasons Exhibits EA, DA and DB were ruled inadmissible, this exhibit is inadmissible, the objection is sustained.

Exhibit EI – Excerpts from a book titled: The Militia and the Right to Arms, or How the Second Amendment Fell Silent, by Richard Uviller and William Merkel.  For the same reasons Exhibits EA, DA and DB were ruled inadmissible, this exhibit is inadmissible, the objection is sustained.

Exhibit EJ – Excerpts from a document titled: Reducing Gun Violence in America – Informing Policy with Evidence and Analysis, edited by Daniel Webster and Jon Vernick.  For the same reasons Exhibits EA, DA and DB were ruled inadmissible, this exhibit is inadmissible, the objection is sustained.

Exhibit EK – Excerpts from a book titled: Gunfight – The Battle of the Right to Bear Arms

in America, by Adam Winkler.  For the same reasons Exhibits EA, DA and DB were ruled

inadmissible, this exhibit is inadmissible, the objection is sustained.

Exhibit FA – A document titled: Now is the Time – The President's Plan to Protect Our

Children and Our Community by Reducing Gun Violence.  Published by the White House,

Washington, D.C.  For the same reasons Exhibits EA, DA and DB were ruled inadmissible, this

exhibit is inadmissible, the objection is sustained.

Exhibit FB – A document titled: CDC Injury Fact Book. Published by the National Center

for Injury Prevention and Control and the Centers for Disease Control and Prevention.  Atlanta,

Georgia – November 2006.  For the same reasons Exhibits EA, DA and DB were ruled

inadmissible, this exhibit is inadmissible, the objection is sustained.

Exhibit FC – A document titled: Model Laws for a Safer America – Seven Regulations to

Promote Responsible Gun Ownership and Sales.  Published in 2011 by the Legal Community

Against Violence.  For the same reasons Exhibits EA, DA and DB were ruled inadmissible, this

exhibit is inadmissible, the objection is sustained.

Exhibit FD – A Draft Report on Systems for Identifying Felons Who Attempt to Purchase

Firearms; Notice and Request for Comments.  Published in June 1989 by the U.S. Department of

Justice, Office of Justice Programs.  54 FR 26902-01, 1989 WL 283197 (F.R.).  For the same

reasons Exhibits EA, DA and DB were ruled inadmissible, this exhibit is inadmissible, the

objection is sustained.

Exhibit FE – Article published by the Violence Policy Center.  States with Higher Gun

Ownership and Weak Gun Laws Lead Nation in Gun Death. For the same reasons Exhibits EA,

DA and DB were ruled inadmissible, this exhibit is inadmissible, the objection is sustained.

Exhibit FF – Government Report.  Review of the Bureau of Alcohol, Tobacco, Firearms

and Explosives' Enforcement of Brady Act Violations Identified Through the National Instant

Criminal Background Check System.  Report Number I-2004-006.  July 2004.  For the same

reasons Exhibits EA, DA and DB were ruled inadmissible, this exhibit is inadmissible, the

objection is sustained.

Exhibit FG – This exhibit appears to be excerpts (pgs. 14 to 19) from Exhibit BO that was

admitted by way of the parties' stipulation.  Because it is repetitious of a previous exhibit, the objection is sustained on relevance grounds.

Exhibits GA through GO – These all appear to be magazine articles or internet articles written by prominent authors.  They offer no relevant evidence on any question currently before this court and they are hearsay, with no exception exclusion under the Federal Rules of Evidence.  The objection to these exhibits is sustained, the exhibits are inadmissible.

## Legal Standards for Reviewing the Evidence

### The Second Amendment

Turning next to what facts are relevant to this Court's resolution of this lawsuit, it is necessary to determine the constitutionally permissible boundaries of regulations impacting the Second Amendment.

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. Amend. II.  The Second Amendment right to keep and bear arms is an individual right and a fundamental right that is incorporated against states and municipalities under the Fourteenth Amendment.  *See McDonald v. City of Chicago*, 130 S.Ct. 3020, 3042 (2010); *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008); *Nordyke v. King*, 681 F.3d 1041, 1043 (9th Cir. 2012) (en banc).  The Second Amendment "protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home."  *McDonald*, 130 S.Ct. at 3044; *see also Heller*, 554 U.S. at 630.  However, the Second Amendment's protection is not unlimited, and longstanding regulatory measures such as "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms," are presumptively lawful.  *McDonald*, 130 S.Ct. at 3047; *Heller*, 554 U.S. at 626-27; *United States v. Chovan*, 735 F.3d 1127, 1133 (9th Cir. 2013).

The Ninth Circuit has adopted a two-step Second Amendment framework: (1) the court asks whether the challenged law burdens conduct protected by the Second Amendment, and (2) if so, the court determines whether the law meets the appropriate level of scrutiny.  *See Chovan*, 735

F.3d at 1136-38; *see also National Rifle Ass'n of Am. v. Bureau of Alochol, Tobacco, Firearms and Explosives*, 700 F.3d 185, 194-95 (5th Cir. 2012) ("*N.R.A.*"); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). The first step is a historical inquiry that seeks to determine whether the conduct at issue was understood to be within the scope of the right to keep and bear arms at the time of ratification. *Chester*, 628 F.3d at 680; *see Chovan*, 735 F.3d at 1137; *N.R.A.*, 700 F.3d at 194; *Ezell v. City of Chicago*, 651 F.3d 684, 702-03 (7th Cir. 2011). If a law burdens conduct that falls outside of the Second Amendment's scope, then the analysis ends and there is no violation. *See N.R.A.*, 700 F.3d at 195; *Ezell*, 651 F.3d at 703.

As to the second step, rational basis review is not to be used. *Heller*, 554 U.S. at 628 n.27; *Chovan*, 735 F.3d at 1137. Instead, if a law burdens a right within the scope of the Second Amendment, either intermediate or strict scrutiny will be applied. *See Chovan*, 735 F.3d at 1138; *N.R.A.*, 700 F.3d at 195; *Chester*, 628 F.3d at 682. Whether intermediate or strict scrutiny applies depends on: (1) how close the law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on the right. *Chovan*, 735 F.3d at 1138; *N.R.A.*, 700 F.3d at 195; Ezell, 651 F.3d at 703. A regulation that threatens a core Second Amendment right is subject to strict scrutiny, while a less severe regulation that does not encroach on a core Second Amendment right is subject to intermediate scrutiny. *See N.R.A.*, 700 F.3d at 195; *Chester*, 628 F.3d at 682. The "intermediate scrutiny" standard requires: (1) that the government's stated objective must be significant, substantial, or important, and (2) that there is a reasonable fit between the challenged regulation and the government's asserted objective. *Chovan*, 735 F.3d at 1139-41; *N.R.A.*, 700 F.3d at 195; *Chester*, 628 F.3d at 683.

For there to be a "reasonable fit," the regulation must not be substantially broader than necessary to achieve the government's interest. *See Reed v. Town of Gilbert*, 707 F.3d 1057, 1074 n.16 (9th Cir. 2013); *Fantasyland Video, Inc. v. County of San Diego*, 505 F.3d 996, 1004 (9th Cir. 2007); *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010). For additional discussion of how a regulation of First Amendment conduct can be overbroad by the unreasonable inclusion and exclusion of persons the regulation is meant to protect/regulate. *See Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009).

As noted in the Order Denying Defendants' Summary Judgment Motion (Doc #44), Plaintiffs have brought a focused Second Amendment challenge against California's WPL. They contend that the State's imposition of a 10-day waiting period before a law-abiding citizen can take possession of a firearm after a purchase amounts to a kind of seizure and/or prior restraint by the Defendants of an instrumentality necessary to exercise a fundamental right.

California justifies its WPL on two grounds: (1) that impulsive acts of suicide and homicide perpetrated with firearms can be prevented if someone with a troubled state of mind can be denied the immediate sale of a firearm, and (2) that to prevent the sale of firearms to prohibited person [see Trial Exhibit CA] the state must conduct a background check of the gun-buyer. The unstated premise for this second justification of the WPL is that background checks take time to perform. [TX Buford 167:3-10]

The issues presented by this case are somewhat narrowed because Plaintiffs are not challenging the State's system of background checks for any gun purchase, nor are they are challenging the waiting period for first-time gun buyers. Plaintiffs' contentions are that the WPL infringes the Second Amendment rights of persons: (1) already known to California to possess firearms and/or (2) who already hold certain renewable licenses, certificates and permits that require the same (or greater) scrutiny of the licensee than is required of a gun buyer at the time of a gun purchase.

Plaintiffs argue that the WPL burdens the rights of gun-buyers in these categories because: (1) A WPL cannot stop an impulsive act of violence (suicide or homicide) with a firearm if the perpetrator already has firearms in his/her possession, and (2) A law that imposes a 10-day waiting period for the purposes of conducting a background check is overbroad if the background check can be conducted in less time, and in some circumstances – almost instantaneously.

To resolve this case, this Court must conduct the two-step analysis required by Ninth Circuit law and look to the trial record for:

1. Evidence that Plaintiffs have made a *prima facie* showing of Second Amendment infringement, and whether the Defendants have produced persuasive evidence that would

conclusively rebut that showing.

    a.   The Plaintiffs must show some burden that the WPL imposes on conduct protected by the Second Amendment.

    b.   The Defendants must show that the regulation they are attempting to justify existed contemporaneous with the Second Amendment's ratification (1791) or its incorporation (1868).

2.  If the Plaintiffs prevail on step #1, then the evidentiary burden shifts to the Defendants to produce persuasive evidence that the WPL can be justified under the applicable standard of review.

    a.   The Defendants must show that their WPL can stop a person who already owns firearms from committing an impulsive act of violence (suicide/homicide) with a firearm.

    b.   The Defendants must show that the WPL is no broader than is necessary to achieve their objective of conducting background checks to stop the sale of firearms to prohibited persons.

## Analysis of Facts Presented at Trial

### The Waiting Period Law's Burden on the Second Amendment

The WPL prohibits every person (except for person eligible under the eighteen statutory exclusions) who purchases a firearm from taking possession of that firearm for a minimum of 10 days. That is, there is a period of at least 10 days in which California prohibits every person (especially the more than 99% of law-abiding gun-buyers) from exercising the right to keep and bear a firearm that they just purchased.

Defendants' own witnesses confirmed the burden here. For example, there was testimony during the trial by Mitch Matsumoto who works for the Bureau of Firearms in the Purchaser Clearance Unit as a Criminal Identification Specialist III.  He testified that for the year 2013 the state's system received more than 960,000 requests for background checks in connection with a gun sale and that total denials for the same time period was 7,371, or less than 1 percent.  [TX Matsumoto 331:12-332:14; *see also* <u>Exhibit AP</u>, Bates AG002394]  That works out to more than

nine and one-half million days[4] in 2013 that law-abiding Californians were collectively required to wait 10-days to take delivery on property they have paid for, that is available and that is necessary to exercise a fundamental right. Further evidentiary support for the burden the WPL imposes was presented through the testimony of the Plaintiffs Jeffrey Silvester [TX Silvester 20:4-48:15] and Brandon Combs [TX Combs 48:17-112:10].

There can be no question that actual possession of a firearm is a necessary prerequisite to exercising the right keep and bear arms. Therefore the Defendants must overcome this *prima facie* showing by presenting convincing rebuttal evidence that a WPL is such a long standing regulation of the rights secured by the Second Amendment as to be presumptively valid.

Defendants have not overcome Plaintiffs' showing with any such demonstration that WPLs existed in 1791 or 1868. Rather, Defendants made an offer of proof that guns were expensive and difficult to come by during the founding era and for some period of time after that. But the Plaintiffs are challenging a law passed by the state of California and administered by an agency of that government. Rights are not violated by market conditions.

The case law in this Circuit requires this Court to look at how Second Amendment rights and laws regulating those rights were understood during the founding era and the period of 14th Amendment incorporation. An historical inquiry into market conditions and the retail availability of firearms (even assuming these hypotheses are true) is simply not relevant to these proceedings.

Defendants also presented this Court with a citation to a California law enacted in 1923 that provided, "In no event shall any [pistol, revolver, or other concealable firearm] be delivered to the purchaser upon the day of the application for the purchase thereof, and when delivered such firearm shall be securely wrapped and shall be unloaded." Cal. Stats. 1923, ch.339, § 10, p. 701; Deering's General Laws (1924 ed.), Act 1970, § 10, p. 668. Fatal to the Defendants' argument is

---

[4] The actual number of background check requests for 2013 was 960,179. Total denials based on the purchaser being a prohibiting person were 7,371. An additional 2,814 denials were based on persons attempting to purchase more than one hand-gun in any 30 day period. (i.e., they were not a prohibited person, this is a limitation on the number of guns one person can purchase during any 30-day period) Even if 30-day denials are included in the total as a denial, the approval rate for gun purchases in 2013 exceeded 98.9%. *See* Trial <u>Exhibit AP</u>, Bates AG002394. California gun purchasers appear, overwhelmingly, to be law-abiding persons.

that the 1923 statute, even assuming it could be construed as a WPL, was not part of the fabric of the law of weapons in 1791 and/or 1868—which are the relevant time periods for evaluating regulations trenching on the Second Amendment.

Furthermore, in *Chovan*, the government attempted to argue that a federal statute banning people convicted of a misdemeanor crime of domestic violence was a longstanding presumptively lawful regulation. That Court disagreed and found that the government failed to produce evidence that domestic violence misdemeanants have historically been restricted from bearing arms. *Chovan*, 735 F.3d at 1137. The Court noted that the first federal firearm restrictions regarding violent offenders was not enacted until 1938 and that "Chovan, who was convicted of simple misdemeanor assault under California Penal Code § 273.5(a) - would not be restricted from possessing firearms under" that statute.

This Court finds that the 1923 statute, even if analogous to the WPL here, is not a long-standing regulation of Second Amendment rights in effect at the time of the founding era or during the time of that Amendment's incorporation via the 14th Amendment.

Based on the evidence presented during the trial, the Court finds for the Plaintiffs on the threshold issue of whether the WPL violates the Plaintiffs' Second Amendment rights. Because Plaintiffs prevailed on step 1 of the two-step *Chovan* test, the burden of producing evidence that the challenged law passes constitutional muster shifts to the government. As will be set forth below, it is not necessary for this Court to choose between strict or intermediate scrutiny as the Court finds that the WPL does not survive even the lesser intermediate scrutiny and will provide analysis below after a short digression.

Based on the documentary evidence presented and the testimony taken from the professionals working at the California Department of Justice, Bureau of Firearms, California can be justifiably proud of its state-of-the-art system and in the thoroughness and professionalism of its civil servants who administer the Background Check system. Nothing in this opinion is meant to denigrate the system or the personnel who run it. Quite the contrary, it is precisely the design, execution and professionalism of the Bureau of Firearms that compels this Court to reach the conclusions stated herein.

<u>WPL as "Cooling Off Period" to Deter Impulsive Acts of Violence</u>

The Court reaches the same conclusion after reviewing competing evidence at trial as it did in its Summary Judgment Order (Doc #44) on this issue.  First, the Court finds that deterring violence is an important (maybe even compelling) government interest.  The contest here is whether the means employed are sufficiently tailored to prevent a constitutional violation.

The testimony from Assistant Bureau Chief Buford indicates that all background checks access a database called the Automated Firearms System (AFS).  The bulk of the records contained in the AFS system are the state's Dealer Records of Sale (DROS) that have occurred (at least with respect to handguns) since 1991.  [TX Buford 234:20 – 235:21]  Furthermore the AFS system is available through the California Law Enforcement Telecommunication System (CLETS) on a 24/7, 365 days per year basis. It is also available to police officers (who have the equipment) in the field to alert them to the possibility of the presence of a firearm during any public safety service call.  [TX Buford 250:18 – 253:14]

It is clear from the evidence, at least for law-abiding gun owners who have purchased and/or transferred handguns through a licensed dealer since 1991 (and long guns since January 1, 2014, *see* TX Buford 181:22-182:1), that the State of California has the means to immediately establish that fact with existing resources.

The Defendants made several offers of proof purporting to show that 'cooling off periods' can deter suicide and other impulsive acts of violence.  But the Plaintiffs are not challenging the WPL for first time gun-buyers who presumably don't have immediate access to a firearm. In that circumstance, being required to wait 10 days to take possession (assuming the gun-buyer is not otherwise disqualified) may have a deterrent effect on impulsive suicides or homicides.  The Court accepts this hypothesis as a justification, but only as applied to first-time gun-buyers and/or persons whom the State cannot identify as already owning a firearm.

Defendants' failure of proof on this justification of the WPL as a 'cooling off period' is more properly characterized as a failure of logic.  As applied to individuals who already own a gun, the Court has great difficulty envisioning how the 'cooling off period' could pass any level of scrutiny.  If an individual already possesses a firearm, then no WPL would prevent that individual

from acting on a sudden impulse to commit gun violence with the gun already in his or her possession.

This conclusion is also supported by the testimony of Bureau Chief for the Bureau of Firearms – Stephen Lindley.  Plaintiffs' suit also challenges the constitutionality of the WPL's exceptions under the 14th Amendment's Equal Protection Clause.  These exceptions are permitted for persons who are peace officers, and who hold various Special Weapon Permits. Chief Lindley testified that many of these exceptions were justified because of the extensive background checks the peace officers and special permit holders are subject to.  [TX Lindley 461:4 – 470:10] However Chief Lindley also had to admit that peace officers commit suicide, special permit holders commit suicide, and people visiting target ranges commit suicide.  [TX Lindley 502:17-23] The sad fact is that a WPL cannot stop a person from committing an impulsive violent act, even against themselves, if they already possess the means to do so.  The WPL cannot be rationally justified as deterrent to suicide or homicide with a firearm for persons who already own firearms.

<u>Waiting Period Law as Necessary to Conduct Background Checks</u>

The majority of the trial testimony and exhibits admitted into evidence address California's computerized background check system.  Background checks for retail gun purchases through licensed dealers are mandated by federal law. The National Instant Criminal Background Check System (NICS) is administered by the U.S Department of Justice, Federal Bureau of Investigations.  As of 2011, the federal NICS system had achieved an availability rate of better than 99.87%, and a 91.52% Immediate Determination Rate.  Individual states may opt out of the national system (yet still have access to the national database) by demonstrating that their own system <u>meets or exceeds</u> the requirements mandated by federal law.  California is such a state.  *See generally* <u>Exhibit BO</u>, and the testimony of Steven Buford, Assistant Bureau Chief at the California Department of Justice, Division of Law Enforcement, Bureau of Firearms.  [TX Buford 163:2 – 286:25]

The starting point of California's Bureau of Firearms Consolidated Firearms Information System is the Dealer Record of Sale (DROS).  In addition to the requirement that firearm dealers obtain a federal firearms license through the Federal BATFE, California imposes additional

licensing requirements on retail firearms dealers. Such dealers are required to obtain a Certificate of Eligibility (COE) [TX Buford 221:12-17] and they must submit relevant information on a gun-buyer at the point of sale though the DROS form/process and quarantine the gun sold for 10 days before delivering the firearm to its new owner.

The current computerized DROS process starts with an electronic transmission of the gun-buyer's information (which includes information on the transaction firearm) to the Department. [TX Buford 171:20] Then the information is run through a DMV verification to insure accurate identification information of the DROS applicant. [TX Buford 171:21-172:3]

Next, the DROS application is run through the Automated Firearms System (AFS) to insure that the firearm in question is not reported lost or stolen. [TX Buford 173:10 – 175:15] The application is next run through multiple databases to determine if the gun-buyer belongs to a category of prohibited persons. [TX Buford 175:24 – 176:3] Those databases include: The Automated Criminal History System (ACHS) [TX Buford 176:9]; The California Restraining Order and Protective Order System (CARPOS) [TX Buford 182:20]; The Wanted Persons System (WPS) [TX Buford 184:5]; The Mental Health Firearms Prohibition System (MHFPS) [TX Buford 185:20]; The Consolidated Firearms Information System (CFIS) [TX Buford 189:3]; and finally California checks the federal government's National Instant Criminal Background Check System (NICS) [TX Buford 191:2].

California currently has four determinations made by the DROS/Background Check System: (1) approved [the sale and delivery may proceed subject to the WPL], (2) delayed [further investigation is necessary], (3) denied [the person is prohibited under federal or state law from acquiring/possessing a firearm], and (4) "undetermined." [TX Buford 231:25-232:15]

Because Plaintiffs have not challenged the accuracy or integrity of the DROS/Background system, it is only necessary for this Court to focus on how long an approval takes for persons in Plaintiffs' categories. A description of the computerized process of the DROS/Background Check was provided through the testimony of Donnette Orsi (currently with the California Department of Housing and Community Development) who was previously employed by the California Department of Justice as a Data Processing Manager during relevant time periods. [TX 287:17 –

311:4; *see also* <u>Exhibit CB</u>]  As noted by the testimony of the Assistant Bureau Chief, the system employs multiple databases, computer gateways, and protocols for the purpose of making a determination to approve, deny or delay a firearm sale.  The technical aspects of the system, while impressive are not relevant to this Court's deliberation.  What is at issue is how long the system takes to arrive at one of its determinations.

Assistant Bureau Chief Buford admitted that, "[I]t is possible for a DROS application to make it through all of the databases that we just mentioned without there being any hits at all[.]" And that these DROS applications are called "auto approvals."  And that these "auto approvals" make up about 20 percent of all DROS applications processed by the Department.  [TX Buford 198:5-15]  From which this Court draws the conclusion that during the year 2013, when more than 960,000 DROS applications were processed by the Department, at least 192,000 DROS applications were "auto-approved."  The testimony at trial from Buford and Orsi was consistent that "auto-approvals" which make up more than 20% of all DROS determinations, can take place within <u>one hour</u> [TX Buford 240:5] and in as little time as <u>one minute</u>.  [TX Orsi 308:17]

Additional testimony was provided that the DROS/Background Check System is capable of accessing the AFS database, which reliably keeps track of previous handgun purchases since 1996 and long gun purchases since January 1, 2014. [TX Graham 387:4-6, 442:3-443:8]   Furthermore, Assistant Bureau Chief Buford testified that the DROS/Background system can generate a response as to whether an applicant also has a Concealed Carry Weapon (CCW) permit and/or a Certificate of Eligibility (COE) and/or whether that person also has gun in the AFS system.  [TX Buford 280:16-24]

Plaintiff Silvester has obtained and maintains a Concealed Carry Weapons (CCW) Permit issued by the Hanford Police Department. He also testified that the permit process requires a background check, proof of training, a live scan fingerprint (which means the State of California has a full digital copy of his fingerprints on file) and demonstration of some degree of proficiency with a firearm.  [TX Silvester 23:8-24:18; *see also* <u>Plaintiffs' Exhibit 05</u>]  California's statutory

requirements for obtaining a CCW Permit are set forth at Penal Code §§ 26150, 26155.[5]

Plaintiff Combs has obtained and maintains a Certificate of Eligibility (COE).  This is a certificate issued by the California Department of Justice that requires payment of a fee, a background check, and live scan fingerprint submission.  The certificate must be renewed annually.  [TX Combs 60:14-61:22; *see also* Plaintiffs' Exhibit 04]  Although it may promulgate regulations, the California Department of Justice has no discretion in the issuance of a COE, i.e., it is a "shall issue" certificate after the appropriate background checks and submission of a live scan set of fingerprints.  [TX Lindley 494:4- 495:10; 510:16-511:12]  The statutory requirements for obtaining a COE in California are set forth at Penal Code § 26710.[6]

Both a CCW and COE generate a unique criminal justice identification record that is based on the unique set of fingerprint records on file for that individual.  That unique identification record is known as a Criminal Identification Index (number) or CII. The existence of a CII speeds up the process of identifying a person when the California Department of Justice makes an inquiry about them. [TX Buford 243:6-24] [TX Matsumoto 327:22]

There is nothing magical about having a 10 day waiting period to conduct background

---

[5]  A person applying for such a license must convince a sheriff or chief of police that:

    (1)     The applicant is of good moral character.

    (2)     Good cause exists for issuance of the license.

    (3)     The applicant is a resident of the county or a city with the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business.

    (4)     The applicant has completed a course of training as described in Section 26165.

[6]  (a) A person may request a certificate of eligibility from the Department of Justice.

(b) The Department of Justice shall examine its records and records available to the department in the National Instant Criminal Background Check System in order to determine if the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(c) The department shall issue a certificate to an applicant if the department's records indicate that the applicant is not a person who is prohibited by state or federal law from possessing firearms.

(d) The department shall adopt regulations to administer the certificate of eligibility program and shall recover the full costs of administering the program by imposing fees assessed to applicants who apply for those certificates.

checks. Defendants admit in their Trial Brief that when first instituted in California, background checks were required to be completed in three (3) days. In 1965, the waiting period was extended to five days. Then in 1975 it was extended to 15 days and then it was reduced to its present length of 10 days in 1997. [Trial Brief of Defendant Kamala Harris, Doc #65, pgs. 4-5]

The relevant inquiry necessary for the Court's resolution of this part of the case is whether a mandatory minimum of a 10-day waiting period is necessary to achieve the government's interest in conducting a background check. The evidence presented at trial show that is does not and that the only other justification for the WPL after an approval are the "cooling-off" period and the statute itself. [TX Buford 244:5-12]

This conclusion made by the Court is supported by the testimony of the Chief of the Firearms Bureau – Stephen Lindley in the following colloquy starting at TX Lindley at 508:9:

Q. Why not simply release firearms upon approval?

A. Because we have the 10-day waiting period as a cooling-off period as well.

Q. All right, so the only thing that's stopping you from releasing a firearm upon approval of the background check is the statute, and the statute is based upon we still want a cooling-off period.

A. Once the background is approved?

Q. Yes.

A. Yes.

### The Armed and Prohibited Persons System

California not only gets involved during the process of a person acquiring a firearm, it also has a system for continuing to monitor the eligibility of those gun owners who are known to the state to possess firearms. That system is the Armed and Prohibited Persons System (APPS). Its specific purpose is to identify people who are known to the State of California to have a firearm who have a subsequent prohibiting event (conviction, mental health hold, restraining order, etc…) and, therefore, should not have a gun. [TX Graham 420:11-16.] [TX Orsi 307:7-12] The APPS database updates itself every day with data from the Department of Justice databases relating to firearms (except for NICS [TX Lindley 476:12]) and generates reports for further investigation if it

obtains a match as described in the DROS background check. [TX Orsi 304:4-23]   The APPS system is funded (currently with $24,000,000) through the fees paid by California gun-buyers through their DROS fees.  [TX Graham 426:6-23]   In sum, where the DROS Background check is designed stop somebody from getting a firearm, the APPS system is designed to get a firearm from somebody who has become prohibited.  [TX Lindley 497:10-15]

The existence of this "safety-net" system is relevant to the Court's inquiry about whether California's WPL is overbroad in trying to address the government's legitimate objectives for addressing public safety through its systems for monitoring gun sales and current gun ownership.

## FINDINGS

The Court has already noted, and now finds, that for persons who already own firearms a "cooling off period" is not a constitutionally valid justification for infringing the Second Amendment by making those gun owners wait 10 days to take possession of their firearms in an otherwise lawful purchase.  Furthermore, since the testimony from the Defendants' own witnesses confirmed that there is no reason other than the cooling off period and the language of the statute to delay delivery of a firearm after the DROS/Background check has approved the sale, this Court finds in favor of the Plaintiffs on their Second Amendment claims.

The WPL infringes the Second Amendment rights of law-abiding persons who already lawfully own/possess firearms.  Furthermore, the Court finds that any delay beyond the actual approval the firearm sale by the states DROS/Background check system is substantially broader than is necessary to achieve the government's stated purpose of conducting background checks.  Furthermore, the Court finds that the safety net of the APPS system functions as a more narrowly tailored alternative for addressing the problem of law-abiding gun owners who suffer a disqualifying event after acquiring a firearm.

California gun buyers are overwhelmingly law-abiding people seeking to exercise a fundamental right.  Furthermore, gun buyers like the plaintiffs Silvester and Combs, who obtain CCW permits and COE certificates complete the extra step of submitting full live scan fingerprints to the Defendants in order to make themselves easily identifiable.  Both the CCW [no more than 2 years, Penal Code § 26220] and the COE [annually, TX Combs 61:8] must be renewed on a

regular basis.  Furthermore, Deputy Bureau Chief Buford testified that COEs and CCWs, because the Department of Justice monitors these permits/licenses/certificates, are subject to a procedure called "rap-back." [TX Buford 221:21- 225:17]  The "rap-back" system is a process for positive identification of a person based on the fingerprints that are already on file with the Department. The rap-back system is used to notify the Department of the arrest of any person with fingerprint records on file with the Department.  As Bureau Chief Lindley went on to explain starting at TX 492:7:

> A.  We have a system which, in laymen's term, is called a
> rap-back system.
> Q. Can you explain what that is?
> A. Based on the person's submitted fingerprints, if their
> name comes up through the criminal history system as being
> arrested, that goes into the system and would flag. So I'll
> use myself as an example.
> Q. All right.
> A. Let's say that last night, I was arrested for domestic
> violence. Taken down to county jail, my fingerprints were
> rolled. This morning, DOJ would have been notified by our own
> system that I was arrested for domestic violence, which
> potentially could be a prohibiting offense if I'm convicted or
> plead guilty to it. So that allows that agency to take some
> action, especially since I'm a police officer, maybe to remove
> me from the field, put me on admin leave, but they're notified
> of that arrest.
> […]
> A. Rap-back is designed for people that we have fingerprints
> on. People that go into APPS, we might not necessarily always
> have fingerprints on them because they're contained in
> different databases. Like our mental health database,
> restraining order database, or the wanted persons database.
> Rap-back mainly deals with the people who are in the criminal

history system, and the CII number and that information goes

in and is part of the criminal history. So if you ran a

criminal history on me, you'll only find that I have the CII

number and the two agencies that I used to be employed with.

DOJ, which I'm currently, and National City previously.

Before the Court sets forth the remedy it will adopt, the Court will note that the Plaintiffs had also challenged the WPL's exceptions as violating the 14th Amendment Equal Protection Clause. The Court finds much in the record to support that claim, but given the Court's ruling on the Second Amendment claims, the Court's order and the fact that relief can be granted to the Plaintiffs without reaching the merits of the Equal Protection challenge—that inquiry will have to await another time.

### ORDER

Sensitive to the different roles co-equal branches of government play under our Constitution, this Court will adopt the approach taken by the Seventh Circuit in *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012). This Court will impose injunctive relief that will be stayed for six (6) months to give the California legislature time to adopt any alternative policy that they believe can best meet the needs of public safety without trenching on law-abiding gun owner's Second Amendment rights.

Six months from the date of entry of judgment, unless good cause is shown, an injunction will issue that achieves the following objectives:

1. The Defendants are directed to modify their DROS/Background check system to make the following inquiries upon a gun-buyer's application to purchase/transfer any firearm through this system;

2. Any person for whom the Defendant can determine has:

    a. A valid and current Concealed Carry Weapon License (CCW and/or license to carry), that person is subject to the same background check as the eighteen statutory exclusions and shall not be subject to the 10-day waiting period, and/or

b. A valid and current Certificate of Eligibility (COE), and for whom the AFS shows a firearm purchase since 1996, that person is subject to the same background check as the eighteen statutory exclusions and shall not be subject to the 10-day waiting period, and/or

c. Purchased a firearm that is documented in the Automated Firearms System since 1996, that person may take delivery of the firearm upon approval of the DROS/Background check (i.e., the Department of Justice shall authorize release upon approval, rather than wait 10 days to authorize release).

3. Nothing in this order is to be construed as interfering with the Defendants' authority to deny a transfer/sale to those in a prohibiting category, or delaying a transfer/sale where further investigation is required to confirm that a buyer/transferee is not in a prohibited category, as defined by current state and federal law.

4. The parties are directed to appear in the court of a status conference on XXX/XXX/XXXXX.

The parties shall file a joint status conference state 10 days before the status conference.

IT IS SO ORDERED.

Dated:

_____
SENIOR DISTRICT JUDGE