1 | Victor J. Otten (SBN 165800)
2 | OTTEN & JOYCE, LLP
3620 Pacific Coast Hwy, Suite 100
Torrance, California 90505
3 | Phone: (310) 378-8533
Fax: (310) 347-4225
4 | E-Mail: vic@ottenandjoyce.com

5 | Donald E. J. Kilmer, Jr. (SBN: 179986)
6 | LAW OFFICES OF DONALD KILMER
1645 Willow Street, Suite 150
San Jose, California 95125
7 | Voice: (408) 264-8489
Fax:   (408) 264-8487
8 | E-Mail: Don@DKLawOffice.com

9 | Attorneys for Plaintiffs

10

11 |                    UNITED STATES DISTRICT COURT
12 |          FOR THE EASTERN DISTRICT OF CALIFORNIA
                           FRESNO DIVISION
            2500 TULARE STREET | FRESNO, CA 93721

13

14 | JEFF SILVESTER, BRANDON         |  Case No.:    1:11-CV-2137 AWI SKO
COMBS, THE CALGUNS
15 | FOUNDATION, INC., a non-profit  |  PLAINTIFFS' MEMORANDUM OF
organization, and THE SECOND      |  POINTS AND AUTHORITIES IN
16 | AMENDMENT FOUNDATION,           |  SUPPORT OF (PROPOSED) FINDINGS
INC., a non-profit organization,  |  OF FACT AND CONCLUSIONS OF
17 |                                 |  LAW AFTER BENCH TRIAL

18 |          Plaintiffs,            |  Judge:      Hon. Anthony W. Ishii
                                    |  Courtroom:  8th Floor, Room 2
19 |            vs.                  |  Trial Date: March 2526/27, 2014
                                    |  Case Filed: Dec. 23, 2011
20 |
KAMALA HARRIS, Attorney General
21 | of California, and DOES 1 to 20,

22 |          Defendants.

23

24

25

26

27

28

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1

2

## TABLE OF CONTENTS

3

I.    INTRODUCTION.................................................................................1

II.   STATEMENT OF THE CASE....................................................2

III.  STATEMENT/ANALYSIS OF FACTS...........................................4

         A.    The Waiting Period is a Burden on the Plaintiffs' ....................4
               Second Amendment Rights.

         B.    The WPL Cannot Deter Violence by People ...............................8
               Who Already Have Guns.

         C.    10 Days to Conduct Background Checks is Arbitrary................10

         D.    The APPS System and Rap-Back System...................................14
               Are Narrower Alternatives

IV.   ARGUMENT ...................................................................................16

         A.    Plaintiffs Have Satisfied the *Ezell/Chovan/Peruta* Test..........19
               The WPL Violates Their Second Amendment Rights.

         B.    Defendants Cannot Even Satisfy Intermediate Scurtiny...........21
               That the 10-Day Waiting Period as Applied Against
               Plaintiffs Meets the *Ezell/Chovan/Peruta* Test for
               Second Amendment Rights.

         C.    The 10-Day Waiting Period Cannot Satisfy .............................22
               Intermediate Scurtiny

         D.    Plaintiffs 14th Amendment Claims are Viable..........................25
               And Suggest the Remedy.

V.    CONCLUSION ...............................................................................27

Declaration of Service ..............................................................................28

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

28

# TABLE OF AUTHORITIES
## FEDERAL CASES

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009 en banc). . . . . . . . . . . . . . . . .  19

*Carey v. Brown*, 447 U.S. 455 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Chovan*, 2013 U.S. App. LEXIS 23199. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Chovan*, 2013 U.S. App. LEXIS at 23-25. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*District of Columbia v. Heller*, 554 U.S. 570 (2008).. . . . . . . . . . . . . . . . . . . . . . . *passim*

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . *passim*

*Fantasyland Video, Inc. v. County of San Diego*, . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
505 F.3d 996 (9th Cir. 2007)

*Hanna Boys Ctr. v. Miller*, 853 F.2d 682 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . .  21

*McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . *passim*

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*National Rifle Association of America v. Bureau of Alochol, Tobacco,*
   *Firearms and Explosives*, 700 F.3d 185 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . .  18

*Nordvke v. King*, 681 F.3d 1041 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014).  . . . . . . . . . . . . . . . . .  19

   *Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014).  . . . . . . . . . . . . . .  26

*Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972). . . . . . . . . . . . . . . . . . . .  25

*Reed v. Town of  Gilbert*, 707 F.3d 1057 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . .  18

*Richardson v. United States*, 841 F.2d 993 (9th Cir. 1988)). . . . . . . . . . . . . . . . . . . . . .  20

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), *reh'g denied* 328 F.3d
   567 (9th Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010).. . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013).. . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Houser*, 804 F.2d 565 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . .  20

*United States v. Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000). . . . . . . . . . . . . . .  21

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010).. . . . . . . . . . . . . . . . . . . . . .  19

*United States v. Phillips*, 367 F.3d 846 (9th Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . .  20

*United States v. Smith*, 389 F.3d 944 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . .  20

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

**STATE CASES**

*Andrews v. State*, 50 Tenn. 165. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Kasler v. Lockyer*, 23 Cal. 4th 472 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

**FEDERAL STATUTES**

U.S. Const. Amend. II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

# I. INTRODUCTION

The flaw in Defendants' theory of this case can be summed up by the implied premise of the current state of the law.  That gun owners/purchasers, as a collective group are to be presumed guilty of causing gun violence; therefore government policies, like a 10-day waiting period to purchase a firearm can, and should, be imposed on all gun owners/purchasers as a class.

But the evidence presented during a 3-day bench trial is that California gun-buyers are overwhelmingly law-abiding.  Mitch Matsumoto who works for the Bureau of Firearms in the Purchaser Clearance Unit as a Criminal Identification Specialist III, testified that for the year 2013 the state's system received more than 960,000 requests for background checks in connection with a gun sale and that total denials for the same time period was 7,371, or less than 1 percent.  [TX Matsumoto 331:12-332:14; see also Exhibit AP, Bates AG002394]  That works out to more than nine and one-half million days in 2013 that California gun-buyers had to wait 10-days to take possession of their own property that was available and necessary to exercise a fundamental right.

The actual number of background check requests for 2013 was 960,179.  Total denials based on the purchaser being a prohibiting person were 7,371.  An additional 2,814 denials were based on persons attempting to purchase more than one hand-gun in any 30 day period.  (i.e., they were not a prohibited person, this is a limitation on the number of guns one person can purchase during any 30-day period)  Even if 30-day denials are included in the total as a denial, the approval rate for gun purchases in 2013 exceeded 98.9%.  See Trial Exhibit AP, Bates AG002394.

Put simply, the government can have no interest in enforcing a policy that infringes  the fundamental rights of persons already known to the state to be armed and trustworthy, e.g., (1) gun owners with registered guns already in their possession, and/or (2) gun owners with a Certificate of Eligibility to

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Memo in Support of FFCL          -1-                    *Silvester, et al. v. Harris*

1   acquire/own/possess firearms that is issued by the State's top law enforcement

2   agency (Defendants herein), and/or (3) gun owners with a state license to carry, on

3   their person at all times, a loaded and concealable firearms after that license has

4   been issued by the local chief of police or county sheriff.

5       Background checks for all gun buyers may be constitutionally appropriate.

6   10-Day Waiting Periods may be appropriate to keep first-time gun buyers (at least

7   for the first purchase in California) from committing impulsive violent acts and

8   because they are strangers to California's "gun-owner database." But 10-Day

9   Waiting periods for gun-owners who are already known by the state to be armed

10  and trustworthy is an irrational and overbroad infringement on the Second

11  Amendment.

12                    **II.  STATEMENT OF THE CASE**

13      As noted in the Order Denying Defendants' Summary Judgment Motion (Doc

14  #44), Plaintiffs have brought a focused Second Amendment challenge against

15  California's WPL.  We contend that the State's imposition of a 10-day waiting

16  period before a law-abiding citizen can take possession of a firearm after a purchase

17  amounts to a kind of seizure and/or prior restraint by the Defendants of an

18  instrumentality necessary to exercise a fundamental right.

19      California justifies its WPL on two grounds: (1) that impulsive acts of suicide

20  and homicide perpetrated with firearms can be prevented if someone with a

21  troubled state of mind can be denied the immediate sale of a firearm, and (2) that to

22  prevent the sale of firearms to prohibited person [see Trial Exhibit CA] the state

23  must conduct a background check of the gun-buyer. The unstated premise for this

24  second justification of the WPL is that background checks take time to perform. [TX

25  Buford 167:3-10][1]

26  _____

27          [1]

    During the trial defendants attempted to suggest a potential third justification for the WPL.
28  [TX 333:22-447:9]  But Agent Graham's testimony on this issue was more descriptive of a
    criminal investigation (conspiracy to engage in a straw purchase) than a need to address the

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

The issues presented by this case are narrow because Plaintiffs are not challenging the State's system of background checks for any gun purchase, nor are we challenging the waiting period for first-time gun buyers. Our contentions are that the WPL infringes the Second Amendment rights of persons: (1) already known to California to possess firearms and/or (2) who already hold certain renewable licenses, certificates and permits that require the same (or greater) scrutiny of the licensee than is required of a gun buyer at the time of a gun purchase.

Plaintiffs argue that the WPL burdens the rights of gun-buyers in these categories because: (1) A WPL cannot stop an impulsive act of violence (suicide or homicide) with a firearm if the perpetrator already has firearms in his/her possession, and (2) A law that imposes a 10-day waiting period for the purposes of conducting a background check is overbroad if the background check can be conducted in less time, and in some circumstances - almost instantaneously.

To resolve this case, this Court should adopt the two-step analysis required by Ninth Circuit law and look to the trial record for:

1.     Evidence that Plaintiffs have made a *prima facie* showing of Second Amendment infringement, and whether the Defendants have produced persuasive evidence that would conclusively rebut that showing.

    a.     The Plaintiffs must show some burden that the WPL imposes on conduct protected by the Second Amendment.

    b.     The Defendants must show that the regulation they are attempting to justify existed contemporaneous with the Second Amendment's ratification (1791) or its incorporation (1868).

2.     If the Plaintiffs prevail on step #1, then the evidentiary burden shifts to the Defendants to produce persuasive evidence that the WPL can be

---

regulation of a sale to an actual buyer.  Law-enforcement personnel already have access to neutral and detached magistrates to secure warrants to seize property that may be the object or instrumentality of a crime.  The Court should proceed with its analysis based on the two justifications for the WPL tendered by the Defendants since the beginning of this case.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    justified under the applicable standard of review.

2        a.    The Defendants must show that their WPL can stop a person

3                who already owns firearms from committing an impulsive act of

4                violence (suicide/homicide) with a firearm.

5        b.    The Defendants must show that the WPL is no broader than is

6                necessary to achieve their objective of conducting background

7                checks to stop the sale of firearms to prohibited persons.

8    ### III. STATEMENT/ANALYSIS OF FACTS

9    <u>A.  The Waiting Period is a Burden on Plaintiffs Second Amendment Rights.</u>

10    The WPL prohibits every person (except for person eligible under the

11    eighteen statutory exclusions) who purchases a firearm from taking possession of

12    that firearm for a minimum of 10 days.  That is, there is a period of at least 10 days

13    in which California prohibits every most law-abiding persons from exercising the

14    right to keep and bear a firearm that they just purchased.

15    Defendants' own witnesses confirmed the burden during trial. For example,

16    there was testimony during the trial by Mitch Matsumoto who works for the

17    Bureau of Firearms in the Purchaser Clearance Unit as a Criminal Identification

18    Specialist III.  He testified that for the year 2013 the state's system received more

19    than 960,000 requests for background checks in connection with a gun sale and that

20    total denials for the same time period was 7,371, or less than 1 percent.  [TX

21    Matsumoto 331:12-332:14; see also Exhibit AP, Bates AG002394]

22    The exceptions to the 10-day waiting period – also the basis for Plaintiffs'

23    Equal Protection Claim – are a further clue to the law's burden (and irrationality):

24        1.    Certain law enforcement transactions. Penal Code §§26950, 27050,

25              27055, 27060, 27065 (exempting §26815); §§27600, 27605, 27610,
          27615, and 27650 (exempting §27540).

26        2.    A dealer who delivers a firearm other than a handgun at an auction or

27              similar event. Penal Code §§26955 (exempts from §26815); §27655
          (exempts from §27540).

28

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

3.      Dealer-to-dealer transfers of firearms. Penal Code §§27110 and 27125 (exempts from §26815); §§27710, and 27725 (exempts from §27540).

4.      Transfers of firearms by a dealer to him or herself. Penal Code §§26960 and 27130 (exempts from §26815); §§27660 and 27730 (exempts from §27540.)

5.      Transactions between or to importers and manufacturers of firearms. Penal Code § 27100 (exempts from § 26815); § 27700 (exempts from §27540).

6.      Persons with a "short barrel rifle" or "short barrel shotgun" permit pursuant to Penal Code § 33300.  Penal Code §§ 26965 and 21740 (exempts from § 26815);  §§ 27665 and 27740 (exempts from § 27540).

7.      Persons who have an —assault weapons. permit pursuant to Penal Code section 30500, *et seq*. Penal Code §21740 (exempts from §26815); §27740 (exempts from §27540).

8.      Persons who have a —machinegun. permit pursuant to Penal Code section 32650 *et seq*. Penal Code §§26965 and 27140 (exempts from §26815); §§27665 and 27740 (exempts from §27540).

9.      Persons who have a —machinegun. license pursuant to Penal Code section 32700. Penal Code §26965 (exempts from §26815); § 27665 (exempts from §27540).

10.     Persons who have a —destructive device. permit pursuant to Penal Code section 18900. Penal Code §26965 (exempts from §26815); §27665 (exempts from §27540).

11.     Persons with curio and relic collector's licenses issued by the Bureau of Alcohol, Tobacco, Firearms and who have a valid Certificate of Eligibility issued by the California Department of Justice and only when purchasing curio and relic firearms. Penal Code §26970 (exempts from §26815); §27670 (exempts from §27540).

12.     Transactions regarding firearms serviced or repaired by a gunsmith. Penal Code §27105 (exempts from §26815); §27705 (exempts from §27540).

13.     Dealer sales to persons residing out-of-state. Penal Code §27115 (exempts from §26815) and §27715 (exempts from §27540).

14.     Deliveries to wholesalers. Penal Code §27120 (exempts from §26815); §27720 (exempts from §27540).

15.     Loans by dealers who operate target facilities. Penal Code §27135 (exempts from §26815); §27735 (exempts from §27540).

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

16.     Certain loans of firearms for use as props. Penal Code §27000 (exempts from §26815); §27745 (exempts from §27540).

17.     Loans to consultants or evaluators. Penal Code §27005 (exempts from §26815); §27750 (exempts from §27540).

18.     Lawful transactions involving cane guns, firearms that are not immediately recognizable as firearms, undetectable firearms, wallet guns, unconventional pistols, and zip guns. Penal Code §21740 (exempts from §26815); §27740 (exempts from §27540).

Presumably the persons whose transactions are described by these exceptions have convinced the legislature, by some methodology that is presently unknown, that they will never become felons, never become violent misdemeanants, never suffer a mental break-down, never engage in suicidal ideation or never commit an impulsive violent act and therefore should not be burdened with a 10-day waiting period. So if a WPL is not a burden, then why are the exceptions necessary?

The testimony of Bureau Chief for the Bureau of Firearms - Stephen Lindley was that these exceptions are permitted for persons who are peace officers, and who hold various Special Weapon Permits. Chief Lindley testified that many of these exceptions were justified because of the extensive background checks that peace officers and special permit holders are subject to. [TX Lindley 461:4 - 470:10]

Further evidentiary support for the burden the WPL imposes was presented through the testimony of the Plaintiffs Jeffrey Silvester [TX Silvester 20:4-48:15] and Brandon Combs [TX Combs 48:17-112:10]. That is why it rings true to say that acquisition of a firearm is a necessary prerequisite to exercising the right keep and bear arms. In *Andrews v. State*, 50 Tenn. 165, 178, 8 Am. Rep. 8, 13 (1871) – cited favorably in *District of Columbia v. Heller*, 554 U.S. 570, 608, 614 (2008), the High Court of Tennessee found much in common between that State's guarantee of the "right to keep and bear arms" and the Second Amendment when it held:

> The right to keep and bear arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and purchase and provide ammunition suitable for such arms, and keep them in repair. [...]

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1   Therefore the Defendants must produce some evidence to overcome this

2   *prima facie* showing by the Plaintiffs by presenting convincing rebuttal evidence

3   that a WPL is such a long standing regulation of the rights secured by the Second

4   Amendment as to be presumptively valid.

5   The Defendants failed at that task because they did not demonstrate that

6   WPLs existed in 1791 or 1868.  Rather, Defendants made an offer of proof that guns

7   were expensive and difficult to come by during the founding era and for some period

8   of time after that.  But the Plaintiffs are challenging a law passed by the state of

9   California and administered by an agency of that government.  Rights are not

10  violated by market conditions.

11  The case law in this Circuit requires this Court to look at how Second

12  Amendment rights and laws regulating those rights were understood during the

13  founding era and the period of 14th Amendment incorporation.  An historical

14  inquiry into market conditions and the retail availability of firearms (even

15  assuming these hypotheses are true) is simply not relevant to these proceedings.

16  Defendants also presented this Court with a citation to a California law

17  enacted in 1923 that provided, "In no event shall any [pistol, revolver, or other

18  concealable firearm] be delivered to the purchaser upon the day of the application

19  for the purchase thereof, and when delivered such firearm shall be securely

20  wrapped and shall be unloaded."  Cal. Stats. 1923, ch.339, § 10, p. 701; Deering's

21  General Laws (1924 ed.), Act 1970, § 10, p. 668.

22  Fatal to the Defendants' argument is that the 1923 statute, even assuming it

23  could be construed as a WPL, was not part of the fabric of the law of weapons in

24  1791 and/or 1868-which are the relevant time periods for evaluating regulations

25  trenching on the Second Amendment.  Furthermore, the WPL was not applied

26  against all firearms purchases until very recently.  See Plaintiffs' Trial Exhibit 06.

27  <u>AB497 Processing Alternatives Feasibility Study – Report of Findings</u>. May 1991 by

28  the California Department of Justice.  Bates AG000766-AG000826.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    Furthermore, in *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), the

2    government attempted to argue that a federal statute banning people convicted of a

3    misdemeanor crime of domestic violence was a longstanding presumptively lawful

4    regulation.  That Court disagreed and found that the government failed to produce

5    evidence that domestic violence misdemeanants have historically been restricted

6    from bearing arms.  *Chovan*, 735 F.3d at 1137.  The Court noted that the first

7    federal firearm restrictions regarding violent offenders was not enacted until 1938

8    and that "Chovan, who was convicted of simple misdemeanor assault under

9    California Penal Code § 273.5(a) - would not be restricted from possessing firearms

10   under" that statute.

11    This Court should similarly find that the 1923 statute, even if it is on point to

12   the WPL here, is not a long-standing regulation of Second Amendment rights that

13   was in effect at the time of the founding era or during the time of that Amendment's

14   incorporation via the 14th Amendment.

15    Based on the evidence presented during the trial, the Court should find for

16   the Plaintiffs on the threshold issue of whether the WPL violates the Plaintiffs'

17   Second Amendment rights.  And based on that holding, the burden of producing

18   evidence that the challenged law passes constitutional muster now shifts to the

19   government.  As will be set forth below, it should not be necessary for this Court to

20   choose between strict or intermediate scrutiny as the Court should find that the

21   WPL does not survive even the lesser intermediate scrutiny.

22    B.  The WPL Cannot Deter Violence by People Who Already Have Guns.

23    The Court should reach the same conclusion after trial that it did after in its

24   Summary Judgment Order (Doc #44) on this issue.  First, the Court can easily find

25   that deterring violence is an important (maybe even compelling) government

26   interest.

27    But the contest here is whether the means employed are sufficiently tailored

28   to prevent a constitutional violation.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    The testimony from Assistant Bureau Chief Buford indicates that all

2    background checks access a database called the Automated Firearms System (AFS).

3    The bulk of the records contained in the AFS system are the state's Dealer Records

4    of Sale (DROS) that have occurred (at least with respect to handguns) since 1991.

5    [TX Buford 234:20 - 235:21]  Furthermore the AFS system is available through the

6    California Law Enforcement Telecommunication System (CLETS) on a 24/7, 365

7    days per year basis. It is also available to police officers (who have the equipment)

8    in the field to alert them to the possibility of the presence of a firearm during any

9    public safety service call.  [TX Buford 250:18 - 253:14]

10    It is clear from the evidence, at least for law-abiding gun owners who have

11    purchased and/or transferred handguns through a licensed dealer since 1991 (and

12    long guns since January 1, 2014, see TX Buford 181:22-182:1), that the State of

13    California has the means to immediately establish that fact with existing resources.

14    The Defendants made several offers of proof purporting to show that 'cooling

15    off periods' can deter suicide and other impulsive acts of violence.  But the Plaintiffs

16    are not challenging the WPL for first time gun-buyers who presumably don't have

17    immediate access to a firearm. In that circumstance, being required to wait 10 days

18    to take possession (assuming the gun-buyer is not otherwise disqualified) may have

19    a deterrent effect on impulsive suicides or homicides.  But again, only as applied to

20    first-time gun-buyers and/or persons whom the State cannot identify as already

21    owning a firearm.

22    Defendants' failure of proof with respect to the WPL as a 'cooling off period' is

23    more properly characterized as a failure of logic.  As applied to individuals who

24    already own a gun, common sense suggests the obvious question:  How can the WPL

25    'cooling off period' stop violence with a new gun if an individual already possesses a

26    firearm?

27    The equally commonsense conclusion that it can't is supported by the

28    testimony of Bureau Chief for the Bureau of Firearms - Stephen Lindley.  As noted

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1  above, Plaintiffs' suit also challenges the constitutionality of the WPL's exceptions

2  under the 14th Amendment's Equal Protection Clause.  These exceptions are

3  permitted for persons who are peace officers, and who hold various Special Weapon

4  Permits. [TX Lindley 461:4 - 470:10]  However Chief Lindley also had to admit that

5  peace officers commit suicide, special permit holders commit suicide, and people

6  visiting target ranges commit suicide.  [TX Lindley 502:17-23]  The sad fact is that

7  a WPL cannot stop a person from committing an impulsive violent act, even against

8  themselves, if they already possess the means to do so.  The WPL cannot be

9  rationally justified as deterrent to suicide or homicide with a firearm for persons

10  who already own firearms.

11  <center>C.  10 Days to Conduct Background Checks is Arbitrary.</center>

12      The majority of the trial testimony and exhibits admitted into evidence

13  address California's computerized background check system.  Background checks

14  for retail gun purchases through licensed dealers are mandated by federal law. The

15  National Instant Criminal Background Check System (NICS) is administered by

16  the U.S Department of Justice, Federal Bureau of Investigations.  As of 2011, the

17  federal NICS system had achieved an availability rate of better than 99.87%, and a

18  91.52% Immediate Determination Rate.  Individual states may opt out of the

19  national system (yet still have access to the national database) by demonstrating

20  that their own system meets or exceeds the requirements mandated by federal law.

21  California is such a state.  See generally Exhibit BO, and the testimony of Steven

22  Buford, Assistant Bureau Chief at the California Department of Justice, Division of

23  Law Enforcement, Bureau of Firearms.  [TX Buford 163:2 - 286:25]

24      The starting point of California's Bureau of Firearms Consolidated Firearms

25  Information System is the Dealer Record of Sale (DROS).  In addition to the

26  requirement that firearm dealers obtain a federal firearms license through the

27  Federal BATFE, California imposes additional licensing requirements on retail

28  firearms dealers.  Such dealers are required to obtain a Certificate of Eligibility

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Memo in Support of FFCL                    -10-                    *Silvester, et al. v. Harris*

1   (COE) [TX Buford 221:12-17] and they must submit relevant information on a

2   gun-buyer at the point of sale though the DROS form/process and quarantine the

3   gun sold for 10 days before delivering the firearm to its new owner.

4        The current computerized DROS process starts with an electronic

5   transmission of the gun-buyer's information (which includes information on the

6   transaction firearm) to the Department.  [TX Buford 171:20]  Then the information

7   is run through a DMV verification to insure accurate identification information of

8   the DROS applicant.  [TX Buford 171:21-172:3]

9        Next, the DROS application is run through the Automated Firearms System

10   (AFS) to insure that the firearm in question is not reported lost or stolen.  [TX

11   Buford 173:10 - 175:15]  The application is next run through multiple databases to

12   determine if the gun-buyer belongs to a category of prohibited persons.  [TX Buford

13   175:24 - 176:3]  Those databases include:  The Automated Criminal History System

14   (ACHS) [TX Buford 176:9]; The California Restraining Order and Protective Order

15   System (CARPOS) [TX Buford 182:20]; The Wanted Persons System (WPS) [TX

16   Buford 184:5]; The Mental Health Firearms Prohibition System (MHFPS) [TX

17   Buford 185:20]; The Consolidated Firearms Information System (CFIS) [TX Buford

18   189:3]; and finally California checks the federal government's National Instant

19   Criminal Background Check System (NICS) [TX Buford 191:2].

20        California currently has four determinations made by the DROS/Background

21   Check System: (1) approved [the sale and delivery may proceed subject to the WPL],

22   (2) delayed [further investigation is necessary], (3) denied [the person is prohibited

23   under federal or state law from acquiring/possessing a firearm], and (4)

24   "undetermined."  [TX Buford 231:25-232:15]  A description of the computerized

25   process of the DROS/Background Check was provided through the testimony of

26   Donnette Orsi (currently with the California Department of Housing and

27   Community Development) who was previously employed by the California

28   Department of Justice as a Data Processing Manager during relevant time periods.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Memo in Support of FFCL                    -11-                    *Silvester, et al. v. Harris*

1   [TX 287:17 - 311:4; see also Exhibit CB]

2       Assistant Bureau Chief Buford admitted during the trial "[I]t is possible for a

3   DROS application to make it through all of the databases that we just mentioned

4   without there being any hits at all[.]"  And that these DROS applications are called

5   "auto approvals."  And that these "auto approvals" make up about 20 percent of all

6   DROS applications processed by the Department.  [TX Buford 198:5-15]

7       That means that during the year 2013, when more than 960,000 DROS

8   applications were processed by the Department, at least 192,000 DROS applications

9   were "auto-approved."  The testimony at trial from Buford and Orsi was consistent

10  that "auto-approvals" which make up more than 20% of all DROS determinations,

11  can take place within <u>one hour</u> [TX Buford 240:5] and in as little time as <u>one</u>

12  <u>minute</u>.  [TX Orsi 308:17]

13      Additional testimony was provided that the DROS/Background Check

14  System is capable of accessing the AFS database, which reliably keeps track of

15  previous handgun purchases since 1996 and long gun purchases since January 1,

16  2014. [TX Graham 387:4-6, 442:3-443:8]   Furthermore, Assistant Bureau Chief

17  Buford testified that the DROS/Background system can generate a response as to

18  whether an applicant also has a Concealed Carry Weapon (CCW) permit and/or a

19  Certificate of Eligibility (COE) and/or whether that person also has gun in the AFS

20  system.  [TX Buford 280:16-24]

21      Plaintiff Silvester has obtained and maintains a Concealed Carry Weapons

22  (CCW) Permit issued by the Hanford Police Department. He also testified that the

23  permit process requires a background check, proof of training, a live scan

24  fingerprint (which means the State of California has a full digital copy of his

25  fingerprints on file) and demonstration of some degree of proficiency with a firearm.

26  [TX Silvester 23:8-24:18; see also Plaintiffs' Exhibit 05]  California's statutory

27  requirements for obtaining a CCW Permit are set forth at Penal Code §§ 26150,

28  26155.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Memo in Support of FFCL          -12-                    *Silvester, et al. v. Harris*

1   Plaintiff Combs has obtained and maintains a Certificate of Eligibility

2   (COE). This is a certificate issued by the California Department of Justice that

3   requires payment of a fee, a background check, and live scan fingerprint

4   submission. The certificate must be renewed annually. [TX Combs 60:14-61:22; see

5   also Plaintiffs' Exhibit 04] Although it may promulgate regulations, the California

6   Department of Justice has no discretion in the issuance of a COE, i.e., it is a "shall

7   issue" certificate after the appropriate background checks and submission of a live

8   scan set of fingerprints. [TX Lindley 494:4- 495:10; 510:16-511:12] The statutory

9   requirements for obtaining a COE in California are set forth at Penal Code § 26710.

10   Furthermore, both a CCW and COE generate a unique criminal justice

11   identification record that is based on the unique set of fingerprint records on file for

12   that individual. That unique identification record is known as a Criminal

13   Identification Index (number) or CII. The existence of a CII speeds up the process of

14   identifying a person when the California Department of Justice makes an inquiry

15   about them. [TX Buford 243:6-24] [TX Matsumoto 327:22]

16   The Defendants admit in their Trial Brief that when first instituted in

17   California, background checks were required to be completed in three (3) days. In

18   1965, the waiting period was extended to five days. Then in 1975 it was extended

19   to 15 days and then it was reduced to its present length of 10 days in 1997. [Trial

20   Brief of Defendant Kamala Harris, Doc #65, pgs. 4-5]

21   Conclusion: The 10 days are an arbitrary number and must be justified by

22   reference to real-world necessities. Put another way, the relevant inquiry for the

23   Court's resolution of this part of the case should be whether a mandatory minimum

24   of a 10-day waiting period is necessary to achieve the government's interest in

25   conducting a background check. The evidence presented at trial show that is does

26   not and that the only other justification for the WPL after an approval are the

27   "cooling-off" period and the statute itself. [TX Buford 244:5-12]

28   The most compelling support for the proposition that the WPL is not

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Memo in Support of FFCL        -13-        *Silvester, et al. v. Harris*

1    necessary for background checks was the testimony of the Chief of the Firearms

2    Bureau - Stephen Lindley at TX Lindley at 508:9:

3    > Q. Why not simply release firearms upon approval?

4    > A. Because we have the 10-day waiting period as a cooling-off period as
     > well.

5

6    > Q. All right, so the only thing that's stopping you from releasing a
     > firearm upon approval of the background check is the statute, and the
     > statute is based upon we still want a cooling-off period.

7    > A. Once the background is approved?

8    > Q. Yes.

9    > A. Yes.

10   D.   The APPS System and Rap-Back System Are Narrower Alternatives.

11        California not only gets involved during the process of a person acquiring a

12   firearm, it also has a system for continuing to monitor the eligibility of those gun

13   owners who are known to the state to possess firearms.  That system is the Armed

14   and Prohibited Persons System (APPS).  Its specific purpose is to identify people

15   who are known to the State of California to have a firearm who have a subsequent

16   prohibiting event (conviction, mental health hold, restraining order, etc...) and,

17   therefore, should not have a gun.  [TX Graham 420:11-16.] [TX Orsi 307:7-12]  The

18   APPS database updates itself every day with data from the Department of Justice

19   databases relating to firearms (except for NICS [TX Lindley 476:12]) and generates

20   reports for further investigation if it obtains a match as described in the DROS

21   background check. [TX Orsi 304:4-23]   The APPS system is funded (currently with

22   $24,000,000) through the fees paid by California gun-buyers through their DROS

23   fees.  [TX Graham 426:6-23]   In sum, where the DROS Background check is

24   designed stop somebody from getting a firearm, the APPS system is designed to get

25   a firearm from somebody who has become prohibited.  [TX Lindley 497:10-15]

26        Furthermore, people who obtain CCW permits and COE certificates complete

27   the extra step of submitting full live scan fingerprints to the Defendants in order to

28

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Memo in Support of FFCL          -14-          *Silvester, et al. v. Harris*

1    make themselves easily identifiable.  Both the CCW [2 years, Penal Code § 26220]

2    and the COE [annually, TX Combs 61:8] must be renewed on a regular basis.

3          Deputy Bureau Chief Buford testified that COEs and CCWs, because the

4    Department of Justice monitors these permits/licenses/certificates, are subject to a

5    procedure called "rap-back." [TX Buford 221:21- 225:17]  The "rap-back" system is a

6    process for positive identification of a person based on the fingerprints that are

7    already on file with the Department.  The rap-back system is used to notify the

8    Department of the arrest of any person with fingerprint records on file with the

9    Department.  As Bureau Chief Lindley went on to explain starting at TX 492:7:

10         A. We have a system which, in laymen's term, is called a
           rap-back system.

11         Q. Can you explain what that is?

12         A.  Based on the person's submitted fingerprints, if their
           name comes up through the criminal history system as being

13         arrested, that goes into the system and would flag. So I'll
           use myself as an example.

14

15         Q. All right.

16         A.  Let's say that last night, I was arrested for domestic
           violence. Taken down to county jail, my fingerprints were

17         rolled. This morning, DOJ would have been notified by our own
           system that I was arrested for domestic violence, which

18         potentially could be a prohibiting offense if I'm convicted or
           plead guilty to it. So that allows that agency to take some

19         action, especially since I'm a police officer, maybe to remove
           me from the field, put me on admin leave, but they're

20         notified of that arrest.

21         […]

22         A.   Rap-back is designed for people that we have
           fingerprints on. People that go into APPS, we might not

23         necessarily always have fingerprints on them because
           they're contained in different databases. Like our mental

24         health database, restraining order database, or the
           wanted persons database. Rap-back mainly deals with the

25         people who are in the criminal history system, and the
           CII number and that information goes in and is part of he

26         criminal history. So if you ran a criminal history on me,
           you'll only find that I have the CII number and the two

27         agencies that I used to be employed with. DOJ, which I'm
           currently, and National City previously.

28

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1   The existence of this set of "safety-net" systems is relevant to the Court's
2   inquiry about whether California's WPL is overbroad in trying to address the
3   government's legitimate objectives for addressing public safety through its systems
4   for monitoring gun sales and current gun ownership.

5

6   **IV. ARGUMENT**

7   This case stands for the proposition that plaintiffs (and persons similarly
8   situated) who are:

9   (1)   a person who already has a registered (i.e., they are known by the
10        state to be in lawful possession of a) firearm at his/her home; and/or

11  (2)   a person licensed to carry a loaded and concealable firearms on their
12        person at all times by their local chief of police or sheriff; and/or

13  (3)   a person who submits to yearly backgrounds checks and obtains a
14        Certificate of Eligibility to own/purchase/possess firearms from the
15        California Department of Justice;

16  are all equally as trustworthy as the 18 exceptions listed above and are therefor
17  entitled to the same exemption from the 10-Day Waiting Period.

18  Sometimes governments cannot avoid making classifications.  But when
19  those classifications infringe a fundamental right, the Courts are required to
20  examine those classifications, and the underlying policies, with an exacting
21  scrutiny.  A 10-day waiting period to exercise the "right to keep and bear" a firearm
22  that was just purchased, by someone who has already demonstrated to the State of
23  California that they are a trustworthy gun owner, is an infringement of the Second
24  Amendment as that right was understood in 1791 and 1868.

25  *District of Columbia v. Heller*, 554 U.S. 570 (2008) rejected a "collective
26  rights" interpretation of the Second Amendment in favor of a finding that the "right
27  to keep and bear arms" is a fundamental, individual right.  This Court should reject
28  the "collective guilt" theory of gun control advanced by the  State of California in

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    favor a more narrowly tailored remedy that will comply with the Constitution.

2         The Second Amendment reads: "A well regulated Militia, being necessary to

3    the security of a free State, the right of the people to keep and bear Arms, shall not

4    be infringed."  U.S. Const. Amend. II.  The Second Amendment right to keep and

5    bear arms is an individual right and a fundamental right that is incorporated

6    against states and municipalities under the Fourteenth Amendment.  See

7    *McDonald v. City of Chicago*, 130 S.Ct. 3020, 3042 (2010); *District of Columbia v.*

8    *Heller*, 554 U.S. 570, 595 (2008); *Nordyke v. King*, 681 F.3d 1041, 1043 (9th Cir.

9    2012) (en banc).  The Second Amendment "protects a personal right to keep and

10   bear arms for lawful purposes, most notably for self-defense within the home."

11   *McDonald*, 130 S.Ct. at 3044; see also *Heller*, 554 U.S. at 630.

12        The Second Amendment's protection is not unlimited, and longstanding

13   regulatory measures such as "prohibitions on the possession of firearms by felons

14   and the mentally ill, or laws forbidding the carrying of firearms in sensitive places

15   such as schools and government buildings, or laws imposing conditions and

16   qualifications on the commercial sale of arms," are presumptively lawful.

17   *McDonald*, 130 S.Ct. at 3047; *Heller*, 554 U.S. at 626-27; *United States v. Chovan*,

18   735 F.3d 1127, 1133 (9th Cir. 2013).

19        Under the Ninth Circuit's two-step Second Amendment framework: (1) the

20   trial court asks whether the challenged law burdens conduct protected by the

21   Second Amendment, and (2) if so, the court determines whether the law meets the

22   appropriate level of scrutiny.  See *Chovan*, 735 F.3d at 1136-38; see also *National*

23   *Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 700 F.3d

24   185, 194-95 (5th Cir. 2012) ("N.R.A."); *United States v. Chester*, 628 F.3d 673, 680

25   (4th Cir. 2010).  The first step is a historical inquiry that seeks to determine

26   whether the conduct at issue was understood to be within the scope of the right to

27   keep and bear arms at the time of ratification.  *Chester*, 628 F.3d at 680; see

28   *Chovan*, 735 F.3d at 1137; *N.R.A.*, 700 F.3d at 194; *Ezell v. City of Chicago*, 651

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    F.3d 684, 702-03 (7th Cir. 2011).

2        If a law burdens conduct that falls outside of the Second Amendment's scope,

3    then the analysis ends and there is no violation.  See *N.R.A.*, 700 F.3d at 195; *Ezell,*

4    651 F.3d at 703.

5        As to the second step, rational basis review is not to be used.  *Heller*, 554 U.S.

6    at 628 n.27; *Chovan*, 735 F.3d at 1137.  Instead, if a law burdens a right within the

7    scope of the Second Amendment, either intermediate or strict scrutiny will be

8    applied.  See *Chovan*, 735 F.3d at 1138; *N.R.A.*, 700 F.3d at 195; *Chester*, 628 F.3d

9    at 682.  Whether intermediate or strict scrutiny applies depends on: (1) how close

10   the law comes to the core of the Second Amendment right, and (2) the severity of

11   the law's burden on the right. *Chovan*, 735 F.3d at 1138; N.R.A., 700 F.3d at 195;

12   *Ezell*, 651 F.3d at 703.  A regulation that threatens a core Second Amendment right

13   is subject to strict scrutiny, while a less severe regulation that does not encroach on

14   a core Second Amendment right is subject to intermediate scrutiny.  See *N.R.A.*,

15   700 F.3d at 195; *Chester*, 628 F.3d at 682.  The "intermediate scrutiny" standard

16   requires: (1) that the government's stated objective must be significant, substantial,

17   or important, and (2) that there is a reasonable fit between the challenged

18   regulation and the government's asserted objective.  *Chovan*, 735 F.3d at 1139-41;

19   *N.R.A.*, 700 F.3d at 195; *Chester*, 628 F.3d at 683.

20       For there to be a "reasonable fit," the regulation must not be substantially

21   broader than necessary to achieve the government's interest.  See *Reed v. Town of*

22   *Gilbert*, 707 F.3d 1057, 1074 n.16 (9th Cir. 2013); *Fantasyland Video, Inc. v. County*

23   *of San Diego*, 505 F.3d 996, 1004 (9th Cir. 2007); *United States v. Marzzarella*, 614

24   F.3d 85, 98 (3d Cir. 2010).  For additional discussion of how a regulation of First

25   Amendment conduct can be overbroad by the unreasonable inclusion and exclusion

26   of persons the regulation is meant to protect/regulate.  See *Berger v. City of Seattle*,

27   569 F.3d 1029 (9th Cir. 2009 en banc).

28

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Memo in Support of FFCL            -18-            *Silvester, et al. v. Harris*

A.  Plaintiffs Have Satisfied the *Ezell/Chovan/Peruta* est.
    The WPL Violates Their Second Amendment Rights.

The emerging analysis of Second Amendment claims is that they should mirror how First Amendment claims are adjudicated, *Ezell v. City of Chicago,* 651 F.3d 684 (7th Cir. 2011); *U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) and *Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014).

Step #1 of the *Ezell/Chovan/Peruta* two-part test focuses on whether a 10-Day Waiting Period burdens the Second Amendment. That Step #1 inquiry is primarily a legal one and has already been performed by this Court in its Order Denying the Defendants' Motion for Summary Judgment (Doc #44):

> The first step is a historical inquiry that seeks to determine whether the conduct at issue was understood to be within the scope of the right to keep and bear arms at the time of ratification. *Chester*, 628 F.3d at 680; see *Chovan*, 2013 U.S. App. LEXIS at *23-*25; *N.R.A.*, 700 F.3d at 194; *Ezell v. City of Chicago*, 651 F.3d 684, 702-03 (7th Cir. 2011). If a law burdens conduct that falls outside of the Second Amendment's scope, then the analysis ends and there is no violation. See *N.R.A.*, 700 F.3d at 195; *Ezell*, 651 F.3d at 703.

> Order on Defendant's Motion
> For Summary Judgment
> (Doc #44, pg. 6, lines 22-28)

Under the *Chovan* framework, the first step is to determine whether the challenged law burdens a right protected under the Second Amendment. The WPL prohibits every person who purchases a firearm from taking possession of that firearm for a minimum of 10 days. That is, there is a period of at least 10 days in which California prohibits every person from exercising the right to keep and bear a firearm. There can be no question that actual possession of a firearm is a necessary prerequisite to exercising the right keep and bear arms. Further, there has been no showing that the Second Amendment, as historically understood, did not apply for a period of time between the purchase/attempted purchase of a firearm and possession of the firearm. [fn.3: The Court notes that Harris has not refuted Plaintiffs ' assertion that waiting periods of any duration before taking possession of a firearm were uncommon in both 1791 and 1868. Cf. *Ezell*, 651 F.3d at 702-03; *Chester*, 628 F .3d at 680.] Cf. *Chovan*, 2013 U.S. App. LEXIS 23199 at *25 (" .. . we are certainly not able to say that the Second Amendment, as historically understood, did not apply to

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

persons convicted of domestic violence misdemeanors."). Although Harris argues that the WPL is a minor burden on the Second Amendment, Plaintiffs are correct that this is a tacit acknowledgment that a protected Second Amendment right is burdened. Therefore, the Court concludes that the WPL burdens the Second Amendment right to keep and bear arms.

Order on Defendant's Motion
For Summary Judgment
(Doc #44, pg. 7:22 - 8:7)

The "Law of the Case" doctrine ordinarily prohibits a trial court from revisiting a decision made by a higher court, however Ninth Circuit law also cautions a trial court against reconsidering its own prior decisions. See *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) (stating that "reconsideration of legal questions previously decided should be avoided").

The Ninth Circuit has also said that "[u]nder the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004) (citing *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)) (emphasis added). "Issues that a district court determines during pretrial motions become law of the case." *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004). "The doctrine is a judicial invention designed to aid in the efficient operation of court affairs, and is founded upon the sound public policy that litigation must come to an end." *Smith*, 389 F.3d at 948 (citations and quotation marks omitted).  At the same time, the "law of the case" doctrine is "not an inexorable command," *Hanna Boys Ctr. v. Miller*, 853 F.2d 682, 686 (9th Cir. 1988) (citation omitted), and is "discretionary." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000).

Because there was no evidence produced by the Defendants during that trial that waiting periods for firearm purchases were common in 1791 and 1868, *Ezell v. City of Chicago*, 651 F.3d 684, 703 (2011), and because this is a bench trial wherein

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    the Defendants have waived their right to have facts determined by a jury, this

2    Court should exercise its discretion, apply the "law of the case" doctrine and decline

3    to revisit this issue.

4         But even if the Court is inclined to give the Defendants a "second bite at the

5    apple" – the record is still bereft of any evidence  that WPLs were historically under

6    stood as a longstanding regulation of the rights secured under the Second

7    Amendment.

8

9         B.  Defendants Cannot Even Satisfy Intermediate Scrutiny that
the 10-Day Waiting Period as Applied Against Plaintiffs Meets the
10   *Ezell*/*Chovan*/*Peruta* Test for Second Amendment Rights.

11        The Defendants have previously argued that neither *Chovan* nor *Peruta*

12   expressly states which party has the burden in a Second Amendment case.  They

13   are wrong.

14        "We hold that the government has thereby **met its burden** to show that §

15   922(g)(9)'s prohibition on gun possession by domestic violence misdemeanants is

16   substantially related to the important government interest of preventing domestic

17   gun violence.  Because § 922(g)(9) is supported by an important government interest

18   and substantially related to that interest, the statute passes constitutional muster

19   under intermediate scrutiny." *Chovan* at 1141. (emphasis added)

20        The *Peruta* case (decided after this Court's summary judgment order) even

21   calls into question the legitimacy of using intermediate scrutiny because that:

22        (1)   "[A]nalysis [ ] is near-identical to the free-standing "interest-balancing

23              inquiry" that Justice Breyer proposed – and that the majority

              explicitly rejected – in *Heller*. *See Heller*, 554 U.S. at 689-90 (Breyer,

24              J., dissenting)(proposing that in the Second Amendment cases the

              court should "ask[ ] whether the statute burdens a protected interest in

25              a way or to an extent that is out of proportion to the statute's salutary

26              effects upon other important governmental interests"); *see also id.* at

27              634-35 (majority opinion) (rejecting a "judge-empowering

              'interest-balancing inquiry'" as a test for the constitutionality of

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

28

Second Amendment regulations because "no other enumerated constitutional right [had its] core protection . . . subjected to [such] a freestanding" inquiry)." *Peruta at* 1176.

And secondly because of a:

    (2)    [D]isagreement with our sister circuits' application of intermediate scrutiny relates to the high degree of deference they afforded the state legislatures' assessments of the fit between the challenged regulations and the asserted government interest they served. *Peruta* at 1177.

Furthermore, and while still critical of the balancing test implied by intermediate scrutiny, the *Peruta* Court's criticism of that method was borne out further by its finding that: "In light of **the states' failure to demonstrate sufficient narrow tailoring** in *Drake, Wollard,* and *Kachalsky*, the gun regulations at issue in those cases should have been struck down even under intermediate scrutiny." *Peruta*, at 1178.  (emphasis added)

This Court's Denial of Defendant's Motion for Summary Judgment adopted the approach that should guide its decision after trial: If the WPL can't even meet intermediate scrutiny, then it is not necessary for this Court to decide on standard of review.

   C.  <u>The 10-Day Waiting Period Cannot Satisfy Intermediate Scrutiny</u>

Imposing a 10-day waiting period on a California gun buyer who already: (1) own guns, and/or (2) has a license to carry a firearm, and/or (3) has obtained a Certificate of Eligibility, infringes the rights of the law-abiding, while doing nothing to address the policy objective (longstanding or otherwise) of keeping guns out of the hands of: (1) felons, (2) violent misdemeanants, (3) persons with mental-health disqualifications, (4) persons subject to restraining orders, and (5) probationers.

Said another way, the State of California has at least three processes to address prohibited persons who may not lawfully acquire/own/possess firearms:

    (1)    The Courts:  The criminal justice system, the civil justice system and the civil mental health system must advise people who become prohibited that they cannot acquire/own/possess firearms.  For each of

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

    -22-    *Silvester, et al. v. Harris*

1    the five categories that Defendants cite as persons who might become

2    prohibited from acquiring/owning/possessing firearms, that individual

3    gun owner must:

4         a.) be charged with a crime, adjudicated and sentenced to

5         become a felon, violent misdemeanant or probationer and given

6         notice of the firearm prohibition.  Penal Code §§ 29810, 29815.

7         b.) be served with notice and given an opportunity to be heard if

8         they are to be subject to restraining orders. Penal Code § 29825.

9         c.) be provided with notice and an opportunity to be heard if the

10        their guns rights are revoked due to a mental health hold.

11        Welfare & Institutions Code §§ 5150, 8100, 8101, 8102, 8103.

12   (2)  The $24 Million "Armed and Prohibited Persons Program" APPS

13        (Penal Code §§ 30000-30015), which actively seeks out, and confiscates

14        weapons and prosecutes gun owners whose firearms have been

15        registered in a computerized and networked database operated by

16        California since 1996 and possibly as far back as 1991. See the

17        testimony of Agent Graham. [TX 333:22 – 447:14]

18   (3)  The background check system (not challenged in this case) and the 10-

19        day waiting period. (subject of this lawsuit)

20        Requiring a 10-day waiting period before a dealer can release a firearm to a

21   first time purchaser, who does not presently own/possess a firearm is probably an

22   appropriate condition on the commercial sale of firearms.  It's rationale lies in the

23   fact that this new gun purchaser is a stranger to the state's database, and the

24   additional cautionary policy of a "cooling off period" to prevent a new gun buyer

25   from committing an impulsive, violent act.  That policy is not challenged in this

26   lawsuit.

27        Background checks *per se* are not challenged in this lawsuit.  In fact peace

28   officers, normally exempt from the 10-day waiting period are still subject to a

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1  background check when purchasing a firearm under California law. [TX Lindley

2  501:17-19]

3      Plaintiffs' case is that these rationales are overbroad when applied to

4  Plaintiffs (and those similarly situated) who (1) already have guns, (2) have a

5  license to carry a firearm at all times issued by their local police chief or sheriff, or

6  (3) have obtained a Certificate of Eligibility to own/acquire/possess guns issued by

7  the Attorney Generals Office.

8      The testimony at trial, and any rational inferences that can be drawn from

9  them, point to an inescapable conclusion that the 10-day WPL is overbroad as

10  applied to Plaintiffs.  The most compelling testimony was taken from both the

11  Assistant Chief  [TX Buford 244:5-12] and the Bureau Chief of the California

12  Department of Justice. Stephen Lindley's testimony starting at 508:9 bears

13  repeating:

14      Q. Why not simply release firearms upon approval?

15      A. Because we have the 10-day waiting period as a cooling-off period as
    well.

16

17      Q. All right, so the only thing that's stopping you from releasing a
    firearm upon approval of the background check is the statute, and the
    statute is based upon we still want a cooling-off period.

18

19      A. Once the background is approved?

20      Q. Yes.

21      A. Yes.

22      Finally, the safety nets of the APPS system and the "rap-back" system for

23  insuring that the California Department of Justice learns of a subsequently

24  disqualified gun-owner or COE or CCW holder, supports the conclusion that the 10-

25  day waiting period for persons like the Plaintiffs is overbroad when there is

26  another, independent system that can directly address the government interest

27  without infringing rights.

28  / / / /

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Memo in Support of FFCL                    -24-                    *Silvester, et al. v. Harris*

## D. Plaintiffs' Fourteenth Amendment Claims Are Viable and Actually Suggest the Remedy Required

The Plaintiffs' Equal Protection claim is predicated on the allegation that a state actor is engaged in unequal treatment of similarly situated persons exercising a fundamental right (i.e., the Second Amendment) and that this requires the application of strict scrutiny to the government's policy. *Police Department of Chicago v. Mosley*, 408 U.S. 92  (1972) and *Carey v. Brown*, 447 U.S. 455 (1980).

That Equal Protection claim is based on the irrational and under-inclusive categories of (18) exceptions to the 10-day waiting period that are not even tethered to the justifications advanced by the Defendants for applying this policy against Plaintiffs and those other gun owners are similarly situated.

California's Supreme Court issued an opinion rejecting an Equal Protection claim challenging California's Assault Weapons Control Act by applying a mere rational basis test. That Court rejected the idea that the right of self-defense was a fundamental right.  From *Kasler v. Lockyer* 23 Cal. 4th 472 (2000):

> This fundamental right plaintiffs locate in article I, section 1 of the California Constitution, which provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting  property, and pursuing and obtaining safety, happiness, and privacy." If plaintiffs are implying that a right to bear arms is one of the rights recognized in the California Constitution's declaration of rights, they are simply wrong. No mention is made in it of a right to bear arms. (See *In re Rameriz* (1924) 193 Cal. 633, 651 [226 P. 914, 34 A.L.R. 51] ["The constitution of this state contains no provision on the subject"].

The opinion went on find that "[A]s the AWCA does not burden a fundamental right under either the federal or the state Constitutions, the rational basis test applies." *Id.*, at 481.

*District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) rendered *Kasler* and the reasoning underlying that

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Memo in Support of FFCL                        -25-                        *Silvester, et al. v. Harris*

1  opinion obsolete.  The "right to keep and bear arms" is a fundamental right and

2  Equal Protection challenges to state gun control laws that purport to infringe that

3  fundamental right must be subject heightened scrutiny.

4  It is worth noting that even with an erroneous conclusion about the status of

5  the Second Amendment, the Ninth Circuit found no rational basis for treating gun

6  owners who used to be police officers (e.g., retired) differently from non-police

7  officers when it came to California's Weapons Control laws.  *See generally Silveira*

8  *v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), *reh'g denied* 328 F.3d 567 (9th Cir. 2003).

9  Furthermore the testimony at trial strongly implied that the exception to the

10  10-day waiting period for persons with a Curio and Relic license, but only when

11  purchasing curio and relic firearms (Penal Code § 26970), is not even rational on its

12  face since many popular modern firearms that are sold today meet the definition of

13  curio and relic. [TX Graham 380:19-382:6]

14  While Plaintiffs aver that their Second Amendment claim is strong enough

15  for this Court to find for them without reaching the Fourteenth Amendment issues,

16  in the same way that the Ninth Circuit dealt with Plaintiff/Appellants' additional

17  claims in *Peruta v. County of San Diego*, 742 F.3d 1144, 1179 (9th Cir. 2014) at

18  footnote 22. ("Because we reverse on the basis of the Second Amendment issue, we

19  do not reach any of Peruta's other claims."), the Fourteenth Amendment claim does

20  suggest the remedy this court may want to consider.

21  From a practical point of view, this court can either:

22  A.  Issue an injunction that Californians who: (1) already have guns, (2)

23  have a license to carry a firearm at all times issued by their local police

24  chief or sheriff, or (3) have obtained a Certificate of Eligibility to

25  own/acquire/possess guns issued by the Attorney Generals Office, are

26  not subject to the 10-Day Waiting Period, effectively expanding the list

27  of exceptions from 18 to 21.  – or –

28  B.  Issue an injunction that will invalidate the 10-Day Waiting Period for

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Memo in Support of FFCL                    -26-                    *Silvester, et al. v. Harris*

1   all Californians.  Stay that decision for six months to give the

2   California Legislature time to fashion a legislatively based remedy.

3   *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012).

4       What is not disputed is that the state's rationale for treating some gun-

5   buyers different from other gun-buyers can withstand the strict scrutiny analysis

6   required of the 14th Amendment when the fundamental rights protected are

7   guaranteed by the Second Amendment.

8

9                                **CONCLUSION**

10      The 10-Day Waiting Period is not a narrowly tailored remedy to address

11  impulsive violence when a person already owns a guns, nor is it necessary to

12  conduct background checks for persons already armed and trustworthy.

13      What all this means is that the State of California must either: (A) concede

14  that the current regime of requiring the registration of firearms and their owners

15  since 1991 is an abject failure and that registration schemes and computer

16  databases are unreliable (i.e., that's why they need 10 (or more) days); or (B)

17  concede that the DROS/Background check, Rap-Back and Armed Prohibited

18  Persons System makes the 10-Day Waiting Periods redundant for current gun

19  owners who are already in the system.  They can't have it both ways.

20  Respectfully Submitted on June 16, 2014 by:

21   /s/ Victor Otten
     Victor J. Otten (SBN 165800)
22

23

24   /s/ Donald Kilmer
     Donald E. J. Kilmer, Jr. (SBN 19986)

25  Attorneys for Plaintiffs

26

27

28

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Plaintiffs' Memo in Support of FFCL        -27-        *Silvester, et al. v. Harris*

## DECLARATION OF E-SERVICE

Case Name:          Silvester v. Harris

Court Name:         U.S. District Court, Eastern District of California (Fresno)

Case No.:           1:11-cv-02137-AWI-SKO

I, Donald Kilmer, declare:

I am employed in the at 1645 Willow Street, Suite 150, San Jose, CA . I am 18 years of age or older and not a party to this matter.

I understand that all parties to the above-entitled case are represented by at least one attorney who is registered for electronic filing and service in the above-entitled court.

On June 16, 2014, I electronically filed and, therefore, to the best of my understanding, caused to be electronically served through the Court's ECF system:

1.     Plaintiffs' Findings and Order After Bench Trial

2.     Plaintiffs' Motion to Exclude Evidence Not Already Admitted or Withdrawn Contained in Defendant's Request for Judicial Notice.

3.     Plaintiffs' Memorandum of Points and Authorities in Support of (Proposed) Findings of Fact and Conclusions of Law After Bench Trial.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 16, 2014, at San Jose, California.

 /s/ Donald Kilmer

Attorney for Plaintiffs.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487