Kamala D. Harris, State Bar No. 146672
Attorney General of California
Mark R. Beckington, State Bar No. 126009
Supervising Deputy Attorney General
Peter H. Chang, State Bar No. 241467
Deputy Attorney General
Jonathan M. Eisenberg, State Bar No. 184162
Deputy Attorney General
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013
 Telephone: (213) 897-6505
 Fax: (213) 897-5775
 E-mail: Jonathan.Eisenberg@doj.ca.gov
*Attorneys for Defendant Kamala D. Harris,
Attorney General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **JEFF SILVESTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**KAMALA D. HARRIS, Attorney General of California (in her official capacity),**<br><br>Defendant. | 1:11-cv-02137-AWI-SKO<br><br>**DEFENDANT KAMALA D. HARRIS'S RESPONSE TO PLAINTIFFS' (PROPOSED) FINDINGS AND ORDER AFTER BENCH TRIAL [DOCKET # 91]**<br><br>Date: July 21, 2014<br>Time: 1:30 p.m.<br>Dep't: 8th Flr., Crtrm. 2<br>Judge: Hon. Anthony W. Ishii<br>Trial Date: March 25, 2014<br>Action Filed: December 23, 2011 |

**TABLE OF CONTENTS**

Page

PLAINTIFFS AND THE ATTORNEY GENERAL AGREE ON MANY BUT NOT ALL ASPECTS OF THE FRAMEWORK OF SECOND AMENDMENT ANALYSIS ....................... 1

STEP ONE OF ANALYSIS: PLAINTIFFS HAVE NOT SHOWN THAT THE WAITING-PERIOD LAWS BURDEN THE SECOND AMENDMENT RIGHT ....................... 3

    I.    The Waiting-Period Laws Are Among the Kinds of Laws that the U.S. Supreme Court Has Deemed Constitutional Under the Second Amendment ......... 3

    II.   The Waiting-Period Laws Do Not Burden the Second Amendment Right as Historically Understood ............. 4

STEP TWO OF ANALYSIS: THE WAITING-PERIOD LAWS SURVIVE APPROPRIATE HEIGHTENED SCRUTINY ............. 5

    I.    The Legislative History of the Waiting-Period Laws Illuminates Their Purposes and the Care that the California Legislature Took in Crafting the Laws ............. 6

    II.   The Waiting-Period Laws Provide Sufficient Time for Background Checks on Prospective Firearms Purchasers ............. 6

    III.  The Waiting-Period Laws Provide Justifiable "Cooling-Off" Periods to Inhibit Firearms Violence by Firearms Purchasers, Even People Who Already Have Firearms ............. 8

    IV.  The Waiting-Period Laws Are Further Justifiable as Providing Enough Time for Straw-Purchase Investigations, Which Are Part of the Background Check Process ............. 9

RESPONSES TO PLAINTIFFS' PROPOSED EVIDENTIARY RULINGS ............. 10

ADDITIONAL ERRORS IN PLAINTIFFS' PROPOSED FINDINGS ............. 13

CONCLUSION ............. 15

i

Def. Harris's Response to Plfs.' Proposed Findings (1:11-cv-02137-AWI-SKO)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*District of Columbia v. Heller*
  554 U.S. 570 (2008)..................................................................................................... 3, 4, 5

*Peruta v. Cnty. of San Diego*
  742 F.3d 1144 (9th Cir. 2014)................................................................................................ 5

*United States v. Chapman*
  666 F.3d 220 (4th Cir. 2012)................................................................................................. 2

*United States v. Chovan*
  735 F.3d 1127 (9th Cir. 2013)....................................................................................... passim

*United States v. Marzzarella*
  614 F.3d 85 (3d Cir. 2010).................................................................................................... 2

**STATUTES**

Cal. Penal Code
  § 26815................................................................................................................................. 1
  § 27540................................................................................................................................. 1

**CONSTITUTIONAL PROVISIONS**

U.S. Const.
  Fourteenth Amend................................................................................................................ 4
  Second Amend. ............................................................................................................ passim

**OTHER AUTHORITIES**

Saul Cornell, *A Well Regulated Right: The Early American Origins of Gun Control*, 73
  Fordham L. Rev. 487 (2004)............................................................................................... 11
Saul Cornell, *The Ironic Second Amendment*, 1 Albany Gov't L. Rev. 292 (2008)..................... 10
Carole Emberton, "The Real Origins of America's Gun Culture," *History News Network*
  (Jan. 14, 2013)..................................................................................................................... 12
Michael J. Daponde, *New Residents and Collectors Must Rgister Their Out-of-State
  Handguns: Making a (Government) List and Checking It Twice*, 29 McGeorge L. Rev.
  539 (1998)........................................................................................................................... 11

ii

Def. Harris's Response to Plfs.' Proposed Findings (1:11-cv-02137-AWI-SKO)

Defendant Kamala D. Harris, Attorney General of California (the "Attorney General"), submits the following response to the filing titled (Proposed) "Findings and Order After Bench Trial (March 25/26/27, 2014)" (Docket # 91; "Plfs.' Proposed Findings"), made herein by Plaintiffs Jeff Silvester ("Silvester"), Brandon Combs ("Combs"), The Calguns Foundation, Inc. ("CGF"), and The Second Amendment Foundation, Inc. ("SAF"; together with Silvester, Combs, and CGF, "Plaintiffs.")

**PLAINTIFFS AND THE ATTORNEY GENERAL AGREE ON MANY BUT NOT ALL ASPECTS OF THE FRAMEWORK OF SECOND AMENDMENT ANALYSIS**

In the present litigation over the constitutionality of California's Waiting-Period Laws,[1] both Plaintiffs and the Attorney General advocate use of the two-step Second Amendment inquiry outlined in *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013). The opposing sides further agree on certain details of the framework of the inquiry, including the following details:

- "The [U.S. Court of Appeals for the] Ninth Circuit has adopted a two-step Second Amendment framework: (1) the court asks whether the challenged law burdens conduct protected by the Second Amendment, and[,] (2) if so, the court determines whether the law meets the appropriate level of scrutiny" (Plfs.' Proposed Findings at 15:26-15:28 [citations omitted]);

- "If a law burdens conduct that falls outside of the Second Amendment's scope, then the analysis ends and there is no violation" (*id.* at 16:6-16:7 [citations omitted]);

- The party challenging the constitutionality of a firearms law bears the burden of proving that the law burdens the Second Amendment right (*see id.* at 20:16-20:18 [explaining that burden of proof shifts to party defending law only if law found to burden Second Amendment right]);

- "[D]eterring violence is an important (maybe even compelling) government interest."

---
[1] Cal. Penal Code §§ 26815 and 27540.

1

(*Id.* at 21:3-21:4). The Attorney General believes that deterring violence is always an important or compelling government interest in Second Amendment cases.

However, the Attorney General disagrees with at least two other statements of law that Plaintiffs have proposed. First, Plaintiffs have no legitimate support for their claim that an acceptable fit between the regulation and the governmental interest means that the regulation is "no broader than is necessary" (Plfs.' Proposed Findings at 18:13-18:15)—rather than the more lenient phraseology "not *substantially* broader than necessary" that Plaintiffs elsewhere propose and that is taken from (out-of-circuit) case law. (*Id.* at 16:22 [emphasis added, citations omitted].) Second, Plaintiffs are incorrect to assert that, for the Waiting-Period Laws to survive heightened constitutional scrutiny, the Attorney General "must show that the[] WPL can stop a person who already owns firearms from committing an impulsive act of violence (suicide/homicide) with a firearm." (Plfs.' Proposed Findings at 18:10-18:12; *accord id.* at 21:25-22:13.) The Waiting-Period Laws need not be perfectly, or anywhere close to perfectly, effective in eliminating all firearms violence. *See United States v. Chapman*, 666 F.3d 220, 228 (4th Cir. 2012) (explaining that fit needs to be only reasonable, not perfect); *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010) (same). It is sufficient that, as Plaintiffs have now admitted, the Waiting-Period Laws tend to inhibit suicides by firearms (*see* Plfs.' Proposed Findings at 8:15-8:18, 21:18-21:24)—including suicides by people who may have bought firearms before, but the old firearms are lost or stolen or broken or loaned out, or lack ammunition. (*See* the Attorney General's Proposed Findings of Fact and Conclusions of Law ("Def. Proposed Findings"), Nos. 197-204.)

The Attorney General therefore is organizing her response to Plaintiffs' proposed findings of fact and conclusions of law to follow the two-step Second Amendment inquiry, because the opposing sides agree about the general nature and structure of the inquiry, and also because Plaintiffs did not make an enumerated list of proposed findings of fact and conclusions of law, to which the Attorney General would have responded item by item.

2

Def. Harris's Response to Plfs.' Proposed Findings (1:11-cv-02137-AWI-SKO)

# STEP ONE OF ANALYSIS: PLAINTIFFS HAVE *NOT* SHOWN THAT THE WAITING-PERIOD LAWS BURDEN THE SECOND AMENDMENT RIGHT

## I. THE WAITING-PERIOD LAWS ARE AMONG THE KINDS OF LAWS THAT THE U.S. SUPREME COURT HAS DEEMED CONSTITUTIONAL UNDER THE SECOND AMENDMENT

The U.S. Supreme Court, in *District of Columbia v. Heller*, 554 U.S. 570 (2008)—the high-court decision that first recognized an individual person's Second Amendment right to keep and bear arms for self-defense in his or her home—held that "nothing in our opinion should be taken to cast doubt on [the constitutionality under the Second Amendment of] . . . laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. It is therefore notable that Plaintiffs begin their submission of proposed findings of fact and conclusions of law by characterizing the Waiting-Period Laws as "laws regulating the sale of firearms." (Plfs.' Proposed Findings at 1:1-1:2.) The Attorney General agrees with that characterization, which closely resembles *Heller*'s description of "laws imposing conditions and qualifications on the commercial sale of arms," which laws, again, are constitutional unless irrational under rational-basis review. Plaintiffs' characterization of the Waiting-Period Laws thus necessarily implies that they regulate conduct outside the scope of the Second Amendment and do *not* infringe it.

Notwithstanding that critical admission about the nature of the Waiting-Period Laws, Plaintiffs elsewhere argue that the Court should find the Waiting-Period Laws—which date to 1923 (Plfs.' Proposed Findings at 19:19-19:23)—to be *not* "longstanding" and thus presumptively constitutional (subject to only rational-basis review) under *Heller*. (Plfs. Proposed Findings at 20:12-20:14.) For this argument, Plaintiffs cite *Chovan*, 735 F.3d 1127, in which the U.S. Court of Appeals, Ninth Circuit, found to be not longstanding—although constitutional—the much more recent 1996 federal lifetime firearm-possession prohibition for people who commit misdemeanor domestic violence. That ban apparently derived from a 1938 federal prohibition on firearms possession by *felons* but was arguably qualitatively different, because of the lack of evidence that in the Founding Era of the United States people would have objected to domestic violence perpetrators, especially misdemeanants, possessing firearms. *Chovan*, 735 F.3d at 1137. However, this part of *Chovan* is off-point for at least two reasons. First, 1923 is significantly

3

longer ago than 1996 or even 1938.  The Waiting-Period Laws, more than 90 years old, thus must be seen as longstanding.  Second, the Waiting-Period Laws did not suddenly expand to cover whole new categories of people, as the federal ban did in 1996 when incorporating domestic violence misdemeanants.  The Waiting-Period Laws have imposed waiting periods for 90-plus years, varying in only the length of the waiting period, in a range of just 14 days (one day to 15 days).

## II.  THE WAITING-PERIOD LAWS DO NOT BURDEN THE SECOND AMENDMENT RIGHT AS HISTORICALLY UNDERSTOOD

In an effort to dissuade the Court from agreeing with the Attorney General's description of the scope of the Second Amendment right, Plaintiffs propose that the Court refuse to admit into evidence three sets of book excerpts that Plaintiffs themselves proffered.  (See Plfs.' Proposed Findings at 6:20-7:15.)  However, Plaintiffs also state, "Even if the books proffered by the parties are not admissible as evidence, the Court may consult such materials as a resource for contextual treatment of the right to keep and bear arms, and limitations of such rights.  Indeed, the Ninth Circuit's test for evaluating the constitutionality of infringements on the right to keep and bear arms specifically calls for such historical evaluations when necessary."  (*See id.* at 7 n.3, *citing Chovan*, 735 F.3d at 1133.)

Although Plaintiffs appear to be contradicting themselves about whether this type of history evidence should be considered by this Court, the Attorney General agrees with Plaintiffs' ultimate position that the Court should consider such evidence in determining whether the Waiting-Period Laws burden the Second Amendment right of Silvester and Combs.

Still, Plaintiffs err in describing the relevant inquiry, which Plaintiffs see as being whether there were waiting period statutes regulating firearm purchases in the United States in 1791, when the Second Amendment was enacted, and in 1868, when the Fourteenth Amendment was enacted. (*See* Plfs.' Proposed Findings at 7 n.3, 18:4-18:6, 19:10-19:11, 19:23-20:3.)  However, the relevant inquiry actually concerns something different, which is what people at the time of the adoption of the Second Amendment understood the scope of the Second Amendment right to be. *See Heller*, 554 U.S. at 576 (holding that in interpreting Second Amendment's text, courts are to

4

be guided by principle that Constitution was written to be understood by voters; Constitution's words and phrases are to be given their normal, ordinary meanings); *id.* at 581-86 (considering 18th-century meaning of phrase "keep and bear arms"); *id.* at 603 (looking at years 1789 to 1820); *id.* at 614 (giving narrow justification for reviewing post-Civil-War discussions of Second Amendment to help to establish its meaning; "they do not provide as much insight into [the Second Amendment's] original meaning . . . [y]et . . . their understanding of the origins and continuing significance of the Amendment is instructive"); *id.* at 634-35 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them . . ."). Whether there were waiting-period laws in 1791 is but one aspect, not the sole focus, of this inquiry. Whether there were waiting-period laws in 1868 is less if at all relevant. The Court properly should look more widely at "*whatever* sources shed light on the public understanding of the Second Amendment in the period after its enactment or ratification . . ." *Peruta v. Cnty. of San Diego*, 742 F.3d 1144, 1151 (9th Cir. 2014) (emphasis added; citations omitted).

Next, acknowledging the Attorney General's evidence from history that in the Founding Era the vast majority of people could not obtain new firearms quickly, Plaintiffs respond, "Rights are not violated by market conditions." (Plfs.' Proposed Findings at 19:14.) Plaintiffs' response misses the point of the evidence. The undisputed fact that there was a built-in, natural waiting period in the Founding Era undercuts the argument that it is significant that there might have been no waiting-period laws back then. There was no need for such a law. Accordingly, there is no good reason to believe that Founding Era voters would have objected to such a law.

In conclusion, by the response just given, the Attorney General reiterates one of her main points from the June 16, 2014, filings: the Court should find the Waiting-Period Laws constitutional at the first step of the two-step Second Amendment inquiry.

**STEP TWO OF ANALYSIS: THE WAITING-PERIOD LAWS SURVIVE APPROPRIATE HEIGHTENED SCRUTINY**

If the Court reaches the second step of the two-step Second Amendment inquiry here, the Court should find that the Waiting-Period Laws survive appropriate heightened scrutiny.

5

Def. Harris's Response to Plfs.' Proposed Findings (1:11-cv-02137-AWI-SKO)

# I. THE LEGISLATIVE HISTORY OF THE WAITING-PERIOD LAWS ILLUMINATES THEIR PURPOSES AND THE CARE THAT THE CALIFORNIA LEGISLATURE TOOK IN CRAFTING THE LAWS

In *Chovan*, the Ninth Circuit considered the legislative history of the federal prohibition on firearms possession by people convicted of misdemeanor domestic violence, because that history illuminates the governmental objectives that the U.S. Congress was trying to advance by passing the legislation. *See id.* at 1139-40. Following *Chovan*'s guidance, the Attorney General has presented this Court with the Waiting-Period Laws' legislative history (as compiled by librarians at the California Department of Justice ("Cal. DOJ")), because that history illuminates the public-safety objectives that the California Legislature was trying to advance by passing the legislation, and further reveals how the California Legislature, wanting to create time for background checks and cooling-off periods, regularly adjusted the waiting period to keep it the shortest amount of time consistent with maintaining public safety.

Plaintiffs object to the admission into evidence of the legislative history of the Waiting-Period Laws, on the different ground that there is no ambiguity about what the text of the law means, so there is no need to resort to legislative history as an interpretative aid. (Plfs.' Proposed Findings at 7:16-8:2.) This objection is apparently based on a misunderstanding of why legislative history is relevant in the present case and other Second Amendment cases. As stated above, on the authority of *Chovan*, the Court should admit this legislative history into evidence in the instant case, because that history shows that the California Legislature had in mind important governmental objectives for the Waiting-Period Laws, and carefully crafted the laws to meet the objectives.

# II. THE WAITING-PERIOD LAWS PROVIDE SUFFICIENT TIME FOR BACKGROUND CHECKS ON PROSPECTIVE FIREARMS PURCHASERS

Plaintiffs do not try to rebut the evidence the Attorney General presented at trial showing how California's "DROS" background check system operates, and why background checks often can take up to 10 days. Indeed, "Plaintiffs have not challenged the accuracy or integrity of the DROS/Background system . . ." (Plfs.' Proposed Findings at 23:23-23:24.) Plaintiffs further praise California's DROS system as "state-of-the-art." (*Id.* at 20:22-20:25.) Plaintiffs then admit

6

that California is allowed to have its own DROS background check system for firearms purchasers, and need not use the alternative federal "NICS" system. (*Id.* at 22:20-22:22.) Nonetheless, Plaintiffs contend that the 10-day waiting period is too long; background checks, especially for people who have gone through them before, supposedly should take less time. (*Id.* at 25:15-26:8, 27:10-27:16.) "[A]ny delay beyond the actual approval [sic] the firearm sale by the states [sic] DROS/Background check system is substantially broader than is necessary to achieve the government's stated purpose of conducting background checks." (*Id.* at 27:18-27:20.) However, and notably, Plaintiffs have none of their own evidence of how long background checks "should" take, leaving their advocacy of hypothetical "instant" yet effective background checks hollow and unpersuasive.

Plaintiffs further advocate use of the Armed & Prohibited Persons System ("APPS") database, on its own or in conjunction with cross-references to Certificate of Eligibility ("COE") and Carry Concealed Weapon ("CCW") permit records, to be able to conduct quicker background checks of California residents who have purchased firearms legally in California on prior occasions or hold COEs or CCW permits. (Plfs.' Proposed Findings at 27:21-29:4.) This advocacy ignores all the unrebutted evidence that the Attorney General presented at trial about how APPS, because of the incompleteness of its records, is insufficient to serve as a database of California residents who have firearms but are not legally allowed to; and how APPS was not designed to be and cannot legitimately function as a background check system for people who have purchased firearms legally in California before. (*See* the Attorney General's Proposed Findings of Fact and Conclusions of Law, filed herein on June 16, 2014 ("Defendant's Proposed Findings"), Nos. 164-76.) Here is a more detailed discussion of these points>

- Regarding APPS, Plaintiffs are just relying on the same speculation that they had, and expressed, before the trial began. (*See* Plfs.' Trial Brief (Docket # 66) at 11:19-11:21.)
- Likewise, the COE and CCW permit records, while subject to ongoing updating for *certain* prohibiting events via "rap backs," track only those prohibiting events where the perpetrator is made to give fingerprints. (Def. Proposed Findings, No. 160.) Instances of the issuance of restraining orders, admission to mental-health facilities, and out-of-state arrests are

7

not associated with fingerprint records and do not trigger any notifications in APPS. (*Id.*, No. 90.) APPS, by itself, or with COE or CCW records integrated, is incomplete and inadequate in terms of constituting a substitute for a background check. (*See* Trial Tr. (day 2) [Buford] at 221:8-226:1.)

- Plaintiffs propose the following finding: "It is clear from the evidence, at least for law-abiding gun owners who have purchased and/or transferred handguns through a licensed dealer since 1991 (and long guns since January 1, 2014, *see* TX Buford 181:22-182:1), that the State of California has the means to immediately establish that fact with existing resources." (Plfs.' Proposed Findings at 21:14-21:17.) The Court should not adopt this proposed finding as it is incomplete and omits key evidence. Plaintiffs omit fact that Cal. DOJ does not maintain a gun registry. (Def. Proposed Findings No. 75.) Cal. DOJ maintains only *transaction* records for handguns since 1991 and for long gun since January 2014. (*Id.*, Nos. 75 and 78.) Cal. DOJ does not necessarily have information on handguns prior to 1991 and long guns prior to 2014. Cal. DOJ's database, the Automated Firearm System, is only a "leads" database. (*Id.*, No. 77.)

### III. THE WAITING-PERIOD LAWS PROVIDE JUSTIFIABLE "COOLING-OFF" PERIODS TO INHIBIT FIREARMS VIOLENCE BY FIREARMS PURCHASERS, EVEN PEOPLE WHO ALREADY HAVE FIREARMS

Plaintiffs make a significant concession that waiting periods for firearms purchases "*undoubtedly*" tend to inhibit suicides, at least for first-time purchasers of firearms. (Plfs.' Proposed Findings at 8:16-8:18 [emphasis added].)[2]

Still, Plaintiffs propose a finding based on "logic" that a cooling off period cannot have any effect on a person who already has a firearm. (Plfs.' Proposed Findings at 21:25-22:2.) The Court should not adopt this proposed finding. As the Attorney General established at trial, a person who previously purchased a gun may not have access to that gun at a later time. (Def.'s Proposed Findings, Nos. 80, 198-201.) A person's gun may not be in working condition or a

---

[2] Yet Plaintiffs also seek to exclude from the case the medical-research evidence supporting that concession. The Attorney General already demonstrated at length, including by submission of a declaration from an Assistant U.S. Attorney, that the Ninth Circuit in Second Amendment cases admits into evidence and considers reports of medical research, without the aid of expert witnesses. (Decl. of Caroline Han Regarding Use of Expert Witnesses in *Chovan* Litig. (Docker # 59-2), ¶¶ 4, 5.)

8

Def. Harris's Response to Plfs.' Proposed Findings (1:11-cv-02137-AWI-SKO)

1 | person may not have the proper ammunition for the gun.  (*Id.*, No. 200.)  A person's gun may be
2 | lost or stolen and thus not be available for use.  (*Id.*, No. 200.)  If a gun owner does not have
3 | access to a working gun, then the cooling off rationale applies with equal force for that person.
4 | (*Id.*, Nos. 198-201.)  Additionally, because different guns are suitable for different purposes (*id.*,
5 | No. 203), the cooling off period thus may continue to be influential on a person who has a gun but
6 | wants more guns or other guns to commit a planned act of firearm violence.  (*See, generally*,
7 | Def.'s Proposed Findings Nos. 197-204.)

### IV. THE WAITING-PERIOD LAWS ARE FURTHER JUSTIFIABLE AS PROVIDING ENOUGH TIME FOR STRAW-PURCHASE INVESTIGATIONS, WHICH ARE PART OF THE BACKGROUND CHECK PROCESS

Trying another tack to counter the justifications for the Waiting-Period Laws, Plaintiffs ask this Court to ignore entirely the testimony of Cal. DOJ Bureau of Firearms ("BOF") Special Agent Supervisor Blake Graham regarding the need for the 10-day waiting period to allow BOF special agents enough time to complete investigations of, and possibly to prevent, what appear to be illegal straw purchases of firearms.  (*See* Plfs.' Proposed Findings at 1 n.1.)  Plaintiffs argue that, in the pleadings prior to trial, the Attorney General allegedly did not contend that the Waiting-Period Laws are justified for this reason, and so the Attorney General should not have been allowed to develop such evidence at trial.  (*See id.*)  Plaintiffs do not cite any legal authority for disregarding SAS Graham's testimony, and there is no such legal authority.  Moreover, Plaintiffs' argument is based on a false premise.  As the Court already ruled during the trial, SAS Graham's testimony concerns the background checks that have been a central part of the present lawsuit all along; and the Attorney General disclosed SAS Graham's identity and subject-matter knowledge in due course in the litigation.  (*See* Tr. Transcript (day 3) at 373:9-374:18.)  Therefore, for two separate reasons, the Court should give full credit to SAS Graham's testimony, which is unrebutted, and which demonstrates that the Waiting-Period Laws effectuate important law-enforcement efforts to keep firearms out of the hands of people, including second-time or subsequent purchasers, prohibited from having them.

9

Def. Harris's Response to Plfs.' Proposed Findings (1:11-cv-02137-AWI-SKO)

In conclusion, the Attorney General has demonstrated that the Court should find the Waiting-Period Laws constitutional at the second step of the two-step Second Amendment inquiry.

## RESPONSES TO PLAINTIFFS' PROPOSED EVIDENTIARY RULINGS

The Attorney General's proposed findings of fact and conclusions of law and accompanying brief, all filed on June 16, 2014, identified, excerpted or summarized, and explained the relevance of certain documents containing indisputable legislative facts, of which the Attorney General, on March 24, 2014, formally requested the Court take judicial notice. (*See* Request for Jud. Notice by Kamala D. Harris, Docket #78.)  There are certain other documents that the Attorney General identified and presented excerpts from in the March 24, 2014, request for judicial notice, but did *not* discuss further in the June 16, 2014 filings, primarily because the documents provided mere corroboration of legislative facts already established by other materials.

In response to Plaintiffs' objections to the Court's consideration of these documents and facts, which objections Plaintiffs made in their proposed findings of fact and conclusions of law (Plfs.' Proposed Findings at 6:13-15:6), the Attorney General here makes further presentations of the significance for the  judicial notice request of some of the other documents listed in the March 24, 2014, request for judicial notice.

The Attorney General requested that the Court take judicial notice of Exhibit CU, an article from a large metropolitan daily newspaper, to the extent that the article reports that California's universal background check system for prospective gun buyers functions well and has been held up by gun control advocates as a model for the rest of the country.  That information is virtually indisputable and apparently undisputed.

The Attorney General requested that the Court take judicial notice of Exhibit DC, Fordham University History Professor Saul Cornell's law review article titled "The Ironic Second Amendment," for its full discussion of the Second Amendment views of the Founding Era figure Tench Coxe, oft-quoted by people in the gun rights movement for supporting the "right to keep and bear their private arms" against any threats from the newly emerging federal government. Saul Cornell, *The Ironic Second Amendment*, 1 Albany Gov't L. Rev. 292, 300 (2008).  Coxe, a

10

Def. Harris's Response to Plfs.' Proposed Findings (1:11-cv-02137-AWI-SKO)

Federalist, expressed the apparently widely shared view that the U.S. states would continue to regulate firearms and gunpowder (along with other property), after passage of the Second Amendment. *See id.* This judicially noticeable fact is more support for the Attorney General's argument that people in the Founding Era would not have considered the Second Amendment to bar a waiting-period law like California's.

Similarly, Exhibit DD, another law review article by Cornell, establishes that, in the Founding Era:

> Defining the scope of the individual right to self-defense and the right to own firearms for private use was something that fell within the police powers of the state. It was up to the legislature to create a body of laws dealing with aspects of criminal law, including the law of homicide, which would establish when citizens might use deadly force to protect life, liberty, or property. While one could not eliminate the right of self-defense, the legislature could define the limits of such a right and could enact laws about firearms consistent with the goals of protecting public safety. For instance, states enacted laws about how guns had to be stored, when they could be used for recreational purposes, and when and where citizens could hunt.

Saul Cornell, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 499 (2004). Based on this judicially noticeable fact, the Court should find that the Waiting-Period Laws fit squarely within the realm of permissible state firearms regulations.

The Attorney General requested that the Court take judicial notice of Exhibit DF, another law review article, for the author's observation, supported by much cited anecdotal evidence, that "it is not uncommon for persons to commit crimes shortly after purchasing a firearm." Michael J. Daponde, *New Residents and Collectors Must Register Their Out-of-State Handguns: Making a (Government) List and Checking It Twice*, 29 McGeorge L. Rev. 539, 546 & n.64 (1998). This judicially noticeable fact underscores the need for and effectiveness of the Waiting-Period Laws' cooling off periods in reducing firearms violence.

The Attorney General requested that the Court take judicial notice of Exhibit EG, selections from State University of New York (Courtland) Political Science Prof. Robert J. Spitzer's book *Gun Control: A Documentary and Reference Guide*, which reproduces primary sources and provides scholarly commentary about the Second Amendment, for the book's discussion (at page 46) that, in the United States before about 1850, firearms were relatively hard to come by and

11

expensive.  This judicially noticeable fact is corroboration for the Attorney General's point that the Founding Era of the United States contained a built-in, natural waiting period for the acquisition of firearms.

The Attorney General requested that the Court take judicial notice of Exhibit FC, selections from the 2011 publication *Model Laws for a Safer America:  Seven Regulations to Promote Responsible Gun Ownership in America*, to show that a law imposing a 10-day waiting period for firearms purchases (even by second-time buyers) is considered in some quarters to be a model law, protective of public safety.  See pages 62 to 66 for the text of the model law and a discussion of it.

The Attorney General requested that the Court take judicial notice of Exhibit FF, a U.S. Department of Justice, Office of the Inspector General, report about the federal background check system, because the report corroborates trial testimony that the federal system erroneously clears more than 3,000 prohibited people each year (2002 and 2003) to purchase firearms.  See page 6 [AG000632] of the report for that information.

Likewise, Exhibit FG, an FBI report about the federal background check system, reported that it erroneously cleared 3,166 prohibited people in 2011 to purchase firearms.  See page 14 [AG000760] of the report for that information.

The Attorney General requested that the Court take judicial notice of Exhibit GC, University at Buffalo (SUNY) History Prof. Carole Emberton's article, "The Real Origins of America's Gun Culture," in *History News Network* (Jan. 14, 2013), for its statement that mass production of firearms in the United States "began to rise in the 1830s," and it was "the Civil War that led to an unprecedented proliferation of weaponry."  These judicially noticeable facts corroborate the Attorney General's position that it was relatively difficult for most people to quickly acquire firearms in the Founding Era of the United States, and a waiting-period law would have made little difference to them.

The Attorney General requested that the Court take judicial notice of Exhibit GF, a *USA Today* article reporting on the lack of federal founding for research about firearms violence. Before Plaintiffs conceded that firearms-purchase waiting periods do function to inhibit suicides,

12

the Attorney General intended to rely on the judicially noticeable fact of the dearth of research funding to counter any arguments that the scientific research about the effects of waiting periods was not robust enough.

**ADDITIONAL ERRORS IN PLAINTIFFS' PROPOSED FINDINGS**

The Attorney General presents the following discussion of other errors in Plaintiffs' proposed findings of fact and conclusions of law:

Plaintiffs propose the following finding: "The current computerized DROS process starts with an electronic transmission of the gun-buyer's information (which includes information on the transaction firearm) to the Department. [TX Buford 171:20] Then the information is run through a DMV verification to insure accurate identification information of the DROS applicant. [TX Buford 171:21-172:3]." (Plfs.' Proposed Findings at 23:5-23:8.)

In fact, the only applicant information sent to the DMV is the applicant's driver license number or identification number. (Def.'s Proposed Findings, No. 65.) This information is sent to the DMV not only to ensure that the background check is conducted on the right person, but also to prevent straw purchases, to prevent people from using fake identification to purchase firearms, and to verify whether the applicant has a valid driver license or identification card. (*Id.*, Nos. 65, 67.) Under California law, a firearm purchaser is required to have a valid California driver license or identification card. (*Id.*, No. 64.)

Plaintiffs propose the following finding: "Next, the DROS application is run through the Automated Firearms System (AFS) to insure [sic] that the firearm in question is not reported lost or stolen. [TX Buford 173:10 – 175:15] The application is next run through multiple databases to determine if the gun-buyer belongs to a category of prohibited persons. [TX Buford 175:24 – 176:3] Those databases include: The Automated Criminal History System (ACHS) [TX Buford 176:9]; The California Restraining Order and Protective Order System (CARPOS) [TX Buford 182:20]; The Wanted Persons System (WPS) [TX Buford 184:5]; The Mental Health Firearms Prohibition System (MHFPS) [TX Buford 185:20]; The Consolidated Firearms Information System (CFIS) [TX Buford 189:3]; and finally California checks the federal government's National Instant Criminal Background Check System (NICS) [TX Buford 191:2]." (Plfs.'

13

Def. Harris's Response to Plfs.' Proposed Findings (1:11-cv-02137-AWI-SKO)

| | |
|---|---|
| 1 | Proposed Findings at 23:9-23:18.) |
| 2 | This proposed finding is incomplete. Plaintiffs omit that the DROS system conducts a 30- |
| 3 | day purchaser-restriction check within the Consolidated Firearms Information System ("CFIS"). |
| 4 | ( Def.'s Proposed Findings, Nos. 81-83.) Under California law, a person can lawfully purchase |
| 5 | only one handgun in a 30-day period. (Defendant's Proposed Findings, No. 83; and *see id.*, Nos. |
| 6 | 61-104 (for an accurate recounting of the same general information). |
| 7 | Plaintiffs propose the following finding: "The existence of a CII speeds up the process of |
| 8 | identifying a person when the California Department of Justice makes an inquiry about them. [TX |
| 9 | Buford 243:6-24] [TX Matsumoto 327:22]." (Plfs.' Proposed Findings at 25:12-25:14.) |
| 10 | However, only ACHS uses CII numbers in its records. (Def.'s Proposed Findings, No. |
| 11 | 89.) The records in the other databases do not use CII numbers. (*Id.*, No. 90.) |
| 12 | Plaintiffs propose the following finding: "Further evidentiary support for the burden the |
| 13 | WPL imposes was presented through the testimony of the Plaintiffs Jeffrey Silvester [TX |
| 14 | Silvester 20:4-48:15] and Brandon Combs [TX Combs 48:17-112:10]." (Plfs.' Proposed |
| 15 | Findings at 19:3-19:5.) |
| 16 | This proposed finding cites vaguely to the entire testimonies of Messrs. Silvester and |
| 17 | Combs and leaves the Attorney General unable to object to specific proposed findings. Plaintiffs' |
| 18 | proposed finding is conclusory and without support, and should not be adopted by this Court. |
| 19 | Plaintiffs propose the following finding: "As of 2011, the federal NICS system had |
| 20 | achieved an availability rate of better than 99.87%, and a 91.52% Immediate Determination |
| 21 | Rate." (Plfs.' Proposed Findings at 22:19-22:20.) |
| 22 | Plaintiffs cite no evidence to support this finding. |
| 23 | // |
| 24 | // |
| 25 | // |
| 26 | // |
| 27 | // |
| 28 | // |

14

Def. Harris's Response to Plfs.' Proposed Findings (1:11-cv-02137-AWI-SKO)

**CONCLUSION**

Plaintiffs' proposed findings of fact and conclusions of law contain many mistakes and omissions and none of the proposed findings should not be adopted by this Court.

Dated: June 30, 2014

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General


  /s/
JONATHAN M. EISENBERG
Deputy Attorney General
*Attorneys for Defendant Kamala D. Harris, Attorney General of California*

15

Def. Harris's Response to Plfs.' Proposed Findings (1:11-cv-02137-AWI-SKO)