KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
MARK R. BECKINGTON, State Bar No. 126009
Supervising Deputy Attorney General
PETER H. CHANG, State Bar No. 241467
Deputy Attorney General
JONATHAN M. EISENBERG, State Bar No. 184162
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 897-6505
Fax: (213) 897-5775
E-mail: Jonathan.Eisenberg@doj.ca.gov
*Attorneys for Defendant Kamala D. Harris, Attorney General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **JEFF SILVESTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**KAMALA D. HARRIS, Attorney General of California (in her official capacity),**<br><br>Defendant. | 1:11-cv-02137-AWI-SKO<br><br>**DEFENDANT KAMALA D. HARRIS'S RESPONSE TO PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF (PROPOSED) FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER BENCH TRIAL [DOCKET # 93]**<br><br>Date: July 21, 2014<br>Time: 1:30 p.m.<br>Dep't: 8th Flr., Crtrm. 2<br>Judge: Hon. Anthony W. Ishii<br>Trial Date: March 25, 2014<br>Action Filed: December 23, 2011 |

**TABLE OF CONTENTS**

**Page**

RESPONSE TO PLAINTIFFS' BRIEF'S "INTRODUCTION": THE ADMITTED NEED FOR ADEQUATE BACKGROUND CHECKS FOR FIREARMS BUYERS SUPPORTS MAINTAINING CALIFORNIA'S CURRENT SYSTEM AS IS…………… 1

RESPONSE TO PLAINTIFFS' BRIEF'S "STATEMENT OF THE CASE" 2

I. The Court Should Consider, Not Ignore, the Properly Proffered Testimony of California Department of Justice Bureau of Firearms Special Agent Supervisor Blake Graham 2

II. Plaintiffs Misstate Part of the Relevant Second Amendment Analytical Inquiry 3

RESPONSE TO PLAINTIFFS' BRIEF'S "STATEMENT/ANALYSIS OF FACTS" 4

I. The Statutory Exemptions to the Waiting-Period Laws Tailor Them 4

II. The Right to Acquire Firearms Is Subject to Regulation 4

III. Evidence of the Historical Understanding of the Second Amendment Suggests that the Waiting-Period Laws Are Surely Constitutional 5

IV. The Waiting-Period Laws Are Longstanding 5

V. The Waiting-Period Laws Provide Justifiable "Cooling-Off" Periods to Inhibit Firearms Violence by Firearms Purchasers, Even People Who Already Have Firearms 6

VI. There Is No Viable, Alternative State Background-Check System 6

VII. Ten Days for the Waiting Period Is Not "Arbitrary" 7

RESPONSE TO PLAINTIFFS' BRIEF'S "ARGUMENT" 8

I. The "Law of the Case" Doctrine Does Not Compel This Court to Find that the Waiting-Period Laws Burden the Second Amendment 8

II. It Is Sometimes Appropriate to Apply Intermediate Scrutiny in Second Amendment Cases 9

III. There Are Multiple Justifications for the 10-Day Waiting Period 9

IV. The Equal Protection Clause Claim Does Not Warrant Heightened Scrutiny 10

V. There Is Not an Irrational Curio and Relic Firearm Loophole to the Waiting-Period Laws 10

RESPONSE TO PLAINTIFFS' BRIEF'S "CONCLUSION"……………………………………11

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Abramski v. United States*
___ U.S. ___, 134 S.Ct. 2259 (2014) .......... 2

*Am. Universal Ins. Co. v. Pugh*
821 F.2d 1352 (9th Cir. 1987) .......... 9

*Burdick v. Takushi,*
504 U.S. 428 (1992) .......... 10

*District of Columbia v. Heller*
554 U.S. 570 (2008) .......... 3, 4, 5

*People v. Ellison*
194 Cal.App.4th 1342 (2011) .......... 4

*Peruta v. Cnty. of San Diego*
742 F.3d 1144 (9th Cir. 2014) .......... 4, 9

*Telebrands Corp. v. Del Labs., Inc.*
719 F. Supp. 2d 283 (S.D.N.Y. 2010) .......... 2

*United States v. Chapman*
666 F.3d 220 (4th Cir. 2012) .......... 6

*United States v. Chovan*
735 F.3d 1127 (9th Cir. 2013) .......... 5, 9

*United States v. Houser*
804 F.2d 565 (9th Cir. 1986) .......... 8

*United States v. Marzzarella*
614 F.3d 85 (3d Cir. 2010) .......... 6

*United States v. Phillips*
367 F.3d 846 (9th Cir. 2004) .......... 8

*United States v. Smith*
389 F.3d 944 (9th Cir. 2004) .......... 8

*Zablocki v. Redhail,*
434 U.S. 374 (1978) .......... 10

## TABLE OF AUTHORITIES
**(continued)**

**Page**

STATUTES

California Penal Code
§ 26815 .......... 1
§ 27540 .......... 1

CONSTITUTIONAL PROVISIONS

Fourteenth Amendment .......... 3, 10, 12
Second Amendment .......... passim

COURT RULES

Fed.R.Civ.P. 54(b) .......... 8

iii
Def. Harris's Response to Plfs. Closing Brief (1:11-cv-02137-AWI-SKO)

Defendant Kamala D. Harris, Attorney General of California (the "Attorney General"), submits the following response to "Plaintiffs' Memorandum of Points and Authorities in Support of (Proposed) Findings and Conclusions of Law After Bench Trial" (Docket # 93; "Plfs.' Brief"), made herein by Plaintiffs Jeff Silvester ("Silvester"), Brandon Combs ("Combs"), The Calguns Foundation, Inc. ("CGF"), and The Second Amendment Foundation, Inc. ("SAF"; together with Silvester, Combs, and CGF, "Plaintiffs.")

**RESPONSE TO PLAINTIFFS' BRIEF'S "INTRODUCTION": THE ADMITTED NEED FOR ADEQUATE BACKGROUND CHECKS FOR FIREARMS BUYERS SUPPORTS MAINTAINING CALIFORNIA'S CURRENT SYSTEM AS IS**

Plaintiffs begin their closing brief, seeking the invalidation of California's Waiting-Period Laws, California Penal Code sections 26815 and 27540, by making the important concession that "[b]ackground checks for all gun buyers may be constitutionally appropriate." (Plfs.' Brief at 2:5.) Plaintiffs go even further and concede that "10-Day Waiting Periods may be appropriate to keep first-time gun buyers (at least for the first purchase in California) from committing impulsive violent acts . . ." (*Id.* at 2:6-2:8.) Nonetheless, Plaintiffs object to 10-day waiting periods for those people "who are already known by the state to be armed and trustworthy . . . ." (*Id.* at 2:8-2:11.)

Given Plaintiffs' concessions, Plaintiffs' ultimate position, which demands essentially instantaneous background checks for certain people, is unworkable for at least four reasons revealed in the evidence from the trial and/or common sense. *First*, for reasons laid out in detail at trial, background checks, which Plaintiffs accept should be done, often take 10 days or very close to 10 days to complete, even when they involve subsequent firearms purchasers or lead to approvals of firearms purchases. (*See* the Attorney General's June 16, 2014, Proposed Findings of Fact and Conclusions of Law (Docket #88; "Def. Proposed Findings"), Nos. 154-63.) *Second*, there is no comprehensive database of firearms and their owners that the Department of Justice ("Cal. DOJ"), Bureau of Firearms ("BOF), or any other agency may consult. BOF does not know and cannot reasonably identify all the people in California who are presently armed, and therefore there is no quick, reliable way to isolate would-be firearms purchasers who already have guns and to expedite these people's "DROS" (firearms purchase) applications. (Def. Proposed Findings,

Nos. 74-80.) *Third*, the law contains no concept of "trustworthy" in connection with firearms owners. That term is vague and ambiguous in this context, and therefore cannot be a workable foundation for a firearms regulatory regime. To the extent that by trustworthy Plaintiffs mean not prohibited by law from having firearms, the BOF would still need sufficient time, determined by the state legislature to be not less than 10 days, to determine which prospective firearms purchasers qualify. *Fourth*, the subset of California residents upon whom Plaintiffs are now focusing this litigation[1] already have firearms (by definition) and so the Waiting-Period Laws are not infringing on these people's right to keep and bear arms.

## RESPONSE TO PLAINTIFFS' BRIEF'S "STATEMENT OF THE CASE"

### I. THE COURT SHOULD CONSIDER, NOT IGNORE, THE PROPERLY PROFFERED TESTIMONY OF CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS SPECIAL AGENT SUPERVISOR BLAKE GRAHAM

In stating the case, Plaintiffs first ask this Court to ignore entirely the testimony of BOF Special Agent Supervisor Blake Graham regarding the need for the 10-day waiting period to allow BOF special agents enough time to complete investigations of, and possibly to prevent, what appear to be illegal straw purchases of firearms. (See Plfs.' Brief at 2 n.1.) Plaintiffs argue that, in the pleadings prior to trial, the Attorney General allegedly did not contend that the Waiting-Period Laws are justified for this reason, and so the Attorney General should not have been allowed to develop such evidence at trial. (*See id.*) However, Plaintiffs do not cite any legal authority for disregarding Special Agent Graham's testimony, and the Attorney General is unaware of any basis to do so. Moreover, Plaintiffs' argument is based on a false premise. As the Court ruled during the trial, Agent Graham's testimony concerns the very background check process that has been a central part of the present lawsuit all along. (*See* Tr. Transcript (day 3) at 373:9-374:18; *see also Abramski v. United States*, ___ U.S. ___, ___, 134 S.Ct. 2259, 2267 (2014) (holding that no part of federal firearm purchaser background check scheme would work if

[1] Shifting between making a facial attack on the Waiting-Period Laws and various versions of an as-applied attack on the laws, Plaintiffs have repeatedly tried to change the scope of the present lawsuit and the group of people that should be exempt from the Waiting-Period Laws. The Attorney General "should not be expected to mount a defense upon shifting sands." *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 301 (S.D.N.Y. 2010).

straw purchases not considered illegal).) The Attorney General disclosed Graham's identity and subject-matter knowledge in due course during the litigation. Therefore, for two separate reasons, the Court should give full credit to this unrebutted testimony, which demonstrates that the Waiting-Period Laws effectuate important law-enforcement efforts to keep firearms out of the hands of people, including second-time or subsequent purchasers, prohibited from having them.

## II. PLAINTIFFS MISSTATE PART OF THE RELEVANT SECOND AMENDMENT ANALYTICAL INQUIRY

Second, in setting forth a proposed order and a summary of the Second Amendment inquiry to be undertaken (Plfs.' Brief at 3:14-4:7), Plaintiffs err in stating the initial analytical steps. Plaintiffs see part of the first step of the inquiry as being whether there were waiting period statutes regulating firearm purchases in the United States in 1791, when the Second Amendment was enacted, and 1868, when the Fourteenth Amendment was enacted. (*See id.* at 3:21-3:23; *accord id.* at 7:5-7:10.) However, the relevant inquiry actually concerns something different, which is what people at the time of the adoption of the Second Amendment understood the scope of the Second Amendment right to be. *See District of Columbia v. Heller*, 554 U.S. 570, 576 (2008) (holding that in interpreting Second Amendment's text, courts are to be guided by principle that Constitution was written to be understood by voters; Constitution's words and phrases are to be given their normal, ordinary meanings); *id.* at 581-86 (considering 18th-century meaning of phrase "keep and bear arms"); *id.* at 603 (looking at years 1789 to 1820); *id.* at 614 (giving narrow justification for reviewing post-Civil-War discussions of Second Amendment to help to establish its meaning; "they do not provide as much insight into [the Second Amendment's] original meaning . . . [y]et . . . their understanding of the origins and continuing significance of the Amendment is instructive"); *id.* at 634-35 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them . . ."). Whether there were waiting-period laws in 1791 is but one aspect, not the sole focus, of this inquiry. Whether there were waiting-period laws in 1868 is less if at all relevant. The Court properly should look more widely at "*whatever* sources shed light on the public understanding of the Second

Amendment in the period after its enactment or ratification . . ." *Peruta v. Cnty. of San Diego*, 742 F.3d 1144, 1151 (9th Cir. 2014) (emphasis added; citations omitted).

## RESPONSE TO PLAINTIFFS' BRIEF'S "STATEMENT/ANALYSIS OF FACTS"

### I. THE STATUTORY EXEMPTIONS TO THE WAITING-PERIOD LAWS TAILOR THEM

In the statement of facts, Plaintiffs begin by asserting that the statutory exemptions to the Waiting-Period Laws "are a further clue to the law's burden (and irrationality)." (Plfs.' Brief at 4:22-4:23.) Plaintiffs did not, however, offer any evidence to support this assertion. In contrast, the Attorney General presented unrebutted evidence of the rationale for and real-world operation of each exemption, thereby justifying it. (Def. Proposed Findings, Nos. 74-80.) Furthermore, as a matter of law, the existence of the exemptions proves that the Waiting-Period Laws are narrowly tailored to inconvenience as few people as reasonably possible, consistent with maintaining public safety. *Cf. People v. Ellison*, 194 Cal.App.4th 1342, 1350-1351 (2011) (holding that exemptions to California law prohibiting carrying firearms for self-defense bolsters law's constitutionality by narrowly tailoring it).

### II. THE RIGHT TO ACQUIRE FIREARMS IS SUBJECT TO REGULATION

Second, Plaintiffs assert that the Second Amendment right encompasses not just keeping and bearing arms but also acquiring them, citing a 143-year-old state-court decision out of Tennessee for that proposition. (Plfs.' Brief at 6:20-6:28.) However, whether the Second Amendment right encompasses acquisition of firearms is not a case-dispositive inquiry. Plaintiffs cite no law authority, because there is no authority, that this alleged right of acquisition of firearms is not subject to any regulation, such as the regulation that the Waiting-Period Laws provide. The U.S. Supreme Court has, in fact, approved of such regulation, and deemed it presumptively lawful. *Heller*—the Supreme Court decision that first recognized an individual person's Second Amendment right to keep and bear arms for self-defense in his or her home—held that "nothing in our opinion should be taken to cast doubt on [the constitutionality under the Second Amendment of]. . .laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626-27. In other words, the Waiting-Period Laws, by regulating the

acquisition of firearms, are not constitutionally suspect but just the opposite: presumptively lawful.

### III. Evidence of the Historical Understanding of the Second Amendment Suggests that the Waiting-Period Laws Are Surely Constitutional

Third, despite acknowledging the Attorney General's evidence from history that in the Founding Era the vast majority of people could not obtain new firearms quickly, and therefore, significantly, would not have been offended by a waiting-period law, Plaintiffs proclaim, "Rights are not violated by market conditions." (Plfs.' Brief at 7:9-7:10.) Plaintiffs' response misses the point of the evidence. The fact that there was a built-in, natural waiting period in the late-18th-century United States undercuts the argument that it is significant that there might have been no waiting-period laws at the time. There was no need for such a law. Accordingly, there is no good reason to believe that Founding Era voters would have objected to such a law.

### IV. The Waiting-Period Laws Are Longstanding

Fourth, Plaintiffs argue that the Court should find the Waiting-Period Laws—which Plaintiffs acknowledge date to 1923 (Plfs.' Brief at 7:16-7:21)—to be *not* "longstanding" and thus presumptively constitutional (subject to only rational-basis review) under *Heller*. (Plfs.' Brief at 8:11-8:14.) For this argument, Plaintiffs cite *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), in which the U.S. Court of Appeals, Ninth Circuit, found to be not longstanding—although constitutional—the much more recent 1996 federal lifetime firearm-possession prohibition for people who commit misdemeanor domestic violence. That ban apparently derived from a 1938 federal prohibition on firearms possession by *felons* but was arguably qualitatively different, because of the lack of evidence that people in the Founding Era of the United States would have objected to domestic violence perpetrators, especially misdemeanants, possessing firearms. *Chovan*, 735 F.3d at 1137. However, this part of *Chovan* is off-point for at least two reasons. First, 1923 is significantly longer ago than 1996 or even 1938. The Waiting-Period Laws, more than 90 years old, thus must be seen as longstanding. Second, the Waiting-Period Laws did not suddenly expand to cover whole new categories of people, as the federal ban did in 1996 when incorporating domestic violence misdemeanants. The Waiting-Period Laws have imposed

waiting periods for 90-plus years, varying in only the length of the waiting period, in a range of just 14 days (one day to 15 days).

## V. THE WAITING-PERIOD LAWS PROVIDE JUSTIFIABLE "COOLING-OFF" PERIODS TO INHIBIT FIREARMS VIOLENCE BY FIREARMS PURCHASERS, EVEN PEOPLE WHO ALREADY HAVE FIREARMS

Fifth, Plaintiffs assert incorrectly that the Attorney General cannot prove that the Waiting-Period Laws are justified by their "cooling off" period, which is designed to give people with impulses to commit violent acts with firearms time for the impulses to fade. (Plfs.' Brief at 8:23-10:10.) Plaintiffs make that assertion despite conceding that a 10-day wait "may have a deterrent effect on impulsive suicides or homicides." (*See id.* at 21:25-22:13.) The Waiting-Period Laws need not be perfectly, or anywhere close to perfectly, effective, just reasonably effective, in eliminating firearms violence. *See United States v. Chapman*, 666 F.3d 220, 228 (4th Cir. 2012) (explaining that fit needs to be only reasonable, not perfect); *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010) (same). It is sufficient that, as Plaintiffs have now admitted, the Waiting-Period Laws tend to inhibit suicides by firearms—including suicides by people who may have bought firearms before, but the old firearms are lost or stolen or broken or loaned out, or lack ammunition. (*See* Def. Proposed Findings, Nos. 197-204.)

## VI. THERE IS NO VIABLE, ALTERNATIVE STATE BACKGROUND-CHECK SYSTEM

Plaintiffs advocate use of the Armed & Prohibited Persons System ("APPS") to conduct quicker background checks of California residents who have purchased firearms legally in California before. (Plfs. Brief at 14:11-14:26.) This advocacy ignores all the unrebutted evidence that the Attorney General presented at trial about how APPS, because of the incompleteness of its records, is insufficient to serve as a database of California residents who have firearms but are not legally allowed to; and how APPS was not designed to be and cannot legitimately function as a background check system for people who have purchased firearms legally in California before. (*See* the Attorney General's Proposed Findings of Fact and Conclusions of Law, filed herein on June 16, 2014 ("Defendant's Proposed Findings"), Nos. 164-76.)

- Regarding APPS, Plaintiffs are just relying on the same speculation that they had, and expressed, before the trial began. (*See* Plfs.' Trial Brief, filed herein on March 10, 2014, at 11:19-11:21.)

- Likewise, the Certificate of Eligibility ("COE") and Carry Concealed Weapon ("CCW") permit records, while subject to ongoing updating for *certain* prohibiting events via "rap backs," track only those prohibiting events where the perpetrator is made to give fingerprints. (Def. Proposed Findings, No. 160.) Instances of the issuance of restraining orders, admission to mental-health facilities, and out-of-state arrests are not associated with fingerprint records and do not trigger any notifications in APPS. (*Id.*, No. 90.) APPS, by itself, or with COE or CCW records integrated, is incomplete and inadequate in terms of constituting a substitute for a background check. (*See* Trial Tr. (day 2) [Buford] at 221:8-226:1.)

- Plaintiffs propose the following finding: "It is clear from the evidence, at least for law-abiding gun owners who have purchased and/or transferred handguns through a licensed dealer since 1991 (and long guns since January 1, 2014, *see* TX Buford 181:22-182:1), that the State of California has the means to immediately establish that fact with existing resources." (Plfs.' Proposed Findings at 21:14-21:17.) The Court should not adopt this proposed finding as it is incomplete and omits key evidence. Plaintiffs omit fact that Cal. DOJ does not maintain a gun registry. (Def. Proposed Findings No. 75.) Cal. DOJ maintains only *transaction* records for handguns since 1991 and for long gun since January 2014. (*Id.*, Nos. 75 and 78.) Cal. DOJ does not necessarily have information on handguns prior to 1991 and long guns prior to 2014. Cal. DOJ's database, the Automated Firearm System, is only a "leads" database. (*Id.*, No. 77.)

## VII. TEN DAYS FOR THE WAITING PERIOD IS NOT "ARBITRARY"

Finally, Plaintiffs assert that "[t]he 10 days are an arbitrary number and must be justified by reference to real-world necessities." (Plfs.' Brief at 13:21-13:22.) Yet the Attorney General put on reams of unrebutted evidence, in the form of witness testimony, legislative history, and medical research reports, proving that the 10-day waiting period is not arbitrary but rather specially selected, and justified entirely by reference to real-world, public-safety concerns. The Waiting-Period Laws easily pass the test that Plaintiffs set up for the laws.

## RESPONSE TO PLAINTIFFS' BRIEF'S "ARGUMENT"

### I. THE "LAW OF THE CASE" DOCTRINE DOES NOT COMPEL THIS COURT TO FIND THAT THE WAITING-PERIOD LAWS BURDEN THE SECOND AMENDMENT

In the brief's main argument section, Plaintiffs argue that the "law-of-the-case" doctrine precludes the Court from considering whether the Waiting-Period Laws burden the Second Amendment based on evidence presented at trial, because the Court denied the Attorney General's motion for summary judgment. (Plfs.' Brief at 20:7.5-21:3.) However, Plaintiffs misstate the law-of-the-case doctrine. Plaintiffs summarize *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986), as "caution[ing] a trial court against reconsidering its own prior decisions." (Plfs.' Brief at 20:7.5-20:11.5.) In fact, *Houser* teaches the opposite, that "[a]ll rulings of a trial court are 'subject to revision at any time before the entry of judgment.' Fed.R.Civ.P. 54(b)." *Houser*, 804 F.2d at 567. Plaintiffs, at page 20, lines 12 to 16 of the closing brief, similarly misstate the holding of *United States v. Smith*, 389 F.3d 944 (9th Cir. 2004) as limiting a district court's power to reconsider its rulings in an ongoing case. *Smith* actually holds that "a district court may reconsider its prior rulings so long as it retains jurisdiction over the case." *Id.* at 948. "The law of the case doctrine is 'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction." *Id.* at 949. Plaintiffs, at lines 16.5 to 18.5 of page 20 of the closing brief, also cite to *United States v. Phillips*, 367 F.3d 846 (9th Cir. 2004), for a broad rule of the law of the case, but the *Phillips* decision is off-point. A narrow decision, it rebuffed a criminal defendant's sudden attempt to contest an application of law to facts that had been resolved without dispute earlier, because the criminal prosecution and the defendant had agreed on the underlying facts. *Id.* at 855-56 ("Phillips elected to resolve whether the creek was a navigable water on the basis of the uncontested facts pretrial. The law of the case doctrine precludes a court from reconsidering an issue that it has already resolved"). *Phillips* also acknowledges that there are multiple circumstances in which the law of the case doctrine does not apply. *See id.* at 856 & n.34. Plaintiffs compound these errors by arguing that the Attorney General's alleged waiver of her right to a jury trial compels this Court to "decline to revisit" the issue of whether the Waiting-

Period Laws burden the Second Amendment right. (Plfs.' Brief at 20:20.5-21:3.) Because Plaintiffs have sought only equitable relief in this case, there was no right to a jury trial for any party to waive. *Am. Universal Ins. Co. v. Pugh*, 821 F.2d 1352, 1356 (9th Cir. 1987). In short, Plaintiffs are wrong in multiple ways in arguing that this Court may not decide now, after trial, whether the Waiting-Period Laws burden the Second Amendment right.

## II. It Is Sometimes Appropriate to Apply Intermediate Scrutiny in Second Amendment Cases

Next, Plaintiffs misstate the holding in *Peruta* in asserting that it "calls into question the legitimacy of using intermediate scrutiny" in Second Amendment cases. (Plfs.' Brief at 21:20-22:6.5.) In fact, *Peruta* expressly acknowledges that the Ninth Circuit sometimes applies intermediate scrutiny in Second Amendment cases. 742 F.3d at 1168 n.5 (citing *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013)). *Peruta* criticizes the way other federal courts have applied intermediate scrutiny in other firearms cases (*see* 742 F.3d at 1175-79), but does not outlaw use of intermediate scrutiny in appropriate cases. Plaintiffs' characterization of *Peruta* is thus fundamentally wrong.

## III. There Are Multiple Justifications for the 10-Day Waiting Period

Third, Plaintiffs contend that two defense witnesses, BOF Chief Steve Lindley and BOF Assistant Chief Steve Buford, testified that once BOF completes a background check on a prospective firearm purchaser, the only rationale for waiting until 10 days have elapsed to release the firearm is to have a cooling off period. (Plfs.' Brief at 24:8-24:20.5.) Plaintiff's contention is misleading for downplaying the witnesses' testimony that BOF conducts both an initial background check and, toward the end of the 10-day waiting period, a second check to see if any new or updated information has been gathered in the interim. (*See* Trial Tr. (day 2) at 244:13-244:15 [Buford] and Trial Tr. (day 3) at 507:10-507:21 [Lindley].) This part of the background check is not the same thing as a cooling off period, and separately justifies the waiting period.

## IV. THE EQUAL PROTECTION CLAUSE CLAIM DOES NOT WARRANT HEIGHTENED SCRUTINY

Plaintiffs make a flawed argument for applying heightened scrutiny in the Fourteenth Amendment Equal Protection Clause analysis, by *presuming* that the Waiting-Period Laws implicate a fundamental right (Plfs.' Brief at 26:1-26:3), when Plaintiffs actually have to establish that the Waiting-Period Laws burden the Second Amendment right before Fourteenth Amendment analysis would rise from rational-basis review to heightened scrutiny. Because Plaintiffs have not proven that the Waiting-Period Laws burden the Second Amendment right (or discriminate against legally protected groups of people, such as racial-ethnic minorities), Fourteenth Amendment analysis of the Waiting-Period Laws should remain rational-basis-review analysis.[2]

## V. THERE IS NOT AN IRRATIONAL CURIO AND RELIC FIREARM LOOPHOLE TO THE WAITING-PERIOD LAWS

Plaintiffs get the record wrong in asserting that there was trial testimony to the effect that "many popular modern firearms that are sold today meet the definition of curio and relic." (Plfs.' Brief at 26:9-26:13, citing Trial Tr. (day 3) at 380:19-382:6 [Graham].) There was no such testimony, and the evidence that Plaintiffs rely upon does not support their assertions. BOF Special Agent Supervisor Blake Graham—whose testimony Plaintiffs cite—testified on a much narrower topic, namely that for one single kind of firearm, the so-called "1911" pistol, which has been produced since 1911, the lethality of bullets fired from the (different) older and newer versions could be the same, if the barrel lengths and calibers of the bullets are the same. (Trial Tr. (day 3) at 380:19-382:6 [Graham].)

---

[2] Other constitutional rights, not just the Second Amendment right, are appropriately regulated, too. For example, the right to marry is fundamental, but "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship" are not subject to the "rigorous scrutiny" that is applied to laws that "interfere directly and substantially with the right to marry." *Zablocki v. Redhail*, 434 U.S. 374, 386-87 (1978). The right to vote is fundamental, but "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

## RESPONSE TO PLAINTIFFS' BRIEF'S "CONCLUSION"

Plaintiffs end their closing brief by positing a false dilemma. According to Plaintiffs, the Attorney General "must either: (A) concede that the current regime of requiring the registration of firearms and their owners since 1991 is an abject failure and that the registration schemes and computer databases are unreliable (i.e., that's why they need 10 (or more) days); or (B) concede that the DROS/Background check, Rap-Back and Armed Prohibited Persons System makes the 10-Day Waiting Periods redundant for current gun owners who are already in the system. They can't have it both ways." (Plfs.' Brief at 27:13-27:20.)

It would be factually incorrect for the Attorney General to make either concession. California's background check system is not at all "an abject failure"; as even Plaintiffs admit, it is "state-of-the-art." (Plaintiffs' Proposed Findings of Fact and Conclusions of Law, filed herein on June 16, 2014, at 20:22-20:25; *see also* Def. Proposed Findings, Nos. 184, 185 (comparing the DROS system's fine performance with the federal NICS systems problems).) And as the Attorney General demonstrated at length at trial, although the DROS registration procedures and computer databases do have some gaps, often causing delays in processing DROS applications, the delays and errors are the inevitable by-products of having numerous human beings (outside of Cal. DOJ) involved in manually inputting records and completing other such tasks. (Def. Proposed Findings, Nos. 129-39.) Furthermore, it is undisputed that adoption of the alternative represented by the federal "NICS" background check system would result in thousands of dangerous, prohibited persons annually obtaining firearms. (Def. Proposed Findings, Nos. 177-83.)

As for the other alleged choice, nothing suggests that Plaintiffs' proposed background check system, cobbled together from some combination of CCW and COE records and the APPS database, would function as effectively, or anywhere near as effectively, as the current 10-day background check system built up under the Waiting-Period Laws. Plaintiffs' proposed system would have the grave flaw of being unable to take into account many pertinent records, such as mental-health records and restraining orders, that are *not* fingerprint-based, and thus, again,

would certainly result in thousands of guns being released into the hands of people most likely to misuse them. (Def. Proposed Findings, Nos. 177-83.)

In short, Plaintiffs' arguments fail to establish that either the Second Amendment or the Fourteenth Amendment compels this Court to invalidate the Waiting-Period Laws or forces the State of California to adopt Plaintiffs' dangerous alternative proposals.

Dated: June 30, 2014

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

_/s/___________________________________
JONATHAN M. EISENBERG
Deputy Attorney General
*Attorneys for Defendant Kamala D. Harris, Attorney General of California*