HOGAN LOVELLS US LLP
Neil O'Hanlon (Bar No. 67018)
David Skaar (Bar No. 265377)
Vassi Iliadis (Bar No. 296382)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California  90067
Telephone:   (310) 785-4600
Facsimile:    (310) 785-4601
neil.ohanlon@hoganlovells.com
david.skaar@hoganlovells.com
vassi.iliadis@hoganlovells.com

BRADY CENTER TO PREVENT GUN
VIOLENCE
Legal Action Project
Jonathan E. Lowy
Robert B. Wilcox, Jr.
840 First Street, NE, Suite 400
Washington, DC 20002
Telephone: (202) 370-8101
Facsimile: (202) 470-8102
jlowy@bradymail.org
rwilcox@bradymail.org

Attorneys for *Amicus Curiae*
Brady Center to Prevent Gun Violence

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| JEFF SILVESTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,<br><br>Plaintiffs,<br><br>v.<br><br>KAMALA HARRIS, Attorney General of California (in her official capacity), and DOES 1 to 20,<br><br>Defendants. | Case No. 1:11-cv-02137-AWI-SKO<br>Honorable Anthony W. Ishii<br><br>**APPLICATION OF BRADY CENTER TO PREVENT GUN VIOLENCE FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE***<br><br>Complaint filed:  12/23/2011<br><br>Dept:        8th Flr., Crtrm. 2<br>Judge:       The Hon. Anthony W. Ishii<br>Trial Date:  March 25, 2014 |

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

APPLICATION OF BRADY CENTER TO PREVENT GUN VIOLENCE TO FILE BRIEF AS *AMICUS CURIAE*

\\LA - 090334/002311 - 1096576 v4

1    Through the undersigned counsel, the Brady Center to Prevent Gun Violence

2    (the "Brady Center") hereby applies to the Court for leave to file a brief as *amicus*

3    *curiae* in this case for the facts and reasons stated below.  The proposed brief is

4    attached hereto as Exhibit A for the convenience of the Court and counsel.

5    Defendant consents to the filing of this *amicus* brief.  Plaintiffs have indicated that

6    they do not consent to the filing of this *amicus* brief.

7    The Brady Center is the nation's largest non-partisan, non-profit organization

8    dedicated to reducing gun violence through education, research, and legal

9    advocacy.  Through its Legal Action Project, the Brady Center has filed numerous

10   briefs as *amicus curiae* in cases involving challenges to both state and federal gun

11   laws.

12   District courts have inherent power to grant third parties leave to file briefs as

13   *amici curiae*, particularly regarding "legal issues that have potential ramifications

14   beyond the parties involved or if the [*amicus* has] unique information or perspective

15   that can help the court beyond the help that the lawyers for the parties are able to

16   provide."  *NGV Gaming, Ltd. V. Upstream Point Molate, LLC,* 335 F. Supp. 2d

17   1061, 1067 (N.D. Cal. 2005) (internal quotations omitted).  Here, *amicus* brings a

18   broad and deep perspective to the issues raised by this case and has a compelling

19   interest in the federal courts' interpretation of Second Amendment issues.  *Amicus*

20   thus respectfully submits the attached brief to assist the Court with the

21   constitutional issues in this case, including important matters of first impression

22   under the Second Amendment.

23   The proposed brief explores the scope of the Second Amendment, and

24   Plaintiffs' arguments regarding the supposed burden of California Penal Code

25   sections 26815 and 27540 (the "Waiting-Period Law") as it applies to repeat

26   purchasers of firearms.  The brief concludes that (1) the Waiting-Period Law does

27   not burden conduct protected by the Second Amendment; (2) the burden on

28   protected conduct, if any, is minimal; and (3) the Waiting-Period Law is an

1   important element of California's comprehensive gun control scheme. *Amicus*,

2   therefore, respectfully submits the attached brief to assist the Court as it considers

3   the significant issues raised in this matter.

4       For the foregoing reasons, the Brady Center respectfully requests that the

5   Court grant leave to file the attached *amicus* brief.

6

7   Dated:    July 21, 2014

8

9                                       By: /s/ Neil R. O'Hanlon

10                                         Neil R. O'Hanlon
                                           David W. Skaar
11                                         Vassi Iliadis

12                                         Attorneys for *Amicus Curiae* Brady
                                           Center to Prevent Gun Violence
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

HOGAN LOVELLS US LLP
Neil O'Hanlon (Bar No. 67018)
David Skaar (Bar No. 265377)
Vassi Iliadis (Bar No. 296382)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California  90067
Telephone:  (310) 785-4600
Facsimile:   (310) 785-4601
neil.ohanlon@hoganlovells.com
david.skaar@hoganlovells.com
vassi.iliadis@hoganlovells.com

BRADY CENTER TO PREVENT GUN
VIOLENCE
Legal Action Project
Jonathan E. Lowy
Robert B. Wilcox, Jr.
1225 I Street, NW, Suite 1100
Washington, DC 20005
Telephone: (202) 289-7319
Facsimile: (202) 898-0059
rlowy@bradymail.org
rwilcox@bradymail.org

Attorneys for *Amicus Curiae*
Brady Center to Prevent Gun Violence

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| JEFF SILVESTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization, <br><br> Plaintiffs, <br><br> v. <br><br> KAMALA HARRIS, Attorney General of California (in her official capacity), and DOES 1 to 20, <br><br> Defendants. | Case No. 1:11-cv-02137-AWI-SKO <br> Honorable Anthony W. Ishii <br><br> **BRIEF OF *AMICUS CURIAE* BRADY CENTER TO PREVENT GUN VIOLENCE** <br><br> Complaint filed: 12/23/2011 <br><br> Dept:        8th Flr., Crtrm. 2 <br> Judge:       The Hon. Anthony W. Ishii <br> Trial Date:  March 25, 2014 |

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

\\LA - 090334/001085 - 1096575 v6

1

## CORPORATE DISCLOSURE STATEMENT

2       The Brady Center to Prevent Gun Violence states that it has no parent
3   corporations, nor has it issued shares or debt securities to the public.  The Brady
4   Center to Prevent Gun Violence is a § 501(c)(3) non-profit corporation, and no
5   publicly held corporation holds ten percent of its stock.

6

7

8                                      /s/ Neil R. O'Hanlon

                                   Neil R. O'Hanlon

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hogan Lovells US LLP
Attorneys At Law
Los Angeles

- 1 -

\\LA - 090334/001085 - 1096575 v6

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    ARGUMENT ........................................................................................ 2

    A.    The Waiting-Period Law Does Not Burden Conduct Protected
          By The Second Amendment................................................................ 2

    B.    The Burden On Protected Conduct, If Any, Is Minimal .................... 5

    C.    The Waiting-Period Law is an Important Element of California's
          Comprehensive Gun Violence Prevention Regulatory Scheme .............. 5

III.   CONCLUSION .................................................................................... 8

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

BRIEF OF *AMICUS CURIAE* BRADY CENTER TO PREVENT GUN VIOLENCE

\\LA - 090334/001085 - 1096575 v6

# TABLE OF AUTHORITIES

Page(s)

CASES

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)............................................................ 1, 2, 3

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ..............................................5

*United States v. Chester*,
  628 F.3d 673 (4th Cir. 2010) ..............................................2

*United States v. Chovan*,
  735 F.3d 1127 (9th Cir. 2013) ...........................................2, 4

STATUTES

California Penal Code sections 26815, 27540 ................................. passim

OTHER AUTHORITIES

Dix, G., "A Comparison of Firearm Mortality Rates in California and the
  Rest of the Nation 1990-2010," p.1 ....................................6

Henry J. Kaiser Family Foundation, "Number of Deaths Due to Injury by
  Firearms per 100,000 Population," 2010 (http://kff.org/ other/state-
  indicator /firearms-death-rate-per-100000/) .....................................6, 7

Law Center to Prevent Gun Violence, "State Waiting Periods for Guns," Jan.
  3, 2012 (http://smartgunlaws.org/category/state-waiting-periods-for-
  guns/).........................................................................7

Law Center to Prevent Gun Violence, "The California Model: Twenty Years
  of Putting Safety First," p.4, June 18, 2013 (http://smartgunlaws.org/wp-
  content/uploads /2013 /07/20YearsofSuccess_For WebFINAL3.pdf)................6

Law Center to Prevent Gun Violence, "Waiting Periods Policy Summary,"
  June 24, 2013 (http://smartgunlaws.org/waiting -periods-policy-summary/
  #identifier_14_5825)........................................................6

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

BRIEF OF *AMICUS CURIAE* BRADY CENTER TO PREVENT GUN VIOLENCE

\\LA - 090334/001085 - 1096575 v6

U.S. Dep't of Justice, *National Instant Criminal Background Check System (NICS) Operations 2012* (http://www.fbi.gov /about-us/cjis/nics/reports/2012-operations-report) ........................................................7

U.S. General Accounting Office, *Gun Control: Implementation of the National Instant Criminal Background Check System* (Feb. 2000) (*available at* http://www.gao.gov/new.items/g100064.pdf)...............................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

BRIEF OF *AMICUS CURIAE* BRADY CENTER TO PREVENT GUN VIOLENCE

\\LA - 090334/001085 - 1096575 v6

1    The Brady Center to Prevent Gun Violence ("The Brady Center") hereby

2    respectfully submits this brief as *amicus curiae* in support of defendant Kamala

3    Harris, in her official capacity as Attorney General of California, in the above-

4    referenced matter.

5    **I.    INTRODUCTION**

6         The Supreme Court held that the Second Amendment protects "an individual

7    right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595

8    (2008).  However, it does not guarantee that individuals will have immediate access

9    to an unlimited cache of firearms at *all* times.  Plaintiffs' desire to bolster their

10   arsenals does not implicate the Second Amendment because no Court has

11   interpreted the Second Amendment to protect an individual's right to acquire as

12   many firearms as they desire.  This Court should not be first to expand the Second

13   Amendment to encompass arsenal building.

14        Plaintiffs Jeff Silvester and Brandon Combs ("Plaintiffs"), owners of

15   multiple firearms, have, by their own admission, been keeping and bearing arms for

16   years.  Since several of their firearm acquisitions have occurred in California,

17   Plaintiffs – on several occasions – have gone through the 10-day waiting period

18   between the purchase and possession of a firearm (and the attendant background

19   check) as required by California Penal Code sections 26815 and 27540 (the

20   "Waiting-Period Law").  Plaintiffs wish to add more firearms to their arsenal, and

21   Plaintiffs do not contend that California law prevents them from doing so.  Instead,

22   Plaintiffs argue that because they own firearms and have been subject to the

23   Waiting-Period Law on several occasions, putting them through the 10-day waiting

24   period again would violate the Second Amendment.

25        Plaintiffs' novel interpretation of the Second Amendment – which would

26   guarantee existing gun owners, but not first-time buyers, ***instant*** access to new

27   firearms – has ***no legal or factual basis***.  First, no court has ever held that the

28   Second Amendment guarantees instant access – or any manner of access – to an

arsenal of firearms.  Second, there is no violation of the right to bear arms in defense of "hearth and home" that was recognized in *Heller*, because Plaintiffs have offered no evidence to establish that their current arsenals are insufficient for that purpose.  Third, there is insufficient evidence to support Plaintiffs' theory that repeat gun purchasers are more trustworthy than first-time buyers, and should therefore be afforded preferential treatment.  Finally, to the extent the Waiting-Period Law impacts Plaintiffs' Second Amendment rights, the impact – a mere 10-day administrative delay – is minimal in relation to the State's paramount interest in ensuring that all gun purchasers are properly qualified.  For these reasons, the Brady Center respectfully submits that the Court should reject Plaintiffs' challenge to the Waiting-Period Law.

## II.    ARGUMENT

### A.    The Waiting-Period Law Does Not Burden Conduct Protected By The Second Amendment

A challenge under the Second Amendment fails where the challenged law does not burden conduct protected by the Second Amendment.  *See United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013) (citing *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010)).[1]  There is no dispute that Plaintiffs have owned between six and fifteen firearms during this lawsuit.  Defendant's Opening Brief, 7:14-15, 8:8-9.  In that connection, Plaintiffs' challenge to the Waiting-Period Law is limited to how the law is applied to persons who have guns registered to them and is not a broad facial challenge.  Trial transcript 5:3-6:25.  By all accounts, Plaintiffs have been keeping and bearing arms for years, and the Waiting-Period

---

[1]    *Chovan* established a two-part test for analyzing challenges under the Second Amendment: "The Second Amendment inquiry we adopt (1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny."  735 F.3d at 1136.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

BRIEF OF *AMICUS CURIAE* BRADY CENTER TO PREVENT GUN VIOLENCE

Law does not affect their ability to exercise their Second Amendment rights with respect to the firearms they already own.[2]  *See* Plaintiffs' Opening Brief, 3:22-4:6.

The Waiting-Period Law also does not prevent Plaintiffs and other gun owners from purchasing even more firearms, provided they are qualified to do so. In fact, Plaintiffs could have purchased "dozens more firearms in the last two and a half years" of this litigation, even with the Waiting Period Law in effect. Defendants' Opening Brief, 5:16-17.  Plaintiffs do not dispute this point.  Yet Plaintiffs contend that California's 10-day waiting period imposes an unacceptable – indeed, unconstitutional – burden on their Second Amendment rights.  In essence, Plaintiffs seem to believe that, despite the fact that there is no interference in their right to keep and bear the arms they already own, the Second Amendment guarantees that they will have nearly instant access to as many new firearms as possible.  However, Plaintiffs have not, and cannot, cite any authority supporting such a novel interpretation of the Second Amendment.

Plaintiffs' reliance on *Heller* is misplaced, because neither *Heller* nor any of the decisions that interpret it hold that the Second Amendment guarantees the right to certain types of firearms or that an individual has the right to amass an arsenal. In addition to recognizing that the Second Amendment applies to individuals, *Heller* acknowledged that at the core of the Second Amendment is the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." Plaintiffs' Opening Brief, 6:14-16.  Since Plaintiffs already own multiple firearms, Plaintiffs argue that they must have immediate access to additional guns, because under *Heller*, their existing arsenals are somehow unsuitable for defending "hearth and home." *Id.* at 5:14-16 ("a firearm possessed for one purpose, such as target practice, hunting, or collecting, may be completely unsuitable for self-defense in

---

[2]  Mr. Silvester also has a license to carry a loaded handgun in public, and Mr. Combs has a Certificate of Eligibility certifying his suitability to acquire and possess firearms. Plaintiffs' Opening Brief, 3:22-4:6.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

BRIEF OF *AMICUS CURIAE* BRADY CENTER TO PREVENT GUN VIOLENCE

1   the home or to be carried in public"). Notably, no Court has interpreted *Heller* to

2   grant individuals the right to keep and bear a certain number, or particular types, of

3   firearms, and there is no basis for such an extension. Plaintiffs have not proffered

4   any evidence showing that they are incapable of defending their homes with their

5   current weapons, or that the firearms they wish to acquire are superior in that

6   regard. Without such evidence, likely in the form of expert testimony, there is no

7   basis on which the Court can determine the efficacy of certain firearms for certain

8   purposes. No court has recognized an individual's preference to have an additional

9   firearm as deserving Constitutional protection.

10       Likewise, there is no support for Plaintiffs' contention that existing gun

11   owners are, or should be, afforded more rights under the Second Amendment than

12   prospective gun buyers. Plaintiffs concede that the Waiting-Period Law "may be

13   appropriate" for first-time gun buyers in order to prevent "***impulsive violent acts***

14   and because they are strangers to California's 'gun-owner database.'" Plaintiffs'

15   Responsive Trial Brief, 1:16-18 (emphasis added). According to Plaintiffs,

16   however, gun purchasers who already own firearms, have a Certificate of

17   Eligibility, and/or have a concealed-carry license cannot be subject to the Waiting-

18   Period Law because they "are known by the state to be trustworthy." *Id.* at 1:18-20.

19   However, there is no basis for the argument that existing gun owners are inherently

20   trustworthy, or are less prone to "impulsive violent acts." Plaintiffs also fail to

21   account for the fact that a gun owner's eligibility to purchase more firearms may

22   have changed since his or her last purchase, and the waiting period would be

23   necessary to allow the State to discovery such information. As such, there is simply

24   no reason to treat first-time and repeat gun purchasers differently. If the Waiting-

25   Period Law can deter violent acts of first-time gun buyers, there is no reason to

26   doubt its potential beneficial effect on all purchasers.

27

28

1    For the foregoing reasons, the Waiting-Period Law does not burden any

2    conduct that is protected by the Second Amendment, and on that basis alone,

3    Plaintiffs' challenge fails under the *Chovan* test.

4    ### B.    The Burden On Protected Conduct, If Any, Is Minimal

5    Even if the Court finds that the Waiting-Period Law burdens protected

6    conduct, the burden is minimal at best.  While Plaintiffs refer to this law as a "ban"

7    on the acquisition and ownership of new firearms (*see* Plaintiffs' Opening Brief,

8    1:12), Plaintiffs cannot earnestly defend such a label.  The Waiting-Period Law

9    merely provides a 10-day administrative delay between purchase and possession.

10   During that period, while Plaintiffs cannot yet take possession of the firearm they

11   just purchased, they can still exercise their right to keep and bear the firearms they

12   already own.

13   While this brief delay may be inconvenient to Plaintiffs under certain

14   circumstances (e.g., where they want to buy a firearm that is only available at a

15   store in southern California, rather than the firearms that are readily available near

16   their homes), and may deprive them of a coveted new make or model for a short

17   period of time, this inconvenience is a result of Plaintiffs' choice to pursue a certain

18   type of firearm.  *See* Defendant's Opening Brief, 7:23-8:3.  This is clearly different

19   from *Ezell v. City of Chicago*, 651 F.3d 684, 695 (7th Cir. 2011), where a city

20   ordinance that required fire-range training as a prerequisite to gun ownership, yet

21   prohibited all firing ranges in the city, effectively forced gun purchasers out of the

22   city.  Plaintiffs' choice to travel in order to buy firearms cannot result in a violation

23   of the Second Amendment.

24   Any minimal inconvenience to Plaintiffs is overwhelmed by the State's

25   interest in ensuring that all purchasers of firearms are properly qualified.  Plaintiffs

26   implicitly recognize that the Waiting Period Law accomplishes this purpose by

27   conceding it should apply to first-time buyers.  Plaintiffs' Responsive Trial Brief,

28   1:16-18.

**C.    The Waiting-Period Law is an Important Element of California's Comprehensive Gun Violence Prevention Regulatory Scheme**

Recent studies show a correlation between California's gun violence prevention regulations and the State's reduction in gun deaths that has outpaced the national average.  Between 1990 and 2010, California's firearm homicide rate declined by 53.9% (versus 37.3% nationwide), and the firearm suicide rate dropped 47.3% (versus 16.9% nationally).  *See* Dix, G., "A Comparison of Firearm Mortality Rates in California and the Rest of the Nation 1990-2010," p.1, Jan. 9, 2013.  *See also* Law Center to Prevent Gun Violence, "The California Model: Twenty Years of Putting Safety First," p.4, June 18, 2013 (*available at* http://smartgunlaws.org/wp-content/uploads /2013 /07/20YearsofSuccess_For WebFINAL3.pdf).  Since 1993, California's firearm homicide rate has declined by 64%, compared to a 42% decrease nationwide.  Dix, p.1.

This sharp decline in gun violence occurred while California was strengthening its gun regulations, including enacting new requirements for gun safety, restrictions on the frequency of handgun purchases, and prohibitions on the sale of large capacity ammunition magazines.  "The California Model," p.5.  The Waiting-Period Law is part of California's comprehensive gun violence prevention scheme that many believe has played an important role in reducing firearm deaths in California, which have been declining much faster than non-firearm homicides and suicides.  Dix, p.4.  If Plaintiffs are permitted to extract the Waiting-Period Law from California's regulatory scheme, there is a risk of reversing some of the progress that has been made.

The statistics agree: states with waiting-period laws like California's have, on average, some of the lowest firearm death rates in the country: California (42nd), Hawaii (50th), Illinois (38th), Rhode Island (48th), Minnesota (43rd), Florida (21st), Iowa (43rd), Maryland (34th), New Jersey (46th), and Wisconsin (37th).  LCPGV, "Waiting Periods Policy Summary," June 24, 2013 (*available at*

1   http://smartgunlaws.org/waiting -periods-policy-summary/ #identifier_14_5825);

2   Henry J. Kaiser Family Foundation, "Number of Deaths Due to Injury by Firearms

3   per 100,000 Population," 2010 (*available at* http://kff.org/ other/state-indicator

4   /firearms-death-rate-per-100000/).

5       In contrast, the states with the 10 highest firearm death rates require no

6   waiting period between the purchase and possession of firearms: Alaska (1st),

7   Louisiana (2nd), Alabama (3rd), Mississippi (4th), Wyoming (5th), Montana (6th),

8   New Mexico (7th), Arizona (8th), Nevada (9th), and Arkansas (10th). LCPGV,

9   "State Waiting Periods for Guns," Jan. 3, 2012 (*available at*

10  http://smartgunlaws.org/category/state-waiting-periods-for-guns/).

11      Further highlighting the need for the Waiting-Period Law, the FBI reports

12  that in 2012 alone, 3,722 firearms were transferred to ineligible persons despite the

13  use of the federal NICS system. *See* Criminal Justice Info. Svcs. Div. of the FBI,

14  U.S. Dep't of Justice, *National Instant Criminal Background Check System (NICS)*

15  *Operations 2012* (*available at* http://www.fbi.gov /about-us/cjis/nics/reports/2012-

16  operations-report).  According to the FBI, it has taken an average of ***25 days***

17  "between the initial NICS inquiry and the date the FBI determined that the purchase

18  should have been denied." U.S. General Accounting Office, *Gun Control:*

19  *Implementation of the National Instant Criminal Background Check System*, p.13

20  (Feb. 2000) (*available at* http://www.gao.gov/new.items/g100064.pdf).  For that

21  reason, the FBI has indicated that allowing more time to complete background

22  checks would help minimize sales to ineligible persons. *Id.*  The Waiting-Period

23  Law, by providing just a brief additional period to complete the background check,

24  serves that purpose as a result of the California's legislature's comprehensive

25  approach to preventing gun violence.

26  ///

27  ///

28  ///

1  III.    **<u>CONCLUSION</u>**

2       In view of the foregoing, the very text of the Second Amendment – and the

3  opinions interpreting it – demonstrate that Plaintiffs' case lacks merit.  The

4  Waiting-Period Law should be upheld.

5

6  Dated:    July 21, 2014                    HOGAN LOVELLS US LLP

7

8                                            By: /s/ Neil R. O'Hanlon

9                                                Neil R. O'Hanlon
                                                David W. Skaar
10                                               Vassi Iliadis

11                                               Attorneys for *Amicus Curiae* Brady
                                                Center to Prevent Gun Violence
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES