Victor J. Otten (SBN 165800)
vic@ottenlawpc.com
OTTEN LAW, PC
3620 Pacific Coast Hwy, Suite 100
Torrance, California 90505
Phone: (310) 378-8533
Fax: (310) 347-4225

Donald E.J. Kilmer (SBN 179986)
LAW OFFICES OF DONALD KILMER
A Professional Corporation
1645 Willow Street, Suite 150
San Jose, California 95125
Phone: (408) 264-8489
Fax: (408) 264-8487

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEFF SILVESTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,**<br><br>                                     **Plaintiffs,**<br><br>        **v.**<br><br>**KAMALA HARRIS, Attorney General of California (in her official capacity), and DOES 1 to 20.**<br><br>                         **Defendants.** | **Case No. 1:11-cv-02137-AWI-SKO**<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: TBD |

## I.     Introduction

After three years of litigation, a bench trial, and the presentation of evidence the Court granted plaintiffs' request for declaratory and injunctive relief under U.S.C §§ 1983, 1988 as well as the Second and Fourteenth Amendments. Plaintiffs,

0

Jeff Silvester, Brandon Combs, The Calguns Foundation, Inc. and The Second Amendment Foundation, bring this motion for attorney's fees and court costs pursuant to 42 U.S.C. section 1988 ("section 1988") and Federal Rule of Civil Procedure 54.

## II.    Overview of the Litigation

Since the Court is familiar with the history of this litigation, only a brief summary of the proceedings is set forth below.

### A.    The Complaint and Claims

On December 12, 2011 Plaintiffs filed suit challenging the State of California's ten-day waiting period laws for firearm acquisitions facially and as applied to individuals who lawfully already have at least one firearm registered in their name with the State of California.  Plaintiffs' asserted that the waiting period laws violated the Second Amendment and the Fourteenth Amendment of the United States Constitution and was made through rights granted by 42 U.S.C §§ 1983, 1988.

### B.    Motions

On September 25, 2013, the Attorney General filed a Motion for Summary Judgment on all claims raised in the lawsuit. The Attorney General offered two justifications for the across-the-board waiting period.  First, the Attorney General argued that the delay is required so that a background check can be performed. Second, the Attorney General argued that a cooling-down period must be imposed on everyone on the chance that someone might impulsively purchase a gun to do harm to themselves or others.

On December 6, 2013, the Court issued its Order denying the Attorney General's  motion in its entirety.

### D.    Research & Memorandums

Because this was a novel case in a developing area of Constitutional law,

1

there was an extensive amount of research that was needed. For example, the entire legislative history of the statues challenged had to be reviewed and analyzed. In addition, because the Attorney General attempted to get evidence into the record by taking judicial notice of numerous books, articles and journals, those items had to be reviewed and objections drafted.

### E.    Fact Discovery

Written discovery consisted of drafting responses to twenty written interrogatories for five parties, attending four depositions, and reviewing the extensive legislative history of the challenged laws. These activities required numerous hours of meetings with clients and opposing counsel, as well as extensive travel and research costs.

### F.    The Trial

Prior to the trial, the plaintiffs had to draft and respond to five motions in limine, prepare witnesses, comb through at least 1,000 "high priority" documents to identify a manageable list of trial exhibits, and review thousands of pages of material listed on defendants exhibit list. The trial, which lasted three days, included five witnesses for the plaintiffs and seven for the defendants. There were almost two hundred plaintiffs' exhibits and one hundred defendants' exhibits that were ultimately admitted, drawn from proposed lists that exceeded twelve hundred documents.

Each party submitted seventy pages of proposed findings and conclusions, drawn from hundreds of pages of trial transcripts.

### III.   There Is No Dispute That the Plaintiffs Have Prevailed and Are Entitled to An Award of Attorneys' Fees and Costs.

The United States Supreme Court has set forth the approach to follow in evaluating fee requests under 42 U.S.C. § 1988. To be entitled to an award of fees, the plaintiffs must have prevailed on some significant issue in the litigation.

2

1   Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Texas State Teachers Ass'n v.

2   Garland Independent School Dist., 489 U.S. 782, 791-92 (1989).  Once the fee

3   entitlement threshold has been crossed, the prevailing plaintiffs' fee award is based

4   upon the familiar lodestar method.

5      The lodestar method of calculating attorney fees is a two-step process. First,

6   courts multiply the hours an attorney works by the attorney's hourly rate—this

7   process yields the lodestar—and then courts adjust the lodestar up or down "to

8   reflect the characteristics of a given action." Ferland v. Conrad Credit Corp., 244

9   F.3d 1145 (9th Cir. 2001).  These fees include all time reasonably and necessarily

10  expended on all phases of the litigation.  Anderson v. Director, Office Worker's

11  Compensation Programs, 91 F.3d 1322, 1325 (9th Cir. 1996).  "Where a plaintiff

12  has obtained excellent results, his attorney should recover a fully compensatory fee.

13  Normally this will encompass all hours reasonably expended on the litigation, and

14  indeed in some cases of exceptional success an enhanced award may be justified."

15  Hensley, 461 U.S. at 435.

16     Here, there is no dispute that the plaintiffs have prevailed. The August 22,

17  2014 Memorandum Decision states:

18      "After considering the evidence and the arguments, the Court

19      concludes that Penal Code § 26815(a) and § 27540(a)'s 10-day waiting

20      periods impermissibly violate the Second Amendment as applied to

21      those persons who already lawfully possess a firearm as confirmed by

22      the AFS, to those who possess a valid CCW license, and to those who

23      possess both a valid COE and a firearm as confirmed by the AFS

24      system, if the background check on these individuals is completed and

25      approved prior to the expiration of 10 days".

26     Consistent with federal fee-shifting statutes, and Supreme Court decisions

27  applying these statutes, the plaintiffs are entitled to recover their attorneys' fees and

28

3

1  costs for all time reasonably expended on this case, as well as all expenses
2  reasonably incurred.

3  **IV.   The Time Spent by the Plaintiffs' Attorneys Is Reasonable and Fully**
4  **Compensable.**

5  **A.   The Plaintiffs Have Exercised Billing Judgment And Have**
6  **Substantially Reduced the Number of Hours for Which Fees Are**
7  **Requested.**

8  A central consideration in determining the amount of compensable time is
9  the determination of whether the plaintiffs have demonstrated billing judgment with
10  respect to their fee application.

11  "Counsel for the prevailing party should make a good faith effort to
12  exclude from a fee request hours that are excessive, redundant, or
13  otherwise unnecessary, just as a lawyer in private practice ethically is
14  obligated to exclude such hours from his fee submission…. 'Hours that
15  are not properly billed to one's client also are not properly billed to
16  one's adversary pursuant to statutory authority.'"

17  <u>Hensley</u>, 461 U.S. at 434 (quoting <u>Copeland v. Marshall</u>, 641 F.2d 880, 891
18  (D.D.C. 1980) (*en banc*).

19  The plaintiffs have submitted detailed, contemporaneously-recorded time
20  records which describe with particularity the date, activity, and time spent on each
21  litigation task over an almost three year period.  See time records of (Declaration of
22  Victor Otten "Otten Decl." ¶ 13; Declaration of Don Kilmer "Kilmer Decl." at ¶¶ 8-
23  11 and Ex. 4; Declaration of Jason Dave "Davis Decl." at ¶¶ 5-8 and Ex. 5). Each
24  entry was recorded daily, as a percentage of an hour, in a computerized time
25  keeping program.  <u>Id</u>.

26  The plaintiffs have either not billed or "no charged" hundreds of hours in the
27  exercise of billing judgment, which is well beyond what is commonplace in private

28  4

commercial litigation and requested far less than would be billed to a paying client. For example, Otten & Joyce LLP "no charged" 35.20 hours of work. (Otten Decl. at ¶ 14).

Based upon a careful review of these records, each attorney then exercised billing judgment to delete or reduce various entries. <u>Hensley</u>, 424 U.S. at 434 (good faith effort to exclude hours that are "excessive, redundant, or otherwise unnecessary"). <u>Id</u>. Each attorney omitted or deleted extensive time spent communicating with individual plaintiffs, conducting factual and legal research, reviewing state agency documents and administrative decisions, conferring with other legal experts, and collaborating with legal and support staff in their offices. <u>Id</u>.

Given these substantial reductions, the plaintiffs' lodestar fairly represents the reasonable time expended by each attorney, paralegal, and law student in this case.

### B.    The Novelty and Complexity of This Litigation Required Multiple Attorneys With Discrete Responsibilities and Expertise.

An additional factor to be considered when evaluating the reasonableness of the time expended is the novelty and complexity of the case. As the Supreme Court noted in <u>City of Burlington v. Dague</u>, 505 U.S. 557, 562 (1992), the difficulty of a case "is ordinarily reflected in the lodestar – either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced to do so." The legal and factual complexity of this case is unique, both for the attorneys involved and in terms of the relief obtained. The area of Second Amendment litigation is rapidly developing in light of the Supreme Court decisions in <u>District of Columbia v. Heller</u> (2008) 554 U.S. 57 and <u>McDonald v. City of Chicago</u> (2010). The application of these cases and the level of scrutiny to be applied to firearms statutes throughout the country is developing and few attorneys practice in this area. (Otten Decl. at ¶ 16).

5

**D.    The Plaintiffs Have Obtained An Exceptional Result and Are Entitled to Fees for All Time Reasonably Spent on This Civil Rights Case.**

As previously set forth, the plaintiffs' are the prevailing parties in this litigation. This is one of a very few successful Second Amendment challenges to a firearms statute.

**E.    Plaintiffs Are Entitled to Hourly Rates That Reflect Each Attorney's Experience and Expertise, Consistent With the Private Market for Similarly Qualified Lawyers.**

In <u>Blum v. Stenson</u>, 465 U.S. at 893-95, the Supreme Court made clear that fee awards under 42 U.S.C. § 1988 should "be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.  In support of this conclusion, the <u>Blum</u> court pointed to the legislative history where Congress explained that fee awards under § 1988 should "be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases…."  S.Rep. No. 94-1011 at 6, 1976 U.S. Code Cong. & Admin. News at 5913.   Where private counsel are involved, "the best evidence [of their reasonable hourly rate] is the hourly rate customarily charged by counsel…."  <u>Tomazzoli v. Sheedy</u>, 804 F.2d 93, 98 (7th Cir.1986); accord, <u>Rakestraw v. Corporation for Community Housing</u>, 2005 WL 2030868 at *2 (N.D. Ind., Aug. 18, 2005).  While the attorneys' own affidavits, standing alone, are insufficient to establish that their billing rates fit within the prevailing rates in the relevant community for lawyers of similar skill and experience, <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1168 (1st Cir.1989), if additional documentation confirms that their rates conform to the market, those rates should be utilized in the lodestar calculation.

6

Each attorney's rate was calculated using The Laffey Matrix.  The Laffey Matrix rates for the Washington, D.C., area (which is approximately equivalent to Los Angeles and San Francisco) and is available at http://www.laffeymatrix.com/see.html.  The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., <u>McDowell v. District of Columbia</u>, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); <u>Salazar v. Dist. of Col.</u>, 123 F.Supp.2d 8 (D.D.C. 2000). The Laffey Matrix calculates relative fees based on the time litigation took place and each participating attorney's number of years of experience at the time. Additionally, each attorney's rate was then compared to average rates listed for attorney practicing between 2010 and 2013 by the National Law Journal. (Otten Decl. at ¶ 17; Kelmer Decl. ¶ 8; Davis Decl. ¶ 8).

Plaintiffs had attorneys primarily bill on the Litigation as follows, each primary attorney in turn had a number of partners, clerks and associates billed as well as described below:

Primary Attorneys:

Victor Otten –  Partner, 20 years of experience – $640/hour

Jason Davis – Partner, 11 years of experience – $640/hour

Don Kilmer – Partner, 15 years of experience – $640/hour

Secondary Attorney's and Law Clerks:

Brigid Joyce – Partner, 11 years of experience – $350/hour

Micheal Ruttle – Associate Attorney. – $175/hour

Denise Quartermaine – Law Clerk/First Year Attn. – $110/hour

Jenifer Tamura – Law Clerk/First Year Attn. – $110/hour

Justin Otten –First Year Attn. – $175/hour

All four attorneys fit comfortably into what the National Law Journal statistics show as the "averages" for both partners and associates over the last

7

several years in Los Angeles in addition to conforming to the Laffey Matrix.

Victor J. Otten has been practicing complex civil litigation for over 19 years. (Otten Decl. at ¶ 2).   He has extensive litigation and first chair trial experience. He obtained a published appellate opinion in the case <u>Michel v. Moore and Associates Inc</u>., Case No. B183165. 8. He was selected as an Environmental Super Lawyer, Southern California Super Lawyers Magazine, in 2009 and has an AVVO rating of 9.4. (Otten Decl. at ¶   1).

Mr. Otten was employed by Trutanich-Michel LLP as special counsel from 2000 through May 2009, where he handled complex business, environmental, real estate, and firearms matters in state and federal courts from inception through trial and appeal. While employed at Trutanich-Michel LLP, a small part of his job involved working on firearms matters. His practice became more focused on firearm and related litigation about two years ago when co-counsel, Jason Davis, and he started working together on various firearm related matters. (Otten Decl. at ¶ 5)  Plaintiffs' requests his billing rate at $640 per hour based upon his upper level of experience and skill. (Otten Decl. at ¶9).

Don Kilmer was lead counsel in first case in the nation to incorporate the Second Amendment as against state action through the Fourteenth Amendment's "due process" clause. <u>Nordyke v. King</u>, 563 F.3d 439 (9th Cir. 2009), vacated, 611 F.3d 1015 (9th Cir. 2010)(en banc).  This was exactly the same result achieved in <u>McDonald v. City of Chicago</u>, 130 S.Ct. 3020 (2010). (Kilmer Decl. at ¶ 6-7) Mr. Kilmer also has several published opinions as lead or co-counsel in other firearms cases have been resolved by or are pending in the Ninth Circuit and/or the California Court of Appeals, including the California Supreme Court. (Kilmer Decl. at ¶ 6-7).

Jason Davis worked in the firearms industry, including over a decade of experience in designing and manufacturing firearms for two of the largest firearm

8

manufacturers in the United States at that time prior to becoming an attorney. Upon being admitted to the bar, he practiced almost exclusively in firearms related matters. At this time, he has over eleven years of legal experience in the area of firearms related laws, on issues ranging from civil and criminal litigation and appeals, legislative analysis, drafting of certain Penal Code provisions, lobbying activities, regulatory compliance and consultation.   In 2009, he represented the interests of firearm owners and associations in the multi-year long California Law Revision Commission Study on Dangerous Weapons Laws pursuant to ACR 73, which directed the Law Revision Commission to "study, report on, and prepare recommended legislation by July 1, 2009, concerning the revision of the portions of the Penal Code relating to the control of deadly weapons …." 2006 Cal. Stat. res. ch. 128. The general purpose of the study was to improve the organization and accessibility of the deadly weapons statutes, without making any change to criminal liability under those statutes.   This study lead to a complete rewriting of the California Penal Code, as it relates to "dangerous weapons." Plaintiffs' requests his billing rate at $640 per hour based upon his upper level of experience and skill. (Davis Decl. at ¶ 6).

Brigid Joyce has ten years of legal experience.  (Otten Decl. at ¶18).  Ms. Joyce was a Partner at Otten & Joyce, LLP and an adjunct legal writing professor at Whittier Law School.  (Otten Decl. at ¶18). Plaintiffs request that her billing rate at $350 per hour based upon her upper level of experience and skill. (Otten Decl. at ¶18).

Michael Ruttle graduated from Whittier Law School  and passed the bar in 2012. Mr. Ruttle worked as a law clerk and an associate at Otten & Joyce, LLP. Plaintiffs requests his billing rate at $175 per hour. (Otten Decl. at ¶19).

Denise Quartermaine graduated from Whittier Law School and passed the bar in 2013. Ms. Quartermaine worked as a law clerk and associate at Otten &

9

Joyce, LLP.  Plaintiffs requests her billing rate at $110 per hour. (Otten Decl. at ¶20).

Justin Otten graduated from Santa Clara Law School and passed the bar in 2013. Mr. Otten worked as a law clerk and associate at Otten & Joyce, LLP. Plaintiffs requests his billing rate at $110 per hour.  (Otten Decl. at ¶21).

Jenifer Tamura graduated from UC Davis Law School in May of 2013.  She passed the bar in 2013. Ms. Tamura worked as a law clerk and associate at Otten & Joyce, LLP.  Plaintiffs requests her billing rate at $110 per hour. (Otten Decl. at ¶20).

Courts have differed over how to define the "relevant" community for purposes of establishing reasonable hourly rates.  Many use the entire federal district in which the court sits. Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir.1997); Public Interest Research Group of New Jersey, Inc. v. Windall, 51 F.3d 1179, 1187-88 (3rd Cir.1995); Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 260-62 (1986). Where the case involves state officials, is brought on behalf of a statewide class, and has a statewide impact, this statewide approach, and specifically the market rates where the government defendants are located, usually apply.  See Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir. 1983); Copeland v. Marshall, 641 F.2d at 892.

Finally, since civil rights litigation can be lengthy, as this case has been, and since any fee recovery is often many years after the lawsuit is commenced, the Supreme Court has determined that an attorney's current market rate should normally be applied retroactively, to account for the delay in payment and the lost value of money.  See Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989).

This principle, widely applied by the federal courts, is particularly applicable here, where the plaintiffs have had to expend hundreds of thousands of dollars in litigation costs, and have had to wait almost eight years to seek a fee recovery.

10

1        **i)    The Rates Requested Are Reasonable and Consistent with**

2        **Comparably Experienced Private Attorneys.**

The determination of reasonable rates in this case is greatly simplified since several of the attorneys have established market rates which, pursuant to the Supreme Court's holding in <u>Blum</u>.  For Victor Otten and Micheal Ruttle, the regular billing rates are $640/hour and $175/hour, respectively. For Don Kilmer, $640/hour and for Jason Davis, $640/hour. (Otten Decl. at ¶ 27; Kilmer Decl. at ¶¶ 8-11 and Ex. 4;  Declaration of Davis Decl. at ¶¶ 5-8 and Ex. 5). Moreover, given their expertise, area of specialization, accomplishments, and years of experience, these rates reflected above are clearly what each attorney deems reasonable, since they are the rates charged to the each firm's paying clients.  <u>Id</u>.

As provided in <u>Blum</u>, these rates establish the benchmark for similarly qualified civil rights attorneys.  Particularly in light of their unique expertise in the issues in this litigation, including Second Amendment law, civil rights litigation, complex civil litigation, and gun law in general, reasonable rates for similar lawyers should be comparable to their counterparts above.   <u>Id</u>.  Therefore, the market rate for each of the above attorneys has been adjusted to reflect their relative experience, involvement and experience in this case.  <u>Id</u>.

## VI. The Plaintiffs' Lodestar Is Reasonable and Fully Compensable.

**"The lodestar method is the strongly preferred method by which district**

Courts should determine what fees to award prevailing parties in actions that fall within the ambit of section 1988." <u>Coutin v. Young & Rubicam P.R., Inc.</u>, 124 F.3d 331 (1st Cir. 1997).  The lodestar is the product of the number of hours reasonably expended multiplied by a reasonable hourly rate.  When a plaintiff substantially achieves the relief sought, the beginning and end of the calculation of reasonable attorney's fees is the lodestar.

After exercising billing judgment, the plaintiffs' total lodestar in this case, as

11

1  set forth in Exhibit 1, is $305,526.21 (Otten Decl. at ¶ 21; Kilmer Decl. at ¶¶ 8-11
2  and Ex. 4;  Davis Decl. at ¶¶ 5-8 and Ex. 5). This amount represents the reasonable
3  time that all attorneys who worked on this case spent achieving the significant
4  results for plaintiffs and the public at large, multiplied by a reasonable hourly rate
5  which reflects the relevant market in California for lawyers of similar experience
6  and special expertise.

7  **VII.   The Motivations for Pursuing This Lawsuit by Plaintiffs Was Protect**
8  **The Second Amendment Rights**

9  The motivation for pursuing this lawsuit by the plaintiffs was to protect the
10 Second Amendment- protecting gun rights   as   an   important   constitutional
11 component of the fundamental "right to keep and bear arms."  These plaintiffs are
12 exactly the type of individuals and entities that should receive attorneys' fees and
13 costs in order to protect the public health and welfare. (Otten Decl. at ¶ 22).

14 **VII.   The   Costs   Incurred   In   This   Case   Are   Reasonable   and   Fully**
15 **Compensable.**

16 **A.     Plaintiffs Are Entitled to All Litigation Costs and Expenses,**
17 **Provided that They Are Reasonable.**

18 Plaintiffs are entitled to all reasonable expenses incurred in the litigation of
19 this action.  Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983).     In
20 Palmigiano, the First Circuit affirmed an award of out-of-pocket costs for items
21 such as "transportation, lodging, parking, food and telephone expenses" in a § 1983
22 action, noting the "unanimous federal circuit court authority that the attorneys'
23 reasonable and necessary costs and expenses may be awarded to a prevailing party
24 pursuant to 42 U.S.C. § 1988." Palmigiano, 707 F.2d at 637; see also Attrezzi,
25 LLC v. Maytag Corp., 436 F.3d 32, 43 (1st Cir. 2006) (citing Palmigiano with
26 approval); Brown v. Gray, 227 F.3d 1278, 1297 (10th Cir. 2000).  As the Brown
27 court explained:  '[i]tems that are normally itemized and billed in addition to the

28

12

hourly rate should be included in fee allowances in civil rights cases if reasonable in amount.' [citations omitted].   In other words, reasonable out-of-pocket expenses not normally absorbed as part of law firm overhead should be reimbursed as attorney's fees under section 1988." <u>Brown</u>, 227 F.3d at 1297 (quoting <u>Ramos v. Lamm</u>, 713 F.2d 546, 559 (10th Cir.1983).

The one exception to this general rule is the cost of experts, which are generally not considered a permissible cost under § 1988.  See <u>West Virginia University Hospitals v. Casey</u>, 499 U.S. 83 (1991).   All other litigation expenses are normally compensable.   These expenses include stenographic transcripts of depositions; daily trial transcripts; witness fees including necessary travel, meals and lodging; copying costs; constable fees for service of subpoenas; computer assisted legal research; attorney travel including parking, meals and lodging; telephone expenses; and more.  See, <u>United States v. Davis</u>, 87 F. Supp.2d 82, 87-89 (D. R.I. 2000); <u>Palmigiano</u>, 707 F.2d at 637; <u>Attrezzi</u>, 436 F.3d at 43.  As long as the cost is reasonable and it is the type of expense that is routinely billed to private clients in the relevant market, it is recoverable.

The starting point in determining whether a particular cost item is properly charged to the defendants or should be absorbed in the plaintiff's counsel's overhead is whether the item was expended in direct pursuant of the litigation.  <u>Wheeler v. Durham City Board of Education</u>, 555 F.2d 618, 623 (4th Cir. 1978) (holding that, consistent with 20 U.S.C. ' 1617, various costs like copying, attorney travel, and telephone integrally related to the litigation are compensable); Newberg, Attorney Fee Awards," 4.43-44 and 2.19 (1986) (hereafter Newberg).   As the Eleventh Circuit explained in <u>Dowdell v. City of Apopka</u>, 698 F.2d 1181, 1191 (11th Cir. 1983):

[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred

13

in case preparation, during the course of the litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988. As is true in other applications of section 1988, the standard of reasonableness is to be given a liberal interpretation.

The second factor in the analysis is whether a particular cost is customarily charged separately to billing clients. <u>Daly v. Hill</u>, 790 F.2d 1071, 1082-83 (4th Cir. 1986) (reversing a lower court's holding that copying, postage, telephone and attorney travel costs expended solely as part of the litigation are part of an attorney's overhead). Clearly not every expense is regularly charged to a client. But many are, and those that are, are properly included in costs and expenses in a fee motion. Of course, the amount of the cost must be reasonable and not excessive. Based upon the customary practice of private firms California, the documented, case-related costs incurred for attorney travel, copying of litigation documents, and computerized research should be allowed as part of reasonable fees and costs. Newberg, " 4.44 and 2.19 (listing cases approving allowance of travel, copying, postage, long distance telephone, and computerized legal research as reimbursable litigation costs under both fee shifting statutes and common fund lawsuits).

**B.     The Costs and Expenses Requested Are Reasonable in Light of the Complexity of This Litigation.**

The pure magnitude of the resources needed to litigate this type of case is perhaps the best indication of why civil rights cases of this scope are undesirable for most attorneys, and why a fully compensable fee is appropriate. It also reflects the staggering amount of unrecoverable out-of pocket expenses. Since any fee recovery must first be applied to offset this "loss" incurred by the attorney's involved it further justifies an award of all requested fees.

**1.     Litigation costs**

14

The most straightforward of compensable costs are those that are part of the judicial process, such as filing fees, subpoenas, and process servers; deposition, hearing, and trial transcripts; trial exhibits and related expenses; and depositions of witnesses taken by the opposing party.  Each of these items, (as listed in Otten Decl. at ¶ 21; Kilmer Decl. at ¶¶ 8-11 and Ex. 4;  Davis Decl. at ¶¶ 5-8 and Ex. 5), is clearly compensable and reasonable in light of the complexity and novelty of this case.

### 2.    Discovery expenses

As noted above, discovery in this case was voluminous.   Documents produced by the defendants, their state agencies, and managed care organizations exceeded 1,000 pages.  All of this information had to be logged, bate stamped, copied (usually twice), organized, and entered into a database.

Additionally, multiple depositions had to be attended resulting in substantial time expenditure and travel costs.

### 4.    Attorney Travel

The First Circuit long ago declared that travel expenses incurred by counsel to attend hearings, meet with clients or opposing counsel, or attend negotiation or mediation sessions are compensable under fee shifting statutes.  Grendel's Den v. Larkin, 749 F.2d 945, 956 (1st Cir. 1984) (agreeing that travel and mailing costs are reimbursable); Ackerley v. City of Somerville, 901 F.2d 170 (1st Cir. 1990) (allowing reimbursement for travel, computerized research, and photocopying but reducing the amount claimed due to excessiveness).  This rule has been followed by most other circuit courts.  See Redding v. Fairman, 717 F.2d 1105, 1119 (7th Cir. 1983); NEWBERG, ' 2.19, n. 201.  The same approach should be applied here, both because there are considerable travel expenses associated with representing geographically dispersed defendants throughout the state and because the bulk of hearing in this litigation took place in Fresno, several hundred miles from the

1  offices of any of Plaintiffs' attorneys.

2  **5.  Copying of Litigation Documents**

3  Most courts have also awarded prevailing plaintiffs the reasonable costs of
4  copying documents, whether done in their offices or at a professional copying
5  establishment.  <u>Ackerley</u>, 901 F.2d at 170; <u>Ramos v. Lamm</u>, 713 F.2d 546 (10th
6  Cir. 1983); *Daly*, 790 F.2d at 1083; NEWBERG, ' 2.19 n.200.  Since duplication
7  bills paid to an independent copy center are clearly reimbursable yet more
8  expensive than in-house copying, there is little logic to awarding reimbursement for
9  the former but not for the latter under an overhead theory. Given the volume of
10 such copying as well as its necessity, particularly when enforcement motions are
11 required as they have been this past year, the actual cost of copying should not be
12 considered as part of a firm's overhead and, therefore, should be reimbursed as a
13 cost of the litigation.

14 **VIII.  Conclusion**

15 For the reasons set forth above, the Court should award the plaintiffs their
16 requested fees and costs in the amount of $305526.21.  This request reflects the
17 unusual novelty and complexity of the case, the extraordinary success achieved, and
18 the reasonable cost of undertaking and prevailing in litigation of this scope and
19 impact.  From this perspective, as well as that of controlling Circuit decisions on
20 the award of attorneys' fees and costs in civil rights litigation, the plaintiffs' request
21 is reasonable and should be allowed in full.

22

23 DATED:  September 8, 2014                         OTTEN LAW, PC

24

25

26                                           Victor Otten, Esq.
27                                           Attorneys for Plaintiffs

28                                  16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28