KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
MARK R. BECKINGTON, State Bar No. 126009
Supervising Deputy Attorney General
JONATHAN M. EISENBERG, State Bar No. 184162
Deputy Attorney General
PETER H. CHANG, State Bar No. 241467
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5939
 Fax:  (415) 703-1234
 E-mail:  Peter.Chang@doj.ca.gov
*Attorneys for Defendant Kamala D. Harris,
as California Attorney General*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **JEFF SILVESTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,**<br><br>Plaintiffs,<br><br>v.<br><br>**KAMALA D. HARRIS, Attorney General of California (in her official capacity),**<br><br>Defendant. | 1:11-cv-02137-AWI-SKO<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT KAMALA D. HARRIS TO ALTER OR AMEND JUDGMENT (FED. R. CIV. P. 59(e))**<br><br>Hearing Date: October 27, 2014<br>Hearing Time: 1:30 p.m.<br>Judge:         Hon. Anthony W. Ishii<br>Trial Date:   March 25, 2014<br>Action Filed: December 23, 2011 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at 1:30 p.m. on October 27, 2014, or as soon thereafter as the matter may be heard, in Courtroom 2 (Senior U.S. District Judge Anthony W. Ishii, presiding) on the Eighth Floor of the above-titled Court, located at the Robert E. Coyle Federal Courthouse, 2500 Tulare St., Fresno, CA 93721, Defendant Kamala D. Harris, Attorney General of the State of California will and hereby does move, under Federal Rule of Civil Procedure 59(e), to alter or

1

amend the Judgment and Order entered on August 25, 2014.  Specifically, Defendant files this motion to seek an enlargement of the 180-day stay provided by paragraph 7 of the Order to a 12-month stay.  This motion is based on two grounds:

First, this motion is necessary because the Bureau of Firearms ("BOF") will most likely require at least 12 months to change its computer systems and procedures to implement the Court's Order.  BOF's present background check process does not involve querying the disparate Conceal Carry Weapon (CCW), Certificate of Eligibility (COE), or Automated Firearms System (AFS) databases.  BOF must either significantly increase the number of analysts to manually query these databases to determine whether a firearms-purchase applicant meets the criteria in the Order, or change its computer system so these databases are queried automatically as part of the electronic background check process.  For the manual approach, BOF must obtain funding from the Legislature to hire additional analysts, and take an additional six-to-eight months to train these analysts.  For the automated approach, while the concept of querying the databases is simple, the necessary technical changes are complex.  BOF would likely need to contract with an outside vendor to make the technical changes, and would still likely need to hire and train additional analysts, though fewer than under the manual approach.  BOF estimates that the total process, including procurement of the vendor, will take at least 12 months.

Second, if the Court's intent was to provide the California Legislature with an opportunity to craft new laws in response to the Order, following the approach in *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012), a 12-month stay would be more appropriate given the legislative calendar.  The Legislature has been in recess since September 1.  The Legislature will reconvene in December for organizational purposes and the new Legislature will convene its regulation session on January 5, 2015.  The Legislature would therefore be in recess for much of the 180-day stay given by the Order.  If the Court's intent was to provide the Legislature an opportunity to craft new laws, an enlargement of the stay would better effectuate the Court's intent.

2

Memo. ISO Mtn. to Alter or Amend Judgment  (1:11-cv-02137-AWI-SKO)

For these reasons, Defendant respectfully requests that this motion be granted and that the Court alter or amend paragraph 7 of its August 25, 2014 Order and Judgment to provide a stay of 12 months.

Dated: September 22, 2014                    Respectfully submitted,

                                                                    KAMALA D. HARRIS
                                                                    Attorney General of California
                                                                    MARK R. BECKINGTON
                                                                    Supervising Deputy Attorney General
                                                                    JONATHAN M. EISENBERG
                                                                    Deputy Attorney General

                                                                    <u>/s/ Peter H. Chang</u>
                                                                    PETER H. CHANG
                                                                    Deputy Attorney General
                                                                    *Defendant Kamala D. Harris,*
                                                                    *as California Attorney General*

SA2012104659

3

Memo. ISO Mtn. to Alter or Amend Judgment (1:11-cv-02137-AWI-SKO)

1 | KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
2 | MARK R. BECKINGTON, State Bar No. 126009
Supervising Deputy Attorney General
3 | JONATHAN M. EISENBERG, State Bar No. 184162
Deputy Attorney General
4 | PETER H. CHANG, State Bar No. 241467
Deputy Attorney General
5 |  455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
6 |  Telephone:  (415) 703-5939
 Fax:  (415) 703-1234
7 |  E-mail:  Peter.Chang@doj.ca.gov
*Attorneys for Defendant Kamala D. Harris,*
8 | *as California Attorney General*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **JEFF SILVESTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,**<br><br>Plaintiffs,<br><br>v.<br><br>**KAMALA D. HARRIS, Attorney General of California (in her official capacity),**<br><br>Defendant. | 1:11-cv-02137-AWI-SKO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT (FED. R. CIV. P. 59(e))**<br><br>Hearing Date: October 27, 2014<br>Hearing Time: 1:30 p.m.<br>Judge:  Hon. Anthony W. Ishii<br>Trial Date: March 25, 2014<br>Action Filed: December 23, 2011 |

1

**INTRODUCTION**

Defendant requests that the Court amend its Judgment and Order entered on August 25, 2014. (Dkt. 106 and 107.) The Judgment was entered in accordance with the Order entered on the same day. (Dkt. 106.) In the Order, the Court cited *Moore v. Madigan*, in which the Seventh Circuit stayed its ruling for 180 days to give the Illinois legislature the opportunity to craft new laws in light of the unconstitutionality of various Illinois firearms laws. (Order (Dkt. 106), at p. 55.) The Court found that the approach in *Moore v. Madigan* to be "appropriate" and, among other things, stayed the Order for 180 days from its entry. (*Id.*, at p. 56, ¶ 7 (staying Paragraphs 1-6 of the Order.)

Defendant seeks an amended Judgment and Order to permit a longer, 12-month stay. This motion is necessary to prevent manifest injustice and to present evidence previously unavailable at trial. Specifically, this motion is necessary because BOF will most likely require at least 12 months to change its computer systems and procedures to implement the Court's Order, and furthermore, if the Court's intent in providing a 180-day stay was to provide the California Legislature an opportunity to craft new laws in light of the Order, a 12-month stay would be more appropriate to effectuate the Court's intent. The evidence showing the need for at least a 12-month stay was not solicited at trial because that evidence was not directly relevant to either the Plaintiffs' or Defendant's case, and became relevant only after the Court issued the Order.

Defendant is presently contemplating an appeal of the Judgment. If the decision is made to appeal this judgment, Defendant also intends to file a motion to stay pending appeal. The ruling on that motion, if filed, would not affect the request to amend the judgment. Even if the stay is granted, Defendant will need the additional time following resolution of the appeal, assuming that the judgment is upheld. On the other hand, if the stay is denied, DOJ needs more than six months to implement the judgment for the reasons stated in this motion

**ARGUMENT**

**I.   LEGAL STANDARD**

The district court enjoys considerable discretion in granting or denying a motion to amend judgment because Federal Rule of Civil Procedure 59(e) does not list specific grounds for the

2

Memo. ISO Mtn. to Alter or Amend Judgment  (1:11-cv-02137-AWI-SKO)

motion. *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam) (citing 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed.1995)). Nonetheless, amending a judgment after its entry is typically an extraordinary remedy which should be used sparingly. *Id.*

In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011), citing *McDowell*, 197 F.3d at 1255 n.1. A court considering a Rule 59(e) motion, however, is not limited to these four situations. *Allstate Ins. Co.,* 634 F.3d at 1111.

## II. THE 180-DAY STAY IS UNLIKELY TO PROVIDE DEFENDANT SUFFICIENT TIME TO COMPLY WITH THE COURT'S ORDER

BOF has reviewed the Court's Order and has been analyzing what it must do to implement the Order. (Declaration of Stephen J. Lindley In Support of Motion to Amend (hereafter, "Lindley Decl.") at ¶ 4.) To comply with the Court's order, BOF will either need to change its computer systems to automate the process to query the Conceal Carry Weapons (CCW), Certificate of Eligibility (COE), and Automated Firearm System (AFS) databases to determine whether a DROS applicant meets the criteria in the Order, or significantly increase the number of CIS analysts on staff to manually review all DROS applications. (*Id.* at ¶ 5.) Either approach most likely requires at least 12 months to implement. (*Id.* at ¶¶ 6 & 15.)

### A. Manual Review of DROS Applications to Implement the Order

In theory, the quickest way for BOF to be able to implement the Order is to have the CIS analysts manually review each DROS application to determine the applicant's eligibility for immediate release of a firearm after passing the background check. (Lindley Decl. at ¶ 5.) But while this requires more moderate changes to BOF's computer systems, it will require a significant increase to the number of CIS analysts. (*Id.* at ¶ 7.)

3

Memo. ISO Mtn. to Alter or Amend Judgment  (1:11-cv-02137-AWI-SKO)

As an initial matter, this approach would inherently increase the workload of the CIS analysts. Presently, approximately 15 percent of the DROS applications are auto-approved. (Lindley Decl. at ¶ 8.) Under the manual approach, DROS applications can no longer be auto-approved because CIS analysts must review each DROS application to determine whether each of the applicants meets the criteria for immediate release of a firearm after completion and approval of the background check. (*Id.*)

In addition to the increased workload from having to review all applications that were previously auto-approved, CIS analysts must also manually check the CCW, COE, and AFS databases to determine whether each applicant has an active CCW license, an active COE license, and/or a firearm that has not been reported lost or stolen in the AFS. (Lindley Decl. at ¶¶ 7 & 9.) This manual query of the disparate databases increases the time that it takes to review each DROS application. (*Id.* at ¶ 9.) Because nearly one million applications are reviewed each year (960,179 DROS applications in 2013), the increase in time to review each application significantly increases the work that CIS analysts must do. And further because CIS analysts are already working in excess of 40 hours a week,[1] BOF must hire a significant number of additional CIS analysts to manually implement the Court's Order. (Trial Tr. 200:18-19, 203:1-8; 313:7-15, 314:11-13; Lindley Decl. at ¶ 11-12.)

It would take more than 180 days and most likely at least 12 months to hire and train the sufficient number of CIS analysts required to manually implement the Court Order. To hire the necessary additional staff requires funding that can be obtained only through the California Legislature, which is currently in recess. (Lindley Decl. at ¶ 13; *see infra*, at section III.) And even after funding is obtained, additional time is needed to hire and train the CIS analysts, which takes approximately six to eight months. (Lindley Decl. at ¶ 13; Trial Tr. 326:17-327:11.)

---

[1] BOF presently requires its analysts to work at least 10 hours of overtime each week to keep up with the processing of DROS applications. (Lindley Decl. at ¶ 12.)

4

Memo. ISO Mtn. to Alter or Amend Judgment (1:11-cv-02137-AWI-SKO)

**B.    Automated Review of DROS Applications to Implement Order**

The alternative approach to implementing the Order is to change DOJ's computer systems so the CCW database, the COE database, and the AFS databases are automatically queried and relevant information pulled as part of the Basic Firearms Eligibility Check (BFEC) (the electronic portion of the background check process). (Lindley Decl. at ¶ 14.) And if the criteria in the Order are met, the firearm would be released as soon as the CIS analyst approves the application. (*Id.*) This is BOF's preferred approach because it requires fewer additional CIS analysts.[2] (*Id.* at ¶ 15.)

The BFEC does not presently query the CCW or COE databases, or query the AFS for the DROS applicant.[3] (Declaration of Marc St. Pierre in Support of Motion to Amend (hereafter, "St. Pierre Decl.") at ¶ 5.) If, as explained below, an outside vendor is used, changing the BOF computer systems so that queries to the CCW, COE, and AFS databases are part of the BFEC will most likely take at least 12 months. While the concept of querying the CCW, COE, or AFS databases may be simple, the necessary technical changes to the various BOF computer systems are complex and difficult to obtain. (St. Pierre Decl. at ¶ 7.)

The process to make the necessary technical changes to BOF computer systems entails analyzing the changes necessary and the systems implicated, change those systems (most likely by an outside vendor), and then developing detailed business requirements and implementing and testing the changes with the various computer systems.

As an initial matter, DOJ does not presently have sufficient IT staffing to make the requisite system changes without compromising other critical projects or statutory deadlines. (Lindley

---

[2] This automated approach would still require additional CIS analysts but not as many as the manual approach. (Lindley Decl. at ¶ 16) Additional work will most likely be required because CIS analysts may need to confirm the identities of the DROS applicants if the results of the queries to the CCW, COE, or AFS databases return multiple possible matches, similar to what the CIS analysts do when there is a DMV mismatch, or if the results of the BFEC is unclear. (*Id.*; Trial. Tr. 238:13-239:2, 294:22-295:6.)

[3] BFEC presently queries the AFS only for the firearm listed on the DROS applications by the firearm's unique serial number to determine whether the firearm has been reported lost or stolen. (St. Pierre Decl. at ¶ 5; Trial Tr. 173:7-14, 295:21-296:1)

5

Memo. ISO Mtn. to Alter or Amend Judgment  (1:11-cv-02137-AWI-SKO)

Decl. at ¶ 15.) DOJ's internal IT staff with the necessary skills and training to work on the implicated BOF systems are presently assigned to other critical projects, many of which are associated with deadlines set by statutes. (*Id.*) DOJ risks missing certain of the deadlines if IT staff members are required to be pulled off of those projects in order to change BOF's applications and databases within 180 days of the entry of the Court's order. (*Id.*)

If the work is not done in-house, DOJ must procure the services of an outside vendor to make the necessary changes to BOF's computer systems. The procurement processes alone will take approximately six months. (St. Pierre Decl. at ¶ 16.) The procurement process begins with the development of an initial set of business requirements (or business rules) for the changes that need to be made to the computer systems. (*Id.* at ¶ 10.) This involves a preliminary determination as to which of the BOF computer systems and databases may need to be changed, and what changes may need to be made to each of the impacted systems and databases. (*Id.* at ¶ 11.) Based on DOJ's initial analysis, the systems and databases that will need to be changed to implement the Court's Order include DROS, Consolidated Firearms Information System (CFIS), and the Dealer Entry System (DES). (St. Pierre Decl. at ¶ 8.) Additionally, the California Firearms Information Gateway (CFIG), COE, CCW, and AFS may also need to be modified. (*Id.*)

Once the preliminary set of business requirements is determined, BOF would prepare a Statement of Work (SOW) that details these requirements and a Request for Proposal (RFP) for bids for the project. (St. Pierre Decl. at ¶ 12.) The SOW and RFP would then be released to vendors. (*Id.*) Typically there would then be several rounds of questions and answers between the vendors and BOF on certain aspects of the SOW and RFP. (*Id.* at ¶ 13.) After the cycles of questions and answers are complete, BOF would review the responses and bids from the various vendors, and perform a reference check on each of the vendors. (*Id.* at ¶ 14.) BOF would then select a vendor, negotiate a contract, and then submit the contract for approval with DOJ's contract and procurement section. (*Id.* at ¶ 15.) After the contract is approved, BOF would then conduct background checks on the vendor's proposed personnel to work on the project before

6

Memo. ISO Mtn. to Alter or Amend Judgment (1:11-cv-02137-AWI-SKO)

those personnel may begin work on BOF's computer systems. (*Id.*) BOF estimates that this procurement process would take six months. (*Id.* at ¶ 16.)

In a recent example, BOF procured contracts with an outside vendor to make changes to BOF's computer systems. (St. Pierre Decl. at ¶ 17.) That procurement process took six months, from development of the preliminary business requirements to when vendors actually began work on the project. (*Id.*) BOF expects procurement of an outside vendor to change its computer systems to implement the Court's order to take a similar amount of time. (St. Pierre Decl. at ¶¶ 16-17.)

After procuring a vendor, it would most likely take the vendor, working closely with BOF, at least six months to develop detailed business requirements, write software code, test the code, and then implement the code. (St. Pierre Decl. at ¶ 18.) It typically takes this amount of time to make technical changes to BOF's computer systems because it is an iterative process to write and test the code and modifying the business requirements as necessary.[4] (*Id.*)

Therefore, based on DOJ's past experiences, it would most likely take at least 12 months to procure the contractor and make the necessary technical changes to BOF's computer systems and databases to implement the Court's order. (St. Pierre Decl. at ¶ 19)

**III.    IF THE COURT'S INTENT IS TO PROVIDE THE LEGISLATURE TIME TO AMEND THE WAITING PERIOD LAW, ADDITIONAL TIME WOULD BE APPROPRIATE TO EFFECTUATE THAT INTENT.**

The Court stayed its Order for 180 days, following the Seventh Circuit's approach in *Moore v. Madigan*. (Order (Dkt. 106), at p. 55). However, if the Court's intent in referencing *Moore* was to invite legislative action, as the Seventh Circuit did in *Moore* for the Illinois legislature, a 12-months stay would be more appropriate.

In *Moore v. Madigan*, the Seventh Circuit stayed its ruling for 180 days to give the Illinois legislature the opportunity to craft a new gun law that imposes reasonable limitations on the

---

[4] During the process of writing and testing code, the initially-determined business requirements typically need to be modified because of issues that become apparent or arise during the writing and testing of code. (St. Pierre Decl. at ¶ 18.) Then, after the business requirements are modified, new code would have to be re-written and re-tested, which may then lead to the need for further modification of the business requirements. (*Id.*)

7

Memo. ISO Mtn. to Alter or Amend Judgment  (1:11-cv-02137-AWI-SKO)

carrying of guns in public that was consistent with the court's opinion. 702 F.3d 933, 942 (7th Cir. 2012). The Seventh Circuit effectively gave the Illinois legislature an entire regular legislative session to craft a new law. The *Moore* decision was issued on December 11, 2012, and the 180-day stay lasted until June 7, 2013. In 2013, the Illinois legislature met for approximately five months from January to the end of May, when it adjourned. *See* Illinois House of Representatives Legislative Days for Calendar Year 2013 (*available at* http://www.ilga.gov/house/schedules/legis_days_2013.pdf.) The Seventh Circuit thus gave the Illinois legislature an entire legislative cycle to craft a new gun law by its initial order. The Seventh Circuit later extended the stay for an additional 30 days, and the Illinois legislature, overriding a gubernatorial veto, enacted a new gun law on July 9, 2013. *Shepard v. Madigan*, 734 F.3d 748, 749 (7th Cir. 2013).

The California Legislature has been in recess since September 1 and, except for a period when it will convene for organizational purposes in December, will reconvene on January 5, 2015.[5] *See* 2014 Tentative Legislative Calendar (*available at http://senate.ca.gov/sites/senate.ca.gov/files/2014AGREEDlegislativecalendar.pdf* for the Senate and http://assembly.ca.gov/legislativedeadlines for the Assembly.) The Legislature will thus be in recess for much of the 180-day stay, and a new legislative session, with many new legislators beginning their terms of office, commences little more than two months before the stay would dissolve.

Thus, if the Court's intent in providing the 180-day stay of its Order was to provide the California Legislature an opportunity to adjust the present statutory framework in response to the Order, a 12-month stay would carry out the Court's intent more effectively. The California Legislature reconvenes for its next regular session on January 5, 2015 and recesses after the session on August 31, 2015. *See* Temporary Joint Rules of the Senate and Assembly for the

---

[5] The Legislature convenes on December 1 for organizational purposes, and then goes in recess again until the first Monday in January. *See* Cal. Const. art. IV, § 3, subd. (a); Temporary Joint Rules of the Senate and Assembly for the 2013-14 Regular Session 51(a)(1) (available at http://clerk.assembly.ca.gov/clerk/BILLSLEGISLATURE/documents/JointRules.pdf)

8

Memo. ISO Mtn. to Alter or Amend Judgment  (1:11-cv-02137-AWI-SKO)

2013-14 Regular Session 51(b)(3) ("The Legislature shall be in recess on September 1 until adjournment sine die on November 30.") (*available at* http://clerk.assembly.ca.gov/clerk/BILLSLEGISLATURE/documents/JointRules.pdf).  Here, because the Order was entered on August 25, 2014, a 12-month stay would provide the Legislature the opportunity of a full regular session.

## CONCLUSION

For the reasons above, Defendant requests a 12-month stay instead of the present 180-day stay in the Judgment and Order.  Defendant further proposes a status conference with the Court after nine months so that Defendant may keep the Court apprised of BOF's progress in implementing the Court's Order.

Dated:  September 22, 2014                        Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General

/s/ Peter H. Chang
PETER H. CHANG
Deputy Attorney General
*Defendant Kamala D. Harris,*
*as California Attorney General*

9

Memo. ISO Mtn. to Alter or Amend Judgment  (1:11-cv-02137-AWI-SKO)