KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
MARK R. BECKINGTON, State Bar No. 126009
Supervising Deputy Attorney General
PETER H. CHANG, State Bar No. 241467
Deputy Attorney General
JONATHAN M. EISENBERG, State Bar No. 184162
Deputy Attorney General
 300 Spring Street, Suite 1702
 Los Angeles, CA  90013
 Telephone:  (213) 897-6505
 Fax:  (213) 897-5775
 E-mail:  Jonathan.Eisenberg@doj.ca.gov
*Attorneys for Defendant Kamala D. Harris,*
*Attorney General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **JEFF SILVESTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,**<br><br>Plaintiffs,<br><br>v.<br><br>**KAMALA D. HARRIS, Attorney General of California (in her official capacity),**<br><br>Defendant. | 1:11-cv-02137-AWI-SKO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT KAMALA D. HARRIS FOR STAY PENDING APPEAL**<br><br>Hearing Date: October 27, 2014<br>Hearing Time: 1:30 p.m.<br>Judge:     Hon. Anthony W. Ishii<br>Trial Date:   March 25, 2014<br>Action Filed:  December 23, 2011<br><br>[Set for Hearing Concurrently with Motion to Amend Judgment] |

Defendant Kamala D. Harris, Attorney General of the State of California ("Defendant"), submits the following memorandum of points and authorities in support of her motion, brought under Federal Rule of Civil Procedure ("FRCP") 62, to stay enforcement of the final judgment entered herein on August 25, 2014 (Dkt. 106), which judgment references the Court's order in the nature of injunctive relief stated at pages 55 and 56 of the findings of fact and conclusions of law. (Dkt. 107.)

**BACKGROUND**

As the Court knows, the present case adjudicates a Second Amendment challenge to California's statutory 10-day waiting period for firearm purchases (codified at California Penal Code sections 26815 and 27540; the "WPL"), as applied to certain persons who already own firearms or have certain permits related to handling firearms.

Under existing law, any person who does not qualify for one of the statutory exemptions to the WPL and wishes to purchase a firearm legally in California must wait 10 days between submitting a "Dealer Record of Sale" ("DROS") application to California's Bureau of Firearms ("BOF") for approval to purchase the firearm, and, after being so approved, actually taking delivery of the firearm.

In an August 2014 written ruling following a March 2014 bench trial, this Court decided that the WPL violates the Second Amendment as applied to any prospective firearm purchaser who (1) passes California's background check in less than 10 days and (2) (a) has a firearm recorded in that person's name in California's Automated Firearms System ("AFS") or (b) has a valid, current Carry Concealed Weapon ("CCW") license or (c) has both a firearm recorded in that person's name in AFS and a valid, current Certificate of Eligibility ("COE").  The Court ordered that BOF must modify its DROS-application-processing system to allow for the release of a purchased firearm to any such person, as soon as he or she passes the background check, whether or not 10 days have transpired.  The Court stayed this ruling for 180 days, as stated at lines 17 and 18 of page 56 of the findings of fact and conclusions of law.[1]

Defendant is appealing this Court's final judgment to the U.S. Court of Appeals, Ninth Circuit.  (See Notice of Appeal, Dkt. 111.)  Defendant hereby requests that this Court stay the judgment during the pendency of the appeal.

---

[1] On September 22, 2014, Defendant filed a motion to amend the judgment to extend the time to comply with the remedial order from 180 days to 12 months at least.  The present motion to stay the judgment pending appeal, set for hearing concurrently with the motion to amend the judgment, seeks to stay the judgment until the Ninth Circuit appeal is resolved, while the motion to amend the judgment seeks to extend the time to implement the remedial order *if* a stay is not granted or if that order is upheld on appeal.  Defendant requests a stay pending appeal irrespective of the ruling on the motion to amend the judgment.

## SUMMARY OF ARGUMENT

All four factors that courts consider in evaluating a stay request (per *Humane Soc. of U.S. v. Gutierrez,* 558 F.3d 896, 896 (9th Cir. 2009)) weigh in favor of Defendant's stay request here.

*First*, because the Court resolved truly novel questions of first impression involving Second Amendment law, Defendant meets the requirements of showing a strong likelihood of succeeding on the merits in the appeal.

*Second*, absent a stay, the State of California (the "State") will be irreparably injured as a matter of law. A U.S. state is irreparably harmed when duly enacted legislation, such as the WPL, is enjoined from being enforced during an appeal, if the law is ultimately sustained. Furthermore, BOF, part of the California Department of Justice which Defendant heads (see Cal. Gov't Code § 12510), will have to expend significant time and resources modifying the complex systems for processing DROS applications to comply with the Court's order, and these expenditures cannot be recouped in the event of a successful appeal revealing the expenditures to have been unnecessary.

*Third*, the balance of harms favors the State. While a stay will delay relief that Plaintiffs Jeff Silvester ("Silvester") and Brandon Combs ("Combs")[2] (if they pass future background checks and do so in less than 10 days) might otherwise receive in acquiring future firearms, that delay will also preserve the status quo until the matter is finally resolved on appeal. In the meantime, it is difficult to predict the amount of additional time that Silvester or Combs, each of whom already has firearms, may need to wait to take possession of an additional firearm sought while the appeal is pending. Although any delay in the enjoyment of the constitutional right will involve some burden if, in fact, this Court's judgment is ultimately affirmed on appeal, as a practical matter the burden imposed on Plaintiffs by a stay is modest in comparison to the burden that will be imposed on the State if BOF is required to implement the Court's remedial order during the pendency of Defendant's appeal.

---

[2] Future references to "Plaintiffs" mean Silvester, Combs, The Calguns Foundation, Inc., and The Second Amendment Foundation, Inc.

*Fourth*, the public interest favors granting a stay.  In addition to avoiding what may turn out to be unnecessary expenditure by the State, a stay will preserve the status quo involving an important public-safety law, which the Court has not declared facially invalid, while this complex and novel matter is considered by the court of appeals.

## STANDARD FOR REQUESTS FOR STAYS

Under FRCP 62, a U.S. District Court may suspend an injunction during the pendency of an appeal of the injunction, and may stay enforcement of a final judgment entered under FRCP 54(b).  A party seeking a stay must establish a likelihood of succeeding on the merits, a likelihood of suffering irreparable harm in the absence of relief, a favorable balance of the equities, and that the public interest supports the stay.  *Humane Soc.*, 558 F.3d at 896.  Although there must be a minimal showing on each factor, courts must balance these factors, employing a flexible approach that considers the facts of the particular case.  *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011); *see also Hilton v. Braunskill*, 481 U.S. 770, 777 (1987).  But, notably, to obtain a stay, movants "need not demonstrate that it is more likely than not that they will win on the merits" or that "ultimate success is probable."  *Leiva-Perez*, 640 F.3d at 966-67.  A "substantial case on the merits" or "serious legal questions" suffice "so long as the other factors support the stay."  *Id.* (quoting *Hilton*, 481 U.S. at 778).  In particular, federal trial courts "may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained."  *Wash. Metro Area Transit Comm'n. v. Holiday Tours, Inc.*, 559 F.2d 841, 844-45 (D.C. Cir. 1977) (discussed in *Dellums v. Smith*, 577 F. Supp. 1456, 1458 (N.D. Cal. 1984)).

## ARGUMENT

All four pertinent factors in a stay-request evaluation weigh in favor of Defendant's request here.

### I. DEFENDANT MEETS THE "LIKELIHOOD OF SUCCESS" FACTOR FOR A STAY

As shown above, a movant seeking a stay pending appeal needs to demonstrate just the existence of substantial issues on the merits, if other factors weigh in favor of a stay. Specifically,

4

Brief in Support of Stay Motion (1:11-cv-02137-AWI-SKO)

"questions of first impression on which no binding precedent exists" can, on their own, satisfy "the requirement that a movant is likely to succeed on the merits," even where the trial court has come to a conclusion contrary to that advocated by the party seeking a stay. *Hunt v. Check Recovery Sys.*, Inc., 2008 WL 2468473, at *3 (N.D. Cal. 2008), citing *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 829 (D.C. Cir. 1987).

As the court in *Loving v. Internal Revenue Serv.*, 920 F. Supp. 2d 108 (D.D.C. 2013), explained:

> As the IRS [the party seeking the stay] diplomatically notes, it is placed in the uncomfortable position of "asking a district court to determine whether its decision is likely to be overturned." Mot. at 3. The IRS is correct that the Court need not determine that it erred and will likely be reversed—an acknowledgment one would expect few courts to make; instead, so long as the other factors strongly favor a stay, such remedy is appropriate if "a serious legal question is presented." [Citations.] Although the Court continues to believe its decision was correct, it is certainly cognizant that the issue is one of first impression and raises serious and difficult legal questions. If the other factors tip in favor of a stay, therefore, this factor will not preclude one.

*Id.* at 110.

As this Court is aware, the case at bar apparently is the first challenge to a firearm-acquisition waiting-period law under the Second Amendment. The underlying issue of what sort of waiting period a state may impose on the acquisition of firearms, and on what grounds, is of obvious importance nationwide. Whatever decision the Court reached was going to be an important ruling on a question of first impression. For that basic reason, this case is a prime candidate for a stay on appeal. *See Salix v. U.S. Forest Serv.*, 995 F. Supp. 2d 1148, 1154 (D. Mont. 2014) (holding that lack of controlling appellate-court precedent indicates that appellant has likelihood of success on merits, for stay purposes).

The present case has additional complications beyond dealing with novel legal issues. When the case was past the discovery stage, the Ninth Circuit, in *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), first announced the analytical framework to be applied in Second Amendment cases in the circuit. The scope of the injunction sought also kept changing, right up to the closing argument. The Court was called on to evaluate dense witness testimony about California's computerized law-enforcement databases, evidence from history about the perceived

scope of the Second Amendment in the Founding Era of the United States, and reports of medical-research studies about the efficacy of firearm-acquisition waiting periods in reducing firearm violence. The specificity of the injunction that the Court issued is a testament to the complexity of the case, and a sign that a stay of the injunction is appropriate while the appeal proceeds.

This Court's conclusion that Plaintiffs should prevail in this case is not inconsistent with a determination that Defendant has substantial grounds for an appeal. In the evolving area of Second Amendment law encompassing the present case, the Ninth Circuit could surely conclude that a 10-day waiting period for new firearm acquisition, as to people who already have firearms, is not an impermissible burden on Plaintiffs' Second Amendment right to keep and bear arms. Even if the Ninth Circuit holds that the WPL, as applied here, burdens the Second Amendment right to some degree, the appellate court may well uphold California's 10-day waiting requirement, under intermediate scrutiny, as reasonably related to the State's indisputably important (indeed, compelling) interests in reducing firearm violence and, in particular, keeping firearms (or additional firearms) out of the hands of people who are not entitled to possess them. Defendant presented unrebutted testimony from high-ranking BOF employees that the 10-day waiting period regularly leads to the denial of DROS applications that a shorter waiting period might pass through. The Ninth Circuit also might well agree with Defendant that the record before this Court demonstrates the benefits of "cooling off" periods for firearm acquisition to a degree sufficient to sustain the lines drawn by the Legislature in the statutes at issues in this case.

In sum, the "likelihood of success" factor, properly understood, favors the entry of a stay pending appeal in this novel and important case.

## II. THE STATE OF CALIFORNIA WILL BE IRREPARABLY INJURED ABSENT A STAY

For a court evaluating a stay request, the irreparable harm to the movant if there is no stay is a "bedrock requirement." *Leiva-Perez*, 640 F.3d at 965. It is thus significant that "[i]t is clear that a state suffers irreparable injury whenever an enactment of its people or representatives is enjoined." *Coalition for Economic Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). Because

the Court has partly enjoined enforcement of the WPL, the State (represented here by Defendant) has suffered an irreparable injury for purposes of stay analysis.

Separately and independently, a party subject to an injunction faces irreparable injury if the injunction requires the party to expend significant time and resources to comply that the party will not be able to recoup even if its position is ultimately vindicated on appeal. *Project Vote/Voting for America, Inc. v. Long*, 275 F.R.D. 473, 474 (E.D. Va. 2011). Here, the Court granted Defendant six months to comply with the injunction, recognizing that substantial time and effort would be required. And as detailed in the declarations of Stephen J. Lindley and Marc St. Pierre, submitted with Defendant's pending motion to amend the judgment, orderly compliance with the injunction will actually require at least twice as much time, to enable BOF to hire and to train new employees, do extra processing of DROS applications, and change the relevant computer systems.[3] If the Ninth Circuit overturns this Court's injunction, these expensive and disruptive measures will prove to have been unnecessary, but there is no realistic prospect that the State will be able to recover, from Plaintiffs or otherwise, any compensation for the efforts it was forced to undertake. In other words, the harm will be irreparable.

Therefore, in two ways, Defendant has demonstrated the irreparable injury that will arise in the absence of a stay.

### III. THE BALANCE OF HARMS FAVORS A STAY

These concrete harms to the State from having to implement the Court's order while it remains under appellate review outweigh any harm that Plaintiffs may suffer from preservation of the legal status quo pending appeal. Silvester and Combs already have firearms, and nothing about the operation of the WPL (other than the background check, potentially) precludes them from acquiring more during the pendency of an appeal. Under the existing WPL, Silvester and Combs each have to wait 10 days between submitting an application to BOF to purchase a firearm, passing a background check, and taking delivery of the firearm, for each firearm

---

[3] Defendant resubmits copies of the two declarations with the present motion, for ease of reference.

purchase. Given that the Court has continued to allow BOF to conduct background checks on every prospective firearm purchaser for each proposed purchase, and the background checks take up to 10 days each, the injunction may or may not reduce the waiting period for any particular DROS applicant below 10 days; the length of any reduction in a particular case is unknown. Nor would immediate implementation of the Court's order even ensure that Plaintiffs or others could acquire firearms without making a second trip to a firearm dealer, which second trip is perhaps the primary practical harm identified by the Court in its decision. Unless Silvester and Combs fall into the small fraction of "auto-approved" DROS applicants, each of them probably would still have to take two trips to a dealer to acquire a new firearm, even if the Court's order could be implemented immediately. Under these circumstances, any concrete harm that Plaintiffs will suffer from additional delay in implementing the Court's remedial order while the matter remains on appeal is outweighed by the harm that the State will suffer if it is forced to implement an injunction that is ultimately not sustained on appeal.

### IV.   THE PUBLIC INTEREST IS BEST SERVED BY STAYING THE INJUNCTION

As the Court is aware, Defendant has justified the WPL, even as applied to people who already have firearms, as a public-safety measure. The Legislature enacted the WPL for the undeniably important purpose of keeping firearms out of the hands of people who might have a propensity to misuse them. The Ninth Circuit may ultimately validate the Legislature's choice in that regard. While that remains a possibility, the public interest favors staying this Court's injunction.

Another important consideration is that the ability to grant a stay during the pendency of an appeal grants "the district court [the] power . . . to preserve the status quo." *Natural Res. Def. Council v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). In the context of an injunction, the status quo is defined as the state of affairs *before* the court entered the injunction. *See Nken v. Holder*, 556 U.S. 418, 429 (2009) (describing the status quo as "the state of affairs before the removal order was entered"). The Court's order here alters the status quo for a system that processes nearly 1 million firearm-acquisition applications per year. A stay will preserve that

8

Brief in Support of Stay Motion (1:11-cv-02137-AWI-SKO)

process during the pendency of an appeal that might affirm the status quo, and therefore serves the public interest.

## CONCLUSION

Defendant has demonstrated the existence of, at a minimum, serious questions to be resolved on appeal in this complex and novel case. Without a stay the State will suffer irreparable harm, both by having one of its laws partially invalidated and because BOF will have to incur costs and administrative disruption for which it will not be possible to recover compensation if Defendant eventually prevails on appeal. Those clear and concrete harms outweigh any harm that Plaintiffs may suffer by virtue of maintenance of the legal status quo pending appeal. For similar reasons, the public interest also favors entry of a stay. Thus, Defendant respectfully requests that the Court stay its injunction and judgment issued on August 25, 2014, pending consideration and resolution of this case by the Ninth Circuit.

Dated:  September 24, 2014               Respectfully Submitted,

                                                            KAMALA D. HARRIS
                                                            Attorney General of California
                                                            MARK R. BECKINGTON
                                                            Supervising Deputy Attorney General

                                                            */s/*
                                                            JONATHAN M. EISENBERG
                                                            Deputy Attorney General
                                                            *Attorneys for Defendant Kamala D.*
                                                            *Harris, Attorney General of California*