1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                          **EASTERN DISTRICT OF CALIFORNIA**

8

9   **JEFF SILVESTER, et al.,**                    **CASE NO. 1:11-CV-2137 AWI SAB**

10                       **Plaintiffs**
                                                    **ORDER ON DEFENDANT'S MOTION**
11          **v.**                                  **TO STAY AND MOTION TO ALTER**
                                                    **JUDGMENT**
12  **KAMALA HARRIS, Attorney General of**
    **California, and DOES 1 to 20,**
13                                                  **(Doc. Nos. 110, 114)**
                       **Defendants**
14

15

16          This case involved a Second Amendment challenge to statutes that imposed a 10-day

17  waiting period between the time of purchase and time of possession of a firearm.  Following a

18  bench trial, the Court issued findings of fact and conclusions of law.  The Court held that the 10-

19  day waiting period violated the Second Amendment as applied to three classes of individuals.  The

20  Court also enjoined Defendant from enforcing the 10-day waiting period with respect to the three

21  classes of individuals.  However, as suggested by Plaintiffs, the Court stayed its order for a period

22  of 180 days.  Defendant later filed a motion to amend judgment, a notice of appeal, and a motion

23  for a stay pending appeal.  For the reasons that follow, Defendant's motions will be denied.

24

25  **I.**      **Motion To Stay**

26          *Defendant's Argument*

27          Defendant argues that the relevant factors all favor a granting a stay.  First, this case is the

28  first of its kind to challenge a firearm waiting period law.  The law surrounding the Second

1   Amendment is evolving, and issues such as of what sort of waiting period a state may impose on

2   the acquisition of a firearm, and on what grounds, are of nationwide importance.  The Ninth

3   Circuit could reach different conclusions than those reached by the Court.  Thus, this case involves

4   "serious legal questions."  Second, California will suffer irreparable harm if an injunction is not

5   issued.  A state suffers irreparable injury whenever an enactment of its representatives is enjoined.

6   Furthermore, irreparable injury occurs if a party will not be able to recoup significant time and

7   resources to comply with an injunction if the injunction is later overturned.  The declarations of

8   Bureau of Firearms ("BOF") Chief Stephen Lindley and BOF employee Marc St. Pierre show that

9   it will likely take at least 12-months to comply with an injunction, either to hire and train

10  additional personnel or to change the relevant computer system.  Current BOF computer personnel

11  are working on other critical tasks that have firm legislative deadlines.  It is thus undesirable to

12  pull those personnel off of their current projects.  Past experience with upgrading BOF computers

13  through outside vendors indicates that 12 months likely will be needed, including the bidding

14  process and installation of new software.  In terms of additional personnel (which is not the

15  preferred method of compliance), BOF would need to obtain additional funding from the

16  Legislature, go through the process of hiring, and then go through a 6 to 8 month training period

17  process.  If the Ninth Circuit reverses this Court's order, there is no realistic prospect that

18  California will be able to recover any compensation for the efforts it was forced to undertake.

19  BOF would have to go through a process to undo the changes to the system that were done, and

20  may be left with additional personnel.  Third, the balance of harms favors a stay.  Combs and

21  Silvester already have a firearm, and they may still obtain a firearm during the pendency of this

22  suit.  The Court continued to allow BOF to conduct a background check on every prospective

23  firearm purchaser, and that check can take up to 10-days in any event.  The injunction may or may

24  not reduce the 10-day waiting period for a particular purchaser, and a second trip to obtain the

25  firearm could still be required.  This harm is outweighed by the harm to California.  Finally, the

26  public interest favors a stay.  The waiting period law was enacted for the important purpose of

27  keeping firearms out of the hands of people who might have a propensity to misuse them.  A stay

28  would preserve the status quo for a system that processes 1 million firearm applications a year.

1    *Plaintiffs' Opposition*

2         Plaintiffs argue that a stay is not justified.  Defendant argues that this case raises "serious

3    legal questions" because it involves issues of first impression.  However, in order to issue a stay

4    based on "serious legal questions," Defendant must show that the balance of hardships tips sharply

5    in her favor.  Defendant has not done so.  Defendant argues that California is harmed because one

6    of its laws will be enjoined and because it will incur associated fiscal and administrative costs.

7    The Ninth Circuit has recognized that simply because an enactment is being enjoined is not

8    dispositive, because the basis of enjoining the state law is a violation of either a federal statute or

9    the federal Constitution, which also represent enactments of the people.  Defendant has also not

10   explained why it cannot simply allow delivery of firearms to the three as-applied classes once the

11   background check is complete.  Defendant does not adequately appreciate the nature and

12   magnitude of the harm suffered by Plaintiffs, especially because the deprivation of a constitutional

13   right is recognized to be an irreparable harm.  Finally, the public interest does not lie in favor of a

14   stay.  When the state is asserting harm, there is no interest in enforcing an unconstitutional law.

15   *Legal Standard*

16        Federal Rule of Civil Procedure 62(c) allows a district court to suspend, modify, restore, or

17   grant an injunction during the pendency of an appeal.  See Fed. R. Civ. P. 62(c); Natural Res. Def.

18   Council, Inc. v. S.W. Marine, Inc., 242 F.3d 1163, 1166 (9th Cir. 2001).  "A stay is not a matter of

19   right, even if irreparable injury might otherwise result," rather, a stay is "an exercise of judicial

20   discretion" and the "propriety of its issue is dependent upon the circumstances of the particular

21   case." Nken v. Holder, 556 U.S. 418, 433 (2009); Lair v. Bullock, 697 F.3d 1200, 1203 (9th Cir.

22   2012).  "The party requesting a stay bears the burden of showing that the circumstances justify an

23   exercise of that discretion." Nken, 556 U.S. at 433-34; Lair, 697 F.3d at 1203.  In determining

24   whether to issue a stay pending an appeal, courts consider four factors:  "(1) whether the stay

25   applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the

26   applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

27   substantially injure the other parties interested in the proceeding; and (4) where the public interest

28   lies." Nken, 556 U.S. at 434; Lair, 697 F.3d at 1203.  The first two factors "are the most critical."

1    Nken, 556 U.S. at 434.  With respect to the first factor, the Ninth Circuit has characterized a

2    "strong showing" in various ways, including "reasonable probability," "fair prospect," "substantial

3    case on the merits," and "serious legal questions . . . raised."  Leiva-Perez v. Holder, 640 F.3d 962,

4    967-68 (9th Cir. 2011).  These formulations are "largely interchangeable," and each indicate that,

5    "'at a minimum,' a petitioner must show that there is a 'substantial case for relief on the merits.'"

6    Lair, 697 F.3d at 1204; Leiva-Perez, 640 F.3d at 967-68.  With respect to the second factor, the

7    proponent of the stay must demonstrate that there is a probability that she will suffer an irreparable

8    injury if the stay is not granted.  Lair, 697 F.3d at 1215; Leiva-Perez, 640 F.3d at 969.

9        *Discussion*

10       1.    First Factor – Strong Showing Of Success

11          There is no dispute that the first factor may be met if the stay applicant has raised "serious

12   legal questions."  Lair, 697 F.3d at 1204.  "Serious questions are substantial, difficult and

13   doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation."

14   Gilder v. PGA Tour, Inc., 936 F.2d 417, 422 (9th Cir. 1991); Republic of the Phil. v. Marcos, 862

15   F.2d 1355, 1362 (9th Cir.1988).  Plaintiffs do not dispute that this case and Defendant's appeal

16   raise "serious legal questions."  The Court agrees that Second Amendment law is evolving,

17   although the framework for evaluating laws under the Second Amendment has now been

18   established.  See United States v. Chovan, 735 F.3d 1127 (9th Cir. 2013).  In the absence of an

19   argument on this point from Plaintiffs, the Court is satisfied that this case raises "serious legal

20   questions."[1]  See Gilder, 936 F.2d at 422.

21       2.    Second Factor – Harm To The Applicant

22          Defendant has identified as an irreparable harm the harm that befalls a state when one of its

23   laws has been held unconstitutional.  Citing a chambers order from then Justice Rehnquist, the

24   Ninth Circuit in *Coalition for Economic Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997)

25   stated that this as an irreparable injury.  However, very recently the Ninth Circuit noted that the

26   Supreme Court has never adopted Justice Rehnquist's opinion that this form of harm is an

27
28   ---
     [1] The Court notes that Defendant has not identified any error of law or any erroneous factual finding.  The Court
     stands by its analysis and its findings that the waiting period laws violate the Second Amendment as applied to three
     classes of individuals.

4

1  irreparable injury.  See Latta v. Otter, - - - F.3d - - -, 2014 U.S. App. LEXIS 19828, *19 n.1 (9th

2  Cir. 2014).  Further, the Ninth Circuit has characterized the relevant language from *Coalition* as

3  "dicta."  Independent Living Ctr. of S. Cal. v. Maxwell-Jolly, 572 F.3d 644, 658 (9th Cir. 2009).[2]

4  *Independent* explained that to the extent a state suffers an abstract form of harm whenever one of

5  its acts is enjoined, that harm is not dispositive because such a rule would eviscerate the balancing

6  of competing claims of injury.  See id.  In *Latta*, the Ninth Circuit recognized *Coalition*'s

7  statement and *Independent*'s characterization of *Coalition*.  See Latta, - - - F.3d - - -, 2014 U.S.

8  App. LEXIS 19828 at *19.  *Latta* did not expressly address how to apply *Coalition* and

9  *Independent*, but it nevertheless found that lifting a stay on an injunction that prohibited the

10 enforcement of an Idaho law was appropriate in light of other factors.  Given *Latta*'s

11 methodology, the Court finds that a state suffers an abstract harm whenever one of its duly enacted

12 laws is enjoined, but this abstract harm is not a dispositive harm and it may be outweighed by

13 other factors.  Therefore, the Court concludes that California will suffer an abstract injury if the

14 Court's injunction is not stayed.

15       With respect to administrative and fiscal costs, the Court agrees with Defendant that hiring

16 and training additional personnel, as well as hiring outside contractors, would represent an

17 additional expenditure of funds that Defendant would likely not be able to recover.  However,

18 Defendant (through Chief Lindley's declaration) acknowledges that she has computer personnel

19 who could modify the system.[3]  See Lindley Dec. ¶ 15.  The problem is that Defendant believes

20 that other projects are deserving of greater priority.  See id.  There is no description of what these

21 critical projects are or when the deadlines might be, nor is there an explanation of why outside

22 contractors cannot be utilized for some of those projects, nor is there an explanation of why

23 computer personnel from different departments or agencies cannot be utilized.  A bench trial has

24 concluded, and a law that is actively being enforced has been found to be unconstitutional.  The

25 Court does not know how Defendant or the BOF prioritizes projects, but dealing with an

26 ──────────────
[2] Vacated on other grounds, Douglas v. Independent Living Ctr. of So. Cal., Inc., 132 S. Ct. 1204 (2012).

27

28 [3] The Court notes that Assistant Bureau Chief Steve Buford was heavily involved in the background check system
design and process, as well as former BOF employee Donnette Orsi.  See Doc. No. 85 at 168:7-170:6, 279:8-24,
307:13-308:17.   No declaration from Assistant Bureau Chief Buford was submitted by Defendant.

1   unconstitutional law should be towards the top of the list.[4]  It is true that redirecting personnel may

2   cause difficulties, but there is not enough before the Court for it to conclude that Defendant

3   probably would suffer irreparable harm from such redirection.[5]  The Court is not satisfied that

4   Defendant has demonstrated irreparable fiscal or administrative harm.[6]

5        3.    Third Factor – Harm To Others

6        In this case, the Court determined that the 10-day waiting period laws burden the Second

7   Amendment right to keep and bear arms because they prohibit the exercise of that right for all

8   purposes with respect to a newly purchased firearm.  The Court also determined that the 10-day

9   waiting period laws have caused additional expense and inconvenience, and that they have caused

10  individuals to forego exercising their Second Amendment rights.  The Court examined the

11  historical evidence submitted by the parties and concluded that there were no comparable laws in

12  existence during the relevant historical periods, and that waiting period laws exist today in only a

13  distinct minority of States.  The Court also found that no evidence justified a 10-day waiting

14  period under intermediate scrutiny.[7]  Therefore, the Court has determined that the 10-day waiting

15  period laws, as applied to those who have a Carry Concealed Weapons permit ("CCW"), those

16  who already have a firearm, or those who have a firearm and a Certificate of Eligibility ("COE"),

17  violate the Second Amendment.   It has been held that a deprivation of constitutional rights, "for

18  even minimal periods of time, unquestionably constitutes irreparable injury."  Elrod v. Burns, 427

19  U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); Latta, - - - F.3d - - -, 2014 U.S. App.

20

21  [4] It may be that the nature of the resources available to Defendant, combined with the tasks that need to be completed
    in order to comply with the injunction, make hiring outside vendors the best choice.  However, there is insufficient
22  information before the Court on this issue.

23  [5] Defendant suggests that if the background check system was modified, and the Ninth Circuit later reverses the
    injunction, time and resources would need to be spent to restore the system to its prior configuration.  However, there
    is no evidence regarding how difficult, time consuming, or costly such a process would be.
24
    [6] The Court notes that Chief Lindley's declaration indicates that under a manual approach, i.e. analysts review each
25  application, the CCW, COE, and AFS databases would have to be separately queried for each applicant.  However,
    Chief Lindley does not discuss how additional questions (e.g. whether the applicant currently has a valid CCW
26  permit) to the DROS application form might change how applications would be reviewed.  Nevertheless, the issue is
    not before the Court, and it may be that additional questions or changes to the DROS application are undesirable.  The
27  Court merely notes that Chief Lindley's declaration does raise questions.

28  [7] Defendant made various arguments to justify the waiting period, but the evidence did not actually support a 10-day
    waiting period.  The arguments were more in line with "rational basis scrutiny" than with "intermediate scrutiny."

LEXIS 19828 at *19-*20; <u>Melendres v. Arpaio</u>, 695 F.3d 990, 1002 (9th Cir. 2012).  Because the waiting period laws violate their constitutional rights, the named Plaintiffs and all those who fit within the as-applied classes will suffer irreparable injury if a stay pending appeal is granted.[8]

    4. Public Interest

   It has been recognized that enforcement of an unconstitutional law is contrary to the public interest.  <u>See</u> <u>Gordon v. Holder</u>, 721 F.3d 638, 653 (D.C. Cir. 2013); <u>Melendres</u>, 695 F.3d at 1002; <u>Scott v. Roberts</u>, 612 F.3d 1279, 1297 (11th Cir. 2010); <u>Tyson Foods, Inc. v. McReynolds</u>, 865 F.2d 99, 103 (6th Cir. 1989); <u>Levine v. Fair Political Practices Comm'n</u>, 222 F.Supp.2d 1182, 1191 (E.D. Cal. 2002).  Because the waiting period law is unconstitutional with the respect to the three as applied classes, this factor weighs against a stay.[9]  <u>See</u> <u>id.</u>

    5. Conclusion

   When an applicant relies on "serious legal questions," she must demonstrate that the balance of equities tips sharply in her favor.  <u>See</u> <u>Leiva-Perez</u>, 640 F.3d at 966; <u>Tribal Village of Akutan v. Hodel</u>, 859 F.2d 662, 663 (9th Cir. 1988); <u>Lopez v. Heckler</u>, 713 F.2d 1432, 1435 (9th Cir. 1983).  Given the on-going constitutional violations that are occurring to the likely thousands of Californians by operation of the 10-day waiting period laws, the Court cannot conclude that the balance of equities tips sharply in Defendant's favor.  Combined with the public interest that weighs against granting an injunction, the Court does not find that issuing a stay is appropriate.  Defendant's motion for a stay under Rule 62(c) will be denied.

**II.** **Motion To Alter Judgment**

   *Defendant's Argument*

   Defendant argues that to comply with the Court's order, BOF will either have to change the computer system to automatically search the CCW database, the COE database, and the AFS

---

[8] The extent of the harm will vary from person to person, because everyone must pass the background check.  As discussed in the Court's prior opinion, it could take less than 2-hours or more than 10-days to complete the check.

[9] Defendant's motion suggests that the public has an interest in preventing violence and keeping firearms out of the hands of those who have a propensity to commit violence.  However, Defendant submitted no evidence that demonstrated that the 10-day waiting period will have that effect on the three as-applied classes to any appreciable degree, and all persons wishing to purchase a firearm will still have to pass the background check.

1   database, or hire additional staff to manually check these databases.  A significant number of staff

2   would have to be added, and it takes 6 to 8 months to train these individuals.  Further, auto-

3   approved applications would no longer be "auto-approved" because an analyst would have to

4   review the additional databases.  Finally, BOF cannot hire additional staff until it receives funding

5   from the Legislature, which is currently in recess.  To hire and train more staff would likely

6   require 12 months.  However, BOF prefers the automated computer approach.  Under this

7   approach, fewer analysts would be needed and a firearm could be released much sooner, assuming

8   all appropriate criteria are met.  BOF personnel are currently performing other critical tasks, and

9   an outside vendor would be necessary.  Given the history of past projects, the bidding and

10  completion of computer modification would likely take at least 12-months.  Finally, if the Court's

11  intent was to give the Legislature time to act, more time is needed as the Legislature is in recess.

12        *Plaintiffs' Argument*

13        Plaintiffs argue that Defendant has not shown why additional time is needed.  Although

14  Defendant claims that more time is needed to hire personnel and reconfigure the system, no effort

15  to comply been demonstrated since the Court's order.  To the extent that Defendant needs to

16  improve systems and hire staff, she should make efforts to do so now rather than induce urgency

17  by waiting until expiration of the stay.  Further, the Department of Justice has had millions of

18  dollars appropriated to it, which should be sufficient to comply with Court's order without further

19  legislative involvement.  Also, Defendant has made it clear that she can comply with the Court's

20  order without any legislative action.  Even if a legislative "fix" were enacted, Defendant would

21  presumably return to the Court and ask for more time to implement a new law.  Relying on the

22  legislative calendar to drag out the process is not appropriate.  If it becomes clear that the

23  Legislature wishes to address the problem, Defendant can request additional time from the Court.

24  Finally, if the injunction is modified, Defendant should be required to file periodic status

25  conferences to ensure that all efforts are being made to meet the new deadline.

26        *Legal Standard*

27        Federal Rule of Civil Procedure 59(e) provides a mechanism for a court to reconsider and

28  alter or amend a prior order.  See Fed. R. Civ. P. 59(e); Kona Enters. v. Estate of Bishop, 229 F.3d

877, 883 n.6, 890 (9th Cir. 2000).  "While Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  Wood v. Ryan, 759 F.3d 1117, 1121 (9th Cir. 2014); Kona Enters., 229 F.3d at 890.  Rule 59(e) amendments are appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.  Wood, 759 F.3d at 1121; Kona Enters., 229 F.3d at 890.  In "unusual circumstances," the Court may grant a Rule 59(e) motion on additional grounds.  See Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011).  The Rule 59(e) standard is a "high hurdle."  Weeks v. Bayer, 246 F.3d 1231, 1236 (9th Cir. 2001).  Rule 59(e) motions "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."  Kona Enters., 229 F.3d at 890.

### Discussion

The arguments made in favor of altering judgment are extremely similar to those made in support of the motion for stay.  For similar reasons discussed with respect to the stay motion, the Court will not alter the judgment.  Defendant has the personnel within BOF to make changes to the background check system. Defendant just does not want to reassign those personnel to change the background check at this time.  Insufficient information has been provided to the Court as to why reassignment is so undesirable.[10]  Furthermore, it is unclear why other Department of Justice (other state agencies) computer personnel cannot be utilized to work on the other "critical projects" or on the Court's injunction.[11]

The Court accepts that Defendant has reviewed the Court's order/injunction and has made efforts to determine what is necessary to comply.  The Reply Declaration of Chief Lindley indicates the BOF is taking steps to implement that computer/automated approach, including:  (1) analyzing the technology changes that must occur; (2) finalizing a Request for Proposal to solicit

---

[10] The Court emphasizes that it is not holding that Defendant cannot utilize outside vendors as part of complying with the injunction.

[11] The Court does accept that additional funding from the Legislature is needed to hire additional analysts.

1   bids from prospective vendors; (3) identifing the equipment needed for new employees and

2   identified trainers for those new employees; (4) preparing new written procedures that will be

3   necessary for analysts to implement the Court's order; and (5) working on recruitment.  See

4   Lindley Reply Dec. ¶ 7.  However, Chief Lindley declares that any further steps beyond what has

5   occurred will require significant expenditures that cannot be recovered.  See id. at ¶ 8.  For

6   example, any payments made to vendors could not be recovered, BOF might have to pay vendors

7   to undo changes, and BOF might be left with excess staffing.[12]  See id. at ¶¶ 9, 10.  In light of

8   Chief Lindley's declaration, the Court cannot find that Defendant is ignoring its order.

9           The Court is not unsympathetic to the changes that BOF is required to make in order to

10  follow the Court's injunction.  That was the primary reason why the Court stayed its order for 180

11  days.[13]  The Court also understands that technological changes can take time.  If additional

12  information shows that outside vendors are necessary, and that they require additional time, and

13  assuming that Defendant exercises due diligence in attempting to follow the Court's injunction,

14  the Court will likely grant requests for additional time for Defendant to comply.  For now, the

15  Court's order remains stayed for a total of 180 days, and Defendant has time to request a stay

16  pending appeal from the Ninth Circuit.  See Fed. R. Civ. P. 62(g); Fed. R. App. P. 8(a).

17

18                                                  **ORDER**

19           Accordingly, IT IS HEREBY ORDERED that:

20  1.      Defendant's motion to stay (Doc. No. 114) is DENIED; and

21  2.      Defendant's motion to alter judgment (Doc. No. 110) is DENIED.

22

23  IT IS SO ORDERED.

24  Dated:   November 20, 2014          _____

25                                       SENIOR  DISTRICT  JUDGE

26  [12] It is not clear to the Court that BOF would have excess staffing.  Defendant has argued that BOF requires its staff to
    work overtime as a matter of course, and that analysts are extremely busy under current staffing levels.  Also, it is
27  unclear why termination of employment would not occur if an employee is truly not necessary.

28  [13] To give the Legislature time to review the order and the absence of an objection or a reply from Defendant during
    the briefing process were the other considerations.