KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JONATHAN M. EISENBERG
Deputy Attorney General
PETER H. CHANG
Deputy Attorney General
State Bar No. 241467
  455 Golden Gate Ave.
  San Francisco, CA 94102
  Telephone: (415) 703-5939
  Fax: (415) 703-1234
  E-mail: Peter.Chang@doj.ca.gov
*Attorneys for Defendant Kamala D. Harris,
as Attorney General of California*

Donald E.J. Kilmer
SBN 179986
Law Offices of Donald Kilmer
1645 Willow Street, Suite 150
San Jose, CA 95125
Phone: (408) 264-8489
Fax: (408) 264-8487
(additional counsel listed on signature page)
*Attorneys for All Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **JEFF SILVESTER, BRANDON COMBS, THE CALGUNS FOUNDATION, INC., a non-profit organization, and THE SECOND AMENDMENT FOUNDATION, INC., a non-profit organization,**<br><br>                          Plaintiffs,<br><br>    v.<br><br>**KAMALA D. HARRIS, Attorney General of California (in her official capacity),**<br><br>                          Defendant. | 1:11-cv-02137-AWI-SKO<br><br>**JOINT STATUS CONFERENCE REPORT**<br><br>Date:          Dec. 8, 2014<br>Time:         1:30 p.m.<br>Judge:       Hon. Anthony W. Ishii<br>Trial Date:   Mar. 25, 2014<br>Action Filed: Dec. 23, 2011 |

Pursuant to the Court's August 25, 2014 Order, Plaintiffs Jeff Silvester, Brandon Combs, The Calguns Foundation, Inc., and The Second Amendment Foundation, Inc. (collectively, "Plaintiffs") and Defendant Kamala D. Harris, in her capacity as the Attorney General of California ("Defendant"), respectfully submit this Joint Status Conference Report.

## PROCEDURAL BACKGROUND

In August 2014, after a 3-day bench trial, the Court held that the 10-day firearm-purchase waiting periods provided in California Penal Code sections 26815(a) and 27540(a) violate the Second Amendment as applied to three groups of people. (Dkt. No. 106.) As part of its judgment, the Court ordered Defendant to release firearms to individual purchasers who pass their background checks and meet certain other criteria regardless of whether it has been 10 days since the applications to purchase the firearms were submitted, but stayed the judgment for 180 days to give Defendant time to comply with the ruling. (*Id*. at 55-56.)

In September 2014, Defendant moved to amend the Court's order to obtain a longer stay because Defendant needs more than 180 days to implement the judgment. (Dkt. No. 110.) Defendant also filed a notice of appeal, which was held in abeyance pending resolution of the motion to amend the judgment. (Dkt. No. 111.) Defendant then moved to stay the judgment pending resolution of the appeal. (Dkt. No. 114.) On November 20, 2014, the Court denied Defendant's motions to amend and to stay. (Dkt. No. 123.)

On November 25, 2014, Defendant notified the U.S. Court of Appeals for the Ninth Circuit of the order denying the motion to amend the judgment and that Defendant intends to prosecute the appeal.

Plaintiffs have moved for attorneys' fees. (Dkt. No. 108.) Defendant has opposed the motion. (Dkt. No. 124.)

## STATUS REPORT

I. **DEFENDANT'S STATEMENT**

Since the Court issued its judgment, Defendant has diligently taken steps to make changes to the computer systems and personnel of the Bureau of Firearms ("BOF") so as to be able to comply with the judgment. In particular, Defendant is proceeding with technological changes

(the "automated approach") discussed in paragraphs 14-16 of the September 22, 2014 declaration of Stephen J. Lindley (Dkt. No. 110-1) and associated personnel actions. The automated approach is by far the best means of making the needed changes because it will require fewer human resources, will correspondingly be more efficient, will be more effective, and offers the most realistic hope of compliance with the Court's order in the shortest amount of time. (*See* Declaration of Stephen J. Lindley (hereafter "Lindley Decl.") (Dkt. No. 110-1), at ¶ 15.) The automated approach does entail concrete milestones that would certainly extend compliance beyond the required 180 days, but the alternatives are themselves unlikely to achieve compliance significantly sooner, if at all, than the automated approach.

### A. Status of Changes Under the Automated Approach

Defendant has taken a number of steps to implement the technological and human resources aspects of compliance with the Court's order. With respect to the technology itself, Defendant has analyzed the changes that must be made to the Dealer Record of Sale ("DROS") and other California Department of Justice information systems. Defendant has also designed the business rules and processes necessary for changing those systems to implement the judgment. (Supplemental Declaration of Stephen J. Lindley (hereafter "Supp. Lindley Decl.") (Dkt. No. 121-1), at ¶ 6.) These steps were necessary to understand the scope of the challenge compliance with the Court's order presents, and to determine how best to move forward.

Defendant has analyzed whether an emergency no-bid contract process would be appropriate for this work, but has determined that a bidding process is required, although it can be expedited.[1] To date, Defendant has completed the extensive documentation required by state government processes to issue a Request for Proposal ("RFP") on a technology-related project, and has scheduled the RFP to be issued this week. Vendor selection should be complete by the end of December, or the beginning of January 2015. Under a best-case scenario, Defendant expects the contracting process involving signatures, legal review, reference checks, etc., will be

---

[1] A list of exemptions to the competitive bidding requirement is listed in California Public Contract Code section 10430. They do not apply in the present situation.

completed by the beginning of February, which is when the vendor would be authorized to begin work on the project.  BOF anticipates that following commencement, the project will be completed in six months.  (Declaration of Marc St. Pierre in Support of Defendant's Motion to Amend Judgment (Dkt. No. 110-2), at ¶ 18.)

With respect to the human resources aspect noted by the Court in its recent order, BOF has again considered whether the technological fix could be performed by the three or four existing DOJ staff people it has identified with the knowledge and experience to work on this project, but has determined that it would not be feasible.  Those individuals are presently working on stabilizing and upgrading the existing systems to reduce the frequency of system crashes.  To pull those individuals off their present assignments would be inefficient and, worse, for practical reasons may undermine the Court's intent by jeopardizing the stability of the systems upon which the DROS database depends.  BOF has also considered the feasibility of reassigning others within DOJ who have the relevant skillset but who are unfamiliar with the relevant systems to implement the necessary changes.  BOF, however, concluded that such a reassignment would be impractical and inefficient.  It would take those individuals two to three months to become familiar with the relevant systems and to be in a position to implement the necessary changes, by which time a vendor would already be retained.  And, in the meantime, the DOJ programs on which those individuals were previously staffed would suffer.  Accordingly, BOF has concluded a vendor is necessary.

In any event, the Court's order requires BOF to hire new civil service personnel and train them in the manual processes associated with conducting background checks—even with the technology changes performed by the vendor.  This training process typically takes six to eight months.  BOF has determined that 39 additional employees, including new CIS analysts, supervisors, and support staff, would be required to implement the order.  Defendant has also identified the equipment needed for new employees and identified trainers for those new employees.  (Supp. Lindley Decl. at ¶ 7.)  Defendant is preparing job fliers, identifying physical work space for new employees, preparing written procedures for CIS analysts to follow in doing the new work necessary to implement the Court's judgment, and working on a recruitment plan to

bring in qualified applicants. (*Ibid.*)  Prior to actually posting and hiring new personnel, however, Defendant must obtain the necessary funding.

The technological and personnel changes described above require action in the form of funding support and possibly statutory spending authority.  Presently, Defendant is seeking emergency funding from the Department of Finance by way of an emergency Budget Change Proposal ("BCP"), which would allow BOF to access special funds otherwise unavailable to be used for BOF's processing of DROS applications.  If the Department of Finance and the Governor approve the emergency BCP, it would then be presented to the Joint Budget Committee of the Legislature, which reconvened today.  Another alternative BOF is exploring is to seek a direct appropriation from the Legislature.  While this could be a very expeditious way to achieve funding, its timing is wholly outside of the DOJ's control.

**B.     Compliance Through Additional Hiring or Internal Reorganization**

As a result of the Court's recent order denying Defendant additional time for compliance, or staying the judgment, BOF has considered whether additional personnel moves could ensure compliance with the Court's order.  Specifically, Defendant has considered the feasibility of the "manual approach" outlined in paragraphs six through thirteen of the Declaration of Stephen J. Declaration (Dkt. No. 110-1).  It is theoretically possible that hiring additional personnel in numbers far in excess of 39 new employees could speed compliance, but practically unlikely.

Hiring personnel under these circumstances presents challenges.  If BOF is committed to a technological solution, as it is, timely hiring and training of new staff to implement the "manual approach" will be even more difficult than under ordinary circumstances.  New state employees are entitled to permanent civil service status after completion of a probationary period. Accordingly, BOF will need to advertise these positions as less desirable "limited term" positions, or hire as permanent employees people who might nevertheless face layoffs when the technological solution is complete.  In any case, acquiring new personnel again requires the identification of new funding and spending authority, the creation of new positions, the establishment of an application process, conducting an examination process and the creation of

eligibility lists, conducting interviews, and ultimately hiring. This is a time–intensive process under any circumstances, but particularly so when hiring such a large group of new employees.

DOJ is also assessing whether it would be feasible to move non-BOF administrative staff within the DOJ to BOF. This would presumably be highly disruptive to other operations that are critical to public safety. Among the factors to be considered are the following: identifying the universe of existing DOJ staff who could be repurposed, inside and outside BOF; determining their current job responsibilities, and whether those responsibilities are mandated by a state or federal statute, court order, or are otherwise mandatory or discretionary; and how quickly they could reasonably be expected to be trained and become independent.

Defendant does not believe that compliance through additional mass hiring or internal reorganization presents a realistic option for achieving timely compliance with the judgment.

### C. Conclusion

In spite of these, and other continuing, efforts, Defendant does not believe that it will be able to comply with the Court's order by February 23, 2015, the end of the stay, for reasons set forth above and in Defendant's motion to amend judgment (Dkt. Nos. 110 & 121) and supporting declarations by Stephen J. Lindley and Marc St. Pierre (Dkt. Nos. 110-1, 110-2, 121-1)[2], not least of which is that it takes at least six to eight months to train new CIS analysts before they are able to process DROS applications independently. (Findings of Fact and Conclusions of Law (Dkt. No. 106) at p. 29, n.27; Declaration of Stephen J. Lindley (Dkt. No. 110-1), at ¶ 13.)

At the status conference, Defendant intends to provide additional details concerning Defendant's plans for implanting the judgment and to seek the Court's guidance and clarification as to how it may proceed to comply with the Court's order prior to February 23, 2015.

### II. PLAINTIFFS' STATEMENT

Plaintiffs' opposition to the Defendants post-trial motions to delay implementation of this Court's judgment is based in part on the fact that the State of California has failed to demonstrate

---

[2] Supporting declarations to the motion to amend judgment were provided by BOF Chief, Stephen J. Lindley. Former Assistant Chief Steven Buford, who testified at trial regarding the DROS process, has retired.

how that implementation requires the time and effort requested.  (Plaintiffs also oppose any delay in implementation based on the gravity of the Constitutional Right that is being denied/delayed.)

A second cause of action in this matter, under the Equal Protection Clause of the 14th Amendment, was provisionally mooted by this Court's findings and order relating to the Plaintiffs' Second Amendment claims.  But the facts relating to the Equal Protection claims are instructive as to the Defendants' request for modification of any time-table for compliance with this Court's orders.  Eighteen categories of persons already enjoy the remedy ordered (exemption from the waiting period law) without the necessity of overhauling the Attorney General's computer system for background checks.  They simply produce their exemption certificates (peace officer ID, Special Weapons Permits, etc…) and the transaction proceeds in accordance with the remaining federal and state laws for purchasing a gun.

Notwithstanding the filing of an appeal with the Ninth Circuit (and notice that the Defendants intend to seek a stay of this Court's Judgment in the Circuit Court), Plaintiffs remain ready, willing and able to work with the Attorney General's Office to implement the judgment.  Of the three categories of exempt persons (Concealed Carry Weapons Permit, Certificate of Eligibility and Known Gun-Owner), two-thirds of these persons are issued certificates created and standardized by the State of California.  Achieving substantial compliance of two-thirds of this Court's order should be a simple matter of requiring that a copy of the gun-buyer's CCW and/or COE permit be made at the point of sale and kept with the other hard-copy records required by law.  This procedure may not comport with the permanent "fix" that the Attorney General's office will eventually implement, but it has the virtue of meeting a substantial compliance standard to avoid a contempt citation.

Assuming that the Defendants continue to prosecute their appeal without stay relief from the Ninth Circuit, Plaintiffs intend to seek enforcement of this Court's Judgment once the grace period has lapsed.

As noted above, the Plaintiffs (as the prevailing party) have already calendared their motions for recovery of fees and costs.  Otherwise, Plaintiffs have no other business before this Court until the deadline for implementation of the Findings and Order has run.

| | |
|---|---|
| Dated:  December 1, 2014 | Respectfully submitted, |
| | KAMALA D. HARRIS<br>Attorney General of California<br>MARK R. BECKINGTON<br>Supervising Deputy Attorney General<br>JONATHAN M. EISENBERG<br>Deputy Attorney General |
| | /s/ |
| | PETER H. CHANG<br>Deputy Attorney General<br>*Attorneys for Defendant Kamala D. Harris* |
| Dated:  December 1, 2014 | Donald E.J. Kilmer<br>Law Offices of Donald Kilmer |
| | VICTOR J. OTTEN<br>OTTEN LAW, PC |
| | /s/ |
| | DONALD E.J. KILMER<br>*Attorneys for Plaintiffs* |