1

2

3

4

5            **UNITED STATES DISTRICT COURT**

6            **EASTERN DISTRICT OF CALIFORNIA**

7

8   **JEFF SILVESTER, et al.,**                    **CASE NO. 1:11-CV-2137 AWI SAB**

9              **Plaintiffs**

10                                                 **ORDER ON PLAINTIFFS' MOTION**
                  **v.**                           **FOR ATTORNEYS' FEES**

11  **KAMALA HARRIS, Attorney General of**
    **California, and DOES 1 to 20,**

12                                                 **(Doc. No. 108)**
                 **Defendants**

13

14

15         This case involved a Second Amendment challenge to statutes that imposed a 10-day

16  waiting period between the time of purchase and time of possession of a firearm, and a Fourteenth

17  Amendment challenge to 18 individual exemptions to the 10-day waiting period.  Following a

18  bench trial, the Court held that the 10-day waiting period violated the Second Amendment as

19  applied to three classes of individuals and enjoined Defendant from enforcing the 10-day waiting

20  period with respect to the three classes of individuals, but the Court did not reach the Fourteenth

21  Amendment question.  Now before the Court is Plaintiffs' motion for attorneys' fees.

22

23                          **PLAINTIFF'S MOTION**

24         *Plaintiffs' Argument*

25         Plaintiffs argue that there is no question that they are the prevailing party and that they are

26  entitled to fees.  Plaintiffs argue that they have kept detailed time records and have not billed or

27  "no charged" hundreds of hours in the exercise of billing judgment, including hours for research

28  and conferences.  Given the voluntary reductions in time that have already occurred, no further

reduction in time is proper.  Further, the novelty and complexity of the case required multiple attorneys with discrete responsibilities and expertise.  Second Amendment law is rapidly developing and few attorneys practice in this area.  An excellent result was obtained, and this is one of the few successful Second Amendment challenges to a firearms statute.  The various attorneys who worked on this case are entitled to an hourly rate that reflects each counsel's experience, consistent with the private market rate for similarly qualified attorneys.  Pursuant to the Laffey Matrix for attorneys in Washington, D.C., which is a market comparable to Los Angeles and San Francisco, the attorneys should receive between $640 per hour and $110 per hour.  The total lodestar amount, given the hours expended and the applicable rates, is $305,526.21.  However, as part of their reply brief and in answer to Defendant's argument that a $350 rate should apply, Plaintiffs state that they will abide by the Court's discretion in terms of a reasonable rate.  Further, as part of supplemental briefing, Plaintiffs request 10 hours of work done with respect to post-trial motions, and 6.9 hours of work on the fee motion.

With respect to costs and expenses, all of the costs and expenses incurred were reasonable.  All litigation costs, including copying litigation documents, are compensable. The discovery expenses were reasonable given the voluminous documents involved.  All travel time meeting with clients or counsel or attend hearings are compensable.  Thus, a $1,430 award is proper.

### *Defendant's Opposition*

Defendant acknowledges that the Court may award attorney's fees, that Plaintiffs are the prevailing party, and that the lodestar method is the proper method for calculating fees.  However, Plaintiffs' lodestar figure is inflated.  The $640 rate for the three lead attorneys is unreasonable.  Mr. Kilmer actually billed an hourly rate of $270 and has a customary rate of $360 per hour. Mr. Otten billed at a rate of $250 per hour.  Mr. Davis billed at a rate of $250 per hour and has a customary rate of $350 per hour.  The appropriate hourly rate is the rate charged by attorneys of similar experience in the Eastern District of California, Fresno Division.  Reliance on rates from Los Angeles and San Francisco is inappropriate.  Case law and related declarations in other cases indicates that a rate of $350 per hour for the lead attorneys is appropriate.  This coincides with the customary rates charged by Messrs. Kilmer and Davis.  For attorney Joyce, a reasonable rate is

1  $255 per hour.  For attorney Ruttle, a reasonable rate is $150 per hour.  Finally, while $110 per

2  hour for attorneys Quartermaine and Tamura is appropriate for work done once they became

3  attorneys, they should only be reimbursed at a rate of $75 per hour for work done as clerks.

4       In terms of the nature of the work performed, this case proceeded like a typical litigation

5  matter.  Plaintiffs filed an original and an amended complaint, propounded one set of requests for

6  production (to which about 2,000 documents were produced), took no depositions, attended four

7  depositions, filed no discovery motions, successfully defended against a summary judgment

8  motion, and tried a 3-day bench trial.  This consideration does not justify deviating from the

9  maximum hourly rate of $350 per hour.

10      In terms of novelty and difficulty, although Second Amendment law is a new area of

11  practice, this case did not require analyzing complex statutes or fact patterns, or cogently

12  interpreting and applying a vast body of case law.  It is noteworthy that the 2008 *Heller* decision

13  involved attorneys' fees at a rate of $420 per hour, based on the Laffey Matrix for Washington,

14  D.C.  The novelty of this case does not justify deviating from the $350 rate.

15      In terms of contingency fees, Plaintiffs' counsel did not take this case on a contingent

16  basis.  Because Plaintiffs' counsel charged fees in the traditional manner, the rate should either be

17  discounted or not increased.

18      Defendant also argues that Plaintiffs have not justified the claimed hours worked.

19  Plaintiffs have merely submitted copies of their legal bills.  For a complex case, the submission of

20  voluminous billing records without delineating a specific total for each of the categories worked

21  will not substantiate the total hours claimed.  This flaw alone justifies the denial of Plaintiffs'

22  motion.  Also, Plaintiffs should not recover fees that were incurred in the pursuit of unsuccessful

23  claims.  Although Plaintiffs prevailed on their Second Amendment challenge, they did not prevail

24  on their Fourteenth Amendment challenge.  Plaintiffs did not delineate how many hours were

25  spent on the Fourteenth Amendment challenge.  Considering that the Fourteenth Amendment

26  challenged was a minority of the litigation time, an across the board reduction of 10% is proper.

27      Finally, Defendant argues that with a 10% reduction, and utilizing the appropriate rates, the

28  grand total of attorneys' fees awarded should be $159,715.00, plus $1,430 in costs.

1    *Legal Framework*

2        "42 U.S.C. § 1988(b) authorizes district courts to award the 'prevailing party,' in any suit

3    under 42 U.S.C. § 1983, a 'reasonable attorney's fee.'"   Gonzalez v. City of Maywood, 729 F.3d

4    1196, 1202 (9th Cir. 2013).  "[T]he usual approach to evaluating the reasonableness of an attorney

5    fee award requires application of the lodestar method and *Kerr* factors."   Resurrection Bay

6    Conservation Alliance v. City of Seward, 640 F.3d 1087, 1095 (9th Cir. 2011).  Under the lodestar

7    method, the district court multiplies the number of hours the prevailing party reasonably expended

8    on the litigation by a reasonable hourly rate."   Gonzalez, 729 F.3d at 1202; Moreno v. City of

9    Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008).  The product of this computation, the "lodestar

10   figure," yields a presumptively reasonable fee.   Gonzalez, 729 F.3d at 1202; Camacho v.

11   Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).  Next, the court may adjust the lodestar

12   figure upward or downward using a "multiplier" based on the *Kerr* factors not subsumed in the

13   initial calculation of the lodestar.[1]  See Camacho, 523 F.3d at 978; Morales v. City of San Rafael,

14   96 F.3d 359, 363-64 & nn.8-9 (9th Cir. 1996).

15       The prevailing party has the burden of submitting billing records to establish that the

16   number of hours it has requested is reasonable.   Gonzalez, 729 F.3d at 1202; Gates v. Deukmejian,

17   987 F.2d 1392, 1397 (1992).  "Plaintiff's counsel . . . is not required to record in great detail how

18   each minute of his time was expended," even "minimal" descriptions that establish that the time

19   was spent on matters on which the district court may award fees is sufficient.   Lytle v. Carl, 382

20   F.3d 978, 989 (9th Cir. 2004).  Counsel need only "identify the general subject matter of [their]

21   time expenditures."   Trustees of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise, 234

22   F.3d 415, 427 (9th Cir. 2000); see also Lytle, 382 F.3d at 989.  However, where "the

23   documentation is inadequate, the district is free to reduce an applicant's fee award accordingly."

24   Tise, 234 F.3d at 427.  The party opposing the fee application has a burden of rebuttal that requires

---

[1] The *Kerr* factors are:  (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment  [**21] by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.   Resurrection Bay , 640 F.3d at 1095 n.xx; Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

1   submission of evidence that challenges the accuracy and reasonableness of the hours charged or

2   challenges the facts asserted by the prevailing party.  McGrath v. County of Nevada, 67 F.3d 248,

3   255-256 (9th Cir. 1995); Gates v. Gomez, 60 F.3d 525, 534-35 (9th Cir. 1995).  Courts should

4   exclude from its initial calculation hours that are "excessive, redundant, or otherwise

5   unnecessary."  Gonzalez, 729 F.3d at 1203; McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th

6   Cir. 2008).  When there is excessive, redundant or unnecessary hours, a district court can "impose

7   up to a 10% reduction without explanation," but cuts larger than 10% require the district court to

8   more specifically articulate its reasoning.  Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1110

9   (9th Cir. 2014); Moreno, 534 F.3d at 1111.  "By and large, the district court should defer to the

10  winning lawyer's professional judgment as to how much time he was required to spend on the

11  case."  Chaudhry, 751 F.3d at 1111; Moreno, 534 F.3d at 1112.  Additionally, a plaintiff may not

12  receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's

13  successful claims.  McCown, 565 F.3d at 1103; O'Neal v. City of Seattle, 66 F.3d 1064, 1068 (9th

14  Cir. 1995); Odima v. Westin  Tucson Hotel, 53 F.3d 1484, 1499 (9th Cir. 1995).  Claims are

15  related when they involve a common core of facts or are based on related legal theories.  O'Neal,

16  66 F.3d at 1068; Odima, 53 F.3d at 1499.  "The test is whether relief sought on the unsuccessful

17  claim is intended to remedy a course of conduct entirely distinct and separate from the course of

18  conduct that gave rise to the injury upon which the relief granted is premised."  O'Neal, 66 F.3d at

19  1068; Odima, 53 F.3d at 1499.  "[I]n a lawsuit where the plaintiff presents different claims for

20  relief that "involve a common core of facts" or are based on "related legal theories," the district

21  court should not attempt to divide the request for attorney's fees on a claim-by-claim basis."

22  McCown, 565 F.3d at 1103; see O'Neal, 66 F.3d at 1068.  Instead, the court focuses on "the

23  significance of the overall relief obtained by the plaintiff in relation to the hours reasonably

24  expended on the litigation."  McCown, 565 F.3d at 1103; see O'Neal, 66 F.3d at 1068.  "If the

25  plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or

26  limited success' was obtained, full compensation may be excessive."  O'Neal, 66 F.3d at 1068-69.

27        The prevailing party also has the burden of demonstrating that their requested rates are "in

28  line with those prevailing in the community for similar services by lawyers of reasonably

1  comparable skill, experience and reputation." Chaudhry, 751 F.3d at 1110; Camacho, 523 F.3d at

2  980.  Generally, the relevant legal community is the forum in which the district court sits.

3  Chaudrhy, 751 F.3d at 1110; Gonzalez, 729 F.3d at 1205; Barjon v. Dalton, 132 F.3d 496, 500

4  (9th Cir. 1997).  "Within this geographic community, the district court should "take into

5  consideration the experience, skill, and reputation of the attorney or paralegal." Gonzalez, 729

6  F.3d at 1205-06.  "However, rates outside the forum may be used if local counsel was unavailable,

7  either because they are unwilling or unable to perform because they lack the degree of experience,

8  expertise, or specialization required to handle properly the case." Barjon, 132 F.3d at 500; Gates,

9  987 F.2d at 1405.  Affidavits of the prevailing party's attorney, affidavits from other attorneys

10 regarding prevailing fees in the community, and rate determinations in other cases "are

11 satisfactory evidence of the prevailing market rate." Camacho, 523 F.3d at 980.  The district court

12 may also rely on its own knowledge of, and experience with, the customary rates in the legal

13 market in establishing a reasonable rate. Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011).

14         *Discussion*

15         There is no dispute that Plaintiffs are the prevailing parties and are entitled to attorneys'

16 fees.  See Lefemine v. Wideman, 133 S. Ct. 9, 11 (2012) (holding that obtaining injunctive relief

17 is generally sufficient to be considered a prevailing party).  There are disputes about what a

18 reasonable rate is and the number of compensable hours.

19         1.     Reasonable Hourly Rate

20         Plaintiffs' requested rates are based on the rates reflected in the Laffey matrix for attorneys

21 in Washington, D.C.  However, the applicable rate is the prevailing rate for comparable attorneys

22 in the district court's forum.  Chaudrhy, 751 F.3d at 1110; Gonzalez, 729 F.3d at 1205; Barjon,

23 132 F.3d at 500.  This Court sits in the Eastern District of California in the Fresno Division, not

24 Washington, D.C.  Therefore, the applicable rates are those of the Fresno Division.[2]  See id.; Luna

25 v. Vo, 2011 U.S. Dist. LEXIS 56427, *11-*12 (E.D. Cal. May 25, 2011); EEOC v. Harris Farms,

26 Inc., 2006 U.S. Dist. LEXIS 36903, *55-*56 (E.D. Cal. Mar. 2, 2006).

27

28 [2] As not above, the Ninth Circuit has recognized an exception to the district court forum rule.  However, Plaintiffs did not argue that local counsel was "unavailable" to take their case.  See Barjon, 132 F.3d at 500.

Magistrate Judge McAuliffe and Magistrate Judge Seng recently examined cases that set billing rates for the Fresno Division.  See Willis v. City of Fresno, 2014 U.S. Dist. LEXIS 97564 (E.D. Cal. July 17, 2014); Gordillo v. Ford Motor Co., 2014 U.S. Dist. LEXIS 84359 (E.D. Cal. June 19, 2014).  Magistrate Judge McAuliffe concluded that the hourly rates generally accepted in the Fresno Division for competent experienced attorneys is between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience.  See id.  Similarly, Magistrate Judge Seng found that $375 was a top rate for competent and highly experienced attorneys.  See Gordillo, 2014 U.S. Dist. LEXIS 84359 at *14-*15.  For competent practitioners with less than ten years of experience, Magistrate Judge McAuliffe found that the accepted range is between $175 and $300 per hour.  Willis, 2014 U.S. Dist. LEXIS 97564 at *34-*35.  Similarly Magistrate Judge Seng found that the accepted rate for an attorney with less than ten years of experience was between $200 to $300.[3]  Gordillo, 2014 U.S. Dist. LEXIS 84539 at *15-*17.  Finally, Magistrate Judge McAuliffe found that a reasonable hourly rate for paralegals in the Fresno Division is between $75.00 and $150.00 per hour.  Willis, 2014 U.S. Dist. LEXIS 97564 at *40-*41; see also Gordillo, 2014 U.S. Dist. LEXIS 84539 at *17 (holding that $125 per hour was a reasonable rate for the paralegal in that case).  From these cases, see Camacho, 523 F.3d at 980, and the Court's own experience with the local legal market, see Ingram, 647 F.3d at 928, the Court concludes that the current reasonable hourly rates in the Fresno Division are between $175 and $380, depending on the attorney's experience and expertise, with $300 being the upper range for attorneys with 10 years or less experience.  See Willis, 2014 U.S. Dist. LEXIS 97564 at *33-*35; Gordillo, 2014 U.S. Dist. LEXIS 84539 at *14-*17.  The current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience.  See Willis, 2014 U.S. Dist. LEXIS 97564 at *40-*41; Gordillo, 2014 U.S. Dist. LEXIS 84539 at *17.

Plaintiffs had three primary attorneys and seven secondary attorneys work on this case. None of the attorneys involved practice in the Fresno Division.

---

[3] The rate initially identified was between $250 and $300 per hour, but attorneys with five and four years of experience were each awarded $200 per hour.  See Gordillo, 2014 U.S. Dist. LEXIS 84359 at *17.

1    Attorney Victor Otten was a partner in Otten & Joyce, LLP until March 2013, but is now

2    employed by Otten Law, PC.  Mr. Otten has litigation experience and experience working with

3    non-profit organizations, and became involved in this case in June 2013.  Mr. Otten has about 20

4    years of experience, and charged Plaintiff Cal Guns Foundation $250 per hour.  Mr. Otten was a

5    primary attorney and one of two trial counsel.  Defendant argues that the maximum hourly rate for

6    Mr. Otten is $350.  After considering Mr. Otten's experience and involvement in this case, the

7    Court's own knowledge, and the relatively new and developing area of Second Amendment

8    jurisprudence, the Court finds that an hourly rate of $375 is reasonable.

9    Attorney Don Kilmer is a solo practitioner who has about 18 years of experience.  Mr.

10   Kilmer billed the Second Amendment Foundation and the Cal Guns Foundation a combined

11   hourly rate of $270 ($135 for each client), but his normal hourly rate is $360.  Most of Mr.

12   Kilmer's practice appears to be devoted to family law matters, but Mr. Kilmer was lead counsel in

13   the Second Amendment case of *Nordyke v. King*, 563 F.3d 439 (9th Cir. 2009), and has published

14   articles on firearms policy.  Mr. Kilmer was a primary attorney and one of two trial counsel in the

15   case at bar.  Defendant argues that an hourly rate of $350 is appropriate. After considering Mr.

16   Kilmer's experience and involvement in this case, his customary fee, the Court's own knowledge,

17   and the relatively new and developing area of Second Amendment jurisprudence, the Court finds

18   that an hourly rate of $375 is reasonable.

19   Attorney Jason Davis has about 11 years of experience in the area of firearms related laws,

20   including experience with civil and criminal litigation, appeals, legislative analysis, lobbying

21   activity, regulatory compliance, and consultation.  Mr. Davis established Davis & Associates in

22   2009, and has continued to be involved in litigating, negotiating, and supervising attorneys in

23   matters related to the Second Amendment and firearms rights.  Mr. Davis billed the Cal Guns

24   Foundation at a rate of $250 per hour, but customarily charges clients at $350 per hour.  Mr. Davis

25   was involved in filing this case, and did research and consultation involving discovery, trial

26   questions/strategy, and legislative history.  Defendant argues that a rate of $350 per hour is

27   appropriate. After considering Mr. Davis's experience and involvement in this case, his customary

28   fee, his expertise, the Court's own knowledge, and the relatively new and developing area of

1    Second Amendment jurisprudence, the Court finds that an hourly rate of $350 is reasonable.

2          Attorney Brigid Joyce has about 10 years of legal experience, and was a partner at Otten &

3    Joyce, LLP, as well as an adjunct legal writing professor at Whittier Law School.  Ms. Joyce's

4    involvement in this case appears to have been limited to research and drafting objections and

5    motions related to judicial notice.  After considering Ms. Joyce's experience and involvement in

6    this case, the Court's own knowledge, as well as the relatively new and developing area of Second

7    Amendment jurisprudence, the Court finds that an hourly rate of $285 is reasonable.

8          Attorney Michael Ruttle was admitted to practice law in California in December 2012.[4]

9    Mr. Ruttle's involvement in this case appears to have limited to research and writing.  Plaintiffs

10   request a rate of $175 per hour, while Defendant requests a rate of $150 per hour.  After

11   considering Mr. Ruttle's experience and involvement in this case, the Court's own knowledge, and

12   the relatively new and developing area of Second Amendment jurisprudence, the Court finds that

13   an hourly rate of $175 is reasonable.

14         Attorney Jennifer Tamura was admitted to practice law in California in June 2013.[5]  Ms.

15   Tamura worked at Otten & Joyce, and her involvement appears to have been limited to research

16   and communication with senior attorneys.  Plaintiffs request a rate of $110 per hour for Ms.

17   Tamura's work, and Defendant does not oppose this sum.[6]  However, the $110 rate is considerably

18   lower than the reasonable rate for the Fresno Division for first year attorneys.  See Willis, 2014

19   U.S. Dist. LEXIS 97564 at *34-*35 (rate for attorneys of 10 years or less experience ranges from

20   $175 to $300 per hour); J&J Sports Productions, Inc. v. Corona, 2014 U.S. Dist. LEXIS 53027, 9-

21   *10 (E.D. Cal. Apr. 16, 2014) (awarding a rate of $150 to an associate of unknown experience).

22

23   [4] The declaration of Victor Otten indicates that Mr. Ruttle passed the California bar in 2012.  A review of the State
     Bar of California's website at http://members.calbar.ca.gov/fal/Member/Detail/286442 indicates that Mr. Ruttle was
24   admitted to practice law in December 2012.  The Court takes judicial notice of the California State Bar webpage and
     the entry for attorney Michael Ruttle.  See Fed. R. Evid. 201.

25   [5] Plaintiffs indicates that Ms. Tamura passed the California bar in 2013.  A review of the State Bar of California's
     website at http://members.calbar.ca.gov/fal/Member/Detail/290149 indicates that Ms. Tamura was admitted to
26   practice law in June 2013.  The Court takes judicial notice of the California State Bar webpage and the entry for
     attorney Jennifer Tamura.  See Fed. R. Evid. 201.

27
     [6] Defendant requests that any work that Ms. Tamura performed as a clerk be recompensed at a lower rate.  However, a
28   review of the billing records submitted shows that all of Ms. Tamura's work was performed after she became licensed
     to practice law.  Therefore, no work was performed as a clerk.

After considering Ms. Tamura's experience and involvement in this case, Plaintiffs' requested rate, and the relatively new and developing area of Second Amendment jurisprudence, the Court finds that an hourly rate of $150 is reasonable.

Attorney Denise Quartermaine was admitted to practice law in California in December 2013.[7] Ms. Quartermaine worked at Otten & Joyce, and her only apparent involvement was researching, drafting, and editing motions. Plaintiffs request a rate of $110 per hour for Ms. Quartermaine's work, and Defendant does not oppose this sum.[8] However, the $110 rate is considerably lower than the reasonable rate for the Fresno Division for first year attorneys. See Willis, 2014 U.S. Dist. LEXIS 97564 at *34-*35; J&J Sports, 2014 U.S. Dist. LEXIS 53027 at 9-*10. After considering Ms. Quartermaine's experience and involvement in this case, Plaintiffs' requested rate, the Court's own knowledge, and the relatively new and developing area of Second Amendment jurisprudence, the Court finds that an hourly rate of $150 is reasonable.

Justin Otten was admitted to practice law in California on January 14, 2014.[9] Justin Otten was a clerk and associate at Otten & Joyce, and his involvement with this case generally was limited to researching and drafting activities. Plaintiffs request a rate of $110 per hour for Justin Otten's, and Defendant does not oppose this sum for work performed as an attorney. However, the $110 rate is considerably lower than the reasonable rate for the Fresno Division for first year attorneys. See Willis, 2014 U.S. Dist. LEXIS 97564 at *34-*35; J&J Sports, 2014 U.S. Dist. LEXIS 53027 at 9-*10. After considering Justin Otten's experience and involvement in this case, Plaintiffs' requested rate, the Court's own knowledge, and the relatively new and developing area of Second Amendment jurisprudence, the Court finds that an hourly rate of $150 is reasonable for

---

[7] The declaration of Victor Otten indicates that Ms. Quartermaine passed the California bar in 2013. A review of the State Bar of California's website at http://members.calbar.ca.gov/fal/Member/Detail/292460 indicates that Ms. Quartermaine was admitted to practice law in December 2013. The Court takes judicial notice of the California State Bar webpage and the entry for attorney Denise Quartermine. See Fed. R. Evid. 201.

[8] Defendant requests that any work that Ms. Quartermaine performed as a clerk be recompensed at a lower rate. However, a review of the billing records submitted shows that all of Ms. Quartermaine's work was performed after she became licensed to practice law. Therefore, no work was performed as a clerk.

[9] The declaration of Victor Otten indicates that Justin Otten passed the California bar in 2013. A review of the State Bar of California's website at http://members.calbar.ca.gov/fal/Member/Detail/292460 indicates that Justine Otten was admitted to practice law in January 2014. The Court takes judicial notice of the California State Bar webpage and the entry for Justine Otten. See Fed. R. Evid. 201.

1   Justin Otten's work performed as a licensed attorney.  Nevertheless, Justin Otten also performed

2   work as a clerk prior to becoming a licensed attorney.  Defendant requests that the hourly rate for

3   any work performed as a legal clerk/non-attorney be set at $75.  Plaintiffs made no objection to

4   this figure.  The Court agrees that $75 per hour for work performed by Justin Otten prior to

5   January 14, 2014 is reasonable.  Cf. Willis, 2014 U.S. Dist. LEXIS 97564 at *40 (reasonable

6   hourly rate for paralegals ranges between $75 and $150).

7        Attorney Bradley Benbrook has been practicing law in California since 1995.  He founded

8   Benbrook Law Group and customarily bills his clients at a rate of $425 per hour.  Mr. Benbrook's

9   participation in this case was limited to reviewing a consolidated opposition to Defendant's post-

10  trial motions.  After considering Mr. Benbrook's experience and involvement in this case, his

11  customary fee, and the relatively new and developing area of Second Amendment jurisprudence,

12  the Court finds that an hourly rate of $335 is reasonable.

13       Attorney Steven Duvernay is a member of the Benbrook Law Group, was admitted to the

14  California bar in 2007, and customarily bills his clients at a rate of $325 per hour.  Mr. Duvernay's

15  involvement in this case was limited to consulting, researching, and drafting, Plaintiffs'

16  consolidated opposition to two post-trial motions.  After considering Mr. Duvernay's experience

17  and involvement in this case, his customary fee, and the relatively new and developing area of

18  Second Amendment jurisprudence, the Court finds that an hourly rate of $250 is reasonable.

19       2.   Hours Worked

20            a.   Unsuccessful Claims

21       Plaintiffs brought essentially two challenges – a Second Amendment challenge to the two

22  statutory 10-day waiting periods and a Fourteenth Amendment equal protection challenge to

23  approximately 18 categories of exemptions to the waiting 10-day period.  The Court found in

24  favor of Plaintiffs on their Second Amendment challenge, but did not reach the Fourteenth

25  Amendment issue.  See Doc. No. 106 at 54-56.  The Court did not reach the Fourteenth

26  Amendment issue largely based on the representations of Plaintiffs.  In their closing brief,

27  Plaintiffs argued that California was engaged in the unequal treatment of similarly situated persons

28  exercising their Second Amendment rights.  See Doc. No. 93 at 25.  Plaintiffs argued that their

1    equal protection claim was based on the 18 exempted categories being irrational and under-

2    inclusive.  See id.  Plaintiffs argued that the Court need not reach the Fourteenth Amendment issue

3    because of the strength of their Second Amendment challenge, but Plaintiffs then explained that

4    the Fourteenth Amendment suggested the appropriate remedy.  See id. at 26.  If the Court issued

5    an injunction that prohibited application of the 10-day waiting period to the three as-applied

6    groups, Plaintiffs argued that the list of exemptions would then effectively be expanded from 18 to

7    21, which would remedy the equal protection problem.  See id.  The Court ultimately granted the

8    injunctive relief requested by Plaintiffs based on violations of the Second Amendment.  See Doc.

9    No. 106 at 55-56.

10          From above, the relief Plaintiffs sought for both their Second and Fourteenth Amendment

11   claims was intended to prevent Defendant from applying that 10-day waiting period to them and

12   others in the three as-applied categories.  The claims involve a common core of facts or related

13   legal theories in that both claims involve Defendant prohibiting Plaintiff from exercising a Second

14   Amendment right for  a period of 10 days.  Thus, the Second Amendment and Fourteenth

15   Amendment claims are related.  See O'Neal, 66 F.3d at 1069; Odima, 53 F.3d at 1499.

16          Assuming that Plaintiffs were unsuccessful in their Fourteenth Amendment claims, they

17   were highly successful in the results obtained on their Second Amendment claims.  Plaintiffs

18   obtained the relief requested under both their Second and Fourteenth Amendment claims, despite

19   no Fourteenth Amendment analysis being undertaken by the Court.  The relief Plaintiffs obtained

20   justifies full compensation.  See McCown, 565 F.3d at 1103; O'Neal, 66 F.3d at 1068-69.

21                          b.     Adequacy of Documentation

22          Relying on *Jadwin v. County of Kern*, 767 F.Supp.2d 1069 (E.D. Cal. 2011), Defendant

23   argues that Plaintiffs failed to delineate specific totals for each category of work performed, and

24   that this failure justifies denying Plaintiffs' motion in its entirety.  The Court disagrees.  *Jadwin*

25   involved attorneys who were attempting to obtain compensation for approximately 5,000 billable

26   hours and, critically, who had violated a court order that expressly required them to provide "task

27   and billing totals in their supplemental applications for attorneys' fees."  Jadwin, 767 F.Supp.2d at

28   1100-03.  Plaintiffs do not request anything close to 5,000 hours, and no comparable order for

1   supplemental briefing has been issued.

2       Plaintiffs are only required to provide a minimal level of detail that identifies the general

3   subject matter of the time expenditures.  Lytle, 382 F.3d at 989; Tise, 234 F.3d at 427.  Here, the

4   billing records are in tenths of an hour, identify which attorney performed the task, identify the

5   date on which the task was performed, and provide a general description of the task.  That is all

6   that is necessary.  See Lytle, 382 F.3d at 989; Tise, 234 F.3d at 427; Harris Farms, 2006 U.S. Dist.

7   LEXIS 2006 U.S. Dist. LEXIS 36903 at *16.  The Court will make no reductions based on

8   inadequate documentation.

9                   c.       Unnecessary, Excessive, or Redundant Hours

10      The Court has reviewed the billing documents submitted by Plaintiffs.  Although numerous

11  attorneys were involved at various stages of this case, Plaintiffs appear to have minimized

12  redundant hours.  Plaintiffs' counsel have "self-edited," see Otten Dec. ¶¶ 14-15, and counsel have

13  not requested compensation for every hour worked.  Cf. Plaintiffs' Ex. 1 with Plaintiffs Ex. 4.

14  There are no clearly unnecessary, excessive, or redundant hours apparent from the billing records.

15  Further, Defendant has not identified any specific hours which she claims are unnecessary,

16  excessive, or redundant.  Cf. McGrath, 67 F.3d at 255-56 (noting the fee opponent's burden of

17  rebuttal); Gates, 60 F.3d at 534-35 (same).  In the absence of any clearly excessive or

18  unreasonable hours, or specific hours identified by Defendant, the Court will not deduct additional

19  hours as unnecessary, excessive, or redundant.  See Chaudhry, 751 F.3d at 1111; Gonzalez, 729

20  F.3d at 1203; McGrath, 67 F.3d at 255-56; Gates, 60 F.3d at 534-35.

21                  d.       Total Reasonable Hours

22      Based on the submissions and arguments of the parties, the Court concludes the following:

23  Victor Otten performed 92 hours of work; Don Kilmer performed 219 hours of work; Jason Davis

24  performed 112.8 hours of work; Brigid Joyce performed 10.4 hours of work; Michael Ruttle

25  performed 100.4 hours of work; Jennifer Tamura performed 4.6 hours of work; Denise

26  Quartermaine performed 13.8 hours of work; Justin Otten performed 20.2 hours of work as a clerk

27  and 51.4 hours as an attorney; Bradley Benbrook performed 1.9 hours of work; and Stephen

28  Duvernay performed 9.9 hours of work.

### 4.   Lodestar Figure

Victor Otten performed 92.9 hours of work.  At $375 per hour, Plaintiffs are entitled to an award of $34,500 for Mr. Otten's work.

Don Kilmer performed 219 hours of work.  At $375 per hour, Plaintiffs are entitled to an award of $82,125 for Mr. Kilmer's work.

Jason Davis performed 112.8 hours of work.  At $350 per hour, Plaintiffs are entitled to an award of $39,480 for Mr. Davis's work.

Brigid Joyce performed 10.4 hours of work.  At $285 per hour, Plaintiffs are entitled to an award of $2,964 for Ms. Joyce's work.

Michael Ruttle performed 100.4 hours of work.  At $175 per hour, Plaintiffs are entitled to an award of $17,570 for Mr. Ruttle's work.

Jennifer Tamura performed 4.6 hours of work.  At $150 per hour, Plaintiffs are entitled to an award of $690 for Ms. Tamura's work.

Denise Quartermaine performed 13.8 hours of work.  At $150 per hour, Plaintiffs are entitled to an award of $2,070 for Ms. Quartermaine's work.

Justin Otten performed 51.4 hours of work as an attorney.  At $150 per hour, Plaintiffs are entitled to an award of $7,710 for Justin Otten's work as an attorney.   Justin Otten performed 20.2 hours of work as a legal clerk/non-attorney.  At $75 per hour, Plaintiffs are entitled to an award of $1,515 for this work.

Bradley Benbrook performed 1.9 hours of work.  At $335 per hour, Plaintiffs are entitled to an award of $636.50 for Mr. Benbrook's work.

Stephen Duvernay performed 9.9 hours of work.  At $250 per hour, Plaintiffs are entitled to an award of $2,475 for Mr. Duvernay's work.

Adding these figures, the total lodestar amount is:  $192,073.00.

### 5.   Adjustments

Neither Plaintiffs nor Defendant have requested or argued for any adjustment to the lodestar figure.  In the absence of an argument on this point, the Court declines to adjust the lodestar figure.

1        6.      Costs

2        Defendant states that she does not oppose awarding Plaintiffs their requested costs.  In

3  light of Defendant's non-opposition, Plaintiffs will be awarded costs of $1,434.16.

4         Additionally, Mr. Kilmer has declared that he incurred billable costs for hotel expenses

5  during the trial and final argument in the amount of $572.29.  Mr. Kilmer is from the San Jose

6  area.  Trial in this matter was from March 25, 2014 to March 27, 2014, and final argument was

7  held on August 15, 2014.  In other words, 4 days of hotel stays are apparent from the record.

8  Hotel costs may be awarded as part of an award under 42 U.S.C. § 1988.  See Harris v. Marhoefer,

9  24 F.3d 16, 19-20 (9th Cir. 1994); Davis v. Hollins Law, 2014 U.S. Dist. LEXIS 86722, *4-*6

10  (E.D. Cal. June 24, 2014); Miller v. Schmitz, 2014 U.S. Dist. LEXIS 20612, *14 (E.D. Cal. Feb.

11  18, 2014); see also Chalmers v. Los Angeles, 796 F.2d 1205, 1216 n.7 (9th Cir. 1985).  Defendant

12  has not addressed this aspect of Mr. Kilmer's declaration.  In the absence of an objection, the

13  Court will award Plaintiffs $572.29 in hotel expenses.

14

15                                    **ORDER**

16        Accordingly, IT IS HEREBY ORDERED that:

17  1.      Plaintiffs' motion for attorneys' fees is GRANTED in the amount of $192,073.00; and

18  2.      Plaintiffs' motion for costs is GRANTED in the amount of $2,006.45 ($1,434.16 +

19         $572.29).

20

21  IT IS SO ORDERED.

22  Dated:   December 17, 2014         _____

23                                    SENIOR  DISTRICT  JUDGE

24

25

26

27

28

15